**KELLEY DRYE & WARREN LLP**
   Tahir L. Boykins (State Bar No 323441)
10100 Santa Monica Boulevard, 23rd Floor
Los Angeles, California 90067-4008
Telephone: (310) 712-6100
tboykins@kelleydrye.com

Michael C. Lynch (Admitted *Pro Hac Vice*)
Levi M. Downing (Admitted *Pro Hac Vice*)
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
mlynch@kelleydrye.com
ldowning@kelleydrye.com

Joseph Boyle (*Admitted Pro Hac Vice*)
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
jboyle@kelleydrye.com

*Attorneys for Defendant Dongwon Industries Co. Ltd.*

***ADDITIONAL COUNSEL ON SIGNATURE PAGE**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN GARDNER, LORI MYERS, ANGELA COSGROVE, AUTUMN HESSONG, ROBERT MCQUADE, COLLEEN MCQUADE, JAMES BORRUSO, FIDEL JAMELO, JOCELYN JAMELO, ANTHONY LUCIANO, LORI LUCIANO, ROBERT NUGENT, AVRAHAM ISAC ZELIG, KEN PETROVCIK, MEGAN KIIHNE, and KATHLEEN MILLER, on behalf of Themselves and all others similarly situated, | Case No.: 3:19-cv-02561-WHO [Hon. William H. Orrick] **DONGWON'S NOTICE OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Plaintiffs, | |
| v. | Date: October 30, 2019 |
| STARKIST CO., a Delaware Corporation, and DONGWON INDUSTRIES CO. LTD, a South Korea Corporation | Time: 2:00 p.m. Place: Courtroom 2 First Amended Complaint Filed: June 17, 2019 |
| Defendants. | |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 30, 2019, at 2:00 p.m., or as soon thereafter as the parties may be heard before the Honorable William H. Orrick, U.S.D.J., located at 450 Golden Gate Avenue, Courtroom 2, San Francisco, California, 94102, Defendant Dongwon Industries Co. Ltd. ("Defendant" or "Dongwon") will and hereby does move to dismiss with prejudice the First Amended Class Action Complaint of Plaintiffs Warren Gardner, Lori Myers, Angela Cosgrove, Autumn Hessong, Robert McQuade, Colleen McQuade, James Borruso, Fidel Jamelo, Jocelyn Namelo, Anthony Luciano, Lori Luciano, Robert Nugent, Abraham Isac Zelig, Ken Petrovcik, Megan Kiihne, and Kathleen Miller's ("Plaintiffs") pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(6), 8(a) and 9(b) of the Federal Rules of Civil Procedure, and as more fully set forth in the accompanying Memorandum of Points and Authorities, on the following grounds:

1.      The Court lacks personal jurisdiction over Defendant;

2.      Plaintiffs have failed to allege a "short and plain statement … showing that the pleader is entitled to relief" and further has failed to allege a plausible claim for relief as required by Fed. R. Civ. P. 8(a);

3.      Plaintiffs have failed to plead their claims with particularity as required by Fed. R. Civ. P. 9(b);

4.      Plaintiffs have not carried their burden of establishing that they have standing to seek relief under Article III of the U.S. Constitution because they have not alleged (and cannot allege) an injury-in-fact and/or that this Court can grant them relief;

5.      Plaintiffs' claims under the California Unfair Competition Law, the California Consumers Legal Remedies Act, the Florida Deceptive and Unfair Trade Practices Act, the New York General Business law, the New Jersey Consumer Fraud Act, the Minnesota Prevention of Consumer Fraud Act, the Minnesota Uniform Deceptive Trade Practices Act, the Arizona Consumer Fraud Act, and for unjust enrichment, are preempted by federal law;

6.      Plaintiffs' claim under the Racketeering Influenced and Corrupt Organizations Act is not cognizable and/or otherwise fails to state a claim for relief because it relies upon alleged violations of a federal statute, the Dolphin Protection Consumer Information Act, and related

regulations, which does not contain a private right of action;

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Sangwoo Choi filed concurrently herewith, the pleadings, records and files herein, and upon such other argument as may be presented at the hearing.

DATED: August 16, 2019          **KELLEY DRYE & WARREN LLP**
Michael C. Lynch (Admitted *Pro Hac Vice*)
Joseph A. Boyle (Admitted *Pro Hac Vice*)
Michael R. Dover (Admitted *Pro Hac Vice*)
Levi M. Downing (Admitted *Pro Hac Vice*)
Tahir L. Boykins

By   */s/ Michael C. Lynch*
        Michael C. Lynch

*Attorneys for Defendant*
*Dongwon Industries Co. Ltd.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 3

    A. DONGWON AND STARKIST ARE DISTINCT AND SEPARATE ENTITIES ................................................................................................. 3

    B. THE FAC'S ALLEGATIONS ................................................................... 4

III. ARGUMENT ................................................................................................................ 6

    A. DONGWON IS NOT SUBJECT TO JURISDICTION IN CALIFORNIA ............ 6

        1. Legal Standard On A Motion To Dismiss For Lack of Jurisdiction ............ 7

        2. Plaintiffs Have Not Established A Prima Facie Case That StarKist Is Dongwon's Alter Ego ................................................................... 7

            a. Plaintiffs Have Not Alleged A Unity Of Interest Between Dongwon And StarKist ................................................... 7

            b. Plaintiffs Have Not Alleged That Recognizing Dongwon And StarKist As Separate Entities Will Result In Fraud Or Injustice ............................................................ 11

        3. StarKist Is Not Dongwon's Agent ............................................... 12

        4. Dongwon Has Not Waived Objections To Personal Jurisdiction .............. 14

    B. PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST DONGWON ................................................................................... 15

        1. Plaintiffs Have Not Pled That Dongwon Has Disseminated Any Alleged False Statements ........................................................... 16

        2. Plaintiffs Have Not Stated A Predicate Claim For Relief Against StarKist For Which Dongwon Could Be Liable ......................... 18

        3. The DPCIA Preempts Plaintiffs' State Law Claims ........................... 19

        4. The DPCIA Precludes Plaintiffs' RICO Claim ................................. 21

        5. Plaintiffs Have Failed to Plead the Elements of RICO ...................... 23

IV. CONCLUSION ........................................................................................................... 25

i

NOTICE OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:19-cv-02561-WHO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. v. NA Tech Direct, Inc.*,
  Case No.: 17-cv-05226-YGR, 2018 U.S. Dist. LEXIS 112162 (N.D. Cal. July
  5, 2018).................................................................................................................. 10

*Black v. Corvel Enter. Comp.*,
  756 Fed. Appx. 706 (9th Cir. 2018) ...................................................................... 23

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ............................................................................... 16

*Cottle v. W. Skyways, Inc.*,
  Case No.: 17-cv-00049-DAD-BAM, 2017 U.S. Dist. LEXIS 59203 (E.D. Cal.
  April 18, 2017)........................................................................................................ 14

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................................................... 12

*Danielsen v. Burnside-Ott Aviation Training Ctr.*,
  941 F.2d 1220 (D.C. Cir. 1991) ............................................................................. 22

*Delacruz v. Serv. Corp. Int'l*,
  Case No.: 1:18-cv-00154-LJO-EPG, 2018 U.S. Dist. LEXIS 84172 (E.D. Cal.
  May 17, 2018).......................................................................................................... 10

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) ................................................................................. 17

*Doan v. Singh*,
  617 Fed. Appx. 684 (9th Cir. 2015).................................................................23, 24

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ................................................................................. 15

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
  590 F. Supp. 2d 1282 (C.D. Cal. 2008)................................................................. 22

*Fortaleza v. PNC Fin. Servs. Group, Inc.*,
  642 F. Supp. 2d 1012 (N.D. Cal. 2009) ................................................................ 17

*Fraker v. Bayer Corp.*,
  No. CV F 08-1564 AWI GSA, 2009 U.S. Dist. LEXIS 125633 (E.D. Cal. Oct.
  2, 2009)..................................................................................................................... 18

*Gaines v. Home Loan Ctr., Inc.*,
  No. SA CV 08-667 AHS, 2010 U.S. Dist. LEXIS 153719 (C.D. Cal. May 24,
  2010) ........................................................................................................................ 23

*GEC US 1 LLC v. Frontier Renewables, LLC,*
    Case No.: 16-cv-1276 YGR 2016 U.S. Dist. LEXIS 120931 (N.D. Cal. Sept. 7,
    2016) ...................................................................................................................7, 9, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011) ................................................................................................ 12

*Hall v. SeaWorld Entm't, Inc.,*
    No. 3:15-CV-660-CAB-RBB, 2015 U.S. Dist. LEXIS 174294 (S.D. Cal. 2015).................... 18

*Ibrani v. Mabetex Project Eng'g,*
    Case No.: 00-cv-00107, 2002 U.S. Dist. LEXIS 10016 (N.D. Cal. May 31,
    2002) .................................................................................................................... 14

*Indep. Elec. Supply, Inc. v. Solar Installs, Inc.,*
    Case No.: 18-cv-01435-KAW, 2018 U.S. Dist. LEXIS 113792 (N.D. Cal. July
    9, 2018)..............................................................................................................8, 9, 11

*InfoSpan, Inc. v. Emirates NBD Bank PJSC,*
    903 F.3d 896 (9th Cir. 2018) ................................................................................... 11

*United States ex rel. Lee v. Corinthian Colleges,*
    655 F.3d 984 (9th Cir. 2011) ................................................................................... 17

*Lujan v. Defs. Of Wildlife,*
    504 U.S. 555 (1992) ................................................................................................ 19

*Montalvo v. Spirit Airlines,*
    508 F.3d 464 (9th Cir. 2007) ................................................................................... 20

*Moody v. Charming Shoppes of Del., Inc.,*
    No. C 07-06073 MHP, 2008 U.S. Dist. LEXIS 120585 (N.D. Cal. May 16,
    2008) .................................................................................................................... 10

*Norman v. Niagara Mohawk Power Corp.,*
    873 F.2d 634 (2d Cir. 1989) .................................................................................... 21

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
    615 F.3d 1106 (9th Cir. 2010) ................................................................................. 22

*Patton v. Forest Labs., LLC,*
    No. EDCV 17-922-MWF, 2018 U.S. Dist. LEXIS 225874 (C.D. Cal. May 10,
    2018) .................................................................................................................... 23

*Payoda, Inc. v. Photon Infotech, Inc.,*
    Case No.: 14-cv-04103-BLF, 2015 U.S. Dist. LEXIS 100560 (N.D. Cal. July
    30, 2015).................................................................................................................. 10

*Petrochem Insulation, Inc. v. N. California & N. Nevada Pipe Trades Counsel,*
    No. C-90-3628 EFL, 1991 U.S. Dist. LEXIS 6659 (N.D. Cal. April 30, 1991) ..................... 21

*Ranza v. Nike, Inc.,*
    793 F.3d 1059 (9th Cir. 2015) ......................................................................... *passim*

*RWS Info. v. Arbiter Group, PCL*,
   No. 96-1146, 1997 U.S. App. LEXIS 3917 (4th Cir. 1997).................................... 14

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ........................................................................ 12

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016)........................................................ 23

*Sivilli v. Wright Med. Tech., Inc.*,
   Case No.: 18-cv-2162-AJB-JLB, 2019 U.S. Dist. LEXIS 105416 (S.D. Cal.
   June 24, 2019)...................................................................................9, 10, 13

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...................................................................... 15

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...................................................................16, 17

*United Food & Commer. Worker Unions & Emplrs. Midwest Health Bens. Fund v.
   Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) ........................................................................ 23

*United States v. Cathcart*,
   No. C 07-4762 PJH, 2008 U.S. Dist. LEXIS 70100 (N.D. Cal. Sept. 15, 2008) ..................... 16

*United States v. Locke*,
   529 U.S. 89 (2000)........................................................................................ 0

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................... 15

*Williams v. Progressive Cty. Mut. Ins. Co.*,
   Case No.: 17-cv-2282-AJB-BGS, 2019 U.S. Dist. LEXIS 54600 (S.D. Cal.
   Mar. 29, 2018) .......................................................................................... 8, 9

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ...................................................................... 13

*Woolsey v. J.P. Morgan Ventures Energy Corp.*,
   No. 15cv530-WQH-BGS, 2015 U.S. Dist. LEXIS 145120 (S.D. Cal. 2015)........................ 22

*Yagman v. Kelly*,
   Case No.: 17-6022-MWF, 2018 U.S. Dist. LEXIS 203393 (C.D. Cal. Mar. 20,
   2018) ......................................................................................................10, 11

**Statutes**

16 U.S.C. § 1385(d) .......................................................................................... 20

16 U.S.C. § 1385(e), (f) .................................................................................... 20

16 U.S.C. § 1826g ............................................................................................ 21

16 U.S.C. § 1826g(a) ........................................................................................ 21

1  16 U.S.C. § 1826g(d) .................................................................................................. 21

2  **Other Authorities**

3  50 C.F.R. § 216.91 ................................................................................................. 5, 19

4  50 C.F.R. § 216.93 ..................................................................................................... 19

5  Fed. R. Civ. P. 4(k)(2) ................................................................................................ 11

6  Fed. R. Civ. P. 8(a) .................................................................................................. 5, 6

7  Fed. R. Civ. P. 9(b) ...............................................................................................15, 16

8  FRCP 12(b)(2) ........................................................................................................... 25

9  Appellate Body Report, United States – *Measures Concerning the Importation,*
   *Marketing and Sale of Tuna and Tuna Products,* ¶ 193, 2012 WL 1777463,
10  WTO Doc. WT/DS381/AB/R (adopted May 16, 2012) ....................................... 20

11  *Marine Mammal Protection, Brands Sampled,* NOAA FISHERIES (Dec. 14, 2017) .................. 5, 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs' Original Complaint (Dkt. No. 1) ("Complaint") did not name Dongwon Industries Co. Ltd. ("Dongwon") and asserted eleven claims against defendant StarKist Co. ("StarKist").  The Complaint purported to challenge the accuracy of the "dolphin-safe" label on StarKist tuna products, which Plaintiffs allege they purchased.  On June 17, 2019, Plaintiffs filed a First Amended Class Action Complaint (Dkt. No. 37) ("FAC") asserting the exact same eleven claims based on all of the same allegations, but added Dongwon as a defendant.  Dongwon is incorporated and headquartered in South Korea.  It has no presence in the United States.  As a result, the FAC does not identify a single contact between Dongwon and the State of California.  Nor does it identify any conduct by Dongwon relating to the labeling of StarKist tuna, or any representation by Dongwon that Plaintiffs allege is false.  Dongwon is not subject to jurisdiction in California and is not a proper defendant in this case.

Plaintiffs assert that StarKist is Dongwon's "alter ego or agent" simply because Dongwon owns StarKist and a few employees have held positions at both StarKist and Dongwon.  Under controlling Ninth Circuit law, these allegations are legally insufficient to establish an alter ego relationship: "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control."  *Ranza v. Nike Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).  StarKist has its own board, maintains its own books and records, hires and pays its own employees, maintains its own offices, property and bank accounts, and markets and sells its own products.  Plaintiffs' contention that the corporate separateness of Dongwon and StarKist can be simply ignored is meritless; so too are Plaintiffs' claims.

Attempting to overcome the lack of any jurisdictional contacts, Plaintiffs argue that Dongwon made itself forever subject to personal jurisdiction in U.S. courts because it was a party to other U.S. litigations, including by appearing as a plaintiff in U.S. federal courts a quarter-century ago.  This argument also fails.  Courts have repeatedly held that a foreign party's participation in unrelated litigation has no relevance to jurisdiction.

Even if Dongwon were subject to jurisdiction in California, which it is not, Plaintiffs have

1

1    nonetheless failed to state a claim for relief against Dongwon.  Indeed, although all of Plaintiffs'

2    claims sound in fraud, Plaintiffs do not identify a single false statement by Dongwon.  Nor do they

3    identify any participation by Dongwon in the dissemination of any alleged false statements.

4    Instead, Plaintiffs merely lump alleged conduct by StarKist and Dongwon together, and make

5    conclusory assertions that the "Defendants" purportedly violated the law.  Such allegations are

6    insufficient as a matter of law to satisfy Rule 9(b)'s heighted pleading standard.  In order to state a

7    claim against Dongwon, Plaintiffs must identify particular fraudulent conduct by Dongwon.  They

8    have failed to do so.

9          Moreover, Dongwon is not liable for StarKist's conduct because StarKist has no liability.

10   Plaintiffs have failed to state a claim against StarKist and, thus, there is no claim against

11   Dongwon.  Plaintiffs' claims suffer from a misinterpretation of federal law.  Plaintiffs allege that

12   reasonable consumers interpret the term "dolphin-safe" in accordance with the Dolphin Protection

13   Consumer Information Act and its implementing regulations ("DPCIA").  Their theory of liability

14   is that they purchased StarKist tuna that did not qualify as dolphin-safe under those standards.

15   The FAC, however, does not identify a violation of the DPCIA.  The only facts Plaintiffs have

16   alleged is that StarKist sources tuna from companies that engage in longline and purse seine

17   fishing methods.  However, the DPCIA, by its plain terms, permits tuna captured using these

18   methods to be labeled as dolphin-safe.  In order to plead a violation of the DPCIA under Plaintiffs'

19   theory, they must allege that Defendants sold tuna labeled as dolphin-safe tuna that was either (i)

20   caught on a fishing trip during which a fishing net or other gear was intentionally deployed on or

21   used to encircle dolphins, or (ii) caught in a set or gear deployment in which a dolphin was killed

22   or seriously injured.  Plaintiffs have failed to allege any such facts.  Plaintiffs have not identified

23   any instance in which StarKist—much less Dongwon—sold tuna as dolphin-safe that did not

24   qualify as such under federal law.  The FAC is devoid of any purported DPCIA violations.

25          Plaintiffs also erroneously assert that StarKist failed to properly track the source of its tuna.

26   This assertion is based entirely on the allegation that StarKist does not maintain a portal through

27   which the public can determine where and by what fishing method each StarKist tuna was

28   sourced.  The DPCIA, however, expressly provides that tuna tracking information is not required

1    to be publicly disclosed.  Importantly, the National Oceanic and Atmospheric Administration

2    ("NOAA"), which is responsible for monitoring and enforcing compliance with tuna tracking

3    requirements, has determined that StarKist complies with those requirements.  Dongwon is not

4    subject to the jurisdiction of this Court.  Even if it were, there would be no liability because

5    Plaintiffs' attempt to assert a claim against StarKist fails and, as a result, Dongwon cannot have

6    liability under an alter ego theory.

7         Dongwon is also not liable under state law because Plaintiffs' state law claims are

8    preempted.  The DPCIA occupies the entire field of dolphin safe tuna labeling in the U.S.  It

9    provides a uniform definition of "dolphin-safe" with respect to tuna and contains a comprehensive

10   enforcement scheme that does not include a private right of action.  The DPCIA does not leave

11   room for supplemental state law claims.

12        Plaintiffs' Rackateer Influenced and Corrupt Organizations Act ("RICO") claim fails for a

13   similar reason.  It is well-settled that RICO does not provide a federal claim for relief for alleged

14   violations of a federal statute that does not itself create a private right of action.  In addition,

15   Plaintiffs have not adequately pled that Dongwon was part of any RICO "enterprise" or that they

16   have suffered a RICO injury.

17                    **II.    STATEMENT OF FACTS**

18   **A.    DONGWON AND STARKIST ARE DISTINCT AND SEPARATE ENTITIES**

19        Dongwon is incorporated and headquartered in the Republic of Korea.  (Choi Decl.[1] at ¶

20   2.)  Dongwon does not own or lease any offices in the U.S., nor does it maintain a U.S. address.

21   (Choi Decl. at ¶ 3.)  Dongwon also does not own a U.S. bank account or own any real or personal

22   property in the U.S.  (Choi Decl. at ¶¶ 4-5.)  Dongwon has no registered agent for service

23   anywhere in the U.S.  (Choi Decl. at ¶ 4.)

24        StarKist is a distinct and separate entity from Dongwon that is adequately capitalized and

25   _____

26   [1]   "Choi Decl." refers to the Declaration of Sangwoo Choi in Support of Dongwon Industries Co.
        Ltd.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, dated August 14,
27      2019, filed herewith.

28
                                        3

1   maintains its principal place of business in Pittsburgh, Pennsylvania.  (Choi Decl. at ¶ 9.)  StarKist

2   is Dongwon's subsidiary, but observes corporate formalities of a separate, independent entity.

3   (Choi Decl. at ¶¶ 6, 8, 13.)  StarKist maintains its own books, separate from Dongwon, its own

4   business records, and has its own bank accounts, over which Dongwon has no authority.  (Choi

5   Decl. at ¶ 11, 13.)  StarKist has its own board of directors and corporate officers that are

6   responsible for the day-to-day operations of StarKist's business.  (Choi Decl. at ¶¶ 7, 10.)  StarKist

7   hires its own employees and pays their salaries.  (Choi Decl. at ¶ 10.)  StarKist employees are

8   responsible for the marketing of StarKist's products.  (Choi Decl. at ¶¶ 10, 12.)  StarKist maintains

9   its own pricing and marketing practices independent of Dongwon.  (Choi Decl. at ¶ 12.)

10   **B.      THE FAC'S ALLEGATIONS**

11          The FAC does not allege a single direct contact between Dongwon and the State of

12   California.  Instead, the FAC attempts to attribute StarKist's alleged contacts with California to

13   Dongwon through legal fiction.  The FAC makes the conclusory allegation that StarKist is

14   Dongwon's "alter-ego or agent."  (FAC at ¶ 107.)  The FAC's only allegations concerning the

15   connections between the two companies, however, is that StarKist is Dongwon's subsidiary and

16   three individuals have held positions at StarKist and either Dongwon or other affiliated

17   companies.  (FAC at ¶¶ 103, 104 and 141.)  The FAC also erroneously asserts that Dongwon has

18   waived objections to personal jurisdiction in the U.S. by participating in other unrelated litigations

19   in U.S. courts.  (FAC at ¶ 79.)

20          The FAC goes on to assert a total of eleven claims for relief: 10 state-law claims under the

21   laws of California, Florida, New York, New Jersey, Minnesota, and Arizona, and one federal

22   claim under RICO.  All of Plaintiffs' claims are based upon their incorrect theory that only tuna

23   captured using "traditional pole-and-line and trolling methods" qualifies as dolphin-safe under

24   federal law, and that all tuna captured using any other method is not.  (FAC at ¶¶ 40-41, 155.)

25   Plaintiffs allege that the "dolphin-safe" label that appears on StarKist brand tuna products in U.S.

26   retail stores is false because StarKist sources tuna from vessels that engage in purse seine and

27   longline fishing methods, notwithstanding that federal law permits tuna captured using these

28   methods to be labeled as "dolphin-safe."  (FAC at ¶¶ 43-46.)  Plaintiffs do not identify any

4

NOTICE OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:19-cv-02561-WHO

1   participation whatsoever by Dongwon in the marketing or sale of StarKist tuna products or any

2   other product that they allegedly purchased.  Nor do they identify a single statement by Dongwon

3   of any kind that was allegedly false.  Other than being the foreign parent company to StarKist, the

4   FAC alleges no relationship between their fraud charges and Dongwon.

5          The DPCIA and its implementing regulations permit tuna caught using purse seine nets

6   and longlines to be labeled as dolphin-safe if: (i) it is accompanied by "a written statement

7   executed by the captain of the vessel certifying that no purse seine net or other fishing gear was

8   intentionally deployed on or used to encircle dolphins during the fishing trip in which the tuna

9   were caught and that no dolphins were killed or seriously injured in the sets or other gear

10  deployments in which ten tuna were caught" (50 C.F.R. 215.91(a)(3)(iii)); and (ii) it is "stored

11  physically separate from tuna caught in a non-dolphin-safe set or other gear deployment."  50

12  C.F.R. 216.91(a)(4).[2]  The FAC does not identify any instance where StarKist—much less

13  Dongwon—sold tuna as dolphin-safe that did not satisfy this criteria.  And other than Plaintiffs'

14  erroneous assertion that StarKist is Dongwon's alter ego, the FAC does not identify any

15  involvement whatsoever by Dongwon in the dissemination of any alleged false statements.

16         Plaintiffs also allege in conclusory terms that no StarKist tuna may be labeled as dolphin-

17  safe because Defendants allegedly do not adequately trace or otherwise identify the tuna that is not

18  dolphin-safe and physically segregate and store it separately from any tuna that may be dolphin-

19  safe.  (FAC at ¶ 31.)  The FAC, again, fails to identify how these allegations could possibly

20  support a claim against Dongwon.  The allegations are also provably false.  NOAA regularly

21  monitors and verifies the documentation supporting dolphin-safe tuna labeling in the U.S., and

22  concluded that StarKist tuna "met U.S. dolphin-safe standards."  (Dkt. 44-4.)

23         In a meritless attempt to manufacture a non-existent RICO claim, Plaintiffs assert that

24  Dongwon "conspired with" several entities "to procure, process, package, label and sell tuna

25  products as dolphin-safe and sustainably sourced when they are not."  (FAC at ¶ 141.)  Like the

---

[2]   A more complete discussion of the DPCIA and its implementing regulations is contained in StarKist's motion to dismiss the FAC ("StarKist Brief"). (Dkt. 44 at pp. 4-7.)

1   rest of the FAC's allegations, Plaintiffs plead no facts to support any element of their RICO claim.

2          For example, Plaintiffs claim upon information and belief, that alleged co-conspirators

3   "supplied false Captain Statements to Defendants knowing that such Captain Statements were

4   false and, if the truth were known, Defendants would not be able to package, label, market, and

5   sell its tuna products to the Class as dolphin-safe … ."  (FAC at ¶ 143.)  But Plaintiffs do not

6   identify a single Captain Statement that was allegedly falsified, much less disclose any basis for

7   their conclusory allegation of falsity.  The FAC also asserts that each alleged co-conspirator knew

8   that tuna did not meet dolphin-safe labeling standards, but it fails to identify any individual within

9   Dongwon that had such knowledge or how they allegedly learned that any imported tuna was not

10  dolphin-safe.  (FAC at ¶ 168.)  The FAC likewise pleads no facts to support its conclusory

11  allegations that the alleged co-conspirators maintained a "common communication network" (¶

12  161), or that Dongwon "ensur[ed] that the RICO Co-Conspirators and unnamed co-conspirators

13  complied with the scheme or common course of conduct."  (FAC at ¶ 164(o)).  The FAC is

14  entirely conclusory, fails to state an actionable claim, and should accordingly be dismissed.

15                          **III.    ARGUMENT**

16  **A.    DONGWON IS NOT SUBJECT TO JURISDICTION IN CALIFORNIA**

17         Plaintiffs have not, and cannot, carry their burden of alleging that the Court has personal

18  jurisdiction over Dongwon, a Korean company with no U.S. presence.  The FAC identifies no

19  direct contacts of any kind between Dongwon and the State of California.  Instead, the FAC seeks

20  to impute to Dongwon the California contacts of an entirely distinct entity, StarKist, by merely

21  reciting that StarKist is Dongwon's "alter ego or agent."  (FAC at ¶ 107.)  Plaintiffs are wrong.

22  They come nowhere close to pleading sufficient facts to demonstrate the existence of an alter ego

23  or agency relationship.  Indeed, Ninth Circuit law provides that the FAC's sole supporting factual

24  allegations—i.e. that StarKist is Dongwon's subsidiary and the companies have shared certain

25  personnel—are insufficient as a matter of law to impute contacts for jurisdictional purposes.

26  Moreover, the undisputed facts demonstrate that no alter ego or agency relationship exists.

27  StarKist is a completely separate entity from Dongwon.  Accordingly, the Court has neither

28  general personal jurisdiction over Dongwon nor specific personal jurisdiction over Dongwon with

1    respect to Plaintiffs' claims.

2          Plaintiffs' allegation that Dongwon has forever waived personal jurisdiction objections in

3    U.S. courts by participating in entirely unrelated federal lawsuits in the past is also meritless.

4    Courts have repeatedly held that a foreign defendant's participation in unrelated lawsuits in the

5    U.S. is irrelevant to a jurisdictional analysis.

6          **1.      Legal Standard On A Motion To Dismiss For Lack of Jurisdiction**

7          Plaintiffs bear the burden of establishing that jurisdiction is proper by making a prima facie

8    showing of jurisdictional facts.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

9    Plaintiffs "may not simply rest on the bare allegations of the complaint."  *Id.*  Rather, "[a] plaintiff

10   makes a prima facie showing by producing admissible evidence which if believed, would be

11   sufficient to establish the existence of personal jurisdiction."  *GEC US 1 LLC v. Frontier*

12   *Renewables, LLC*, Case No.: 16-cv-1276 YGR, 2016 U.S. Dist. LEXIS 120931, at *19 (N.D. Cal.

13   Sept. 7, 2016).  Plaintiffs have failed to satisfy this standard.

14         **2.      Plaintiffs Have Not Established A Prima Facie**
             **Case That StarKist Is Dongwon's Alter Ego**

15
16         In order to establish that StarKist is Dongwon's "alter ego" such that StarKist's contacts

17   with California may be imputed to Dongwon, Plaintiffs must establish two elements.  They "must

     make out a prima facie case '(1) that there is such unity of interest and ownership that the separate
18
     personalities of the two entities no longer exist and (2) that failure to disregard their separate
19
     identities would result in fraud or injustice.'  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir.
20
     2015).  Plaintiffs have established neither element.  Their conclusory allegation that StarKist is
21
     Dongwon's alter ego is meritless.
22
           **a.      Plaintiffs Have Not Alleged A Unity Of**
23            **Interest Between Dongwon And StarKist**

24         The "unity of interest" prong of the alter ego test requires Plaintiffs to establish that

25   "[Dongwon] controls [StarKist] to such a degree as to render the latter the mere instrumentality of

26   the former."  *Ranza*, 793 F.3d at 1073.  A parent's involvement in "macromanagement issues,"

27   such as approving major decisions, appointing directors, controlling the subsidiary's budget and

28   approving large purchases, does not satisfy this element.  *Id.* at 1074-1075.  Rather, a unity of

interest can only be found where a parent exercises "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation." *Id.*; *Indep. Elec. Supply, Inc. v. Solar Installs, Inc.*, Case No.: 18-cv-01435-KAW, 2018 U.S. Dist. LEXIS 113792, at *21 (N.D. Cal. July 9, 2018). Courts generally consider nine factors in assessing whether the unity of interest prong of an alter ego relationship is satisfied:

> (1) the commingling of funds and other assets of the entities, (2) the holding out by one entity that it is liable for the debts of the other, (3) identical equitable ownership of the entities, (4) the use of the same offices and employees, (5) use of one as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers.

*Williams v. Progressive Cty. Mut. Ins. Co.*, Case No.: 17-cv-2282-AJB-BGS, 2019 U.S. Dist. LEXIS 54600, at *5-*6 (S.D. Cal. Mar. 29, 2018).

The Ninth Circuit's decision in *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015), is dispositive of Plaintiffs' assertion that StarKist is Dongwon's alter ego. The only facts Plaintiffs allege in support of their theory are that (i) Dongwon owns StarKist (FAC at ¶ 97), (ii) two employees have held positions at both companies (FAC at ¶¶ 102-103), and (iii) a third employee has held positions at StarKist and other affiliated entities. (FAC at ¶ 104.) The court in *Ranza*, however, expressly held that these allegations are insufficient as a matter of law to establish the "unity of interest" prong of the alter ego test: "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073. Thus, Plaintiffs have failed to meet their burden of establishing that StarKist is Dongwon's alter ego.

In *Ranza*, the Court found that Nike European Operations Netherlands, B.V. ("NEON") was not an alter ego of its parent Nike Inc. ("Nike"), notwithstanding that Nike exercised far more control over NEON than Dongwon exercises over StarKist. In *Ranza*, the plaintiff argued that the following facts supported a finding that NEON was Nike's alter ego: (i) one director served on both company's boards simultaneously; (ii) "some employees and management personnel moved between the entities;" (iii) "Nike is heavily involved in NEON's operations;" (iv) Nike "exercises control over NEON's overall budget and has approval authority for large purchases;" (v) Nike

8

"establishes general human resource policies for both entities and is involved in some hiring

decisions;" (vi) Nike "operates information tracking systems all of its subsidiaries utilize;" (vii)

Nike "ensures the Nike brand is marketed consistently throughout the world"; and (viii) Nike

"requires some Neon employees to report to Nike supervisors on a 'dotted-line' basis." *Id*. at

1074.  The Ninth Circuit held that these facts were insufficient to negate the entities' separate

personalities because they did not show "that Nike directs NEON's routine day-to-day operations,

and nothing suggests the entities failed to observe their separate corporate formalities." *Id*. at

1075.

        The court's decision in *Progressive County* is also instructive.  There, the court found no

unity of interest between The Progressive Corporation ("TPC") and its California subsidiaries,

despite allegations that the subsidiaries (i) had "no employees, office space, supplies, or equipment

and does not engage in any activity or operations," (ii) had the same phone number and address as

TPC, (ii) shared officers and directors with TPC, and (iii) were included in TPC's SEC filings and

disclosures. *Williams v. Progressive County Mut. Ins. Co.*, Case No.: 17-cv-2282-AJB-BGS, 2019

U.S. Dist. LEXIS 54600, at *6 (S.D. Cal. Mar. 29, 2019).  The court held that these allegations

were insufficient to establish a unity of interest:

> Plaintiff fails to show that Defendants have comingled funds, that there is
> identical equitable ownership of the entities, that the subsidiaries are
> inadequately capitalized, that they have disregarded corporate formalities, that
> there is a segregation of records, and that the directors and officers are
> identical—Plaintiff only alleges that some are overlapping.

*Id*. at *9.  The court therefore held that "Plaintiff did not make a prima facie showing that the

Court can attribute Progressive's California subsidiaries' contacts with California to TPC or the

other Progressive Defendants." *Id*. at *9-*10;

        Indeed, countless courts have found no unity of interest where the plaintiffs alleged far

more control by the parent over its subsidiary than exists here. *See, e.g., GEC US 1 LLC v.

Frontier Renewables, LLC*, Case No.: 16-cv-1276 YGR, 2016 U.S. Dist. LEXIS 120931, at *44

(N.D. Cal. Sept. 7, 2016); *Indep. Elec. Supply, Inc. v. Solar Installs, Inc.*, Case No.: 18-cv-01435-

KAQ, 2018 U.S. Dist. LEXIS 113792 (N.D. Cal. July 9, 2018); *Sivilli v. Wright Med. Tech., Inc.*,

Case No.: 18-cv-2162-AJB-JLB, 2019 U.S. Dist. LEXIS 105416, at *14-*15 (S.D. Cal. June 24,

9

1   2019); *Adobe Sys. v. NA Tech Direct, Inc.*, Case No.: 17-cv-05226-YGR, 2018 U.S. Dist. LEXIS

2   112162, at \*12-\*13 (N.D. Cal. July 5, 2018).

3          As discussed above, the only facts Plaintiffs assert concerning the relationship between

4   Dongwon and StarKist is that they had a common board member and a couple of employees have

5   worked for both companies.  These allegations are insufficient as a matter of law to establish a

6   unity of interest.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  Plaintiffs' allegation

7   that, at some point, Dongwon's website stated that StarKist "has been controlled by Dongwon

8   Group since 2008," fares no better.  (FAC at ¶ 107.)  The undisputed facts demonstrate that

9   Dongwon does not control the day-to-day operations of StarKist.  *Ranza*, 793 F.3d at 1074-75;

10  *Delacruz v. Serv. Corp. Int'l*, Case No.: 1:18-cv-00154-LJO-EPG, 2018 U.S. Dist. LEXIS 84172,

11  at \*17 (E.D. Cal. May 17, 2018) (explaining that "general oversight over a subsidiary's operations

12  does not rise to the level of pervasive and direct control required for the assertion of personal

13  jurisdiction").  Furthermore, courts have repeatedly held that "[g]eneric language on [a

14  defendant's] website and in its press releases simply do not rise to the day-to-day control required

15  to impute the subsidiary's contacts to the parent."  *Moody v. Charming Shoppes of Del., Inc.*, No.

16  C 07-06073 MHP, 2008 U.S. Dist. LEXIS 120585, at \*19 (N.D. Cal. May 16, 2008); *Sivilli*, 2019

17  U.S. Dist. LEXIS 105416 at \*12.  Indeed, in *Payoda, Inc. v. Photon Infotech, Inc.*, Case No.: 14-

18  cv-04103-BLF, 2015 U.S. Dist. LEXIS 100560, at \*6 (N.D. Cal. July 30, 2015), the court held

19  that statements on the defendants' websites holding themselves out as one company "carr[y] no

20  weight in establishing whether a parent and subsidiary are in fact alter ego."

21          Here, virtually every factor courts consider in assessing unity of interest demonstrates that

22  StarKist is not Dongwon's alter ego.  (Choi Decl. at ¶¶ 6-14.)  Dongwon and StarKist do not

23  comingle funds.  Dongwon does not hold itself out as responsible for StarKist's debts.  (Choi

24  Decl. at ¶¶ 10-11.)  The companies do not share offices.  (Choi Decl. at ¶ 11.)  StarKist is not "a

25  mere shell or conduit" for Dongwon.  StarKist is not inadequately capitalized.  (Choi Decl. at ¶ 9.)

26  The entities maintain separate corporate records.  (Choi Decl. at ¶ 11.)  And the directors and

27  officers are not identical.  Plaintiffs therefore have come nowhere close to substantiating their

28  conclusory, and false, allegation that Dongwon "controlled all aspects of StarKist's canned tuna

10

business." *Yagman v. Kelly*, Case No.: 17-6022-MWF (PJWx), 2018 U.S. Dist. LEXIS 203393, at *21 (C.D. Cal. Mar. 20, 2018) (holding that "bare allegations, devoid of any factual enhancement elsewhere in the First Amended Complaint, do not support alter-ego jurisdiction.")  Plaintiffs' attempt to attribute StarKist's contacts with California to Dongwon therefore fails as a matter of law.

### b.   Plaintiffs Have Not Alleged That Recognizing Dongwon And StarKist As Separate Entities Will Result In Fraud Or Injustice

Plaintiffs have failed to establish that StarKist is Dongwon's alter ego for the independent reason that Plaintiffs have not even alleged, much less demonstrated, that fraud or injustice would result if the court fails to disregard the entities' separateness.  To establish this element, a plaintiff must plead facts sufficient to demonstrate that conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.  *Indep. Elec. Supply, Inc. v. Solar Installs, Inc.*, Case No.: 18-cv-01435-KAW, 2018 U.S. Dist. LEXIS 113792, at *24 (N.D. Cal. July 9, 2018).  Indeed, "the classic alter ego argument involves a parent undercapitalizing its subsidiary such that the funds are horded at the parent level and the subsidiary is unable to meet its obligations."  *GEC US 1 LLC v. Frontier Renewables, LLC*, Case No.: 16-cv-1276 YGR, 2016 U.S. Dist. LEXIS 120931, at *46 (N.D. Cal. Sept. 7, 2016).  The FAC is completely devoid of any allegations at all that address this element of the alter ego test.  Plaintiffs' alter ego theory must be rejected for this reason alone.[3]

/ / /

/ / /

/ / /

---

[3]   Jurisdiction also cannot be obtained over Dongwon under Rule 4(k)(2) of the Federal Rules of Civil Procedure.  Dongwon maintains no address in the U.S., it owns no property in the U.S. and it has no presence in the U.S. (Choi Decl. at ¶¶ 3-5); *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 902 n. 2 (9th Cir. 2018). Rule 4(k)(2) also does not apply because Plaintiffs have no federal cause of action.  As discussed below, Plaintiffs' RICO claim is not viable because, among other things, it is based on alleged violations of the DPCIA, a federal statute that does not create a private right of action.

### 3.    StarKist Is Not Dongwon's Agent

Plaintiffs also baselessly assert that StarKist's jurisdictional contacts may be imputed to Dongwon because StarKist is Dongwon's "agent."  (FAC at ¶ 107.)  In 2016, the Supreme Court struck-down the Ninth Circuit's test for imputing contacts for jurisdictional purposes under an agency theory.  *Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014).  As a result, jurisdictional contacts cannot be imputed at all under an agency theory.  The Supreme Court also explained that to the extent an agency relationship is jurisdictionally relevant, it could only be relevant to specific jurisdiction, not general jurisdiction.  *Id*. at 135 n. 13.  That is, if an agency relationship ever matters for jurisdictional purposes, the subsidiary must have been acting as the parent's agent with respect to the particular conduct that gave rise to the claims.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Here, regardless of whether an agency theory is even a viable basis for obtaining jurisdiction, Plaintiffs have not, and cannot, establish that StarKist was Dongwon's agent with respect to the conduct at issue because StarKist markets and sells its own tuna products in the U.S.  (Choi Decl. at ¶¶ 10, 12.)

Prior to the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), courts in the Ninth Circuit imputed a domestic subsidiary's contacts to its foreign parent under an "agency" theory that considered whether "the subsidiary performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services."  *Id*. at 134.  Courts in other circuits, by contrast, only imputed contacts to a foreign parent where an alter ego relationship existed.  *Id*.  In *Daimler*, the Supreme Court struck down the Ninth Circuit's agency test because it "appear[ed] to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction'" the Supreme Court had previously rejected.  *Daimler AG*, 571 U.S. at 136 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).  The court further held that the Ninth Circuit's separate inquiry under its agency test into whether the parent has the right to "substantially control" the subsidiary's activities "hardly curtails the overbreadth of the Ninth Circuit's agency holding."  *Id*. at 136, n. 15.  While *Daimler* only addressed the Ninth

1   Circuit's agency test in the context of general jurisdiction, the Ninth Circuit has since held that the

2   Supreme Court's rejection of the standard "applies with equal force regardless of whether the

3   standard is used to establish general or specific jurisdiction." *Williams v. Yamaha Motor Co.*, 851

4   F.3d 1015, 1024 (9th Cir. 2017).

5          Since *Daimler*, the Ninth Circuit has not decided whether any agency test even still exists

6   that could allow for the imputation of jurisdictional contacts from a subsidiary to a parent. *Id.* at

7   1024-1025 (refusing to decide whether any agency standard could allow for imputation of

8   jurisdictional contacts).  "District Courts in the Ninth Circuit have expressed reservations that

9   establishing agency for jurisdictional purposes is still possible … ." *Sivilli v. Wright Med. Tech.,*

10  *Inc.*, Case No.: 18-cv-2162-AJB-JLB, 2019 U.S. Dist. LEXIS 105416, at *14 (S.D. Cal. June 24,

11  2019).  Regardless of whether any agency theory can provide a basis for imputing contacts,

12  however, post-*Daimler*, courts have consistently rejected attempts by plaintiffs to invoke the

13  doctrine where the alter ego test is not satisfied.  *Id.* at *14-*15.  Plaintiffs here have likewise

14  failed to establish that StarKist is Dongwon's agent for jurisdictional purposes under any standard

15  that could survive *Daimler*.

16         The undisputed facts demonstrate that Dongwon does not substantially control any of

17  StarKist's activities, much less the specific conduct out of which Plaintiffs' claims arise, the

18  marketing and labeling of StarKist tuna.  (Choi Decl. at ¶¶ 10, 12.)  StarKist has its own directors

19  and officers that are responsible for the day-to-day operations of the company.  (Choi Decl. at ¶

20  10.)  StarKist hires and pays its own employees, who are responsible for, among other things,

21  marketing StarKist's tuna products.  (Choi Decl. at ¶¶ 10, 12.)  Indeed, StarKist maintains its own

22  pricing and marketing practices independent of Dongwon.  (Choi Decl. at ¶ 12.)  Thus, regardless

23  of whether any agency theory can even provide a legal basis for imputing contacts for purposes of

24  establishing specific jurisdiction, the undisputed facts demonstrate that StarKist was not acting as

25  Dongwon's agent with respect to the conduct that gives rise to Plaintiffs' claims.  Plaintiffs

26  therefore have not, and cannot, establish that StarKist was acting as Dongwon's agent in a manner

27  that could subject it to personal jurisdiction with respect to Plaintiffs' claims.

28  / / /

1

### 4.   Dongwon Has Not Waived Objections To Personal Jurisdiction

2   Plaintiffs also erroneously contend that Dongwon is somehow precluded from asserting

3   jurisdictional objections here because it has been a party to completely unrelated litigation in U.S.

4   courts.  (FAC at ¶ 79.)  Plaintiffs are wrong.  Courts have repeatedly held that a foreign party's

5   participation in unrelated litigation has no bearing on a jurisdictional analysis.

6   In *Ibrani v. Mabetex Project Eng'g*, Case No.: 00-cv-00107, 2002 U.S. Dist. LEXIS 10016

7   (N.D. Cal. May 31, 2002), the court rejected the plaintiff's contention that the defendant waived

8   jurisdictional objections by suing the plaintiff four years earlier, notwithstanding that the

9   plaintiff's claims were related to the prior litigation and was filed in the same court.  The court

10   stated that "Plaintiff cites no authority for the proposition that by filing suit against him in a

11   previous case, [the defendant] is foreclosed from raising a personal jurisdiction defense in a

12   different case filed by plaintiff more than four years later."  *Id*. at *20.  The court further held that

13   there was "simply no basis for treating this separate lawsuit as a counterclaim to the earlier

14   lawsuit."  *Id*. at *21.

15   In *RWS Info. v. Arbiter Group, PCL*, No. 96-1146, 1997 U.S. App. LEXIS 3917 (4th Cir.

16   1997), the court likewise held that the defendant's prior commencement of a lawsuit in the same

17   court against the plaintiff concerning the same subject matter did not waive objections to personal

18   jurisdictional in the separate action.  The court stated that "[n]o authority supports [the plaintiff's]

19   assertion that a court can indefinitely retain personal jurisdiction over a corporation because it

20   once commenced a related action in that court."  *Id*. at *4; *see also Cottle v. W. Skyways, Inc.*,

21   Case No.: 17-cv-00049-DAD-BAM, 2017 U.S. Dist. LEXIS 59203, at *20 (E.D. Cal. April 18,

22   2017) ("[D]efendant's prior involvement in other litigation before federal courts in California is

23   insufficient to establish personal jurisdiction here.").

24   Here, Plaintiffs identify three U.S. litigations in which Dongwon was allegedly a party.

25   None has any relation whatsoever to Plaintiffs' claims.  In one of the three cases, U.*S. ex rel.*

26   *Moore & Co. v. Majestic Blue Fisheries LLC*, No. 12-cv-01562 (D. Del.), Dongwon was

27   dismissed for lack of service.  The other two cases were filed more than 25 years ago—15 years

28   before Dongwon even acquired an ownership interest in StarKist.  These cases have nothing to do

14

NOTICE OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:19-cv-02561-WHO

1   with the allegations in this lawsuit.   Plaintiffs' contention that those unrelated quarter-century old

2   cases somehow render Dongwon subject to jurisdiction in any U.S. court, on any claim, in

3   perpetuity, is meritless.   Dongwon has not waived objections to personal jurisdiction.

4   **B.**     **PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST DONGWON**

5           As set forth above, Dongwon has no contacts with California, and StarKist is neither

6   Dongwon's alter ego nor its agent.   Dongwon is therefore not subject to personal jurisdiction in

7   California and the Court therefore does not need to address the merits of Plaintiffs' allegations

8   against Dongwon.   Even if this Court did have personal jurisdiction over Dongwon, however,

9   Plaintiffs have not sufficiently pled a viable claim for relief, and their claims would nonetheless

10  fail.

11          The Ninth Circuit has established two principles that apply in assessing the sufficiency of a

12  pleading under Rule 8(a)(2)'s general pleading standard.   First, allegations that simply recite the

13  elements of a cause of action are not entitled to a presumption of truth.   *Eclectic Props. East, LLC*

14  *v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).   Second, "the factual allegations

15  that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to

16  require the opposing party to be subjected to the expense of discovery and continued litigation."

17  *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).   Moreover, "plaintiffs cannot

18  offer allegations that are merely consistent with their favored explanation but are also consistent

19  with the alternative explanation."   *Eclectic Props. East, LLC*, 751 F.3d at 996. Rather,

20  "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative

21  explanation is true, in order to render plaintiffs' allegations plausible."   *Id.* at 996-97 (internal

22  quotations omitted).

23          Additionally, claims grounded in fraud must satisfy Rule 9(b)'s heightened pleading

24  standard.   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003).   Rule 9(b)

25  applies to averments of fraud even where fraud is not an essential element of a claim.   *Id.* at 1103-

26  04.   Here, all of Plaintiffs' claims are based on their conclusory assertion that Defendant defrauded

27  consumers into purchasing StarKist tuna products that were allegedly falsely labeled as dolphin-

28  safe.   Thus, they are all subject to, and fail to meet, Rule 9(b)'s heightened pleading standard.

In order to satisfy the heightened pleading standard, averments of fraud "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* at 1106 (internal quotations omitted). Plaintiffs must also "set forth what is false or misleading about a statement, and why it is false." *Id.* (internal quotations omitted). Furthermore, allegations of fraud based on information and belief must, at a minimum, include "the source of the information and the reasons for the belief." *United States v. Cathcart*, No. C 07-4762 PJH, 2008 U.S. Dist. LEXIS 70100, at *7 (N.D. Cal. Sept. 15, 2008). Rule 9(b) serves "to deter the filing of [complaints] as a pretext for the discovery of unknown wrongs," and "to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).The FAC falls well short of satisfying either Rule 8(a) or Rule 9(b) as against Dongwon.

     **1.**     **Plaintiffs Have Not Pled That Dongwon Has**
                   **Disseminated Any Alleged False Statements**

Even if the Court had general personal jurisdiction over Dongwon, a Korean company with no California presence, Plaintiffs' claims against Dongwon should nonetheless be dismissed because the FAC does not identify any alleged culpable conduct by Dongwon. Every count of the FAC is based on Plaintiffs' erroneous contention that StarKist tuna is falsely labeled as dolphin-safe. (FAC at ¶¶ 190-194 (Count I), ¶ 201, ¶ 207 (Count II), ¶ 214 (Count III), ¶ 224 (Count IV), ¶ 232 (Count V), ¶ 239 (Count VI), ¶ 249 (Count VII), ¶ 254 (Count VIII), ¶ 263 (Count IX), ¶ 271 (Count X), ¶ 280 (Count XI)). The FAC, however, does not identify any role Dongwon allegedly played in connection with the labeling or marketing of StarKist tuna. Nor does it identify any statement by Dongwon that was allegedly false or misleading. Instead, the FAC merely groups StarKist and Dongwon together and alleges that the "Defendants" made false or misleading statements. Such allegations are insufficient to state a claim against Dongwon.

It is well-settled that in order to plead claims of fraud against multiple defendants, a pleading must specify each defendants' role in the alleged fraud. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Indeed, Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than

1   one defendant … and inform each defendant separately of the allegations surrounding his alleged

2   participation in the fraud." *Id.*; *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 998

3   (9th Cir. 2011); *Fortaleza v. PNC Fin. Servs. Group, Inc.*, 642 F. Supp. 2d 1012, 1024 (N.D. Cal.

4   2009).  Plaintiffs must "clearly show how each and every defendant is alleged to have violated

5   [their] legal rights."  *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).  Shotgun allegations

6   that "everyone did everything" are insufficient.  *Id.*

7          In *Swarts*, for example, the court dismissed claims that Deutsche Bank and Presidio were

8   involved in an alleged fraudulent tax shelter scheme because the complaint failed to specify their

9   roles in the alleged fraudulent scheme.  The court explained:

10              The complaint is shot through with general allegations that the "defendants"
               engaged in fraudulent conduct but attributes specific misconduct only to [other
11              defendants].   Conclusory allegations that Presidio and DB "knew that [other
               defendants] were making false statements to clients, including Swartz, and thus
12              were acting in concert with [other defendants]" and "were acting as agents of
               [other defendants] and were active participants in the conspiracy" without any
13              stated factual basis are insufficient as a matter of law.

14

15   *Swarts*, 476 F.3d at 765.

16          Here, Plaintiffs have not identified a single statement by Dongwon that they allege was

17   false.  Rather, Plaintiffs attribute each statement in the FAC that they allege was false to StarKist.

18   (FAC at ¶¶ 15-19.)  The FAC also fails to identify any role Dongwon allegedly played in

19   disseminating any alleged false statements by StarKist.  Instead, the FAC baselessly seeks to hold

20   Dongwon liable for StarKist's alleged statements merely by lumping StarKist and Dongwon

21   together as "Defendants," without identifying Dongwon's role in the alleged fraud.  Plaintiffs

22   make conclusory allegations that StarKist is Dongwon's alter ego or agent, but for the reasons

23   stated above, they have failed to plead sufficient facts to establish that any such alter ego or agency

24   relationship exists.  Plaintiffs have failed to allege how Dongwon allegedly violated their rights.

25   Counts I through XI of the FAC therefore fail to state claims against Dongwon.

26   / / /

27   / / /

28   / / /

NOTICE OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:19-cv-02561-WHO

2.      **Plaintiffs Have Not Stated A Predicate Claim For Relief
Against StarKist For Which Dongwon Could Be Liable**

Even if Plaintiffs could properly allege that StarKist is Dongwon's alter ego, which it
cannot, the FAC must nonetheless be dismissed because Plaintiffs have not alleged that StarKist
tuna was falsely labeled as dolphin-safe, and thus, there is no predicate claim against StarKist for
which Dongwon could be liable under an "alter ego" theory.[4]  As stated above, each and every one
of Plaintiffs' claims seek to recover based on their theory that StarKist tuna is not dolphin-safe
under federal law because StarKist sources tuna from fishing vessels that engage in longline and
purse seine net fishing methods and does not publicize the methods by which each of its tuna is
caught.  These allegations, however, even if accepted as true for purposes of this motion, do not
identify a violation of federal dolphin-safe labeling standards.  All of Plaintiffs' claims must be
dismissed for this reason alone.  *Hall v. SeaWorld Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015
U.S. Dist. LEXIS 174294, at \*35 (S.D. Cal. 2015) (dismissing complaint containing seventy pages
of allegations regarding the defendants conduct and "simply listing statements and saying they are
false"); *Fraker v. Bayer Corp.*, No. CV F 08-1564 AWI GSA, 2009 U.S. Dist. LEXIS 125633, at
\*22 (E.D. Cal. Oct. 2, 2009).

Plaintiffs assert that reasonable consumers interpret the term "dolphin-safe" consistent with
governing federal labeling standards.  (FAC at ¶ 71.)  Plaintiffs however, have not alleged that
StarKist tuna failed to satisfy those standards.  Plaintiffs merely assert that StarKist sources tuna
from vessels that engage in longline and purse seine net fishing methods.  Under the federal
standard, however, tuna caught using longline and purse seine methods qualifies as dolphin-safe as
long as (i) "no purse seine net or other fishing gear was intentionally deployed on or used to
encircle dolphins during the fishing trip in which the tuna were caught;" (ii) "no dolphins were
killed or seriously injured in the sets for other gear deployments in which the tuna were caught;"
(iii) it is stored physically separate from tuna that is non-dolphin-safe; and (iv) it complies with the

---

[4]   Dongwon incorporates by reference the arguments articulated the StarKist Brief, including its
discussion of federal dolphin-safe labeling standards.  (Dkt. 44.)

federal verification and tracking requirements.  50 C.F.R. § 216.91(a)(3)(iii); 50 C.F.R. § 216.91(a)(4); 50 C.F.R. 216.93.  Plaintiffs have not identified a single instance in which a dolphin was killed or seriously injured in any set or gear deployment that captured tuna StarKist subsequently labeled as dolphin-safe.  Nor do they identify any instance in which purse seine nets or other fishing gear was intentionally deployed on or used to encircle dolphins during a fishing trip in which StarKist tuna was caught.  Moreover, they do not make any allegations at all concerning the circumstances in which the particular tuna they claim to have purchased was captured.[5]  Plaintiffs therefore have utterly failed to plead facts to support an inference that they purchased non-dolphin-safe tuna.  Thus, even if StarKist were Dongwon's alter ego, which it is not, Plaintiffs have nonetheless failed to state a claim.

Plaintiffs also fail to plead any facts to support their allegation that StarKist did not adequately track the source of its tuna or store dolphin-safe tuna separate from tuna that is not dolphin-safe.  Indeed, Plaintiffs merely allege that StarKist does not make tuna tracking information available to the public through a portal.  (FAC at ¶ 57.)  Federal law, however, expressly provides that tuna tracking information is proprietary and confidential.  50 C.F.R. § 216.93(h).  There is no requirement that it be made publicly available.  Plaintiffs' allegation therefore does not identify a violation of any federal standard.  Plaintiffs' allegation is also provably false, as NOAA regularly audits StarKist's tuna tracking information, including in August of last year, and determined that StarKist is compliant with federal requirements.  (Dkt. 44-4.)  Plaintiffs' conclusory and false allegations fail to state a claim against Dongwon; the FAC should be dismissed in its entirety.

### 3.  The DPCIA Preempts Plaintiffs' State Law Claims

Plaintiffs' ten state-law claims (Counts II through XI) should be dismissed for the independent reason that they are also preempted by federal law.  The DPCIA and its implementing

---

[5]   For the same reason, Plaintiffs have failed to established that they have suffered a concrete and particularized injury-in-fact and have therefore failed to demonstrate that they have standing to pursue this lawsuit.  *Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992).

1    regulations occupy the entire field of what it means for tuna to be dolphin-safe and leaves no room

2    for states to regulate the field.  Plaintiffs' state law challenges to the accuracy of dolphin-safe tuna

3    representations therefore fail to state a viable claim.

4            Implied preemption of state law "exists when federal law so thoroughly occupies a

5    legislative field as to make reasonable the inference that Congress left no room for the States to

6    supplement it." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007) (internal quotations

7    omitted).  Field preemption occurs "when Congress indicates in some manner an intent to occupy

8    a given field to the exclusion of state law." *Id*.  Furthermore, where, as here, legal issues bear

9    upon national and international maritime commerce "there is no beginning assumption that

10   concurrent regulation by the State is a valid exercise of its police powers." *United States v. Locke*,

11   529 U.S. 89, 108 (2000).

12           Here, the DPCIA and its implementing regulations provide a complete framework

13   governing the labeling of tuna as "dolphin" safe, including a comprehensive enforcement scheme

14   that does not include a private right of action.  The DPCIA specifies the circumstances under

15   which tuna products may be sold in the U.S. bearing a dolphin-safe label, or any label or mark that

16   refers to dolphins, porpoises, or marine mammals.  16 U.S.C. § 1385(d).  The WTO Appellate

17   Body cogently summarized the extent to which the DPCIA occupies the field of dolphin-safe tuna

18   labeling in its May 16, 2012 Report cited in the FAC (¶¶ 35-37):

19           [T]he measure sets out a single and legally mandated definition of a 'dolphin-
             safe' tuna product and disallows the use of other labels on tuna products that do
20           not satisfy this definition.  In doing so, the US measure prescribes in a broad and
             exhaustive manner the conditions that apply for making any assertion on a tuna
21           product as to its "dolphin-safety", regardless of the manner in which that
             statement is made.  As a consequence, the US measure covers the entire field of
22           what "dolphin-safe" means in relation to tuna products.

23   Appellate Body Report, United States – *Measures Concerning the Importation, Marketing and*

24   *Sale of Tuna and Tuna Products*, ¶ 193, 2012 WL 1777463, WTO Doc. WT/DS381/AB/R

25   (adopted May 16, 2012).

26           The DPCIA's enforcement mechanisms are also comprehensive and exclusive, and leave

27   no room for supplemental private state law remedies.  The DPCIA directs the Secretary to track

28   and verify compliance.  16 U.S.C. § 1385(e), (f).  The Secretary has enacted detailed regulations

1   that govern every aspect of dolphin-safe tuna fishing, from the catching of the tuna to its shipping,

2   storage, processing, importing and labeling.  50 C.F.R. §§ 216.90-216.95.  The DPCIA also

3   provides that the Secretary and the Secretary of the department in which the Coast Guard is

4   operating "shall enforce" the DPCIA.  16 U.S.C. § 1826g.  To avoid doubt as to whether the

5   DPCIA left room for supplemental state law enforcement, the DPCIA specifies the circumstances

6   under which states may participate in enforcing the Act.  In particular, the Secretary may, by

7   agreement, "utilize the personnel services, equipment (including aircraft and vessels), and facilities

8   of any other Federal agency, and of any State agency, in the performance of such duties."  16

9   U.S.C. § 1826g(a).  States are only permitted to enforce the DPCIA if authorized to do so by the

10  Secretary.  16 U.S.C. § 1826g(d).  This limitations on the states' authority to enforce the DPCIA

11  evidences Congress's intent for federal law to occupy the entire field of dolphin-safe tuna fishing

12  and labeling, to the exclusion of state law claims.

13          **4.**          **The DPCIA Precludes Plaintiffs' RICO Claim**

14          Plaintiffs' RICO claim is not viable for the independent reason that it is based entirely on

15  violations of a federal statute, the DPCIA, that does not create a private right of action.  Plaintiffs'

16  RICO claim, Count I of the FAC, alleges that Dongwon engaged in a racketeering enterprise that

17  used the mail and wires to (i) violate the DPCIA and (ii) conceal DPCIA violations from federal

18  regulators.  The DPCIA, however, does not confer a private right of action.  It contains a

19  comprehensive enforcement scheme that authorizes the Secretary of Commerce to penalize and

20  sanction violators through administrative proceedings.  The law is well-settled that RICO claims

21  are not cognizable where they are predicated on alleged violations of a federal statute that does not

22  confer a private right of action.  Plaintiffs' RICO claim seeks to improperly circumvent the

23  DPCIA's exclusive enforcement scheme and must therefore be dismissed.

24          Courts have consistently rejected attempts by private plaintiffs to assert RICO claims based

25  on alleged violations of federal statutes that do not confer private rights of action.  *Norman v.*

26  *Niagara Mohawk Power Corp.*, 873 F.2d 634 (2d Cir. 1989) (dismissing RICO claim based on

27  violations of Energy Reorganization Act regulations); *Petrochem Insulation, Inc. v. N. California*

28  *& N. Nevada Pipe Trades Counsel*, No. C-90-3628 EFL, 1991 U.S. Dist. LEXIS 6659 (N.D. Cal.

21

1   April 30, 1991) (dismissing RICO claim predicated on Hobbs Act violations); *In re Epogen &*

2   *Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290 (C.D. Cal. 2008)

3   ("what the FDCA does not create directly, RICO cannot create indirectly."); *Danielsen v.*

4   *Burnside-Ott Aviation Training Ctr.*, 941 F.2d 1220, 1228 (D.C. Cir. 1991) ("To call the violation

5   of the SCA 'a pattern of racketeering' does nothing to persuade this Court that Congress intended

6   the SCA to create a private cause of action.").

7          In *Woolsey v. J.P. Morgan Ventures Energy Corp.*, No. 15cv530-WQH-BGS, 2015 U.S.

8   Dist. LEXIS 145120 (S.D. Cal. 2015), for example, the court dismissed a purported class-action

9   RICO claim by a consumer based on alleged mail and wire fraud in connection with Federal Power

10  Act ("FPA") violations.  *Id.* at *3.  The court held that the claim constituted an impermissible

11  attempt to circumvent the Federal Energy Regulatory Commission's ("FERC") exclusive authority

12  to enforce the FPA because the claim was "wholly dependent" on alleged violations of federal law.

13  The court explained that "because FERC has exclusive authority to remedy violations of the FPA

14  and the FPA does not confer a private right of action, Defendants alleged violations of the FPA

15  cannot form the basis of a RICO claim."  *Woolsey*, 2015 U.S. Dist. LEXIS 145120, at *25.

16         Here, Plaintiffs' RICO claim is similarly "wholly dependent" upon alleged violations of the

17  DPCIA, which does not confer a private right of action.  In determining whether a federal statute

18  confers a private right of action, courts "look to see whether Congress designated a method of

19  enforcement other than through private lawsuits, because 'the express provision of one method of

20  enforcing a substantive rule suggests that Congress intended to preclude others."  *Northstar Fin.*

21  *Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1115 (9th Cir. 2010) (internal quotations omitted).

22  Here, the evidence demonstrates that Congress did not intend to create a private right of action

23  under the DPCIA.  Rather, it contains a comprehensive regulatory enforcement scheme that

24  authorizes the Secretary to impose steep civil penalties for violations and to revoke, suspend or

25  deny permits of violators.  These express enforcement provisions make clear Congress's intent not

26  to create a private right of action.  Plaintiffs' private RICO claim based entirely on DPCIA

27  violations therefore fails as a matter of law and must be dismissed.

28  / / /

1

### 5.   Plaintiffs Have Failed to Plead the Elements of RICO

2

"To maintain a civil RICO claim, a plaintiff must allege that the defendant engaged in "(1)

3

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally,

4

must establish that (5) the defendant caused injury to plaintiff's business or property." *Black v.*

5

*Corvel Enter. Comp.*, 756 Fed. Appx. 706, 708 (9th Cir. 2018) (internal quotations omitted).

6

"Plaintiffs must do more than mimic the statutory language to plead the existence of an

7

'enterprise'." *Gaines v. Home Loan Ctr., Inc.*, No. SA CV 08-667 AHS (RNBx), 2010 U.S. Dist.

8

LEXIS 153719, at *17 (C.D. Cal. May 24, 2010) (internal quotations omitted).

9

To satisfy the second element, Plaintiffs must describe "a group of persons associated

10

together for a common purpose of engaging in a course of conduct[] . . . [and] must provide both

11

evidence of an ongoing organization, formal or informal, and evidence that the various associates

12

function as a continuing unit." *Doan v. Singh*, 617 Fed. Appx. 684, 686 (9th Cir. 2015) (internal

13

quotations omitted); *Patton v. Forest Labs., LLC*, No. EDCV 17-922-MWF (DTBx), 2018 U.S.

14

Dist. LEXIS 225874, at *31 (C.D. Cal. May 10, 2018).  Courts have repeatedly dismissed

15

purported RICO claims that merely allege, as here, ordinary business activity was conducted

16

fraudulently.  *See e.g. Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046 (C.D. Cal. 2016); *United*

17

*Food & Commer. Worker Unions & Emplrs. Midwest Health Bens. Fund v. Walgreen Co.*, 719

18

F.3d 849, 855 (7th Cir. 2013).  In *Shaw*, for example, the court held that the plaintiff failed to

19

plead a RICO enterprise with a "common purpose" where the complaint merely alleged that the

20

defendants engaged in a "fraudulent enterprise to sell cars with defective parts at inflated values."

21

*Id*. at 1054-55.  The court held that the complaint "allege[d] no more than that Defendants'

22

primary business activity—the design, manufacture, and sale or lease of Toyota vehicles—was

23

conducted fraudulently," and therefore, "fail[ed] to demonstrate a common purpose," but rather,

24

"only demonstrate[d] that the parties are associated in a manner directly related to their own

25

primary business activities."  *Id*. at 1056-1057 (internal quotations omitted).  In *Shaw*, like here,

26

the complaint did not include "any specific facts that [would] move their allegations from the

27

realm of the possible to the plausible."  *Id*. at 1057.  This is especially true with respect to

28

Dongwon.

1    Plaintiffs' allegations of a so-called RICO enterprise merely identify a number of entities

2    StarKist allegedly engages in business with, including Dongwon, and allege in conclusory terms

3    that each of those entities "knew" StarKist would label its tuna as dolphin-safe.  Plaintiffs

4    allegations against certain alleged storage, canning, and processing co-conspirators, for example,

5    merely assert that these companies "stored, canned, and processed Defendants tuna products for

6    sale" and knew the products would be marketed as dolphin-safe.  (FAC at ¶ 151.)  Plaintiffs'

7    allegations against Dongwon are merely that its fishing vessels are used "to catch and procure tuna

8    for use in StarKist tuna products."  (FAC at ¶ 50.)  Such "bare assertions of a pattern of

9    racketeering activity do not establish an enterprise and they do not, therefore, satisfy Plaintiffs'

10    burden."  *Doan*, 617 Fed. Appx. at 686.

11    Plaintiffs also fail to provide evidence "that the various associates function as a continuing

12    unit."  *Id.* (internal quotations omitted).  The FAC alleges, upon information and belief only, that

13    "there was a common communication network by which co-conspirators shared information on a

14    regular basis."  (FAC at ¶ 161.)  Plaintiffs, however, fail to identify any "information" upon which

15    their so-called "belief" is based.  Nor do they identify (i) how the alleged co-conspirators

16    communicated, (ii) anyone that was involved in any such communications, or (iii) what

17    information they allegedly shared.  Indeed, stripped of its conclusory "information and belief"

18    allegations that merely parrot the elements of a claim, the allegations in the FAC "suggest ordinary

19    business activity on the part of the relevant actors."  *Shaw*, 220 F. Supp. 3d at 1056.  Plaintiffs'

20    conclusory "information and belief" allegation is grossly insufficient to require Dongwon to

21    subject itself to intrusive, costly and burdensome discovery.

22    The plausibility of Plaintiffs' assertion that all of the eight or more allege co-conspirators

23    somehow "knew" that any tuna that was supported by a DPCIA compliant captain statement was

24    not dolphin-safe is also undermined by Plaintiffs' own allegations.  According to Plaintiffs, it is

25    "virtually impossible to verify these certifications."  (FAC at ¶ 59.)  If these certifications are in

26    fact "virtually impossible to verify" as Plaintiffs allege, how could eight or more alleged co-

27    conspirators have possibly known that any certifications were false?  And what incentive would

28    any captain have to disclose to any other alleged co-conspirator, that it intentionally falsified a

1   captain's statement?  Plaintiffs' conclusory allegations are contradictory and inconceivable.  They

2   come nowhere close to attaining plausibility.

3          Plaintiffs' conclusory allegations of a RICO enterprise are not entitled to a presumption of

4   truth.  Plaintiffs' remaining allegations allege nothing more than ordinary business activity and are

5   insufficient to support an inference that a RICO enterprise existed.[6]

6                                    **IV.    CONCLUSION**

7          For the foregoing reasons, the Court should dismiss the FAC in its entirety with prejudice

8   for lack of personal jurisdiction pursuant to FRCP 12(b)(2) as to Dongwon, or in the alternative,

9   because the Plaintiffs lack standing to assert their claims and have failed to state a cause of action,

10  and grant such other further relief as the Court deems just and proper.

11  Dated: August 16, 2019                **KELLEY DRYE & WARREN LLP**
                                          Michael C. Lynch (Admitted *Pro Hac Vice*)
12                                        Joseph A. Boyle (Admitted *Pro Hac Vice*)
                                          Michael R. Dover (Admitted *Pro Hac Vice*)
13                                        Levi M. Downing (Admitted *Pro Hac Vice*)
                                          Tahir L. Boykins
14

15                                        By   */s/ Michael C. Lynch*
16                                              Michael C. Lynch

17                                        *Attorneys for Defendant Dongwon*
                                          *Industries Co. Ltd.*
18

19

20

21

22

23

24

25   _____

26   [6]   For the reasons articulated in the StarKist Brief (Dkt. 44 at p. 22), which Dongwon hereby
           incorporates by reference, Plaintiffs' have likewise failed to plead that they suffered damage to
27         property "by reason of" any alleged RICO violation.

28