PAGES 1 – 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK

WARREN GARDNER, LORI MYERS,           )
ANGELA COSGROVE, AUTUMN HESSONG,      )
ROBERT MCQUADE, COLLEEN MCQUADE,      )
HAMES BORRUSO, FIDEL JAMELO,          )
JOCELYN JAMELO, ANTHONY LUCIANO,      )
LORI LUCIANO, ROBERT NUGENT,          )
AVRAHAM ISAC ZELIG, KEN               )
PETROVCIK, MEGAN KIIHNE, AND          )
KATHLEEN MILLER, ON BEHALF OF         )
THEMSELVES AND ALL OTHERS             )
SIMILARLY SITUATED,                   )
                                      )
          PLAINTIFFS,                 )
                                      )
     VS.                              )  CASE NO. 19-CV-02561 WHO
                                      )
STARKIST CO., A DELAWARE              )
CORPORATION, AND DONGWON              )
INDUSTRIES CO. LTD, A SOUTH           )
KOREA CORPORATION,                    )
                                      )  SAN FRANCISCO, CALIFORNIA
          DEFENDANT.                  )  WEDNESDAY
                                      )  NOVEMBER 6, 2019
_____)


**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  2:42 P.M. – 3:14 P.M.**


(APPEARANCES ON FOLLOWING PAGE)


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
*RETIRED OFFICIAL COURT REPORTER, USDC*

**APPEARANCES**:

FOR PLAINTIFFS              GOLDMAN SCARLATO & PENNY, P.C.
                           161 WASHINGTON STREET, SUITE 1025
                           CONSHOHOCKEN, PA 19428
                      BY:  **BRIAN DOUGLAS PENNY, ESQUIRE**


                           ROBBINS GELLER RUDMAN & DOWD LLP
                           120 EAST PALMETTO PARK ROAD, SUITE 500
                           BOCA RATON, FL 33432
                      BY:  **STUART DAVIDSON, ESQUIRE**


                           BONNETT FAIRBOURN FRIEDMAN & BALINT,
                           2901 N. CENTRAL AVENUE, SUITE 1000
                           PHOENIX, AZ 85012
                      BY:  **ELAINE RYAN, ESQUIRE**


FOR DEFENDANT              **KELLEY DRYE & WARREN LLP**
STARKIST                   101 PARK AVENUE
                           NEW YORK, NY 10178
                      BY:  **MICHAEL CHARLES LYNCH, JR., ESQUIRE**


                           KELLEY DRYE AND WARREN LLP
                           ONE JEFFERSON ROAD
                           PARSIPPANY, NJ 07054
                      BY:  **JOSEPH A. BOYLE, ESQUIRE**


FOR DEFENDANT              PILLSBURY WINTHROP SHAW PITTMAN LLP
DONGWON INDUSTRIES         FOUR EMBARCADERO CENTER, 22ND FLOOR
                           SAN FRANCISCO, CALIFORNIA 94111
                      BY:  **CHRISTOPHER KAO, ESQUIRE**
                           **REBECCA FRIEDEMANN, ESQUIRE**

```
 1   WEDNESDAY, NOVEMBER 6, 2019                    2:42 P.M.

 2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO

 3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

 4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

 5                        ---O0O---

 6              ELECTRONICALLY RECORDED PROCEEDINGS

 7         THE CLERK:  CALLING MATTER 19-2561, GARDNER, ET AL.

 8   VERSUS STARKIST COMPANY.

 9         COUNSEL, PLEASE COME FORWARD AND STATE YOUR

10   APPEARANCE.

11         MR. PENNY:  GOOD AFTERNOON, YOUR HONOR.  BRIAN PENNY

12   FROM GOLDMAN, SCARLATO & PENNY ON BEHALF OF THE PLAINTIFFS.

13         THE COURT:  GOOD AFTERNOON.

14         MR. DAVIDSON:  GOOD AFTERNOON, YOUR HONOR.  STUART

15   DAVIDSON FROM ROBBINS, GELLER, RUDMAN & DOWD ON BEHALF OF THE

16   PLAINTIFFS.

17         MS. RYAN:  GOOD AFTERNOON.  ELAINE RYAN FROM BONNETT

18   FAIRBOURN FRIEDMAN & BALINT ON BEHALF OF PLAINTIFFS.

19         THE COURT:  WELCOME.

20         MR. KAO:  GOOD AFTERNOON, YOUR HONOR.  CHRIS KAO WITH

21   PILLSBURY, ALONG WITH REBECCA FRIEDEMANN, ON BEHALF OF

22   DEFENDANT DONGWON.

23         THE COURT:  GOOD AFTERNOON.

24         MR. LYNCH:  GOOD AFTERNOON, YOUR HONOR.  MICHAEL

25   LYNCH FROM THE LAW FIRM OF KELLEY DRYE ON BEHALF OF STARKIST.
```

1          **MR. BOYLE:**  GOOD AFTERNOON.  JOE BOYLE FROM KELLY

2    DRYE, ALSO ON BEHALF OF STARKIST.

3          **THE COURT:**  ALL RIGHT.  GOOD AFTERNOON, EVERYBODY.

4          ALL RIGHT.  LET ME TELL YOU WHAT I'M THINKING.

5          IT SEEMS TO ME THAT THE FIRST AMENDED COMPLAINT,

6    UNLIKE THE WAY THAT THE DEFENDANTS HAVE CHARACTERIZED IT, IS

7    NOT ALLEGING A VIOLATION OF THE DOLPHIN PROTECTION CONSUMER

8    INFORMATION ACT BY NOT USING THE OFFICIAL DOLPHIN-SAFE MARK.

9    THE PLAINTIFFS ARE ALLEGING THAT STARKIST REPRESENTS THAT NO

10   DOLPHINS ARE KILLED OR SERIOUSLY INJURED.  THAT'S WHAT THEIR

11   CLAIM IS AND THAT ITS SUSTAINABLE -- OR ITS UNSUSTAINABLE

12   FISHING PRACTICES ARE KILLING OR HARMING A SUBSTANTIAL NUMBER

13   OF DOLPHINS EACH YEAR.

14         SO, GIVEN THAT UNDERSTANDING OF THE FIRST AMENDED

15   COMPLAINT, FIRST, I WOULD GRANT STARKIST'S REQUEST FOR JUDICIAL

16   NOTICE, BUT THAT DOESN'T RESULT IN DISMISSAL BECAUSE OF THE

17   PLAINTIFF'S ALLEGATIONS ARE NOT COVERED BY THE DPCIA.

18         I THINK FRAUD IS SUFFICIENTLY ALLEGED.  I THINK

19   STANDING IS ADEQUATELY ALLEGED.  I DON'T THINK RICO IS.  THE

20   ENTERPRISE IS ALLEGED TO -- CONCLUSORY AND COMMERCIAL ACTIVITY

21   DOES NOT EQUATE TO A CRIMINAL ENTERPRISE.  BUT THE STATE LAW

22   CLAIMS AREN'T PREEMPTED, I THINK, BECAUSE THE CLAIM ISN'T A

23   VIOLATION -- IS NOT FOR A VIOLATION OF THE DPCIA.

24         WITH RESPECT TO PERSONAL JURISDICTION, I DON'T --

25   IT'S NOT OBVIOUS TO ME THAT THERE IS ANY OVER DONGWON.

1    STARKIST WAS INITIALLY ADEQUATELY CAPITALIZED.  THAT'S WHERE

2    I'M -- WHERE YOU START, I THINK.  A PARENT'S NOT AUTOMATICALLY

3    LIABLE FOR THE ACTIONS OF THE SUBSIDIARY TO ALLEGE THAT THAT IS

4    CHAEBOL, YOU HAVE TO DO MORE THAN DO A CONCLUSORY PLEADING.  I

5    DON'T THINK THAT'S A SHOWING OF ALTEREGO.  AT THE MOMENT THERE

6    ARE NO FACTS THAT WOULD SHOW AN INEQUITABLE RESULT.  AND I

7    THINK THERE ARE INSUFFICIENT FACTS ALLEGED REGARDING AGENCY.

8           AND I'M NOT INCLINED AT THE MOMENT TO ALLOW

9    JURISDICTIONAL DISCOVERY.  I THINK IN THE DISCOVERY OF THIS

10   CASE THERE MAY BE -- A FACTUAL BASIS FOR BRINGING DONGWON IN

11   MIGHT BE DEVELOPED.  I DON'T KNOW.  BUT I JUST -- AT THE MOMENT

12   I JUST DON'T SEE WHY THEY ARE AN APPROPRIATE PARTY IN THE CASE.

13          SO LET ME START WITH STARKIST AND THE MOTION TO

14   DISMISS.

15          **MR. LYNCH:**  THANK YOU, YOUR HONOR.  MICHAEL LYNCH,

16   L-Y-N-C-H, FOR STARKIST.

17          YOUR HONOR, I'VE HEARD THE POSITIONS.  I'M STILL

18   GOING TO ADDRESS THEM.  I THINK THERE ARE SOME THAT WE WOULD

19   LIKE TO MAKE A FEW POINTS ON.

20          **THE COURT:**  GO AHEAD.

21          **MR. LYNCH:**  FOR SURE.

22          SO I'M GOING TO -- YOUR HONOR, THE DPCIA WAS PASSED

23   30 YEARS AGO, AND IT SETS FORTH A VERY COMPREHENSIVE STRUCTURE

24   FOR THE ENTIRE TUNA INDUSTRY, FROM FISHING, TO THE EQUIPMENT

25   YOU CAN USE, TO THE LOCATIONS YOU CAN FISH AND THE TYPE AND

1    TECHNIQUES OF FISHING YOU CAN USE IN DIFFERENT LOCATIONS AROUND

2    THE GLOBE, AND IT SETS FORTH TRANSPORTATION, VERIFICATION,

3    CERTIFICATION --

4            **THE COURT:** SO I UNDERSTAND.

5            **MR. LYNCH:** RIGHT.

6            **THE COURT:** I DO UNDERSTAND ALL THAT.  SO THE

7    QUESTION IS WHETHER YOU MADE A WARRANTY OR A PROMISE OF

8    SOMETHING MORE.  THAT'S -- THAT'S WHAT THE ISSUE IS.  I DON'T

9    KNOW WHY YOU DON'T USE THE LOGO THAT THE COMMERCE DEPARTMENT

10   SUGGESTS.  IT'S A BEAUTIFUL LOGO, BUT YOU HAVE YOUR OWN WHICH

11   IS GREAT.  BUT I DO THINK THAT THE EXPRESSION IS A LITTLE

12   DIFFERENT SO THAT'S WHAT -- THAT'S WHERE I THINK YOU OUGHT TO

13   BE FOCUSED.

14           **MR. LYNCH:** RIGHT.  I'M BUILDING UP TO THAT.

15           SO THE POINT THAT THEY'VE ALLEGED WE PROMISED MORE IS

16   NOT SET FORTH IN THE COMPLAINT, AND IT'S NOT REALLY FLESHED OUT

17   IN A FACTUAL WAY AT ALL.  WHAT IT -- WHAT IT -- YOU KNOW, THE

18   FIRST TIME THAT THEY MAKE THE ARGUMENT THAT IT IS SOMETHING

19   BEYOND THE FEDERAL REGULATION THAT IS A PROMISE THAT STARKIST

20   MADE IS ONLY REALLY IN THE OPPOSITION BRIEF.

21           BUT THE PLEADING ITSELF DOES TWO THINGS THAT I THINK

22   ARE REALLY IMPORTANT TO FOCUS ON.  THE FIRST IS, YOU KNOW GOING

23   TO THE POINT YOU'RE ASKING ABOUT, THE LABEL ITSELF.

24           SO ON PARAGRAPH 23 OF THE FIRST AMENDED COMPLAINT,

25   WHICH IS DOCUMENT ECF 37.  IT'S PAGE 9 OF 91 OF THE FILING OR

1  PAGE 7 OF THE COMPLAINT.

2        **THE COURT:**  ALL RIGHT.

3        **MR. LYNCH:**  SO THIS IS THE ONLY THING THESE

4  PLAINTIFFS HAVE ALLEGED THAT THEY SAW THAT WAS UTTERED BY

5  STARKIST, AND AS YOU SEE IT ONLY SAYS "DOLPHIN SAFE."  THERE IS

6  NO REQUIREMENT IN THE DPCIA, THE DCPIA, THAT EVERYONE HAS TO

7  USE THAT LOGO THAT THEY HAVE SET FORTH.  THAT LOGO ALSO ONLY

8  SAYS "DOLPHIN SAFE."  THAT'S THE ONLY CLAIM.  SO HOW YOU GET

9  FROM -- YOU KNOW, WHILE IT IS A DIFFERENT LABEL -- I'M NOT

10 GOING TO ARGUE WITH YOU ON THAT -- IT'S THE LABEL THAT WE'VE

11 HAD FOR A LONG, LONG TIME.  IT IS NOT MAKING ANY CLAIMS OTHER

12 THAN DOLPHIN SAFE, AND THAT IS A -- THAT IS A DEFINED TERM IN

13 THE DPCIA, AND IT'S A TERM THAT HAS BEEN, YOU KNOW, RELIED UPON

14 IN THIS INDUSTRY FOR 30 YEARS.  IT IS A TERM THAT HAS VERY

15 SPECIFIED DEFINED, YOU KNOW, MEANING, AND WE MEET THOSE

16 OBLIGATIONS, AND THE PLAINTIFFS REALLY HAVEN'T ALLEGED THAT WE

17 DON'T.

18        YOU KNOW, THE OTHER THING IN PARAGRAPH 71 OF THE

19 COMPLAINT, JUDGE -- AND, YOU KNOW, THIS DOESN'T GO DIRECTLY TO

20 THE LABEL QUESTION, BUT THIS IS ALSO AN ALLEGATION THAT A

21 REASONABLE CONSUMER WOULD UNDERSTAND THE DOLPHIN SAFE TERM TO

22 BE THE REGULATORY DEFINITION, RIGHT.  AND SO THE REGULATORY

23 DEFINITION IS WHAT IT IS IN THE DPCIA.  WE ARE COMPLIANT WITH

24 IT.

25        THE COMPLAINT DOESN'T IDENTIFY ANY SPECIFIC INSTANCE

1    WHERE WE'RE EVER NOT -- WHERE STARKIST FAILED TO COMPLY.  THEY

2    DON'T IDENTIFY A SINGLE INSTANCE WHERE A DOLPHIN WAS HURT OR

3    INJURED DURING A CATCH OR AN EXPEDITION THAT RESULTED IN TUNA

4    THAT STARKIST PURCHASED AND SOLD.

5         **THE COURT:**  WELL, I THINK THAT'S ADEQUATELY ALLEGED.

6    THE -- NOT THAT THERE'S A SPECIFIC DOLPHIN THAT WAS INJURED,

7    BUT BY THE FISHING PRACTICES THAT WERE USED.  I THINK THAT'S

8    ENOUGH FOR THE COMPLAINT.  BUT I AM MORE INTERESTED IN THIS

9    FIRST ARGUMENT THAT YOU'RE MAKING.

10        **MR. LYNCH:**  THE QUESTION OF THE DOLPHIN SAFE?

11        **THE COURT:**  YEAH.

12        **MR. LYNCH:**  SO THERE'S NO PLACE IN THE COMPLAINT THAT

13   ALLEGES THAT WE MADE SOME PROMISE MORE THAN THAT.  THE

14   COMPLAINT ITSELF SAYS THAT THE REASONABLE CONSUMER WOULD ASSUME

15   THAT DOLPHIN SAFE MEANS WHAT THE FEDERAL GOVERNMENT HAS SAID IT

16   MEANS.  WE HAVE COMPLIED WITH THAT.  OUR PRACTICES HAVE BEEN IN

17   COMPLIANCE.  AND, YOU KNOW, WE'VE BEEN SUBJECT TO INSPECTION

18   AND POLICING BY NOAA, WHICH HASN'T FOUND ANY PROBLEMS, AND WE

19   CERTAINLY DON'T SEE ANY SET FORTH IN THE COMPLAINT.

20        I THINK IT'S IMPORTANT TO PUT IN PERSPECTIVE, TOO,

21   THE PURPOSE OF DCPIA AND THE HISTORY OF IT -- AND IT MAY SHED

22   SOME LIGHT ON THE QUESTION YOU JUST RAISED, SO -- SO IT WAS

23   CREATED, RIGHT, TO ADDRESS -- BY CONGRESS TO ADDRESS A PROBLEM.

24   THERE HAD BEEN AN OUTCRY OVER PHOTOS THAT HAD GONE AROUND OF

25   DOLPHINS, RIGHT?  AND I KNOW YOU REALIZE SOME OF THIS.  AND

1    THEY CREATED THIS COMPREHENSIVE SCHEME.

2          CONGRESS THEN APPOINTED NOAA, THE NATIONAL OCEANIC

3    ATMOSPHERIC ADMINISTRATION TO POLICE IT, RIGHT?  AND THOSE JOBS

4    WERE -- IT WAS DEFINED, AND NOAA WAS GIVEN THE JOB OF POLICING

5    IT.

6          NOW, OVER 30 YEARS THE INDUSTRY HAS RELIED UPON THAT,

7    AND THE INDUSTRY HAS WORKED TO DEVELOP THAT, AND DOLPHIN

8    MORTALITY HAS GONE DOWN 99 PERCENT.  SO BACK IN THE LATE 1980'S

9    YOU WERE TALKING ABOUT HUNDREDS OF THOUSANDS OF DOLPHINS

10   GETTING HURT OR INJURED IN A YEAR ASSOCIATED WITH TUNA FISHING.

11   THAT NUMBER IS NOW DOWN BELOW A THOUSAND, NOT ONE OF WHICH DO

12   PLAINTIFFS PUT ON STARKIST, NOR COULD THEY.  THERE'S NOT AN

13   ALLEGATION THAT ANY STARKIST TUNA WAS PART OF THAT CATCH, AND

14   THERE'S NO FACTS TO SUPPORT THAT.

15         NOW, YOU KNOW, WHAT PLAINTIFFS ARE REALLY SAYING, THE

16   ARGUMENT IS, THAT FEDERALLY MANDATED PROGRAM WAS NOT GOOD

17   ENOUGH, AND, YOU KNOW, JUDGE, THE SUPREME COURT IN *UNITED*

18   *STATES VERSUS LOCKE*.

19         **THE COURT:**  MR. LYNCH, YOU'RE RUNNING BACK INTO THE

20   PREPARED ARGUMENT THAT YOU MADE, WHICH --

21         **MR. LYNCH:**  YES.

22         **THE COURT:**  -- IS OKAY.

23         **MR. LYNCH:**  BUT THERE'S A REASON WHY, JUDGE.  THE

24   REASON --

25         **THE COURT:**  NO, THERE'S NOT A GOOD REASON TO DO IT

```
 1    WHEN YOU'RE NOT ADDRESSING THE ISSUE THAT I HAVE WITH THIS.  I
 2    KNOW ALL -- I KNOW WHAT YOUR ARGUMENT IS.  I READ THE BRIEFS,
 3    AND I'M TRYING TO GET YOU TO FOCUS ON SOMETHING THAT MIGHT
 4    CHANGE MY MIND, NOT TO MAKE THE POINT THAT YOU ALREADY MADE TO
 5    ME BEFORE.
 6            MR. LYNCH:  ALL RIGHT.  SO THEN, YOUR HONOR, TO ME
 7    THE DOLPHIN SAFE PROMISE IS WHAT IT IS.  SO WHAT THE PLAINTIFFS
 8    NEED TO DO THEN IS TELL STARKIST IN A COMPLAINT, IN A PLEADING,
 9    WHAT PARTICULARLY ABOUT THAT LABEL IS MISLEADING AND HOW IS IT
10    DIFFERENT FROM THE PROMISE THAT THE FEDERALLY-MANDATED LABEL
11    BRINGS.  IF THEY -- BOTH LABELS HAVE TWO WORDS "DOLPHIN SAFE."
12    WHAT IS IT ABOUT THAT THAT IS DIFFERENT THAT WE NEED TO
13    ADDRESS?  HOW IS STARKIST GOING TO POLICE ITSELF IF IT DOESN'T
14    KNOW -- OR DEFEND ITSELF HERE IF IT DOESN'T KNOW WHAT PROMISE
15    IT'S ALLEGED TO HAVE MADE THAT IS GREATER THAN THE FEDERAL
16    STANDARD.
17            THE COURT:  OKAY.
18            MR. LYNCH:  YOU KNOW, I THINK THAT ULTIMATELY IS THE
19    QUESTION.  WE DON'T HAVE THOSE ALLEGATIONS.  WHAT WE HAVE IS,
20    YOU KNOW, THE CONCLUSORY STATEMENTS.
21            THE COURT:  YOU'VE POINTED ME TO TWO PARAGRAPHS, AND
22    I'M EAGER TO ASK THE PLAINTIFFS ABOUT THAT.
23            MR. LYNCH:  ALL RIGHT.  THANK YOU.
24            THE COURT:  THANK YOU.
25            MR. PENNY:  YOUR HONOR, BRIAN PENNY ON BEHALF OF THE
```

1    PLAINTIFFS.

2              I IMAGINE YOU'RE GOING TO WANT TO KNOW WHERE THE

3    COMPLAINT THAT WE ALLEGE THAT STARKIST DOLPHIN SAFE LABEL IS

4    SOMETHING DIFFERENT THAN WHAT THE DPCIA REQUIRES.

5              **THE COURT:**  I HAVE BEEN LOOKING AT PARAGRAPH 23 AND

6    71.  SO TELL ME WHERE ELSE I SHOULD BE LOOKING.

7              **MR. PENNY:**  YEAH, THERE ARE MANY OTHER PARAGRAPHS IN

8    THE COMPLAINT THAT TALK ABOUT THIS.

9              AND JUST TO FRAME THAT ISSUE FOR YOU, REMEMBER, AS

10   DEFENSE COUNSEL JUST TOLD YOU, THE REASON THAT CONGRESS WAS

11   ANIMATED TO CREATE THE DPCIA WAS CONSUMER OUTRAGE ABOUT DOLPHIN

12   SLAUGHTERS.  THE REASON STARKIST BEAT THEM TO THE PUNCH AND

13   BEFORE THE DCPIA WAS EVER ENACTED CREATED THEIR OWN DOLPHIN

14   SAFE LABEL AND DOLPHIN SAFE PROMISE TO CONSUMERS WAS TO

15   CAPITALIZE ON A PR OPPORTUNITY, THAT THEY KNEW CONSUMERS WERE

16   VERY INTERESTED IN DOLPHIN SAFE TUNA NOW, AND STARKIST WAS

17   GOING TO DELIVER THAT TO THEM.

18             THAT'S WHY IN PARAGRAPH 16, FOR EXAMPLE, WE NOTE THAT

19   WHEN STARKIST WENT ON ITS MEDIA BLITZKRIEG IN APRIL OF 1990 TO

20   ANNOUNCE ITS DOLPHIN-SAFE PROGRAM, IT TOLD CONSUMERS AT THAT

21   POINT IN TIME THAT IT WAS COMMITTED TO DOLPHIN SAFETY, THERE

22   WOULD BE A SPECIAL LOGO ON EVERY CAN OF STARKIST TUNA TO

23   REFLECT THAT, AND THE LOGO WOULD MEAN NO HARM TO DOLPHINS;

24   NOTHING SHORT OF DOLPHIN SAFE TUNA WILL BE ACCEPTABLE.  THAT'S

25   STARKIST'S OWN WORDS.

1        THAT IS A COMPLETELY DIFFERENT PROMISE THAN WHAT THE

2   DCPIA REQUIRES BECAUSE YOU KNOW NOW THAT HAVING READ ALL THE

3   BRIEFS THAT THE DCPIA TOLERATES A CERTAIN LEVEL OF DOLPHIN

4   MORTALITY IF CERTAIN OTHER REQUIREMENTS ARE MET.

5        THAT IS NOT STARKIST'S PROMISE.  STARKIST'S PROMISE

6   GOES ABOVE THAT.  IT'S REITERATED THAT VERY SAME PROMISE AND

7   COMMITMENT TO CONSUMERS THROUGHOUT THE LAST 30 YEARS.  FOR

8   EXAMPLE, IN THE COMPLAINT AT PARAGRAPH 38, WE REFERENCE OR WE

9   CITE FROM THE PRESS RELEASE THAT STARKIST ISSUED, ALONG WITH

10  ITS COMPETITORS, CHICKEN OF THE SEA AND BUMBLE BEE, REMINDING

11  CONSUMERS IN THE MIDST OF THIS WORLD TRADE ORGANIZATION DISPUTE

12  ABOUT WHAT "DOLPHIN SAFE" MEANS IN THE UNITED STATES.  THEY

13  DOUBLED DOWN ON THAT PROMISE, AND THEY SAID THAT STARKIST DOES

14  NOT AND WILL NOT UTILIZE TUNA CAUGHT IN A MANNER THAT HARMS

15  DOLPHINS.  AGAIN, THAT'S ABOVE AND BEYOND THE DPCIA'S

16  REQUIREMENTS.  AND IT ALSO ADDED PROVIDING CONSUMERS WITH

17  SUSTAINABLE AND DOLPHIN SAFE TUNA REMAINS A TOP PRIORITY.

18        SOMETHING THAT WASN'T REFERENCED A LOT BUT IS IN THE

19  COMPLAINT IN PARAGRAPH 179, THERE'S A TABLE IN WHICH WE LIST --

20  I'LL GIVE YOUR HONOR A CHANCE TO GET TO IT -- BUT IN WHICH WE

21  LIST -- ACTUALLY, IN THE RICO ALLEGATION SECTION -- BUT WE LIST

22  SEVERAL SOCIAL MEDIA POSTS BY STARKIST WHERE THEY'RE AGAIN

23  REITERATING THEIR DOLPHIN-SAFE PLEDGE.

24        AND THIS IS ADMITTEDLY NOT IN THE COMPLAINT BUT COULD

25  BE ALLEGED IN AN AMENDED COMPLAINT, ON THE DAY WE FILED THE

1    FIRST COMPLAINT IN THIS ACTION, STARKIST PUT FORTH A FACEBOOK

2    POST.  VERY SIMPLE.  IT HAD A LARGE PICTURE OF THE DOLPHIN SAFE

3    LOGO, AND A VERY SHORT STATEMENT ACCOMPANYING IT, AND THE

4    STATEMENT READ:

5                      "STARKIST IS PROUD OF OUR

6              DOLPHIN-SAFE POLICY THAT WAS ADOPTED IN

7              APRIL 1990.  WE WILL NOT PURCHASE ANY TUNA

8              CAUGHT IN ASSOCIATION WITH DOLPHINS, AND WE

9              CONDEMN FISHING METHODS THAT ARE KNOWN TO BE

10             DANGEROUS TO THEM."

11             WELL, AS WE ALLEGE IN THE COMPLAINT, THE FISHING

12   METHODS THEY USE ARE QUITE DANGEROUS TO DOLPHINS.

13             SO, AGAIN, THESE ARE PROMISES AND PLEDGES THAT, AS

14   YOU HAVE RECOGNIZED, GO WELL ABOVE THE DCPIA REQUIREMENTS,

15   TAKES THEM INTO A WHOLE OTHER LEAGUE.

16             **THE COURT:**  ALL RIGHT.  STAY HERE BECAUSE I WANT TO

17   GO ON TO DONGWON FOR A SECOND.  DO YOU HAVE ANY ARGUMENT THAT

18   YOU WANT TO MAKE WITH RESPECT TO THAT?

19             **MR. PENNY:**  FOR DONGWON, CAN I TURN THAT OVER TO MY

20   COLLEAGUE, STU DAVIDSON, WHO'S PREPARED TO DISCUSS DONGWON?

21             **THE COURT:**  OKAY.

22             **MR. DAVIDSON:**  GOOD AFTERNOON, YOUR HONOR.

23             **THE COURT:**  GOOD AFTERNOON.

24             **MR. DAVIDSON:**  SO, I'VE HEARD YOUR TENTATIVE -- YOUR

25   TENTATIVE RULING ON PERSONAL JURISDICTION WITH RESPECT TO

1    DONGWON, AND WHAT I'D LIKE TO DO IS JUST GO THROUGH WHAT YOU'VE

2    SAID AND RESPOND TO THAT IN THE HOPES THAT MAYBE I CAN CHANGE

3    YOUR MIND.

4            YOU MENTIONED WITH RESPECT TO DONGWON THAT STARKIST

5    WAS ADEQUATELY CAPITALIZED AT THE TIME OF FORMATION.  MY

6    RESPONSE TO THAT IS TWO-FOLD.

7            NUMBER ONE IS, IT IS ESSENTIALLY UNDISPUTED THAT

8    CURRENTLY STARKIST IS NOT ADEQUATELY CAPITALIZED.  THE BEST

9    THAT DONGWON HAS ON THAT FRONT IS TO HAVE A DECLARATION OF

10   MR. CHOI, WHO'S PART OF DONGWON, THE PARENT COMPANY FOR

11   STARKIST, AND WHAT MR. CHOI SAYS IN HIS DECLARATION -- AND THIS

12   IS NOT A JOKE, IS, UPON INFORMATION AND BELIEF STARKIST IS

13   ADEQUATELY CAPITALIZED, WHICH I THINK, JUST OBJECTIVELY

14   SPEAKING, IS SOMEWHAT HUMOROUS, GIVEN THAT IT'S THE PARENT

15   COMPANY OF STARKIST AND THE BEST THAT DONGWON HAS ON THAT FRONT

16   IS UPON INFORMATION AND BELIEF.

17           AND THE REASON THAT'S THE BEST THEY HAVE -- AND THEY

18   HAVE NO DECLARATION OF STARKIST AT ALL -- IS BECAUSE STARKIST

19   HAS ADMITTED AT LEAST FOUR TIMES BEFORE JUDGE CHEN THAT IT IS

20   NOT ADEQUATELY CAPITALIZED, IT'S ON THE VERGE OF BANKRUPTCY,

21   AND THAT IT COULD NOT AFFORD A 50 MILLION-DOLLAR FINE OR A

22   HUNDRED MILLION DOLLAR FINE, AND NO BANK IS WILLING TO GIVE IT

23   ANY TYPE OF SHORT-TERM LOAN.

24           BUT TURNING TO WHAT YOUR HONOR SAID, WHICH IS, AT THE

25   TIME OF FORMATION, STARKIST WAS ADEQUATELY CAPITALIZED.  WITH

1  DUE RESPECT, I BELIEVE THAT THAT'S NOT WHAT THE NINTH CIRCUIT

2  SAYS IS THE TEST FOR ADEQUATE CAPITALIZATION.  FIRST, I DON'T

3  THINK IT'S -- IT SHOULDN'T BE A DISPUTE THAT THE NINTH CIRCUIT

4  HAS ON SEVERAL OCCASIONS, TIME AND AGAIN, SAID THAT INADEQUATE

5  CAPITALIZATION IS BY ITSELF ENOUGH TO MEET THE UNITY OF

6  INTEREST TEST, RIGHT?

7          BUT IN *THE BOARD* -- I THINK IT'S *THE BOARD OF*

8  *TRUSTEES VERSUS VALLEY CABINET* CASE -- IT'S A NINTH CIRCUIT

9  CASE FROM 1989 -- THE NINTH CIRCUIT SAYS THAT POST-FORMATION

10  INADEQUATE CAPITALIZATION OR POST FORMATION ABUSE OF THE

11  CORPORATE FORM -- I THINK IS THE WORDS THAT THE COURT USED --

12  WOULD BE ENOUGH TO SHOW INADEQUATE CAPITALIZATION.

13          SO, IN OUR VIEW, IF THE COURT LOOKS AND DETERMINES

14  THAT THAT'S THE NINTH CIRCUIT'S RULE ON THAT AND THAT WE CAN

15  LOOK AT POST-FORMATION CAPITALIZATION, IN OUR VIEW, GIVEN

16  STARKIST'S CONTINUED ADMISSIONS IN THIS CRIMINAL CASE BEFORE

17  JUDGE CHEN THAT'S IN THE MIDDLE OF TRIAL RIGHT NOW -- I THINK

18  ITS BUMBLE BEE EXECUTIVES -- WE THINK WE WIN ON THAT FRONT.

19          SO I WOULD ASK YOUR HONOR TO LOOK AT THAT BOARD OF

20  TRUSTEE DECISION.

21          **THE COURT:**  I THOUGHT YOU WERE GOING TO ASK ME TO

22  WALK DOWN THE HALLWAY AND TALK TO JUDGE CHEN.

23          **MR. DAVIDSON:**  IS IT ON THIS FLOOR, TOO?  OH, I

24  DIDN'T KNOW.  I KNEW JUDGE SEEBORG IS NEXT DOOR BECAUSE I WAS

25  THERE A COUPLE OF MONTHS AGO.

1            AS FAR AS UNITY OF INTEREST GENERALLY GOES, YOU KNOW,

2   JUDGE SAMMARTINO IN THE *PACKAGED SEAFOOD* CASE, HE FOUND THAT

3   THE UNITY OF INTEREST TEST WAS MET WITH THIS EXACT

4   RELATIONSHIP, DONGWON AND STARKIST, AND THEY DIDN'T EVEN HAVE

5   THE INADEQUATE CAPITALIZATION ISSUE THERE BECAUSE IT WASN'T YET

6   KNOWN.  STARKIST HASN'T MADE THOSE ADMISSIONS IN FRONT OF JUDGE

7   CHEN.

8            SO, IN OUR VIEW, EVEN IF WE DIDN'T HAVE THE

9   INADEQUATE CAPITALIZATION, WHICH WE DO, IF THE COURT SIMPLY

10  LOOKED AT JUDGE SAMMARTINO'S DEFINITION IN THE *PACKAGED SEAFOOD*

11  CASE, I BELIEVE THAT THE UNITY OF INTEREST TEST WOULD BE MET.

12           THAT DOESN'T NECESSARILY GET US ALL THE WAY, RIGHT?

13  THE NINTH CIRCUIT SAYS YOU HAVE TO MEET THE UNITY OF INTEREST

14  TEST AND YOU NEED TO SHOW THAT IT WOULD FRUSTRATE A MERITORIOUS

15  CLAIM.

16           AND, YOU KNOW, I WOULD NOTE THAT -- IN CANDOR, THAT

17  JUDGE SAMMARTINO FOUND IN THE *PACKAGED SEAFOOD* CASE, THAT THE

18  FRUSTRATION OF MERITORIOUS CLAIM WAS NOT MET, BUT, YOU KNOW, I

19  WAS LOOKING AT THE DECISION, AND WHAT JUDGE SAMMARTINO NOTED

20  WAS THAT IT HAD NOT ACTUALLY EVEN BEEN ARGUED, AND THAT'S WHY

21  HE FOUND THAT THAT PRONG HAD NOT BEEN MET.

22           HE SAID, QUOTE, "HOWEVER, THEY MAKE NO ATTEMPT TO

23  DEMONSTRATE HOW ANY COMPLAINT ALLEGES AN INEQUITABLE RESULT.

24  SO WHILE I RECOGNIZE JUDGE SAMMARTINO DID NOT FIND ALTEREGO IN

25  THAT CASE, IT WAS NOT BECAUSE HE HAD NOT FOUND UNITY OF

1    INTEREST MET, WHICH HE HAD, BUT BECAUSE THEY HAD NOT ARGUED THE

2    FORMATION ISSUE.

3              **THE COURT:**  JUDGE SAMMARTINO IS A WOMAN, BY THE WAY.

4         **MR. DAVIDSON:**  I'M SORRY.  MY APOLOGIES.  I DIDN'T

5    REALIZE I JUST SAID THAT, SO I APOLOGIZE TO JUDGE SAMMARTINO

6    FOR THAT.

7              SO, HERE, UNLIKE IN THAT CASE, WE HAVE ARGUED THAT IT

8    WOULD FRUSTRATE A MERITORIOUS CLAIM, NOT JUST THE FACT THAT

9    THERE'S THIS INADEQUATE CAPITALIZATION NOW THAT EXISTS, AND SO

10   WE MAY BE LEFT WITHOUT A POCKET TO EVEN OBTAIN A JUDGMENT FROM

11   IN THIS CASE, BUT WE'VE ALLEGED THAT DONGWON, WHO CONTROLS THE

12   ENTIRE FISHING FLEET -- OR NOT ALL OF IT, BUT A SUBSTANTIAL

13   PORTION OF STARKIST'S FISHING FLEET AND CONSIDERS STARKIST

14   ESSENTIALLY A BRAND WHICH DONGWON USES TO SELL ITS TUNA --

15   THAT'S WHAT IT SAYS ON THEIR OWN WEBSITE -- THAT THEY ARE A

16   VALID DEFENDANT IN THIS CASE.

17             SO I UNDERSTAND YOUR HONOR'S TENTATIVE RULING, BUT,

18   WITH RESPECT, I WOULD ASK YOUR HONOR TO TAKE A LOOK AT *THE*

19   *BOARD OF TRUSTEES* CASE.

20             **THE COURT:**  ALL RIGHT.

21        **MR. DAVIDSON:**  THE ONLY OTHER THING I'D LIKE TO ADD

22   IS THE ISSUE OF DISCOVERY.  I KNOW YOUR HONOR KNOWS THE NINTH

23   CIRCUIT'S FOUND ERRORS ON SEVERAL OCCASIONS WHEN PERSONAL

24   JURISDICTION DISCOVERY HAS NOT TAKEN PLACE.

25             WHEN YOU HAVE A SITUATION HERE, YOUR HONOR, THAT THE

1   BEST DEFENDANT CAN MUSTER ON CAPITALIZATION IS "UPON

2   INFORMATION AND BELIEF" FOR ITS OWN SUBSIDIARY.  IN OUR VIEW,

3   THAT JUST BEGS THE QUESTION AS TO REALLY WHAT'S GOING ON THERE.

4            AND, YOU KNOW, I UNDERSTAND YOUR HONOR SAID WE CAN --

5   IF WE LEARN THROUGH DISCOVERY THAT THERE'S A BASIS FOR

6   JURISDICTION FOR -- OVER DONGWON, WE CAN ALWAYS COME BACK, AND

7   I UNDERSTAND AND I APPRECIATE THAT.  BUT JUST SO WE'RE ALL

8   CLEAR IN THE COURTROOM, THE DISCOVERY WE WOULD BE SEEKING OF

9   STARKIST WOULD NOT BE YOUR TYPICAL PROVING YOUR CLAIMS OR GOING

10  TO YOUR DEFENSES.  IT WOULD BE GOING TO PERSONAL JURISDICTION,

11  SUCH AS THEIR BALANCE SHEET AND THEIR PROJECTED INCOME AND

12  INFORMATION REGARDING DONGWON'S SALE OF ITS OWN SUBSIDIARY TO

13  STARKIST, WHICH STARKIST NOW SAYS IT CAN'T SELL TO PAY A FINE

14  BEFORE JUDGE CHEN, WHICH THE DOJ CATEGORIZED AS QUITE CURIOUS.

15           THAT'S THE TYPE OF DISCOVERY WE WOULD BE LOOKING FOR.

16  SO I JUST DON'T WANT THERE TO BE ANY MISUNDERSTANDING HERE, IS

17  THAT WE'RE GOING TO BE SEEKING THAT DISCOVERY FROM STARKIST,

18  JUST BECAUSE WE BELIEVE THAT'S THE INFORMATION WE WOULD NEED

19  TO -- IN ORDER TO ESTABLISH THAT DONGWON SHOULD BE IN FRONT OF

20  THIS COURT.

21           THANK YOU, YOUR HONOR.  I APPRECIATE IT.

22           **THE COURT:**  THANK YOU.  MR. KAO.

23           **MR. KAO:**  THANK YOU, YOUR HONOR.  CHRIS KAO, K-A-O,

24  FOR DONGWON.  THE PLAINTIFFS' ARGUMENT WAS A LITTLE

25  SCATTERSHOT, SO I'LL TRY TO ADDRESS EACH OF THESE POINTS.  BUT

1    IF THERE ARE ANY POINTS THAT I HAVE NOT ADDRESSED THAT YOUR

2    HONOR HAS QUESTIONS ABOUT, I'M HAPPY TO DO SO.

3            SO LET ME START WITH THE UNDERCAPITALIZATION POINT.

4            MOST OF WHAT COUNSEL IS ARGUING IS NOWHERE IN THE

5    PLEADINGS.  IT ONLY APPEARS IN THEIR OPPOSITION BRIEF.  BUT

6    SETTING THAT ASIDE, I THINK IT'S MISGUIDED, AND I DON'T MEAN TO

7    USE A PUN HERE, BUT I DON'T THINK THEY SHOULD BE ENTITLED TO A

8    FISHING EXPEDITION HERE BASED ON THESE CONCLUSORY ALLEGATIONS

9    THAT THERE IS UNDER CAPITALIZATION WHERE THERE ARE NO ACTUAL

10   FACTS PLED IN THE COMPLAINT OR STATED IN THEIR OPPOSITION.

11           **THE COURT:**  WELL, CAN YOU REPRESENT TO ME NOW THAT

12   STARKIST IS ADEQUATELY CAPITALIZED AND COULD ADDRESS ANY SORT

13   OF LIABILITIES THAT MIGHT COME OUT OF THIS LITIGATION?

14           **MR. KAO:**  SO I'M NOT COUNSEL FOR STARKIST, SO I DON'T

15   KNOW THAT I COULD PERSONALLY ON BEHALF OF DONGWON MAKE THAT

16   REPRESENTATION.  BUT WHAT I CAN SAY, AND AS WE DISCUSSED IN OUR

17   BRIEFING, STARKIST WAS -- EXISTED PRIOR TO DONGWON ACQUIRING

18   THEM.  IT EXISTED AS A GOING CONCERN.  IT HAS EXISTED AS A

19   GOING CONCERN SINCE DONGWON ACQUIRED IT AS A SUBSIDIARY, AND IT

20   HAS NEVER BEEN IN A SITUATION WHERE IT HASN'T BEEN ABLE TO PAY

21   ITS OPERATING COSTS, WHICH IS REALLY THE STANDARD.

22           IF YOU LOOK AT THE CASES, THE CONCERN IS WITH

23   UNDERCAPITALIZATION TO A LEVEL WHERE THE COMPANY REALLY CANNOT

24   MEET ITS ONGOING OPERATING EXPENSES, WHICH IS CERTAINLY NOT THE

25   CASE HERE.  THERE'S NO EVIDENCE OF THAT IN THE RECORD.

1   STARKIST, OBVIOUSLY, IS AN OPERATING COMPANY.

2           ALL THAT THE PLAINTIFF COULD POINT TO IS PRESS

3   COVERAGE REGARDING THIS OTHER CASE THAT'S PENDING BEFORE JUDGE

4   CHEN WHERE STARKIST EXPRESSED CONCERNS, IF THERE WERE A CERTAIN

5   SET OF FACTS, RIGHT?  IT WASN'T -- THEY WEREN'T EVEN TALKING

6   ABOUT A SPECIFIC FINE, IT WAS IF THERE WAS A FINE, A CERTAIN

7   FINE IN A CRIMINAL CASE, IF THEY WERE PILED ON TOP OF THAT

8   FINES IN ANTITRUST CIVIL CLASS ACTIONS THAT WERE GOING ON, THEN

9   THERE MIGHT BE A -- YOU MIGHT EVENTUALLY REACH A STAGE WHERE

10  STARKIST WOULD NOT BE ABLE TO PAY.  BUT THERE WAS NOTHING THAT

11  SUGGESTED THAT STARKIST WAS UNDERCAPITALIZED AND IT'S ON THE

12  VERGE OF BANKRUPTCY.  THAT'S JUST AN EXAGGERATION OF WHAT WAS

13  SAID.

14          AND, IN PARTICULAR, I SHOULD NOTE THAT THE VERY WALL

15  STREET JOURNAL ARTICLE THAT THE PLAINTIFF CITED TO IN THEIR

16  OPPOSITION, THE COURT EXPRESSED, YOU KNOW, SKEPTICISM OF

17  WHETHER ANY OF THAT WOULD COME TO PASS, THAT THERE WOULD BE THE

18  SERIOUS CONCERN ABOUT BANKRUPTCY.

19          BUT, AGAIN, THAT'S NOT THE TEST.  THE TEST FOR

20  CAPITALIZATION IS WHETHER IT WAS ADEQUATELY CAPITALIZED AT

21  FORMATION, AND WHETHER CIRCUMSTANCES LATER ON AFFECT THE

22  COMPANY, THAT'S NOT THE TEST FOR WHETHER THERE WOULD BE AN

23  INJUSTICE OR FRAUD THAT WOULD BE PERPETRATED BY NOT ALLOWING OR

24  BY, YOU KNOW, NOT ALLOWING THE -- THE PARENT COMPANY TO BE

25  BROUGHT INTO THE CASE.

1          SO I JUST DON'T THINK THERE'S A BASE IN FACT OR LAW

2     FOR DONGWON TO BE BROUGHT INTO THIS CASE BASED SOLELY ON UNDER

3     CAPITALIZATION.

4          **THE COURT:**  OKAY.

5          **MR. KAO:**  AND THE PLAINTIFF ALSO, I THINK,

6     MISREPRESENTS THE CASE LAW ON THAT.  THE CASE LAW IS CLEAR THAT

7     IS JUST ONE FACTOR, AND IT'S NOT -- EVEN IF THE COURT WERE TO

8     FIND THAT THAT WAS ADEQUATELY ALLEGED, THAT'S NOT SUFFICIENT ON

9     AN ALTEREGO THEORY TO BRING DONGWON INTO THE CASE.

10          AS TO THE UNITY OF INTEREST, I'LL JUST MAKE ONE

11     POINT, WHICH I THINK MAKES A VERY CLEAR DISTINCTION BETWEEN

12     THIS SITUATION AND OTHER CASES IN WHICH COURTS HAVE FOUND

13     PARENT COMPANIES TO BE ALTEREGOS AS A MARKETING CONFLICT, OR

14     WHATEVER, AS THE PLAINTIFF HAS SUGGESTED.

15          IN THOSE CASES -- THERE'S A TOYOTA AMERICA CASE, FOR

16     EXAMPLE.  THE U.S. SUBSIDIARY IS REALLY JUST A SALES OFFICE, A

17     SALES OPERATION TO SELL THE PRODUCTS OF THE PARENT COMPANY IN

18     THE UNITED STATES.

19          THAT IS NOT THE SITUATION HERE.  STARKIST IS SELLING

20     ITS OWN PRODUCTS IN THE U.S. MARKET.  IT'S NOT SELLING

21     DONGWON'S PRODUCTS.  AND THAT IS -- THAT'S EXEMPLIFIED BY THE

22     FACT THAT DONGWON ACQUIRED STARKIST LATER.  RIGHT?  IT WASN'T

23     OPENED AS A SALES OPERATION FOR DONGWON.  IT WAS A SEPARATE

24     COMPANY THAT THROUGH A CORPORATE ACQUISITION DONGWON ACQUIRED.

25     SO I DON'T THINK THERE'S A UNITY OF INTEREST UNDER THAT

1    MARKETING CONDUIT FACTOR EITHER.

2            AND, LASTLY, I JUST WANTED TO ADDRESS THE DISCOVERY

3    POINT.  IT'S OBVIOUSLY WITHIN YOUR HONOR'S DISCRETION TO ALLOW

4    THAT OR NOT.  THERE ARE MANY CASES WHERE DISTRICT COURTS -- AND

5    HAVE BEEN AFFIRMED BY THE NINTH CIRCUIT AS WELL -- WHERE THE

6    COURT HAS DECIDED THERE WAS SIMPLY NOT ENOUGH PLED IN THE

7    COMPLAINT TO MAKE DISCOVERY APPROPRIATE, AND I BELIEVE THIS IS

8    ONE OF THOSE SITUATIONS.

9            **THE COURT:**  OKAY.  GREAT.

10           **MR. DAVIDSON:**  THANK YOU, YOUR HONOR.

11           **MR. LYNCH:**  (INDISCERNIBLE.)

12           **THE COURT:**  MR. LYNCH, COME ON BACK UP.

13           **MR. LYNCH:**  OKAY.  I JUST WOULD LIKE TO ADDRESS A

14   COUPLE OF POINTS, IF I MAY.  THANK YOU, YOUR HONOR.  I'LL TRY

15   TO BE VERY BRIEF.

16           SO THE -- I GUESS THE INITIAL ISSUE OF WHETHER THAT

17   LABEL BEING DIFFERENT CAUSES A PROMISE THAT IS GREATER THAN THE

18   STANDARD SET FORTH BY THE FEDERAL GOVERNMENT, OUR POSITION IS

19   THAT THE LABEL IS ESSENTIALLY THE SAME.  IT USES THE SAME TWO

20   WORDS, WHICH ARE "DOLPHIN SAFE."

21           AND I THINK COUNSEL FOR PLAINTIFFS WAS TRYING TO

22   IDENTIFY IN RESPONSE TO YOUR QUESTION OTHER PROMISES THAT

23   PLAINTIFFS ALLEGE STARKIST HAS MADE THAT TAKE THEIR PROMISE

24   ABOVE THAT FEDERAL LABEL.

25           AND SO THE FIRST WAS IN PARAGRAPH 38 A STATEMENT THAT

1    WAS -- IT WAS A PRESS RELEASE BY AN INDUSTRY GROUP OF WHICH

2    STARKIST IS A PART OF.  I JUST WANT TO POINT OUT, YOU KNOW,

3    WHAT THAT SAYS, RIGHT?  SO THAT SAYS THAT THESE THREE U.S.

4    BRANDS WANT TO REASSURE CONSUMERS THAT THEY HAVE NO REASON TO

5    BE CONCERNED THAT THEIR COMPANIES ARE WAIVERING IN THEIR

6    COMMITMENT TO PROVIDING DOLPHIN-SAFE TUNA, WHICH IS THE SAME

7    TERMINOLOGY USED ON THE FEDERAL REGULATION AS A RESULT OF THIS

8    RULING, AND THE COMPANIES DO NOT AND WILL NOT UTILIZE TUNA

9    CAUGHT IN A MANNER THAT HARMS DOLPHINS, PROVIDING CONSUMERS

10   WITH SUSTAINABLE AND DOLPHIN-SAFE TUNA -- DOLPHIN-SAFE TUNA

11   AGAIN -- REMAINS A TOP PRIORITY.

12          SO TO THE EXTENT THAT THE ADDITIONAL PROMISE RELATES

13   TO THE FISHING TECHNIQUES, I DO WANT TO JUST POINT OUT, IF I

14   MAY, THE ACTUAL TEXT OF THE DPCIA.  SO THE DPCIA TELLS TUNA

15   COMPANIES HOW THEY CAN GO ABOUT FISHING IN ORDER FOR THEIR TUNA

16   TO BE CALLED DOLPHIN SAFE.

17          AND WHAT IT DOES IS IT OUTLAWS COMPLETELY TWO WAYS

18   THAT HAVE BEEN USED BEFORE 1990.  ONE IS A DRIFTNET, AND ONE IS

19   WHEN YOU LITERALLY TARGET THE DOLPHINS -- THERE'S A PORTION OF

20   THE PACIFIC OCEAN WHERE DOLPHINS -- TUNA SWIM UNDER DOLPHINS,

21   AND THERE WAS A TECHNIQUE BACK THEN WHERE THEY TARGETED THAT.

22   SO THERE'S NO ALLEGATIONS IN THE COMPLAINT THAT STARKIST IS

23   ENGAGED IN EITHER OF THOSE TYPES OF TECHNIQUES, AND THAT IS

24   TRUE.

25          THE SECOND ONE IS -- SO THERE'S TWO OTHER TECHNIQUES

1    CALLED PURSE SEINE AND A LONG LINE.  NOW, THOSE ARE NOT PER SE

2    DANGEROUS TO DOLPHINS, RIGHT?  SO THERE ARE WAYS TO FISH WHERE

3    YOU DON'T HURT DOLPHINS.  AND IN ORDER FOR THE TUNA TO BE

4    MARKED DOLPHIN SAFE, THE CAPTAIN OF THAT BOAT NEEDS TO CERTIFY

5    THAT NO DOLPHIN WAS KILLED OR SERIOUSLY INJURED IN SET OR GEAR

6    DEPLOYMENT ON THAT TRIP.  AND THEN THERE ARE SEPARATE

7    REGULATIONS THAT REQUIRE SEPARATION IF -- IF DOLPHINS ARE HURT

8    IN TERMS OF WHICH TUNA CAN GO WHERE.

9          SO THERE ARE NO ALLEGATIONS, YOUR HONOR, THAT WE

10    VIOLATED EITHER OF THOSE TWO.

11          **THE COURT:**  I UNDERSTAND. AND NOR DO I THINK --

12    ACTUALLY, I'M, I THINK, DONE WITH THE "BUTS" AT THIS POINT.

13    I'VE BEEN ON THE BENCH SINCE 7:30 THIS MORNING, AND THE

14    ARGUMENT THAT YOU'RE MAKING THE SAME ARGUMENT THAT YOU STARTED

15    WITH, WHICH IS THAT STARKIST DOESN'T VIOLATE THE DPCIA, AND

16    THE -- MY READING OF THE COMPLAINT IS THAT THAT'S NOT WHAT THE

17    ALLEGATION IS.

18          SO I APPRECIATE THE ARGUMENT, AND I'LL LOOK AT IT

19    WHEN -- WHEN I GET OFF THE BENCH JUST TO SATISFY MYSELF, AND

20    THEN WE'LL MOVE FORWARD WITH THE CASE.

21          **MR. LYNCH:**  THANK YOU.  I WAS REALLY NOT -- I WAS

22    ARGUING --

23          **THE COURT:**  THANK YOU.

24          **MR. LYNCH:**  I WAS RESPONDING TO THEIR ARGUMENT --

25          **THE COURT:**  THANK YOU VERY MUCH, MR. LYNCH.

1              ALL RIGHT.  I'LL TRY TO GET AN ORDER OUT AS SOON AS I

2    CAN.

3              (PROCEEDINGS ADJOURNED AT 3:14 P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              **CERTIFICATE OF TRANSCRIBER**

2

3       I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4 TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5 THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6 U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7 PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8 ABOVE MATTER.

9       I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10 RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11 WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12 FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13 ACTION.

14

15                 *Jncolumbini*

16               JOAN MARIE COLUMBINI

17                NOVEMBER 7, 2019

18

19

20

21

22

23

24

25