1  **KELLEY DRYE & WARREN LLP**
     Tahir L. Boykins (State Bar No 323441)
2  10100 Santa Monica Boulevard, 23rd Floor
   Los Angeles, California 90067-4008
3  Telephone: (310) 712-6100
   tboykins@kelleydrye.com
4
   Michael C. Lynch (Admitted *Pro Hac Vice*)
5  Levi M. Downing (Admitted *Pro Hac Vice*)
   101 Park Avenue
6  New York, NY 10178
   Telephone: (212) 808-5082
7  mlynch@kelleydrye.com
   ldowning@kelleydrye.com
8
   Joseph Boyle (*Admitted Pro Hac Vice*)
9  One Jefferson Road, 2nd Floor
   Parsippany, NJ 07054
10 Telephone: (973) 503-5900
   jboyle@kelleydrye.com
11
   *Attorneys for Defendant StarKist Co*
12
   **\*\*ADDITIONAL COUNSEL ON
13 SIGNATURE PAGE**

14                **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
15

| | |
|---|---|
| 16  WARREN GARDNER, LORI MYERS, ANGELA COSGROVE, AUTUMN HESSONG, ROBERT MCQUADE, COLLEEN MCQUADE, JAMES BORRUSO, FIDEL JAMELO, JOCELYN JAMELO, ANTHONY LUCIANO, LORI LUCIANO, ROBERT NUGENT, AVRAHAM ISAC ZELIG, KEN PETROVCIK, MEGAN KIIHNE, KATHLEEN MILLER, TARA TROJANO, JASON PETRIN, AMY TAYLOR, HEATHER MEYERS, and RACHEL PEDRAZA on behalf of Themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STARKIST CO., a Delaware Corporation, and DONGWON INDUSTRIES CO. LTD, a South Korea Corporation<br><br>Defendants. | **Case No.: 3:19-cv-02561-WHO**<br><br>[Hon. William H. Orrick]<br><br>**DEFENDANT'S NOTICE OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       April 1, 2020<br>Time:       2:00 p.m.<br>Place:      Courtroom 2<br><br>Second Amended<br>Complaint Filed:   December 23, 2019 |

**TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 1, 2020, at 2:00 p.m., or as soon thereafter as the parties may be heard before the Honorable William H. Orrick, U.S.D.J., located at 450 Golden Gate Avenue, Courtroom 2, San Francisco, California, 94102, Defendant StarKist Co. ("Defendant") will and hereby does move to dismiss with prejudice the Second Amended Complaint of Plaintiffs Warren Gardner, Lori Myers, Angela Cosgrove, Autumn Hessong, Robert McQuade, Colleen McQuade, James Borruso, Fidel Jamelo, Jocelyn Namelo, Anthony Luciano, Lori Luciano, Robert Nugent, Abraham Isac Zelig, Ken Petrovcik, Megan Kiihne, Kathleen Miller, Tara Trojano, Jason Petrin, Amy Taylor, Heather Meyers, and Rachel Pedraza ("Plaintiffs") pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, and as more fully set forth in the accompanying Memorandum of Points and Authorities, on the grounds that Plaintiffs have failed to allege a "short and plain statement … showing that the pleader is entitled to relief" and further has failed to allege a plausible claim for relief as required by Fed. R. Civ. P. 8(a) and 12(b)(6).

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the pleadings and upon such other argument as may be presented at the hearing.

DATED: February 3, 2020

**KELLEY DRYE & WARREN LLP**
Michael C. Lynch (Admitted *Pro Hac Vice*)
Joseph A. Boyle (Admitted *Pro Hac Vice*)
Michael R. Dover (Admitted *Pro Hac Vice*)
Levi M. Downing (Admitted *Pro Hac Vice*)
Tahir L. Boykins

By   /s/ *Michael C. Lynch*
         Michael C. Lynch

*Attorneys for Defendant StarKist Co.*

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. SUMMARY OF PERTINENT FACTS AND ALLEGATIONS ..................................... 1
III. ARGUMENT .................................................................................................................... 7
    A. LEGAL STANDARD ON A MOTION TO DISMISS ........................................... 7
    B. PLAINTIFFS ASSERTION AS TO HOW REASONABLE CONSUMERS INTERPRET STARKIST'S REPRESENTATIONS ARE IMPLAUSIBLE ......... 8
IV. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 7

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ............................................................................. 8, 11

*Bosworth v. United States*,
    2016 U.S. Dist. LEXIS 189575 (C.D. Cal. Dec. 9, 2016) ........................................ 7

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ........................................................................ 8, 9, 11

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .................................................................................... 7

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ................................................................................. 7

**Statutes**

Fed. R. Civ. P. 8(a) ........................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1

**Other Authorities**

50 C.F.R. 215.91(a)(3)(iii) ........................................................................................ 4, 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs have invented an unreasonable and implausible standard as to what StarKist's claim of dolphin safe allegedly means to reasonable consumers. Plaintiffs assert that StarKist's claims of "dolphin safe" mean that the fishing methods used to capture tuna is 100% free from any and all dolphin harm (such as by-catch and catch and release) regardless of whether or not StarKist uses tuna from any particular catch. In other words, in the case of StarKist's representations, Plaintiffs claim that 100% dolphin safe means no harm to dolphins from the fishing methods that were used to capture any tuna. (Dkt. 71, Order at 1). However, when it comes to Plaintiffs' preferred methods of tuna fishing, pole-and-line and trolling, which Plaintiffs characterize as 100% dolphin safe, Plaintiffs acknowledge that by-catch—and, therefore, some level of dolphin harm and injury—occurs. (E.g., Dkt No. 75, ¶ 41). Indeed, Plaintiffs concede that dolphin by-catch occurs even with the pole-and-line and trolling tuna fishing method that Plaintiffs characterize as "actually 'dolphin-safe'." (*Id*. at ¶ 41). Common sense, and Plaintiffs own supporting materials, dictate that by-catch causes some injury or harm to dolphins using all fishing methods. Thus, the inescapable fact is that the claim of 100% dolphin safe, according to Plaintiffs, allows for some harm (such as catch and release) to dolphins. Plaintiffs, however, seek to hold StarKist to the same claim of 100% dolphin safe, but allege that StarKist somehow breaches this dolphin safe promise if the fishing methods used to capture StarKist tuna could result in any possible harm or injury to dolphins. No reasonable consumer would believe that the claim of 100% dolphin safe allows for some harm or injury to dolphins from pole-and-line and trolling caught tuna, but that StarKist's claim of 100% dolphin safe tuna means no possible harm or injury to dolphins at all. Plaintiffs' claims should be dismissed as unreasonable and implausible.

## II. SUMMARY OF PERTINENT FACTS AND ALLEGATIONS

Plaintiffs filed the Second Amended Class Action Complaint on December 23, 2019 (Dkt. 75) ("SAC"). The SAC alters some of the allegations from the First Amended Complaint that were the subject of StarKist's Motion to Dismiss (Dkt. No. 37). Plaintiffs' claims are based on the contention that StarKist's label proclaiming that its tuna is "Dolphin Safe" actually represents that

the product is "100% dolphin-safe."[1]  Plaintiffs claim that StarKist engaged in deceptive conduct because there is some harm or injury to dolphins that occurs in the catching of tuna, some of which is allegedly sold as StarKist tuna.  Plaintiffs further allege that traditional methods of tuna fishing, such as pole-and-line and trolling, meet consumers' desire for dolphin safe tuna because they are actually 100% dolphin safe.  (SAC, ¶41).  However, according to Plaintiffs' own allegations, these methods are not truly 100% dolphin safe.  Plaintiff allege:

> While more costly, these traditional methods [pole-and-line and trolling] ensure that dolphins (and other bycatch) are not harmed in the fishing process because fish are caught using barbless hooks and poles one at a time near the sea's surface and unintended captured species are easily released in a timely manner. Tuna caught by these methods are actually "dolphin-safe." (*Id*.).

Common sense dictates that catching a dolphin on a hook, reeling it in and releasing it to the sea is not actually 100% dolphin safe because it results in some harm or injury to dolphins. Plaintiffs effectively concede as much by claiming that dolphin harm occurs when mothers and calves are separated.  (SAC, ¶ 51).  Again, this obviously occurs when a dolphin is incidentally caught by pole-and-line and trolling fishing methods.  This confirms that by-catch produces dolphin harm.  Because pole-and-line and trolling produce by-catch, they also cause dolphin harm and injury.  Indeed, there are animals rights groups that decry the injury caused by so-called catch and release.[2]  By-catch is clearly not 100% dolphin safe.  As a result, it is not reasonable that a consumer would be misled by the fact that StarKist is not 100% dolphin safe because there is by-catch or some other harm to dolphins from StarKist's tuna fishing methods, but not be misled

---

[1]  "100% dolphin-safe" appears nowhere in any statement by StarKist Plaintiffs have identified. The Court has concluded that Plaintiffs' First Amended Complaint made out an allegation that StarKist does make the claim 100% dolphin safe. (Dkt. No. 71, Order at 10-11).  In the SAC, Plaintiffs expressly adopt that 100% dolphin safe standard. (SAC, ¶¶ 12, 38).  For purposes of this motion, where necessary, StarKist examines Plaintiffs' claims in light of their contention that StarKist claims to be 100% dolphin safe.  StarKist is not admitting that it does make this claim.  Rather, it argues that even if it did, given that, as established herein, 100% dolphin safe allows for some harm or injury to dolphins, there is no basis to find that StarKist tuna does not meet the 100% dolphin safe standard adopted by Plaintiffs.

[2]  See e.g. https://wwf.panda.org/our_work/oceans/problems/bycatch222/bycatch_victims/ (cited in SAC at fn. 7 (last visited February 3, 2020)).

about dolphin harm attendant to pole-and-line and trolling. In both instances, there is some harm to dolphins. Nonetheless, Plaintiffs challenge the veracity of the dolphin-safe logo that appears on StarKist's product labels based on their claim that StarKist's "dolphin safe" claim means that no possible dolphin harm or injury based on the fishing method used. That claim is unreasonable and implausible.

Plaintiffs challenge certain statements StarKist made on its website and social media concerning its dolphin-safe policy and the sustainability of the fishing methods that are used to capture StarKist's tuna.[3] (SAC, ¶¶ 15-20, 70-72). The vast majority of the statements the SAC purports to challenge were made well outside of the applicable statute of limitations period on Plaintiffs' claims, which range from one year to six years. Indeed, Plaintiffs purport to challenge, among other things: (1) a 1990 statement by the then-Chairman of H.J. Heinz Co. (SAC, ¶ 19); (2) a 2012 press release by the National Fisheries Institute (SAC, ¶ 38); (3) a 2010 Facebook post that allegedly states that StarKist has a dolphin-safe policy (SAC, ¶ 71); (4) a 2012 Facebook post that allegedly discusses StarKist's dolphin-safe policy (SAC, ¶ 71), and (5) a 2012 Tweet that merely states that StarKist tuna is dolphin-safe (SAC, ¶ 71). These statements cannot be relied on by Plaintiffs because they are beyond the applicable statute of limitations period and, in any case, none of these statements support Plaintiffs' assertions that StarKist's dolphin-safe representations are reasonably seen by consumers as meaning completely free of any possible harm or injury to dolphins.

The SAC also purports to challenge the accuracy of StarKist's dolphin-safe logo on its product label, statements on StarKist's website concerning its dolphin-safe policy, and a 2018 social media post. On their face, again, none of these statements purport to represent that StarKist tuna is "100% dolphin-safe." Rather, they all either represent generically that StarKist's tuna is

---

[3] Plaintiffs have apparently abandoned the allegation from their First Amended Complaint that expressly alleged that reasonable consumers interpret the term "dolphin-safe" consistently with the requirements of the Dolphin Protection Consumer Information Act ("DPCIA") (compare First Amended Complaint at ¶ 71 and SAC at ¶ 71).

1  dolphin-safe, or describe StarKist's dolphin-safe policy in a manner that is consistent with the
2  DPCIA's dolphin-safe requirements.  Nonetheless, Plaintiffs assert that StarKist represents that its
3  tuna is "100% dolphin-safe" based on its definition of no possible harm or injury to dolphins.
4  (SAC, ¶¶ 12, 38).

5  The dolphin-safe logo that appears on StarKist's tuna products does not state or convey a
6  message that StarKist's tuna products will not result in any possible harm or injury to dolphins.

**STARKIST LOGO**



15  And Plaintiffs have made no allegations that could support their contention that reasonable
16  consumers interpret StarKist's dolphin-safe logo as somehow conveying a 100% dolphin injury or
17  harm-free message.

18  Plaintiffs also purport to challenge statements on StarKist's website concerning its
19  dolphin-safe policy.  Those statements, however, merely track, and summarize, the DPCIA's
20  requirements for dolphin-safe tuna, which does not convey a no possible harm or injury to
21  dolphins.  For example, Plaintiffs allege that StarKist's website states that "StarKist will not
22  purchase any tuna caught in association with dolphins."[4]  (SAC, ¶ 18.)  This statement merely
23  expresses that StarKist does not purchase tuna that is caught by fishing methods that chase and
24  intentionally target dolphins with purse seine nets to catch tuna that swim below them; tellingly
25  absent is support for Plaintiffs' 100% no harm or injury dolphin-safe contention.  Indeed, the

---

[4]  Under the DPCIA, tuna caught in this manner—*i.e.* in association with dolphins—may not be labeled as "dolphin-safe."  50 C.F.R. 216.91(a)(3)(iii).

article on NOAA's website that Plaintiffs cite and incorporate by reference into the SAC (¶¶ 5, 49), specifically describes "The Tuna-Dolphin Association" and the fishing practice of setting purse seine nets "around schools of tuna associated with dolphins."[5]  Plaintiffs do not even allege that StarKist purchases tuna captured by this particular fishing method and StarKist does not.  StarKist's website does not state that StarKist tuna is "100% dolphin-safe."

Plaintiffs also allege that StarKist states on its website that it "continues its practice of refusing to purchase tuna caught with gill or drift nets which are known to be dangerous to many forms of marine life.  StarKist condemns the use of these indiscriminate fishing methods that trap dolphins, whales and other marine life along with the intended catch of fish."  (SAC, ¶ 18).  Again, this statement says nothing about preventing all potential or possible harm or injuries to dolphins (such as catch and release).  As a result, this statement on StarKist's website also does not purport to represent that StarKist tuna is "100% dolphin-safe."  Moreover, trolling, a 100% dolphin safe method, produces by-catch of dolphins and other marine life and, therefore, is not 100% dolphin-safe.  (SAC, ¶ 41).

Plaintiffs also allege that StarKist's website states that StarKist requires "certification that all tuna we purchase is dolphin-safe."  (SAC, ¶ 18).  This statement is also true and fails to support Plaintiffs' definition of "dolphin-safe" as meaning no possible harm or injury to dolphins.  As stated on NOAA's website,

> NOAA Fisheries' Tuna tracking and Verification Program is the only program recognized by the U.S. government that legally satisfies all applicable federal regulations regarding dolphin-safe certification.  The TTVP monitors the domestic production and importation of all frozen and processed tuna products nationwide and authenticates any associated dolphin-safe claim.[6]

Consistent with federal legal requirements, all tuna StarKist purchases (and, in turn, sells) is

---

[5]   See NOAA Fisheries, Southwest Fisheries Science Center, The Tuna-Dolphin Issue https://swfsc.noaa.gov/textblock.aspx?Division=PRD&ParentMenuId=228&id=1408 (last visited February 3, 2020).

[6]   See https://www.fisheries.noaa.gov/national/marine-mammal-protection/tuna-tracking-and-verification-program (last visited February 3, 2020).

accompanied by a written statement executed by the vessel's captain certifying that (i) no purse seine net or other fishing gear was intentionally deployed on or used to encircle dolphins during the fishing trip in which the tuna were caught" and (ii) no dolphins were killed or seriously injured in the sets or other gear deployments in which the tuna were caught." 50 C.F.R. 215.91(a)(3)(iii). StarKist is regularly subject to, and passes, NOAA's retail market spot checks, including its most recent October 2019 spot check, which determined that StarKist tuna "was labeled dolphin-safe and met U.S. dolphin-safe standards."[7]  StarKist's statement on its website that it requires certification that all tuna it purchases is dolphin-safe therefore likewise reflects the federal legal requirements and does not purport to represent that StarKist's tuna is completely free of all possible harm or injury to dolphins and, is thus, "100% dolphin-safe."

Plaintiffs also purport to challenge a 2012 Twitter post that merely states that "StarKist tuna is dolphin-safe, not to worry". (SAC, ¶ 71). This statement does not purport to represent that StarKist tuna is "100% dolphin-safe," as Plaintiffs allege StarKist represents. It merely uses the phrase "dolphin-safe," which no reasonable consumer could interpret to mean completely free of any possible harm or injury to dolphins

Even assuming that StarKist promises 100% dolphin safe, Plaintiffs concede that the "100% dolphin-safe" standard it applies to StarKist cannot mean no possible harm to dolphins at all. Dolphins do suffer harm when they are incidentally caught on a pole-and-line or through trolling. Plaintiffs allege that "traditional pole-and-line and trolling methods of catching tuna" capture unintended species, such as dolphins, and that such species captured using these methods are released back into the water. (SAC, ¶ 41). This injury, which makes pole-and-line tuna fishing something less than 100% dolphin safe, makes implausible Plaintiffs' claim that when StarKist promised "dolphin safe" it meant that there was no possible such harm to dolphins. They have failed to allege how a reasonable consumer would understand that 100% dolphin safe is

---

[7]  See https://www.fisheries.noaa.gov/national/marine-mammal-protection/brands-sampled (last visited February 3, 2020).

satisfied by pole-and-line and trolling caught tuna, when both of those methods cause some harm or injury to dolphins, but would also reasonably understand that the same claim by StarKist means no harm whatsoever to dolphins. They cannot because such a conclusion is both unreasonable and implausible.

### III. ARGUMENT

#### A. LEGAL STANDARD ON A MOTION TO DISMISS

The Ninth Circuit has established two principles that apply in assessing the sufficiency of a pleading under Rule 8(a)(2)'s general pleading standard. First, allegations that simply recite the elements of a cause of action are not entitled to a presumption of truth. *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). Second, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). As the Supreme Court noted in *Bell Atl. Corp. v. Twombly*, courts must judge the complaint's allegations for plausibility in the context of the claim. 550 U.S. 544, 557 (2007). Here, the context is that Plaintiffs concede that 100% dolphin safe allows for by-catch of dolphins. While Plaintiffs claim that dolphins are not harmed when they are incidentally caught from pole-and-line fishing methods, common sense dictates that when dolphins are hooked and reeled in by pole-and-line fishing methods, they suffer some level of harm. Plaintiffs' assertion that dolphins are not harmed when they are caught by pole-and-line and trolling therefore is not entitled to a favorable inference. *Bosworth v. United States*, 2016 U.S. Dist. LEXIS 189575, at *7 n. 6 (C.D. Cal. Dec. 9, 2016) (explaining that courts are not required to accept as true allegations that are patently false). Given that, it is implausible to allege that when StarKist claims dolphin safe, it means there was no harm or injury whatsoever to dolphins.

The SAC falls short of either Rule 8(a)'s general plausibility standard and should accordingly be dismissed in its entirety.

/ / /

### B. PLAINTIFFS ASSERTION AS TO HOW REASONABLE CONSUMERS INTERPRET STARKIST'S REPRESENTATIONS ARE IMPLAUSIBLE

Plaintiffs' claims are governed by the "reasonable consumer" test. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–29 (9th Cir. 2019). In order to satisfy that standard, Plaintiffs "must show that members of the public are likely to be deceived." *Id*. It requires more than the mere possibility that StarKist's representations "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id*. Rather, it requires that "a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Id*. Determining whether a complaint states a plausible claim "is a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016). Here, Plaintiffs claim that they were misled because they believed that StarKist claimed 100% dolphin safe, purchased StarKist tuna and learned some dolphins were potentially harmed or injury based on the fishing method used. Given that they knew even 100% dolphin safe tuna fishing methods also cause some harm or injury to dolphins, Plaintiffs' claim of deception and harm are not reasonable.

In *Becerra*, for example, the court affirmed the dismissal of a complaint alleging that consumers were misled into believing that "diet" Dr. Pepper would assist in weight loss. The court held that considering the term in its proper context, "no reasonable consumer would assume that Diet Dr. Pepper's use of the term "diet" promises weight loss or management." *Becerra*, 945 F.3d at 1229. The court relied, in part, on the fact that the product claim at issue was "common in the marketplace." The court found that consumers understand what "diet" means in the context of soft drink labeling, and reasonable consumers would not understand the term to mean that the product contributes to weight loss. *Id*. at 1229-31.

In *Ebner*, the court similarly affirmed the dismissal of a complaint on the grounds that reasonable consumers would not be misled by the challenged representation. In *Ebner*, the plaintiffs alleged that the net weight reflected on the defendant's lip balm packaging was misleading because the dispenser tube that contained the product was designed in a manner that

only allowed consumers to use 75% of the product in the tube. 838 F.3d at 961. The court explained that the dispenser tubes in which the defendant sold its product "are commonplace in the market," and "[t]he reasonable consumer understands the general mechanics of these dispenser tubes and further understands that some product may be left in the tube …" *Id.* at 965.

Plaintiffs have failed to state a plausible claim that reasonable consumers exercising common sense would interpret StarKist's dolphin-safe label, and StarKist's statements on its website and in social media, as guaranteeing no harm or injury whatsoever to dolphins in the fishing methods and capture of the tuna. As the Court found, Plaintiffs equate 100% dolphin safe with pole-and-line and trolling. (Dkt. No. 71, Order at 10). Plaintiffs concede, however, that pole-and-line fishing and trolling result in by-catch of unintended species, including dolphins, and that the bycatch is then released back into the ocean. (SAC, ¶ 41). Incidentally caught dolphins are harmed at some level. Thus, the capture and release of dolphins alone falls short of the no harm to dolphins whatsoever standard that Plaintiffs seek to impose on StarKist here. Furthermore, Plaintiffs allege that when fisherman accidentally catch dolphin, "the fishermen that catch these dolphins often kill them onboard and have been photographed posing with their catch, mutilating the dolphins and removing their teeth, which can be used as currency." (SAC, ¶ 44.) Obviously, this allegation could apply to tuna fisherman who catch dolphins, mistakenly, using pole-and-line or trolling. Indeed, as Plaintiffs allege, fishing vessels outside of the eastern tropical Pacific are not required to have independent observers onboard to track and report the number of dolphins killed or seriously injured. (SAC, ¶ 57). This is true regardless of whether the vessel is engaged in pole-and-line, trolling, or any other fishing method. In fact, fishing vessels engaged in pole-and-line fishing methods are not required to have an independent observer on board even within the eastern tropical Pacific. Plaintiffs cannot explain why the intentional killing of dolphins would occur only where dolphin are accidentally captured using certain fishing methods but not others. Moreover, given the lack of observers on Plaintiffs' preferred fishing method, whose presence would likely deter such conduct, it is even more likely that such abuses could occur.

The inescapable fact is that Plaintiffs' claim of 100% dolphin safe allows for some harm to dolphins. No reasonable consumer would, on the one hand, not be deceived by some level of

dolphin harm when buying pole-and-line and trolling caught tuna but, on the other hand, be deceived by there being some level of harm to dolphins when buying StarKist tuna sold as dolphin safe.  Plaintiffs have not identified the existence of any fishing methods that satisfy the standard they seek to impose upon StarKist.  Reasonable consumers therefore would not expect that StarKist's dolphin-safe representations mean no harm to dolphins.  Plaintiffs have failed to state a plausible claim for relief and the SAC should be dismissed.

In addition, dolphin-safe labels are extremely common in the marketplace.  Plaintiffs allege that the practice of using dolphin-safe labels began 30 years ago and that "98% of prepacked tuna sold today in the United States is labeled with some 'dolphin-safe' representation."  (SAC, ¶¶ 12-13).  It is reasonably understood, and a matter of common sense, that when commercial fishermen fish for tuna that share the sea with other marine life, such as dolphins, there is a risk of accidental disturbance to that marine life.  Dolphin-safe labels, therefore, cannot be reasonably read as a guarantee of no possible harm to dolphins.  Rather, they "are used to denote compliance with laws or policies designed to minimize dolphin fatalities during fishing for tuna destined for canning."[8]  Plaintiffs have not pled any facts to suggest that consumers do not understand this common sense use of dolphin-safe logos, much less that consumers expect that there be no harm to dolphins that are incidentally caught as a result of tuna fishing whether it be via pole-and-line, trolling or any other method.  In fact they plead facts that show that their designated 100% dolphin safe fishing method is not actually 100% dolphin safe.

Nor does anything StarKist said on its website or anything StarKist has said in social media promise no harm whatsoever to dolphins.  StarKist's website describes StarKist's dolphin-safe policy, and in particular, conveys that (i) it does not sell tuna that are captured in association with dolphins (i.e. dolphin-set fishing), (ii) it does not sell tuna caught using gill or drift nets, and (iii) consistent with the DPCIA's requirements, all of the tuna it sells is certified as dolphin-safe:

/ / /

---

[8] See https://en.wikipedia.org/wiki/Dolphin_safe_label (last visited February 3, 2020).

**What is StarKist's Dolphin-Safe Policy?**

StarKist Co. is committed to protecting the dolphins and was the first company to adopt a dolphin-safe policy in April 1990.  We are proud to share with you our worldwide policy to save dolphin lives.  This policy states that:

- **StarKist will not purchase any tuna caught in association with dolphins.**

- **StarKist continues its practice of refusing to purchase tuna caught with gill or drift nets, which are known to be dangerous to many forms of marine life. StarKist condemns the use of these indiscriminate fishing methods that trap dolphins, whales, and other marine life along with the intended catch of fish.**

- **StarKist was the first major American tuna canning company to make this commitment to the public. We remain committed to this policy and require certification that all tuna we purchase is dolphin-safe. Our dolphin-safe policy includes StarKist tuna, as well as all of our branded and private label products. StarKist tuna is labeled with a special "Dolphin-Safe" logo.[9]**

StarKist's website therefore explains exactly what its dolphin-safe policy means and no-where in that description is a representation by StarKist that there are no other actual or potential harms or injuries to dolphins, resulting in 100% dolphin-safe, as result of the fishing methods used.  To the extent that any consumers misinterpreted any dolphin-safe representation by StarKist as a guarantee of no harm whatsoever to dolphins, any such interpretation was unreasonable and cannot form the basis of a claim against StarKist.  *Becerra*, 945 F.3d at 1230 ("Just because some consumers may unreasonably interpret the term differently does not render the use of 'diet' in a soda's brand name false or deceptive.")  *Ebner*, 838 F.3d at 966 (defendant's product "is not false and deceptive merely because the remaining product quantity may be 'unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons' that may purchase the product").  Plaintiffs have not plausibly alleged that reasonable consumers would misinterpret StarKist's dolphin-safe representations as guaranteeing no harm to dolphins.  Their claims are implausible and should be dismissed.

/ / /

---

[9]   https://starkist.com/faq (last visited February 3, 2020); (SAC, ¶¶ 16-18).

/ / /

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 8(a), and grant such other further relief as the Court deems just and proper.

DATED: February 3, 2020

**KELLEY DRYE & WARREN LLP**
Michael C. Lynch (Admitted *Pro Hac Vice*)
Joseph A. Boyle (Admitted *Pro Hac Vice*)
Michael R. Dover (Admitted *Pro Hac Vice*)
Levi M. Downing (Admitted *Pro Hac Vice*)
Tahir L. Boykins


By   /s/ *Michael C. Lynch*
           Michael C. Lynch

*Attorneys for Defendant StarKist Co.*