1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   CHRISTOPHER KAO (SBN 237716)
2    christopher.kao@pillsburylaw.com
   BROCK WEBER (SBN 261383)
3    brock.weber@pillsburylaw.com
   REBECCA FRIEDEMANN (SBN 323909)
4    rebecca.friedemann@pillsburylaw.com
   Four Embarcadero Center, 22nd Floor
5  San Francisco, CA  94111-5998
   Telephone:  (415) 983-1000
6  Facsimile:  (415) 983-1200
7
8  Attorneys for Defendant
   DONGWON INDUSTRIES CO. LTD.
9

10               UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

13 WARREN GARDNER, et al., on behalf of          Case No. 3:19-cv-02561-WHO
   Themselves and all others similarly situated,
14                                                **DEFENDANT DONGWON
                                                  INDUSTRIES CO. LTD.'S MOTION
15                      Plaintiffs,               TO DISMISS PLAINTIFFS' SECOND
                                                  AMENDED COMPLAINT**
16          v.
                                                  Date:  April 1, 2020
17 STARKIST CO., a Delaware Corporation,          Time:  2:00 p.m.
   and DONGWON INDUSTRIES CO. LTD.,               Place:  Courtroom 2
18 a South Korea Corporation,                     Honorable William H. Orrick
19                      Defendants.
                                                  Filed Herewith:
20                                                1.  Declaration of Kiyun Yun
                                                  2.  [Proposed] Order
21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 1, 2020 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, before the Honorable William H. Orrick, United States District Judge, Dongwon Industries Co. Ltd. ("DWI"), will and hereby does move this Court to dismiss without leave to amend the Second Amended Class Action Complaint ("SAC") filed by Plaintiffs Warren Gardner, Lori Myers, Angela Cosgrove, Autumn Hessong, Robert McQuade, Colleen McQuade, James Borruso, Fidel Jamelo, Jocelyn Namelo, Anthony Luciano, Lori Luciano, Robert Nugent, Abraham Isac Zelig, Ken Petrovcik, Megan Kiihne, Kathleen Miller, Tara Trojano, Jason Petrin, Amy Taylor, Heather Meyers, and Rachel Pedraza ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(2), on the grounds that the Court lacks personal jurisdiction over DWI.

DWI seeks dismissal from this action, without leave to amend. DWI bases this motion upon this Notice of Motion and Motion, the Memorandum that follows, the accompanying declaration of Kiyun Yun, all pleadings and records on file in this action, and any other arguments and evidence presented to the Court.

Dated: February 3, 2020

Respectfully submitted,

_/s/ Christopher Kao_
Christopher Kao (SBN 237716)

*Attorneys for Defendant*
*Dongwon Industries Co. Ltd.*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   STATEMENT OF THE CASE.....................................................................................2

     A.    The Parties. ...........................................................................................................2

     B.    Plaintiffs' Alter Ego Allegations. .......................................................................2

III.  ARGUMENT ................................................................................................................3

     A.    DWI Is Not Subject To Personal Jurisdiction In California. ...................................3

     B.    Plaintiffs Have Not Established, And Cannot Establish, That DWI Is
          StarKist's Alter Ego. .............................................................................................4

          1.    Plaintiffs Fail To Show A Unity Of Interest Between DWI And
               StarKist. ..................................................................................................4

               a.    *DWI Does Not Use StarKist As A Marketing Conduit*......................6

               b.    *StarKist Was Not Inadequately Capitalized.* ....................................7

               c.    *DWI And StarKist Observe Corporate Formalities.* ..........................9

               d.    *DWI And StarKist Do Not Have Identical Officers and
                    Directors.* ............................................................................................9

          2.    Respecting the Separate Corporate Forms Will Not Result in Fraud or
               Injustice...................................................................................................9

     C.    Plaintiffs Have Not Established, And Cannot Establish, That StarKist Is
          DWI's Agent. .......................................................................................................11

     D.    No Amendment Can Cure the SAC's Deficiencies. ...............................................12

IV.   CONCLUSION.............................................................................................................12

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Carrico v. City & Cty. of San Francisco*,
  656 F.3d 1002 (9th Cir. 2011) ..................................................................................................12

*Cottle v. W. Skyways, Inc.*,
  Case No. 17-cv-00049-DAD-BAM, 2017 U.S. Dist. LEXIS 59203 (E.D. Cal.
  April 18, 2017)............................................................................................................................ 3

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................................................................... 11

*Frost v. LG Elecs. Inc.*,
  No. 16-CV-05206-BLF, 2017 WL 1425919 (N.D. Cal. Apr. 21, 2017) ...................................... 9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) .................................................................................................................... 3

*Hall-Magner Grp. v. Firsten*,
  No. 11-CV-312 JLS (POR), 2011 WL 5036027 (S.D. Cal. Oct. 24, 2011) ............................... 10

*Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*,
  614 F. Supp. 2d 1080 (C.D. Cal. 2009) ..................................................................................... 10

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) .................................................................................................... 5

*Hillside Drilling Inc. v. Goldman Sachs Grp.*,
  No. 09-1896, 2009 WL 2246215 (N.D. Cal. July 27, 2009) ......................................................... 4

*Indep. Elec. Supply Inc. v. Solar Installs, Inc.*,
  No. 18-CV-01435-KAW, 2018 WL 3344545 (N.D. Cal. July 9, 2018).................................... 4-5

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
  326 U.S. 310 (1945)..................................................................................................................... 3

*Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*,
  616 F.3d 963 (9th Cir. 2010) ..................................................................................................... 12

*Laborers Clean-Up Contract Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc.*,
  736 F.2d 516 (9th Cir. 1984) .................................................................................................. 7, 8

*MH Pillars Ltd. v. Realini*,
  No. 15-CV-1383-PJH, 2017 WL 916414 (N.D. Cal. Mar. 8, 2017)............................................. 4

*Mid-Century Ins. Co. v. Gardner*,
  9 Cal. App. 4th 1205 (1992) ....................................................................................................... 7

*Moody v. Charming Shoppes of Del., Inc.*,
No. C 07-06073 MHP, 2008 WL 21289955 (N.D. Cal. May 16, 2008) ........................................ 6

*NetApp, Inc. v. Nimble Storage, Inc.*,
No. 5:13-CV-05058-LHKHRL, 2015 WL 400251 (N.D. Cal. Jan. 29, 2015) ...................... 5, 6, 7

*Oakley, Inc. v. Trimera Military Tech., Inc.*,
No. SACV141649DOCDFMX, 2016 WL 8794459 (C.D. Cal. Jan. 22, 2016)............................ 10

*Oddenino & Gaule v. United Fin. Grp. of Illinois*,
201 F.3d 444 (9th Cir. 1999) ................................................................................................ 7

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ............................................................................................ 12

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017), *cert. denied,* 138 S. Ct. 504 (2017)................................................ 8

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ...................................................................................... 4, 5, 9

*RWS Info. v. Arbiter Group, PCL*,
No. 96-1146, 1997 U.S. App. LEXIS 3917 (4th Cir.1997) ............................................................ 3

*Sandoval v. Ali*,
34 F. Supp. 3d 1031 (N.D. Cal. 2014) ...................................................................................... 5

*Sivilli v. Wright Med. Tech., Inc.*,
Case No. 18-cv-2162-AJB-JLB, 2019 U.S. Dist. LEXIS 105416
(S.D. Cal. June 24, 2019)......................................................................................................... 11

*Sonora Diamond Corp. v. Superior Court*,
83 Cal. App. 4th 523 (2000) ....................................................................................... 5, 7, 11, 12

*Stewart v. Screen Gems-EMI Music, Inc.*,
81 F. Supp. 3d 938 (N.D. Cal. 2015) ..................................................................................9-10

*United States v. Toyota Motor Corp.*,
561 F. Supp. 354 (C.D. Cal. 1983) ...................................................................................... 7

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*,
99 Cal. App. 4th 228 (2002), *as modified on denial of reh'g* (June 10, 2002)............................... 5

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ................................................................................................ 4, 11

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2       Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant Dongwon Industries Co.

3  Ltd. ("DWI") hereby moves to dismiss the Second Amended Class Action Complaint ("SAC") filed

4  on December 23, 2019 by Plaintiffs on the ground that DWI is not subject to personal jurisdiction in

5  California and is not a proper defendant in this case.

6  **I.       INTRODUCTION**

7       Despite another attempt, Plaintiffs still have not established that this Court has personal

8  jurisdiction over DWI.  This is unsurprising as DWI has no presence in the United States.  It is

9  incorporated and headquartered in the Republic of Korea, and the SAC does not identify a single

10  contact between DWI and California.  Plaintiffs instead argue that DWI is subject to personal

11  jurisdiction in California because Defendant StarKist Co. ("StarKist"), a wholly-owned subsidiary, is

12  DWI's alter ego or agent.

13       But Plaintiffs fail to allege any specific facts to support this argument.  The SAC largely

14  repeats the very same conclusory allegations that this Court previously found insufficient to establish

15  personal jurisdiction over DWI.  *Compare* SAC ¶¶ 79-80, 106-16*, with* FAC ¶¶ 78-79, 97-107; *see*

16  *also* Dkt. No. 71 ("Order"), at 20:2-25:23.  And the "new" allegations in the SAC do little more than

17  repackage the legal arguments from Plaintiffs' Opposition to DWI's Motion to Dismiss the First

18  Amended Complaint, which this Court already rejected.  *Compare* SAC ¶¶ 117-40*, with* Order at

19  20:2-25:3.

20       Plaintiffs cannot overcome the fact that StarKist is a separate corporate entity from DWI.  It

21  has its own board, maintains its own books and records, hires and pays its own employees, maintains

22  its own offices and bank accounts, and markets and sells its own products.  The fact that three

23  individuals have at various times served as members of the StarKist board, and separately have been

24  employees or on the boards of other companies affiliated with DWI (and never concurrently with

25  both StarKist and DWI) is nowhere near enough to establish that StarKist is DWI's "alter ego or

26  agent."  *See* Order at 24:13-22.

27

28

---

Dongwon's Motion to Dismiss SAC                    1                    Case No. 19-cv-02561-WHO

II.     STATEMENT OF THE CASE

   A.     The Parties.

   Plaintiffs are consumers from eight states who claim to have purchased StarKist canned tuna during the past four years.  SAC ¶¶ 81-101.

   Defendant StarKist is a Delaware corporation with its headquarters and principal place of business in Pennsylvania.  SAC ¶ 102.  StarKist sells shelf-stable seafood products like canned tuna in the United States.  SAC ¶ 105.

   Defendant DWI is a fishing company incorporated and headquartered in the Republic of Korea.  SAC ¶ 106.  DWI does not manufacture, produce, or sell shelf-stable seafood products anywhere in the world.  Yun Decl. ¶ 3.  In 2008, DWI acquired StarKist.  SAC ¶ 107.  As a result of that transaction, StarKist became a wholly-owned subsidiary of DWI.  *See id.*  However, DWI is not StarKist's sole, or even primary provider, of raw fish.  Yun Decl. ¶ 15.

   B.     Plaintiffs' Alter Ego Allegations.

   The SAC purports to bring eleven claims against DWI and StarKist based on StarKist's allegedly misleading labelling of its canned tuna as "dolphin-safe."  However, the SAC does not allege that DWI itself made any false, misleading, or otherwise deceptive representations.  Nor could it.  DWI does not manufacture, produce, or sell shelf-stable seafood products, including canned tuna, anywhere in the world, including the United States.  Yun Decl. ¶ 3.  Plaintiffs also fail to allege any contacts between DWI and California.

   Instead, Plaintiffs seek to bring DWI into this action through legal fiction.  Plaintiffs first argue that DWI has consented to or waived its objection to this Court's personal jurisdiction by appearing in other prior litigation in the United States.  SAC ¶ 80.  Plaintiffs next argue that StarKist is DWI's alter ego or agent, thereby subjecting DWI to personal jurisdiction in California.  More specifically, Plaintiffs argue:  (1) that DWI and its related companies operate as a *chaebol*, or a large industrial conglomerate run and controlled by a single family (SAC ¶¶ 108-14); (2) that there is overlap between the officers and directors of StarKist and other DWI-affiliated entities (SAC ¶¶ 111-13, 122); (3) that DWI uses StarKist as a marketing conduit for StarKist tuna products (SAC

1  ¶¶ 116, 122-23); and (4) that StarKist is inadequately capitalized (SAC ¶¶ 124-29).  But Plaintiffs

2  offer next to no factual allegations to support these conclusory claims.

3  **III.    ARGUMENT**

4      **A.    DWI Is Not Subject To Personal Jurisdiction In California.**

5      DWI does not have sufficient contacts with California for there to be personal jurisdiction

6  over DWI in this District.  DWI is incorporated and headquartered in the Republic of Korea.  SAC

7  ¶106; Yun Decl. ¶ 2.  DWI has <u>never</u> had offices in California, owned property in California, had

8  any employees or agents in California, registered to do business in California, held bank accounts in

9  California, advertised in California, or sold any products in California.  Yun Decl. ¶¶ 3-7.  Despite

10  Plaintiffs' conclusory allegations to the contrary (*see* SAC ¶¶ 79-80, 115), DWI does not have the

11  requisite contacts with California to subject it to personal jurisdiction here.  *See Goodyear Dunlop*

12  *Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (requiring such "continuous and

13  systematic" contacts as to render the foreign corporation "essentially at home in the forum State");

14  *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316

15  (1945) (requiring "minimum contacts . . . such that the maintenance of the suit does not offend

16  'traditional notions of fair play and substantial justice'").

17      Plaintiffs nonetheless claim that DWI has forever waived any objection to this Court's

18  personal jurisdiction by participating in unrelated litigation in other Districts in the United States.

19  *See* SAC ¶ 80.  Incorrect.  DWI's participation in unrelated litigation has no bearing on this Court's

20  jurisdictional analysis.  *See Cottle v. W. Skyways, Inc.*, Case No. 17-cv-00049-DAD-BAM, 2017

21  U.S. Dist. LEXIS 59203, at *20 (E.D. Cal. April 18, 2017) ("[D]efendant's prior involvement in

22  other litigation before federal courts in California is insufficient to establish personal jurisdiction

23  here."); *see also RWS Info. v. Arbiter Group, PCL*, No. 96-1146, 1997 U.S. App. LEXIS 3917, at *4

24  (4th Cir.1997) ("No authority supports [the plaintiff's] assertion that a court can indefinitely retain

25  personal jurisdiction over a corporation because it once commenced a related action in that court.").

26  The three cases cited by Plaintiffs in the SAC are entirely unrelated to the instant action and do not

27  establish personal jurisdiction over DWI for the purpose of this case.

28

**B.      Plaintiffs Have Not Established, And Cannot Establish, That DWI Is StarKist's Alter Ego.**

Plaintiffs try to sidestep the fact that DWI does not have the requisite contacts with California to subject it to personal jurisdiction here by arguing that StarKist is the alter ego of DWI. *See* SAC ¶¶ 117-40.  But Plaintiffs fail to plead facts sufficient to make out a prima facie case that StarKist is DWI's alter ego.

The alter ego doctrine is "a drastic remedy" and disregarding the corporate form is done "only reluctantly and cautiously."  *Hillside Drilling Inc. v. Goldman Sachs Grp.*, No. 09-1896, 2009 WL 2246215, at *4 (N.D. Cal. July 27, 2009).  "To survive a motion to dismiss, a plaintiff asserting application of the alter ego doctrine to extend personal jurisdiction to a foreign parent or subsidiary must 'allege specifically both the elements of alter ego liability, as well as facts supporting each.'" Order at 20:10-12 (quoting *MH Pillars Ltd. v. Realini*, No. 15-CV-1383-PJH, 2017 WL 916414, at *12 (N.D. Cal. Mar. 8, 2017)) (emphasis added).

The plaintiff must show that "(1) there is such unity of interest and ownership that the separate personalities of the two entities no longer exists, and (2) failure to disregard their separate identities would result in fraud or injustice."  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citing *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)).  Plaintiffs do not allege sufficient facts to meet either prong—nor could they.  Their bald assertion that "StarKist has operated as [DWI]'s alter ego or agent" (SAC ¶ 16) is inadequate.

         1.      Plaintiffs Fail To Show A Unity Of Interest Between DWI And StarKist.

To satisfy the unity of interest prong, Plaintiffs must show "that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former."  *Ranza*, 793 F.3d at 1073 (internal quotations and citations omitted).  A parent's involvement in "macromanagement issues," such as reviewing and approving major decisions, placing directors on the subsidiary's board, and participating in the subsidiary's pricing decisions, is not enough.  *Id*. at 1074-75.  Unity of interest is only found where a parent exercises "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation."  *Id.* at 1075; *Indep. Elec. Supply*

1    *Inc. v. Solar Installs, Inc.*, No. 18-CV-01435-KAW, 2018 WL 3344545, at *7 (N.D. Cal. July 9,

2    2018) (explaining that courts require "that plaintiffs make more than just 'conclusory allegations' to

3    support personal jurisdiction under an alter ego theory"). That is simply not the case here.

4         Courts generally consider nine factors in assessing whether the unity of interest prong is

5    satisfied:

6         (1) the commingling of funds and other assets of the entities, (2) the holding out by
          one entity that it is liable for the debts of the other, (3) identical equitable ownership

7         of the entities, (4) the use of the same offices and employees, (5) use of one as a
          mere shell or conduit for the affairs of the other, (6) inadequate capitalization,

8         (7) disregard of corporate formalities, (8) lack of segregation of corporate records,
          and (9) identical directors and officers.

9

10   Order at 21:5-9 (quoting *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014)). "No single

11   factor is determinative." *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245

12   (2002), *as modified on denial of reh'g* (June 10, 2002); *see also Ranza*, 793 F.3d at 1073 ("Total

13   ownership and shared management personnel are alone insufficient to establish the requisite level of

14   control."); *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000) (explaining

15   that "[n]o one characteristic governs"). Thus, Plaintiffs must establish the existence of multiple

16   factors to satisfy the unity of interest prong of the alter ego test. *See Virtualmagic*, 99 Cal. App. 4th

17   at 245.

18        Plaintiffs cannot dispute that most of the unity-of-interest factors weigh against an alter ego

19   finding. *See* Yun Decl. at ¶¶ 10-11, 13 (DWI and StarKist do not comingle funds); ¶ 11 (DWI does

20   not hold itself out as responsible for StarKist's debts); ¶ 12 (the companies do not share offices);

21   ¶¶ 8, 16 (the companies maintain separate corporate records). To be sure, StarKist is a wholly-

22   owned subsidiary of DWI. SAC ¶ 107. "However, '100% control' of a subsidiary by a parent 'does

23   not by itself make a subsidiary the alter ego of the parent.'" *NetApp, Inc. v. Nimble Storage, Inc.*,

24   No. 5:13-CV-05058-LHKHRL, 2015 WL 400251, at *6 (N.D. Cal. Jan. 29, 2015) (quoting *Harris*

25   *Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)).

26        Accordingly, Plaintiffs' argument that StarKist is DWI's alter ego rests on four factors: (5)

27   use of one as a mere shell or conduit for the affairs of another (SAC ¶¶ 116, 122-23); (6) inadequate

28   capitalization (SAC ¶¶ 124-29); (7) disregard of corporate formalities (SAC ¶¶ 108-14); and

1    (9) identical directors and officers (SAC ¶¶ 111-13, 122).[1]  But Plaintiffs fail to allege sufficient

2    facts to establish any of these factors.

3                              a.        *DWI Does Not Use StarKist As A Marketing Conduit*.

4              To show that StarKist is a marketing conduit of DWI, Plaintiffs must allege facts "as to the

5    subsidiary's role as a marketing conduit for the parent" that are "specific to the subsidiary's

6    marketing function."  Order at 23:17-18 (quoting *NetApp*, 2015 WL 400251, at *7).  In other words,

7    Plaintiffs must allege "facts regarding the marketing and product relationship between [the parent]

8    and [the subsidiary], or how sales and products pass between [the parent] and [the subsidiary], or

9    what marketing and sales functions [the subsidiary] handles on behalf of [the parent]."  *NetApp*,

10   2015 WL 400251, at *7.

11             The SAC contains no such facts.  Plaintiffs allege that "[DWI] purchased StarKist to operate

12   merely as a marketing conduit for StarKist tuna products," but this conclusory allegation lacks any

13   factual support.  *See* SAC ¶ 116.  Plaintiffs allege that DWI's website states:  "StarKist is an iconic

14   tuna brand in the United States, and has been controlled by Dongwon Group since 2008."  *See* SAC

15   ¶¶ 116, 122.  But as this Court noted previously, "[g]eneric language 'on [a defendant's] website and

16   in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's

17   contacts to the parent.'"  Order at 24:5-8 (quoting *Moody v. Charming Shoppes of Del., Inc.*, No. C

18   07-06073 MHP, 2008 WL 21289955, at *7 (N.D. Cal. May 16, 2008)).  Finally, Plaintiffs claim that

19   "StarKist's status as a marketing conduit to sell [DWI]'s tuna is further evidenced by [DWI]'s

20   ownership of . . . Société de Conserverie en Afrique SA."  SAC ¶ 123.  But Plaintiffs do not allege

21   that StarKist markets any tuna canned in Senegal, or otherwise explain how DWI's ownership

22   interest in a tuna cannery in Senegal somehow renders StarKist a marketing conduit of DWI.

23             Plaintiffs' argument that StarKist is a marketing conduit of DWI is baseless and relies

24   entirely on conclusory statements rather than facts.  The SAC does not, and cannot, allege that

25   StarKist is the exclusive importer of DWI's products into the United States (DWI does not export—

26

27   _____
     [1] Although Plaintiffs apparently contend in the SAC that DWI and StarKist use the same offices and
     employees (SAC ¶ 120) they do not allege any facts in support of this conclusory assertion.  Nor
28   could they, as DWI does not share offices or employees with StarKist.  Yun Decl. at ¶¶ 4, 7, 12-13.

1  or even manufacture, produce, or sell—any packaged seafood products), that StarKist coordinates

2  DWI's distribution and sales logistics in the United States (DWI has <u>no</u> distribution or sales in the

3  United States at all), or that DWI realizes specific sales in the United States from StarKist (it does

4  not).  Yun Decl. ¶¶ 3, 15; *see* Order at 23:20-25 (citing *United States v. Toyota Motor Corp.*, 561 F.

5  Supp. 354, 356 (C.D. Cal. 1983)); *NetApp*, 2015 WL 400251, at \*7.  Indeed, it is undisputed that the

6  products at the center of this case—<u>StarKist</u> tuna products—were made and marketed under the

7  StarKist brand long before DWI even acquired StarKist.  *See, e.g.*, SAC ¶¶ 1-2, 107, 116; *see also* Yun

8  Decl. ¶¶ 3, 14-15.  Plaintiffs allege no facts suggesting that the method of marketing and distribution

9  changed in any way when DWI acquired StarKist.  Because StarKist markets and sells its own

10  products, the "marketing conduit" argument is inapplicable.

b.      *StarKist Was Not Inadequately Capitalized*.

12            Plaintiffs next argue that StarKist is inadequately capitalized because it recently argued that it

13  could not afford to pay a fine of $50 million or $100 million.  SAC ¶¶ 125, 127.  Plaintiffs

14  contend—citing nothing—that this alone is sufficient to hold DWI liable for StarKist's acts.  SAC

15  ¶ 124.  Plaintiffs also claim that the adequacy of StarKist's capitalization should be judged as of

16  today, rather than as of its formation—again citing nothing.  SAC ¶ 128.

17            They are wrong on both counts.  <u>First</u>, inadequate capitalization, without more, is not a

18  sufficient basis to hold a parent company liable for the acts of its subsidiary.  *See Sonora Diamond*

19  *Corp.*, 83 Cal. App. 4th at 539 (explaining that "[n]o one characteristic governs"); *Mid-Century Ins.*

20  *Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213 (1992) ("The courts have cautioned against relying too

21  heavily in isolation on the factor[] of inadequate capitalization.").  <u>Second</u>, inadequate capitalization

22  is measured at the time of a corporation's <u>formation</u>.  *See Oddenino & Gaule v. United Fin. Grp. of*

23  *Illinois*, 201 F.3d 444, 444 (9th Cir. 1999) (finding a subsidiary is not considered inadequately

24  capitalized where it was "once adequately capitalized but subsequently fell upon bad financial

25  times"); *Laborers Clean-Up Contract Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d

26  516, 524 (9th Cir. 1984) (assessing "the failure of the incorporators adequately to capitalize the

27  corporation at its inception").  Thus, "[a]lleging that StarKist cannot afford current debts does not

28

1  allege that it was not adequately capitalized at the time the company was formed."  Order at 22:14-

2  16.

3         Nevertheless, Plaintiffs repeat the very same arguments they advanced in opposition to

4  DWI's prior Motion to Dismiss:  that a separate criminal case pending in this District before Judge

5  Edward M. Chen where StarKist argued it should not be required to sell its interests in a company

6  called Techpack Solutions Co. Ltd. ("Techpack") in order to pay a criminal fine somehow shows

7  that it is inadequately capitalized.  SAC ¶¶ 125, 127.  This Court has already rejected that argument.

8  *See* Order at 23:1-15.  Plaintiffs again fail to explain how the criminal case before Judge Chen

9  "shows that StarKist is inadequately capitalized such that it cannot function as a company."  Order at

10 23:12-15.  Indeed, Judge Chen determined in that case that StarKist did have the ability to pay its

11 criminal fine and civil liability.  *See* Hr'g Tr., *United States v. StarKist Co.*, No. 18-cr-513-EMC

12 (N.D. Cal. Sept. 11, 2019), Dkt. No. 179, at 41:1-41:22, 46:17-23.  Far from a corporate shell,

13 StarKist has operated as a robust business for more than a century.  StarKist, *StarKist Company*

14 *History*, available at http://starkist.com/sites/all/themes/zen_child/assets/pdf/StarKist100year.pdf.

15 Plaintiffs do not identify a single instance where StarKist failed to satisfy its judgments or debts

16 since its founding.  This is unsurprising, since StarKist has paid its debts and ongoing operating

17 expenses since DWI acquired it in 2008.  *See* Yun Decl. ¶ 10-11.  The alleged illiquidity of some of

18 StarKist's assets does not render StarKist inadequately capitalized.  *See Perfect 10, Inc. v. Giganews,*

19 *Inc.*, 847 F.3d 657, 678 (9th Cir. 2017), *cert. denied,* 138 S. Ct. 504 (2017) (upholding district court

20 decision that subsidiary was adequately capitalized where subsidiary was able to satisfy past

21 judgments against it and had regularly maintained enough capital to consistently pay its debts for

22 almost 20 years).  On the contrary, StarKist is adequately capitalized.  *See Laborers Clean-Up*, 736

23 F.2d at 524 ("Adequate capitalization means 'capital reasonably regarded as adequate to enable [the

24 corporation] to operate its business and pay its debts as they mature.'").

25         Plaintiffs' outlandish allegations that DWI "deliberate[ly] drain[ed] . . . StarKist's financial

26 coffers to avoid legal liability in other lawsuits" and that DWI "loot[ed]" StarKist are baseless

27 conclusions and do not save the SAC.  *See* SAC ¶¶ 126-28.  Plaintiffs' blustering is no substitute for

28 specific, factual allegations.

1

                             c.        *DWI And StarKist Observe Corporate Formalities.*

2   The SAC alleges that DWI operates as a *chaebol* and therefore "does not follow the

3   principles of corporate separateness and instead operates all of its subsidiaries and parents as a single

4   entity.'"  SAC ¶¶ 108, 114.  But Plaintiffs allege no facts in support of this bald assertion.  "[T]he

5   allegation of a 'chaebol' cannot substitute for factual pleadings showing that the [parent companies]

6   are agents or alter egos of the [subsidiary companies]."  *Frost v. LG Elecs. Inc.*, No. 16-CV-05206-

7   BLF, 2017 WL 1425919, at *2 (N.D. Cal. Apr. 21, 2017).

8   Courts have dismissed similar assertions that a subsidiary is a "chaebol"—with no supporting

9   argument or evidence—as based in stereotype and no more:

10         [T]he allegations regarding chaebols and personnel practices fall well outside any
      reasonable definition of "direct" evidence . . . .  With respect to the allegations
11         regarding chaebols, stereotypes cannot substitute for factual allegations, and with
      respect to the allegations regarding [the parent's] oversight of its subsidiary, they
12         neither imply unlawful conduct nor reveal collusive activity.

13   *Id.* at *2.  So too here.  Plaintiffs' allegations regarding DWI's oversight of StarKist do not imply

14   unlawful conduct or reveal any collusive activity.  "Plaintiffs are asking the Court to make too big a

15   leap."  *See id.*

16                                d.        *DWI And StarKist Do Not Have Identical Officers and Directors.*

17   Plaintiffs' final argument is that DWI and StarKist have enough overlapping personnel to

18   create a unity of interest.  But the only facts Plaintiffs allege in support of this theory is that three

19   StarKist board members have also served on the board of a DWI-<u>affiliated</u> company at some point in

20   time.  *See* SAC ¶¶ 111-13, 122.  But none of these individuals have served on DWI's board since it

21   acquired StarKist in 2008.  Yun Decl. ¶ 18.  Moreover, the Court has already rejected these

22   allegations as insufficient to establish the "unity of interest" prong of the alter ego test.  Order at

23   24:13-22; *see also Ranza*, 793 F.3d at 1073 ("Total ownership and shared management personnel are

24   alone insufficient to establish the requisite level of control.").

25                          2.        <u>Respecting the Separate Corporate Forms Will Not Result in Fraud or Injustice</u>.

26   "To establish inequity in the absence of alter ego liability, a plaintiff must plead facts

27   sufficient to demonstrate that conduct amounting to <u>bad faith</u> makes it inequitable for the corporate

28   owner to hide behind the corporate form."  Order at 24:24-26 (quoting *Stewart v. Screen Gems-EMI*

1  *Music, Inc.*, 81 F. Supp. 3d 938, 963 (N.D. Cal. 2015)) (internal quotations omitted).  The SAC

2  includes only a single, conclusory allegation of bad faith; Plaintiffs claim "[DWI] engaged in bad

3  faith by looting the assets of StarKist . . . when it sold Techpack to StarKist."  SAC ¶ 139.  Setting

4  aside that this allegation is <u>false</u>, as DWI does not and has never owned any interest in Techpack and

5  therefore could not have sold any such interest to StarKist (Yun Decl. ¶ 19), there are simply no facts

6  in the SAC to support the bare assertion that any such transaction was in bad faith.  Absent such

7  factual allegations, Plaintiffs cannot satisfy the second prong of the alter ego test.  *See Hall-Magner*

8  *Grp. v. Firsten*, No. 11-CV-312 JLS (POR), 2011 WL 5036027, at *5 (S.D. Cal. Oct. 24, 2011)

9  (rejecting the plaintiff's alter ego argument where it failed to present any evidence of fraud or

10  injustice); *Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1080, 1084

11  (C.D. Cal. 2009) (rejecting the plaintiff's alter ego argument because, "most importantly," the

12  plaintiff failed to present evidence demonstrating the corporate form was used to "perpetuate a

13  fraud" or "accomplish some other wrongful or inequitable purpose").

14  Plaintiffs nonetheless contend the second prong is satisfied because DWI uses purse seines to

15  catch tuna on its fishing vessels, some of which may be used in StarKist's canned tuna products.

16  SAC ¶¶ 131-33.  Plaintiffs may be dissatisfied with DWI's fishing practices, but those practices do

17  not demonstrate conduct amounting to bad faith.  In addition, Plaintiffs do not allege any facts

18  showing how DWI is involved in the marketing and sale of <u>anything</u> in the United States, much less

19  StarKist canned tuna products.  The reality is that DWI has no say in how StarKist's canned tuna

20  products are labeled or marketed.  Yun Decl. ¶¶ 3, 14.

21  Plaintiffs next argue that the second prong of the alter ego test is met because DWI derives

22  some benefit from its ownership of StarKist.  SAC ¶¶ 135-36.  Plaintiffs fail to explain how DWI's

23  legitimate business interest and revenue amounts to bad faith.  Nevertheless, Plaintiffs claim that

24  respecting DWI's separate corporate form would "frustrat[e] a meritorious claim."  SAC ¶ 137.

25  Plaintiffs again fail to explain how.  "StarKist is properly before the [C]ourt to answer [P]laintiffs'

26  allegations that it falsely advertised its tuna."  Order at 25:1-2; *see also Oakley, Inc. v. Trimera*

27  *Military Tech., Inc.*, No. SACV141649DOCDFMX, 2016 WL 8794459, at *8 (C.D. Cal. Jan. 22,

28

1   2016) (finding allegations of difficulty in enforcing a judgment insufficient to satisfy the second

2   prong of the alter ego test).

3           Finally, Plaintiffs argue—for the second time—that observing the separate corporate forms

4   "would result in [DWI]'s undeserved evasion of liability."  SAC ¶ 138.  This Court already rejected

5   that argument.  Order at 24:27-25:2.  Thus, "Plaintiffs fail to allege personal jurisdiction over [DWI]

6   based on an alter ego theory."  *Id.* at 25:2-3.

7           **C.      Plaintiffs Have Not Established, And Cannot Establish, That StarKist Is DWI's**
                       **Agent.**

8

9           As DWI explained in its opening brief in support of its last motion to dismiss, jurisdictional

10  contacts cannot be imputed under an agency theory.  *See* Dkt. No. 48 at 12:1-13:27 (citing *Daimler*

11  *AG v. Bauman*, 571 U.S. 117, 135 (2014)).  In *Daimler*, the Supreme Court rejected the Ninth

12  Circuit's agency theory of general jurisdiction.  *Daimler*, 571 U.S. at 135.  The Ninth Circuit has

13  since held that the Supreme Court's rejection of the agency theory "applies with equal force

14  regardless of whether the standard is used to establish general or specific jurisdiction."  *Williams*,

15  851 F.3d at 1024-25 (refusing to decide whether a plaintiff can establish specific jurisdiction under

16  the agency theory).  District courts in the Ninth Circuit have similarly "expressed reservations" as to

17  whether establishing jurisdiction under the agency theory is still possible.  *Sivilli v. Wright Med.*

18  *Tech., Inc.*, Case No. 18-cv-2162-AJB-JLB, 2019 U.S. Dist. LEXIS 105416, at *14 (S.D. Cal. June

19  24, 2019).  In any event, courts have consistently rejected attempts to invoke the agency theory

20  where the alter ego test is not satisfied.  *Id.* at *14-15.  Because the SAC fails to allege facts sufficient

21  to satisfy the alter ego test, it must fail under the agency test as well.  *See* SAC ¶¶ 116, 179 (containing

22  only conclusory allegations that StarKist is DWI's "agent").

23          Even under California state law, "[t]o sufficiently plead an agency relationship between a

24  parent company and its subsidiary, a plaintiff must allege facts that demonstrate the parent's 'degree

25  of control exerted over the subsidiary . . . is enough to reasonably deem the subsidiary an agent of

26  [the parent] under traditional agency principles.'"  Order at 25:5-8 (quoting *Sonora Diamond Corp.*

27  *v. Superior Court*, 83 Cal. App. 4th 523, 541 (2000)).  As the court in *Sonora* explained:  "Reciting

28  the legal characteristics of agency is insufficient. And simply listing those aspects of [the

1  subsidiary's] business that [the parent] dominates or controls is no better.  Notably missing are any

2  facts showing how [the parent] 'dominates or controls' these aspects of [the subsidiary's] business.

3  Accordingly, these allegations do not plausibly suggest that [the parent] has 'moved beyond the

4  establishment of general policy and direction for [the subsidiary] and in effect taken over

5  performance of the subsidiary's *day-to-day* operations in carrying out that policy."  *Id.* at 542

6  (emphasis in original).  Plaintiffs' conclusory assertion that "[DWI] controlled all aspects of

7  StarKist's canned tuna business, including production, marketing, pricing, sales, hiring, budgeting,

8  and capitalization" is not enough.  *See* SAC ¶ 116; *see also* Order at 25:18-21 (rejecting the same

9  allegation as insufficient to establish an agency relationship).  Their agency argument therefore fails.

10       **D.**     **No Amendment Can Cure the SAC's Deficiencies**.

11      Leave to amend is properly denied when amendment would be futile.  *Carrico v. City & Cty.*

12 *of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Krainski v. Nevada ex rel. Bd. of Regents of*

13 *Nevada Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010).  Plaintiffs have failed to allege any

14 facts that would subject DWI to personal jurisdiction in California, even on their second attempt.

15 This failure is fatal to Plaintiffs' claims against DWI, and Plaintiffs should not be allowed a <u>third</u>

16 bite at the apple.  No conceivable amendment will cure Plaintiffs' complaint as against DWI.  Thus,

17 the Court should deny leave to amend.[2]

18 **IV.**    **CONCLUSION**

19      DWI should be dismissed from this action without leave to amend.

20 Dated:  February 3, 2020               Respectfully submitted,

21                                */s/ Christopher Kao*

22                             Christopher Kao (SBN 237716)

23                             *Attorneys for Defendant*
                            *Dongwon Industries Co. Ltd.*

24

25

26 [2] In opposing DWI's motion to dismiss the FAC, Plaintiffs requested jurisdictional discovery.  This Court properly denied that request.  *See* Order at 25:13-23.  As this Court recognized, courts

27 regularly grant motions to dismiss for lack of personal jurisdiction where no discovery has occurred. Order at 25:13-17 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006)).  The

28 Court should deny any renewed request for jurisdictional discovery.

1

**CERTIFICATE OF SERVICE**

2          The undersigned certifies that on February 3, 2020, the foregoing document was electronically

3   filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT, NORTHERN

4   DISTRICT OF CALIFORNIA, using Court's Electronic Case Filing (ECF) system.  The ECF system

5   routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept

6   this notice as service of this document by electronic means.  Any party not receiving the Court's

7   electronic notification will be sent a copy of the foregoing document.

8

9                                          */s/ Christopher Kao*
                                            Christopher Kao (SBN 237716)
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28