United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN GARDNER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>STARKIST CO., et al.,<br><br>    Defendants. | Case No. 19-cv-02561-WHO<br><br>**ORDER DENYING STARKIST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; GRANTING DONGWON'S MOTION TO DISMISS WITH PREJUDICE**<br><br>Re: Dkt. Nos. 81, 82 |

Purchasers of StarKist Co. ("StarKist") tuna from various states bring this class action lawsuit alleging that StarKist promises consumers that its tuna products are dolphin-safe and sustainably sourced and that those promises are false and misleading. *See* Second Amended Complaint ("SAC") [Dkt. No. 75] ¶¶ 12, 14. Plaintiffs seek to hold StarKist's South Korean parent company, Dongwon Industries ("Dongwon"), accountable as well. Before me is a second round of motions to dismiss. For the reason's set forth below, StarKist's motion is DENIED, and Dongwon's motion is GRANTED with prejudice.

## BACKGROUND

I detailed plaintiffs' allegations in my December 2, 2019 Order granting in part and denying in part StarKist's motion to dismiss and granting Dongwon's motion to dismiss with leave to amend. *See Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 449-54 (N.D. Cal. 2019) (hereinafter "*Gardner I*"). I incorporate that discussion by reference here.

Plaintiffs adequately alleged their state law fraud claims in the First Amended Complaint ("FAC"), but I gave them leave to amend their RICO claim as well as their alter ego and agency theories as to Dongwon. Plaintiffs filed a Second Amended Complaint in response to that Order,

1  dropping their RICO claim. *See* Second Amended Complaint ("SAC") [Dkt. No. 75]. StarKist
2  again moves to dismiss the SAC for failure to state a claim and Dongwon again moves to dismiss
3  for lack of personal jurisdiction. *See* StarKist Motion to Dismiss the Second Amended Complaint
4  ("StarKist MTD") [Dkt. No. 81]; Dongwon Motion to Dismiss the Second Amended Complaint
5  ("Dongwon MTD") [Dkt. No. 82].

**LEGAL STANDARD**

**I.  RULE 12(B)(6): MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss if a claim fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011). In deciding a motion to dismiss for failure to state a claim, the court accepts all of the factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## II. RULE 12(B)(2): MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that jurisdiction exists. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citations omitted). Conflicts in the evidence must be resolved in the plaintiff's favor. *Id.* "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. In such cases, we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (internal punctuation and citation omitted).

## DISCUSSION

## I. FAILURE TO STATE A CLAIM AGAINST STARKIST

### A. StarKist's Motion Violates Rule 12(g)(2)'s Ban on Successive Rule 12(b) Motions

StarKist moves to dismiss plaintiffs' fraud allegations as implausible because they have failed to allege how a reasonable consumer could interpret the alleged "dolphin-safe" promise to mean completely free of any possible harm or injury to dolphins. StarKist MTD 6. Plaintiffs argue that I need not reach the merits of StarKist's argument pursuant to Federal Rule of Civil Procedure 12(g)(2). Plaintiffs' Opposition to Defendant StarKist Co.'s Motion to Dismiss Second Amended Complaint ("Oppo. StarKist MTD") [Dkt. No. 84] 2.

Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection

that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Rule 12(h)(2), in turn, allows a party to raise a defense of failure to state a claim: "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). Therefore, under Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to assert a defense that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial.

While Rule 12(g)(2) "technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion," "courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy." *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. 10-cv-05696-CRB, 2011 WL 2690437, at *2 n.1 (N.D. Cal. July 8, 2011); *see also Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) ("[C]ourts have discretion to hear a second motion under Rule 12(b)(6) if the motion is not interposed for delay and the final disposition of the case will thereby be expedited.").

Plaintiffs contend that StarKist could have made its argument in its previous motion to dismiss and therefore Rule 12(g) precludes it from now asserting it. Oppo. StarKist MTD 2. They cite *In re Packaged Seafood Prod. Antitrust Litig.*, 277 F. Supp. 3d 1167 (S.D. Cal. 2017), in which the court barred StarKist and its co-defendants from bringing a successive 12(b)(6) motion. In that case, the court "previously ruled on Defendants' motion to dismiss Plaintiffs' post-2013 [price-fixing conspiracy] allegations and *denied* the requested relief." *Id.* at 1175 (emphasis in original). The court held that defendants could not "now again request the same relief," and "decline[d] to exercise its discretion to disregard Rule 12(g)(2), despite the fact that the Ninth Circuit might well be 'forgiving of . . . [this] court's failure to follow Rule 12(g)(2).'" *Id.* (citing to *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019)).

In that case, the factual footing had shifted between the initial and second motion to dismiss. Multiple guilty pleas were entered in the United States Department of Justice's concurrent grand jury investigation and plaintiffs received approximately 2,000,000 pages of

4

documents that were previously only available to the grand jury, which meant that the new Complaint "contain[ed] much more information than their predecessors." 277 F. Supp. 3d at 1172. Although the court found that there was evidence of defendants' "valid belief that the factual footing in the case shifted such that it would be advantageous to press a new, more-particularized argument that they failed to previously raise," it nonetheless declined to reach it under its discretion pursuant to Rule 12(g)(2). *Id.* at 1175.

Here, the factual footing has not substantively changed between the FAC and SAC, both of which largely share the same factual material. The few added allegations are not, as StarKist argues, materially different than the allegations in the FAC; if anything, they clarify plaintiffs' 100% dolphin-safe allegation from the FAC. The redline comparison submitted by StarKist does not show a "brand new theory concerning how consumers allegedly interpret StarKist's advertising." Defendant StarKist Co.'s Reply in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint ("StarKist Reply") [Dkt. No. 89] 3; *see* Reply Declaration of Michael C. Lynch in Further Support of Defendant StarKist Co.'s Motion to Dismiss the Second Amended Complaint [Dkt. No. 89-1], Ex. A (redline comparison between the FAC and SAC); *see also* Oppo. StarKist MTD 5-8 (chart showing minimal alterations between the FAC and SAC).

As I previously found in the FAC, plaintiffs' fraud allegation in the SAC is also based on StarKist's reassurance to consumers that "[its] tuna is 100% dolphin-safe . . . using fishing methods that do not harm dolphins, exceeding the safety requirements of the [Dolphin Protection Consumer Information Act ("DPCIA"), 16 U.S.C. § 1385]." SAC ¶ 38; *Gardner I*, 418 F. Supp. 3d at 459 ("Plaintiffs have plausibly alleged how StarKist advertised a higher dolphin-safe standard to its consumers and why this promise is false given the fishing techniques it uses."). Because the allegations are not substantively different in the SAC, StarKist's argument could have been raised in its first motion to dismiss and its motion violates Rule 12(g)(2)'s ban on successive Rule 12(b) motions.

StarKist's contention that the SAC asserts new allegations is based on its own continued mischaracterization of this case. StarKist Reply 3. In its previous motion, StarKist argued that this case is about its compliance with the federal labeling standard set in the DPCIA. But, as made

5

clear at both the hearing and in the Order, the question presented is not whether StarKist satisfies the DPCIA labeling requirements but rather "whether StarKist violates its *own* dolphin-safe and sustainability promises to plaintiffs and other consumers when it sources its tuna in way it *knows* kill and harm dolphins." *Gardner I*, 418 F. Supp. 3d at 455 (emphasis added). Plaintiffs adequately pleaded their state law fraud claims in the FAC because they alleged that: "(i) they purchased StarKist tuna because they believed it was dolphin-safe based on defendants' statements about the product; (ii) the statements were not true given that the fishing methods used by defendants," such as purse seine nets, longlines, and fish aggravating devices ("FADs"), "are known to harm or kill at least some dolphins; and (iii) they would not have purchased the products if they had known the statements were not true." *Id.* at 456 (internal quotation marks and citation omitted).

Citing to paragraph 71 of the FAC, StarKist unpersuasively argues that the FAC alleged that reasonable consumers interpret the "dolphin-safe" logo to mean that StarKist complies with the DPCIA requirements. StarKist Reply 4. "[T]he rest of the FAC, including the type of causes of actions alleged, clarify what this case is really about – false advertising." *Gardner I*, 418 F. Supp. 3d at 455. I found that paragraph 71 of the FAC is an "inartfully pleaded paragraph" that "is not enough to recharacterize the rest of the allegations in the FAC." *Id.* The 100% dolphin-safe allegation is not a new theory alleged in the SAC, but rather one that was recognized in the FAC and simply clarified in the SAC. *See* SAC ¶¶ 12, 38.

In sum, the court in *In re Packaged Seafood Prod. Antitrust Litig.* declined to allow a successive 12(b)(6) motion even though the factual footing changed. Here the factual footing has not even changed in a way that would give me some pause before using my discretion to ban this successive 12(b)(6) motion. StarKist could have raised its argument in its initial motion to dismiss. StarKist's motion to dismiss to the SAC is DENIED.

### B. Plaintiffs' Assertions Regarding How Reasonable Consumers Interpret StarKist's Representations Are Plausible

Even if Rule 12(g)(2) did not bar StarKist's argument regarding plaintiffs' fraud allegations, the argument fails on the merits. StarKist argues that plaintiffs fail to allege how

6

reasonable consumers would interpret StarKist's dolphin-safe label and statements as guaranteeing no harm or injury whatsoever to dolphins. StarKist MTD 9. It contends that the alleged dolphin-safety standard is implausible because it cannot be satisfied by the pole-and-line and trolling fishing method that plaintiffs affirmatively claim are dolphin-safe because even that method results in unintended bycatch of dolphins. StarKist MTD 6-7.

Plaintiffs describe the pole-and-line and trolling method as one that "ensure[s] that dolphins (and other bycatch) are not harmed in the fishing process because fish are caught using barbless hooks and poles one at a time near the sea's surface and unintended captured species are easily released in a timely manner." SAC ¶ 41. Interpreting this allegation, StarKist argues that the "capture and release of dolphins alone falls short of the no harm to dolphins whatsoever standard that Plaintiffs seek to impose on [it]." StarKist MTD 9.

But StarKist misconstrues the allegations as an absolute guarantee that precludes even accidental harm. Oppo. StarKist MTD 10. Plaintiffs are not defining "actually dolphin-safe" as a method that can prevent all accidental or unintentional harm to dolphins. They concede that even when employing the best efforts to protect dolphins, some might be *accidentally* injured and even killed when fishing for tuna. Instead, plaintiffs allege that StarKist promises dolphin-safety while at the same time employing fishing methods that are widely *known* to kill and harm "substantial number of dolphins." SAC ¶ 24; *see also* FAC ¶ 24.

This is precisely what I held was adequately alleged in their FAC. *Gardner* I, 418 F. Supp. 3d at 455 (plaintiffs alleged StarKist's dolphin-safe promise is false because "[it] uses other methods like purse seine nets, longlines and FADs that are *known* to kill or harm at least some dolphins") (emphasis added); *Id.* at 457 ("Plaintiffs plausibly assert that StarKist's tuna is not actually dolphin-safe because the fishing methods it uses are *known* to harm or kill at least some dolphins. Specifically, they allege that StarKist uses modern purse seine nets, longlines, and FADs and that these techniques are *known* to harm or kill at least some dolphins.") (emphasis added). Plaintiffs repeat these allegations in their SAC and plausibly plead that StarKist misleads consumers into believing it is more committed to dolphin safety and sustainability than it really is. *See* SAC ¶¶ 40-55; *see also id.* ¶ 19 (StarKist chairman stating that its "policy will save dolphin

7

lives," and that "[n]othing short of dolphin-safe tuna will be acceptable"); FAC ¶ 19 (same allegation).

These allegations are not like those in StarKist's two supporting cases. In *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019), the Ninth Circuit was unconvinced by plaintiffs' construction of the term "diet" on soda cans as allegedly misleading consumers into believing the product would assist in weight loss. The Ninth Circuit found that plaintiffs' interpretation of the term "diet" belied both the dictionary definition of the word when used as an adjective and the common usage of that phrase in the marketplace to denote lower calorie counts, not healthy weight loss management. *Id.* at 1229-30. Similarly, in *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016), plaintiffs claimed that the stated weight of a cosmetic lip product was false and misleading because approximately 25% of the lip product was not dispensed by the packages' screw-like dispensing mechanism. But the Ninth Circuit found that "[t]he reasonable consumer understands the general mechanics of these dispenser tubes and further understands that some product may be left in the tube . . ." *Id.* at 965.

Plaintiffs here do not plead that StarKist promised consumers an absolute guarantee; they concede that reasonable consumers understand that even when employing the best efforts to protect dolphins, some might be *accidentally* injured and even killed when fishing for tuna. Rather, plaintiffs allege that StarKist misled consumers by promising a dolphin-safety level higher than the DPCIA requirements while at the same time employing fishing methods widely *known* to kill and harm substantial numbers of dolphins. For these reasons, StarKist's motion to dismiss the SAC is DENIED.

## II. LACK OF PERSONAL JURISDICTION OVER DONGWON

I previously granted Dongwon's motion to dismiss the FAC for lack of personal jurisdiction because plaintiffs failed to plead facts sufficient to make out a prima facie case that StarKist and Dongwon are alter egos or agents of each other. *Gardner* I, 418 F. Supp. 3d at 462. Because the allegations in plaintiff's SAC still fail to make that showing, I GRANT Dongwon's

motion to dismiss with prejudice.[1]

### A. Alter Ego

To plausibly allege alter ego liability, plaintiffs must sufficiently plead that "(1) there is such unity of interest and ownership that the separate personalities or the two entities no longer exists, and [that] (2) failure to disregard their separate identities would result in fraud or injustice." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citing *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)). I accept that the unity-of-interest factors are sufficiently pleaded. *See In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1065 (S.D. Cal. 2017). In their SAC, plaintiffs make note of this decision and assert the same facts alleged in that case. SAC ¶ 122 ("Judge Sammartino based her decision on the following alleged facts, which Plaintiffs also hereby allege and which meet four of the nine 'unity-of-interest' factors.").

But plaintiffs are still required to plead the second prong of alter ego liability. "To establish inequity in the absence of alter ego liability, a plaintiff must plead facts sufficient to demonstrate that conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 963 (N.D. Cal. 2015). "Inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability." *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010).

*In re Packaged Seafood Prod. Antitrust Litig.* does not help plaintiffs on the second prong. It "ultimately found no alter ego basis existed because plaintiffs did not allege that an inequitable result will follow if the veil is not pierced." *Gardner I*, 418 F. Supp. 3d at 465 n.8 (citing *In re*

---

[1] Plaintiffs' opposition solely focuses on their alter ego allegations and does not address the purported agency relationship between StarKist and Dongwon. Dongwon argues that plaintiffs have waived their agency relationship argument, but even if consider it, the SAC includes the same conclusory allegation that I previously found inadequate. *See Gardner I*, 418 F. Supp. 3d at 465-66; *compare* SAC ¶ 116, *with* FAC ¶ 107 ("Dongwon controlled all aspects of StarKist's canned tuna business, including production, marketing, pricing, sales, hiring, budgeting, and capitalization.").

9

*Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d at 1063).

Plaintiffs similarly fail to allege an inequitable result here. First, they argue that Dongwon "directly participated in" StarKist's false advertising campaign. Plaintiffs' Opposition to Defendant Dongwon's Motion to Dismiss Second Amended Complaint ("Oppo. Dongwon MTD") [Dkt. No. 85] 10. But plaintiffs' allegations in support of this contention are not new; their argument in opposition to this motion is almost verbatim to their opposition to Dongwon's initial motion to dismiss the FAC. *Compare* SAC ¶ 31, *with* FAC ¶ 31; *compare* SAC ¶¶ 45-53, *with* FAC ¶¶ 45-53; *compare* SAC ¶ 56, *with* FAC ¶ 56; *compare* SAC ¶ 59, *with* FAC ¶ 59; *compare* SAC ¶ 60, *with* FAC ¶ 60; *compare* SAC ¶¶ 61-62, *with* FAC ¶ 61-62; *compare* SAC ¶ 115, *with* FAC ¶ 106; *compare* SAC ¶ 168, *with* FAC ¶ 205; *compare* Oppo. Dongwon MTD 10-13, *with* Plaintiffs' Opposition to Defendant Dongwon's Motion to Dismiss First Amended Complaint [Dkt. No. 55] 9-12. I have already rejected these allegations as insufficient to establish "conduct amounting to bad faith." *Gardner I*, 418 F. Supp. 3d at 465.

Second, plaintiffs contend that respecting Dongwon's separate corporate form would "frustrat[e] a meritorious claim" and would "result in Dongwon's undeserved evasion of liability." Oppo. Dongwon MTD 12. Again, they fail to allege how. *See Gardner I*, 418 F. Supp. 3d at 465 ("StarKist is properly before the court to answer plaintiffs' allegations that it falsely advertised its tuna.").

Finally, plaintiffs previously pointed to a separate criminal case before Judge Edward M. Chen, where StarKist provided its financial statements to argue that it should not be required to sell its $154 million asset in Techpack Solutions Co. Ltd. in order to pay a criminal fine greater than $50 million. *Gardner I*, 418 F. Supp. 3d at 464. But plaintiffs failed to "explain how Judge Chen's finding that Dongwon could help StarKist pay its criminal fine necessarily shows that StarKist is inadequately capitalized such that it cannot function as a company." *Id.* Their allegations in the SAC fare no better. The only paragraph added to this point is conclusory. *See* SAC ¶ 139 ("Fifth, Dongwon engaged in bad faith by looting the assets of StarKist as it was already in a 'precarious' financial position when it sold Techpack to StarKist at the time StarKist knew it was under criminal investigation for illegal price-fixing.").

10

Dongwon asserts that it does not own and has never owned any interest in Techpack and therefore could not have sold any such interest to StarKist. Dongwon MTD 10; *see* Declaration of Kiyun Yun in Support of Dongwon Industries Co. Ltd.'s Motion to Dismiss [Dkt. No. 82-1] ¶ 19. But even taking the plaintiffs' allegation as true, there is no factual allegation in the SAC showing that either the Techpack investment or the dividend were done in bad faith. Absent factual allegation to support this bare assertion, plaintiffs cannot satisfy the second prong of the alter ego test. *See Hall-Magner Grp. v. Firsten*, No. 11-CV-312 JLS (POR), 2011 WL 5036027, at *5 (S.D. Cal. Oct. 24, 2011) (rejecting the plaintiff's alter ego argument where it failed to present any evidence of fraud or injustice).

Plaintiffs request that I permit jurisdictional discovery. Oppo. Dongwon MTD 13. But a court need not permit discovery "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (internal quotation marks omitted). Given that plaintiffs have twice failed to assert facts sufficient to confer alter ego liability over Dongwon, Dongwon's motion to dismiss for lack of personal jurisdiction is GRANTED with prejudice.

## CONCLUSION

Dongwon's motion to dismiss is GRANTED, with prejudice, for lack of personal jurisdiction. StarKist's motion to dismiss the fraud claims for failure to state a claim is DENIED.

**IT IS SO ORDERED.**

Dated: March 31, 2020

William H. Orrick
United States District Judge

11