1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   ROXANE A. POLIDORA (CA Bar No. 135972)
2  roxane.polidora@pillsburylaw.com
   LEE BRAND (CA Bar No. 287110)
3  lee.brand@pillsburylaw.com
   Four Embarcadero Center, 22nd Floor
4  San Francisco, CA  94111
   Telephone: (415) 983-1000
5  Facsimile: (415) 983-1200

6
   Attorneys for Defendant
7  STARKIST CO.

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11

12  WARREN GARDNER, et al., on behalf of       Case No. 3:19-cv-02561-WHO
    Themselves and all others similarly situated,
13                                              **STARKIST CO.'S MOTION TO**
                      Plaintiffs,               **DENY CLASS CERTIFICATION**
14
          v.                                    Date:   October 21, 2020
15                                              Time:   2:00 p.m.
    STARKIST CO., a Delaware Corporation,       Place:  Courtroom 2, 17th Floor
16                                              Judge:  Hon. William H. Orrick
                      Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. ISSUES PRESENTED ........................................................................................... 2

III. FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

   A. Procedural Background ................................................................................... 2

   B. StarKist's Dolphin Safety Representations .................................................... 4

      1. StarKist's Dolphin-Safe Labeling ............................................................ 5

      2. StarKist's Non-Label Dolphin-Safe Representations ............................... 6

   C. Plaintiffs' Claims ........................................................................................... 7

IV. ARGUMENT ........................................................................................................ 8

   A. Legal Standard ............................................................................................... 8

      1. Motion to Deny Class Certification .......................................................... 8

      2. Plaintiffs' Burden of Proof Under Federal Rule of Civil Procedure 23 .............. 9

   B. The Court Should Deny Certification Of The Purported Class And Subclasses Under Rule 23(b)(3) Because Individualized Determinations Regarding Exposure to StarKist's Representations Would Predominate ................................. 10

      1. Plaintiffs' Theory of the Case Depends Upon Exposure to StarKist's Non-Label Representations ................................................................................. 10

      2. Plaintiffs Cannot Demonstrate that Most Purported Class Members Were Exposed to StarKist's Non-Label Representations ............................................. 13

      3. A Narrowed Class Would Not Change this Result ................................... 16

      4. Class Discovery Would Not Change this Result ...................................... 17

   C. The Court Should Deny Certification Of The Purported Nationwide Unjust Enrichment Class Under Rule 23(b)(3) Because Laws From All 50 States Would Apply, Precluding Predominance .................................................................. 19

      1. Plaintiffs Cannot Satisfy Constitutional Due Process for Nationwide Application of California Unjust Enrichment Law ............................................. 19

      2. The Governmental Interest Test Also Precludes Nationwide Application of California Unjust Enrichment Law ................................................................... 21

D.  The Court Should Deny Certification Of Any Class Under Rule 23(b)(2)
    Because Plaintiffs Primarily Seek Monetary Relief ................................................. 24

V.  CONCLUSION ........................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Allen v. Conagra Foods, Inc.*,
   331 F.R.D. 641 (N.D. Cal. 2019) ...................................................................... 19, 20, 21

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................................... 10

*Amey v. Cinemark USA Inc*,
   No. 13-CV05669WHO, 2014 WL 4417717 (N.D. Cal. Sept. 5, 2014) ...................... 2, 9

*Bias v. Wells Fargo & Co.*,
   312 F.R.D. 528 (N.D. Cal. 2015) ................................................................................. 22

*Cabral v. Supple LLC*,
   608 F. App'x 482 (9th Cir. 2015) ................................................................................. 14

*Colman v. Theranos, Inc.*,
   325 F.R.D. 629 (N.D. Cal. 2018) ................................................................................. 14

*Conn. Ret. Plans & Trust Funds v. Amgen Inc.*,
   660 F.3d 1170 (9th Cir. 2011) ........................................................................................ 9

*Cover v. Windsor Surry Co.*,
   No. 14-CV-05262-WHO, 2017 WL 9837932 (N.D. Cal. July 24, 2017) ...................... 10

*Doninger v. Pac. Nw. Bell, Inc.*,
   564 F.2d 1304 (9th Cir. 1977) .................................................................................... 9, 17

*Downey v. Pub. Storage, Inc.*,
   44 Cal. App. 5th 1103 (2020), *review denied* (May 27, 2020) ...................................... 14

*Ehret v. Uber Techs., Inc.*,
   148 F. Supp. 3d 884 (N.D. Cal. 2015) ................................................................... passim

*Ellis v. Costco Wholesale Corp.*,
   657F.3d 970 (9th Cir. 2011) ......................................................................................... 24

*Farar v. Bayer AG*,
   No. 14-CV-04601-WHO, 2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) ......... 19, 20, 21

*Fed. Deposit Ins. Corp. v. Dintino*,
   167 Cal. App. 4th 333 (2008) ......................................................................................... 8

*In re Clorox Consumer Litig.*,
   301 F.R.D. 436 (N.D. Cal. 2014) ...................................................................... 12, 13, 15

iii

*In re MyFord Touch Consumer Litig.*,
 No. 13-CV-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016)...................... 15

*In re Seagate Tech. LLC*,
 326 F.R.D. 223 (N.D. Cal. 2018) ................................................................................. 23

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
 No. 3:19-CV-2284-H-KSC, 2020 WL 2214152 (S.D. Cal. May 7, 2020).................... 15

*In re Tobacco II Cases*,
 46 Cal. 4th 298 (2009)............................................................................................ 13, 14

*Johnson v. Q.E.D. Envtl. Sys. Inc.*,
 No. 16-CV-01454-WHO, 2017 WL 1685099 (N.D. Cal. May 3, 2017)............... 8, 9, 10

*Kamm v. Cal. City Dev. Co.*,
 509 F.2d 205 (9th Cir. 1975) ................................................................................... 9, 17

*Makaeff v. Trump Univ.*, LLC,
 No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ............. 16

*Mantolete v. Bolger*,
 767 F.2d 1416 (9th Cir. 1985), *as amended* (Aug. 27, 1985) ........................................ 9

*Mazza v. Am. Honda Motor Co., Inc.*,
 666 F.3d 581 (9th Cir. 2012) ............................................................................... passim

*Moua v. Jani-King of Minn., Inc.*,
 No. CIV08-4942ADMJSM, 2010 WL 935758 (D. Minn. Mar. 12, 2010) ................... 15

*Ogden v. Bumble Bee Foods, LLC*,292
 F.R.D. 620 (N.D. Cal. 2013) ...................................................................................... 18

*Ono v. Head Racquet Sports USA, Inc.*,
 No. CV134222FMOAGRX, 2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) .................. 15

*Opperman v. Kong Techs.*, Inc.,
 No. 13-CV-00453-JST, 2017 WL 3149295 (N.D. Cal. July 25, 2017)......................... 14

*Ries v. Arizona Beverages USA LLC*,
 287 F.R.D. 523 (N.D. Cal. 2012) ............................................................................... 25

*Russell v. Kohl's Dep't Stores, Inc*,
 No. EDCV1501143RGKSPX, 2015 WL 12748629 (C.D. Cal. Dec. 4, 2015) ............. 24

*Sloan v. Gen. Motors LLC*,
 No. 16-CV-07244-EMC, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020)........................ 8

*Sonner v. Premier Nutrition Corp.*,
 No. 18-15890, 2020 WL 4882896 (9th Cir. August 20, 2020) .................................... 23

iv

*Stitt v. Citibank*,
No. 12-CV-03892-YGR, 2015 WL 9177662 (N.D. Cal. Dec. 17, 2015)................ 19, 22

*Todd v. Tempur-Sealy Int'l, Inc.*,
No. 13-CV-04984-JST, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016)..................... 22, 23

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) ................................................................. 8, 9, 17

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................ 9, 24

*Zeiger v. WellPet LLC*,
304 F. Supp. 3d 837 (N.D. Cal. 2018) ........................................................ 19

## Statutes and Codes

Arizona Revised Statutes Ann.
Section 12-541 ................................................................................... 8

California Business and Professions Code
Section 17208 ................................................................................... 8

California Civil Code
Section 1783 ..................................................................................... 8

California Code of Civil Procedure
Section 338 ....................................................................................... 8

Florida Statutes Ann.
Section 95.11(3)(f) ............................................................................. 8

Michigan Compiled Laws Ann.
Section 445.911(7) ............................................................................. 8

Minnesota Statutes Ann.
Section 541.05, subdiv. 1(2).................................................................. 8

New Jersey Statutes Ann.
Section 2A:14-1 ................................................................................. 8

New York Consolidated Laws, Civil Practice Law and Rules
Section 214 ....................................................................................... 8

## Rules

Federal Rules of Civil Procedure
Rule 12.............................................................................................. 3
Rule 23....................................................................................... passim

v

1

## <u>NOTICE OF MOTION AND MOTION</u>

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on October 21, 2020, at 2:00 p.m., or as soon

4 thereafter as the matter may be heard, in Courtroom 2, 17th floor, 450 Golden Gate

5 Avenue, San Francisco, California, before the Honorable William H. Orrick, Defendant

6 StarKist Co. ("StarKist") will and hereby does move the Court, pursuant to Federal Rule of

7 Civil Procedure 23, for an order denying class certification on the grounds that: (i) none of

8 Plaintiffs' purported classes meets the predominance requirement of Rule 23(b)(3) because

9 individualized determinations would be required regarding exposure to the StarKist

10 representations at issue; (ii) Plaintiffs' purported nationwide unjust enrichment class also

11 fails the predominance requirement of Rule 23(b)(3) because application of the laws of all

12 50 states would be required; and (iii) none of Plaintiffs' purported classes can be certified

13 under Rule 23(b)(2) because Plaintiffs primarily seek monetary relief.

14

The motion to deny class certification is based on this Notice of Motion and Motion,

15 the following Memorandum of Points and Authorities, the Declaration of Andy Mecs

16 ("Mecs Decl."); the Declaration of Lee Brand ("Brand Decl."), the complete files in this

17 action, the argument of counsel, and such other matters as the Court may consider.

18

19

20

21

22

23

24

25

26

27

28

STARKIST'S MOTION TO DENY CLASS CERTIFICATION
Case No. 3:19-cv-02561-WHO

1        <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.      INTRODUCTION**

3            Plaintiffs seek to represent a nationwide class of all persons that purchased StarKist

4    tuna products in the United States, as well as subclasses of consumers who are citizens of

5    certain states and purchased StarKist tuna products in those states.  These purported classes

6    and subclasses cannot be certified for three separate reasons, none of which can be cured.

7    Class certification should be denied at this early stage in order to realize efficiencies and

8    preserve judicial and party resources.

9            ***First***, Plaintiffs' proposed class and subclasses cannot meet the predominance

10   requirement of Rule 23(b)(3) because Plaintiffs' claims are based on a handful of non-label

11   StarKist representations, made over a 30-year period, to which Plaintiffs cannot possibly

12   show that most class members were exposed.  Plaintiffs assert that consumers understand

13   the dolphin-safe logo on StarKist tuna products to promise a superior level of dolphin safety

14   than is provided for by statute because of the following StarKist representations about

15   dolphin safety: 1) a press conference from 30 years ago; 2) a joint press release from eight

16   years ago; 3) two crowded secondary pages of StarKist's website; 4) four social media

17   posts—out of tens of thousands—over the past decade; and 5) an additional social media

18   post and two statements to news outlets made in response to the filing of this action.

19   Allowing Plaintiffs to revise their class definition and/or waiting for them to take class

20   discovery would not change this result because there is no manner in which StarKist

21   broadly exposed any group of consumers to a campaign touting its supererogatory dolphin

22   safety efforts.

23           ***Second***, Plaintiffs' purported nationwide unjust enrichment class separately fails the

24   predominance requirement of Rule 23(b)(3) because it would require the application of the

25   laws of all 50 states.

26           ***Third***, Plaintiffs cannot certify a class under Rule 23(b)(2) because they primarily

27   seek monetary—not declaratory and injunctive—relief.

28

1    In sum, it is clear at this "early practicable time," Fed. R. Civ. P. 23, that Plaintiffs'

2  theory of this case does not support class treatment.  Accordingly, the Court should deny

3  class certification without the "expensive proposition" of "[c]lasswide discovery on such

4  broad claims."  *Amey v. Cinemark USA Inc*, No. 13-CV05669WHO, 2014 WL 4417717, at

5  *3 (N.D. Cal. Sept. 5, 2014).

6  **II.    ISSUES PRESENTED**

7    1.    Whether certification of any class under Rule 23(b)(3) should be denied

8  because individualized determinations regarding exposure to the StarKist representations at

9  issue would predominate.

10    2.    Whether certification of a nationwide unjust enrichment class under Rule

11  23(b)(3) should be denied for the separate reason that the necessary application of the laws

12  of all 50 states would defeat predominance.

13    3.    Whether certification of any class under Rule 23(b)(2) should be denied

14  because Plaintiffs primarily seek monetary relief.

15  **III.    FACTUAL AND PROCEDURAL BACKGROUND**

16    **A.    Procedural Background**

17    On May 13, 2019, sixteen named plaintiffs[1] (the "Initial Plaintiffs") filed an initial

18  complaint in this action against Defendant StarKist Co. ("StarKist"), *see* Dkt. 1; and on

19  June 17, 2019 the Initial Plaintiffs filed a First Amended Complaint against StarKist, *see*

20  Dkt. 37 ("FAC").  On November 6, 2019, the Court heard oral argument on StarKist's

21  motion to dismiss the FAC, *see* Dkt. 67 ("Hr'g Tr."); and on December 2, 2019 the Court

22  entered an order granting in part and denying in part StarKist's motion, *see* Dkt. 71 ("First

23  MTD Order").  Relevant here, the First MTD Order found that that the Initial Plaintiffs had

24  "met the pleading standard for their state law fraud claims" because they had sufficiently

25

26  [1]    Lori Luciano, Fidel Jamelo, Lori Myers, Warren Gardner, Avraham Isac Zelig,

27  Kathleen Miller, Colleen McQuade, Angela Cosgrove, James Borruso, Robert Nugent,
Megan Kiihne, Ken Petrovcik, Jocelyn Jamelo, Autumn Hessong, Anthony Luciano, and

28  Robert McQuade.

1    alleged, *inter alia*, that "StarKist entered into a pervasive advertising campaign since 1990

2    that led consumers to believe it sets itself to a higher dolphin-safe standard than required

3    under the Dolphin Protection Consumer Information Act ('DPCIA') 16 U.S.C. § 1385."

4    First MTD Order at 1.[2]

5         On December 23, 2019, the Initial Plaintiffs plus five additional named plaintiffs[3]

6    (collectively, "Plaintiffs") filed a Second Amended Complaint against StarKist.  *See* Dkt.

7    75 ("SAC").  StarKist's motion to dismiss the SAC was denied without oral argument.  *See*

8    Dkt. 92 ("Second MTD Order").

9         The Second MTD Order found that StarKist's motion to dismiss the SAC was in

10    violation of Rule 12(g)(2)'s discretionary ban on successive Rule 12(b) motions, and that

11    because the "factual footing" had remained the same since the FAC, it was appropriate for

12    the Court to apply the ban.  Dkt. 92 at 3-6; *see also id.* at 6 ("The 100% dolphin-safe

13    allegation is not a new theory alleged in the SAC, but rather one that was recognized in the

14    FAC and simply clarified in the SAC.").  The order also found that StarKist's arguments

15    failed on the merits because Plaintiffs "plausibly plead that StarKist misleads consumers

16    into believing it is more committed to dolphin safety and sustainability than it really is."  *Id.*

17    at 7.[4]

18         On April 28, 2020, StarKist filed an Answer to the SAC.  *See* Dkt. 97.  On May 20,

19    2020, current counsel first appeared on behalf of StarKist.  *See* Dkt. 101, 102.  On May 21,

20    2020, StarKist's former counsel moved to withdraw from this case, *see* Dkt. 103; and on

21    May 27, 2020, the Court granted that motion, *see* Dkt. 106.

22

23

---

24    [2]   The First MTD Order also found that the Initial Plaintiffs did "not adequately plead a
RICO claim between StarKist and its alleged co-conspirators because they simply

25    characterize StarKist's routine commercial dealings as evidence of a RICO enterprise."  *Id.*

26    [3]   Heather Meyers, Rachel Pedraza, Amy Taylor, Tara Trojano, and Jason Petrin.

27    [4]   The FAC and SAC also named Dongwon Industries Co. Ltd. ("DWI") as a defendant.
*See* Dkts. 44, 75.  The Second MTD Order dismissed all claims against DWI with prejudice

28    for lack of personal jurisdiction.  Dkt. 92 at 8-11.

3

1       **B.      StarKist's Dolphin Safety Representations**

2           Plaintiffs recognize federal "fishing regulations" "tolerate some dolphin mortality"

3   as set forth in "the Dolphin Protection Consumer Information Act ('DPCIA') of 1990," but

4   allege that StarKist makes "promises of 100% dolphin safety" that "exceed DPCIA

5   requirements" by "representing to consumers that no dolphins were killed or harmed in

6   capturing their tuna."  SAC ¶¶ 11-12; *see also id.* ¶¶ 30-31 ("the Act and implementing

7   regulations allow for some incidental dolphin injuries and deaths," but StarKist "falsely

8   represent[s] that StarKist tuna products are dolphin-safe – meaning 'no' dolphins were

9   killed or seriously injured").  The Court has repeatedly made clear that this suit cannot be

10  resolved by arguing that "StarKist doesn't violate the DPCIA" because "that's not what the

11  allegation is."  Hr'g Tr. at 24:14-17.  Rather, "plaintiffs allege that StarKist misled

12  consumers by promising a dolphin-safety level higher than the DPCIA requirements."

13  Second MTD Order at 8.[5]  Plaintiffs' operative complaint states: "Reasonable consumers

14  rightly believe [StarKist's] plain words that 'dolphin-safe' means 'no' dolphins were

15  harmed in the process of catching the tuna in StarKist products.  That is precisely the

16  message that Defendants have consistently conveyed to the public in their widespread and

17  long-term advertising and marketing campaign, which predates the DPCIA and promises

18  consumers something more than what the DPCIA requires."  SAC ¶ 71; *see also* Dkt. 84

19  ("Second MTD Opp.") at 13 ("this case alleges StarKist's own dolphin-safe pledge, and the

20  long-term marketing campaign that promotes it, makes promises that go above and beyond

21  mere compliance with the DPCIA").

22          The specific StarKist representations that allegedly make a "dolphin-safe" promise

23  that is more stringent than DPCIA compliance fall into two categories: (1) "use of the

24

25

_____

26  [5]    *See also* First MTD Order at 10 ("DPCIA set[s] the floor for what a 'dolphin-safe'

27  promise must mean," but does "'not prevent manufacturers of tuna products from making
    their own, albeit more stringent, dolphin-safe promises to consumers.'" (quoting Dkt. 53

28  ("First MTD Opp.") at 5)).

1 alternative dolphin-safe logo" on product labels rather than the official DPCIA dolphin-safe

2 logo; and (2) other non-label "dolphin-safe representations."  SAC ¶ 70.

3             **1.**       **StarKist's Dolphin-Safe Labeling**

4        Plaintiffs allege that on "every can and pre-packaged tuna pouch, Defendant

5 StarKist states that the tuna products are 'Dolphin Safe' with its own special dolphin logo."

6 SAC ¶ 17.  StarKist's dolphin-safe logo appears as a small image, generally on the back of

7 its tuna products, as depicted below (red circle added):

8

9

10

11

12

13

14



15 Mecs Decl. ¶ 2.

16        Plaintiffs focus on the distinction between StarKist's logo and the "DPCIA-

17 established official dolphin-safe mark."  SAC ¶ 28.  The official DPCIA logo appears

18 below on the left while StarKist's logo appears below on the right:

19

20

21         

22

23

24 *Id*. ¶¶ 20, 28.  Plaintiffs allege that a reasonable consumer understands the logo on the left

25 to mean "some dolphin mortality" in compliance with the DPCIA, but understands the logo

26 on the right to mean "no dolphins were killed or harmed" in light of StarKist's "widespread

27 and long-term marketing campaign."  *Id*. ¶ 12.  Circularly, Plaintiffs allege that the "special

28 dolphin-safe logo on [StarKist's] tuna products" ***itself*** is a primary component of StarKist's

5

1    "widespread and long-term advertising and marketing campaign" that impacts the meaning

2    that a consumer attaches to StarKist's logo.  *Id.* ¶ 71.

3                    **2.    StarKist's Non-Label Dolphin-Safe Representations**

4            Beyond the logo itself, however, Plaintiffs identify only a handful of representations

5    over a 30-year period that comprise StarKist's purportedly "widespread" campaign

6    promising more than the DPCIA requires.  SAC ¶ 71.  Specifically, Plaintiffs cite to:

7        i.    the 1990 announcement of StarKist's dolphin-safe policy, *id.* ¶¶ 19-20, 71; *see*

8              *also* Brand Decl. Ex. 1 (news article cited in SAC);

9        ii.   limited statements on the "FAQ" and "Natural Resources & Policies" subpages

10             of StarKist's website; SAC ¶¶ 18, 71; *see also* Mecs Decl. Exs. A-B (subpages);

11       iii.  a 2012 joint press release responding to certain WTO findings, SAC ¶¶ 38, 71;

12             *see also* Mecs Decl. Ex. C (press release);

13       iv.   four social media posts over the past decade, SAC ¶ 71; *see also* Mecs Decl.

14             Exs. D-F (social media posts); and

15       v.    an additional social media post and two statements to news outlets in response to

16             the filing of this action, SAC ¶ 72; *see also* Mecs Decl. Ex. G (additional post).

17   *See also* Hr'g Tr. at 11:2-13:15 (Plaintiffs' counsel acknowledging to the Court that "I

18   imagine you're going to want to know where [in] the complaint that we allege that StarKist

19   dolphin safe label is something different than what the DPCIA requires," identifying the

20   same handful of representations set forth above, and then explaining "these are promises

21   and pledges that, as you have recognized, go well above the DCPIA [sic] requirements,

22   takes them into a whole other league").  The only representations that were made between

23   May 13, 2013 and May 13, 2019—*i.e.*, between the commencement of the longest

24   applicable statute of limitations period and the filing of this action—are those on StarKist's

25   website and a single social media post.

26           StarKist's website contains extremely limited dolphin-related content.  The FAQ

27   subpage includes 20 different questions, only one of which—the sixteenth—relates to

28   dolphin safety.  Mecs Decl. ¶ 3 and Ex. A at 4-5.  The lengthy Natural Resources & Policies

                                                  6

1   subpage includes just three sentences about dolphin safety.  *Id.* ¶ 4 and Ex. B at 2.

2   Similarly, the only pre-suit social media post identified by Plaintiffs during any statute of

3   limitations period barely mentions dolphin safety.  Specifically, this January 10, 2018

4   Facebook post referenced in the SAC reads in full: "Our Tuna Creations BOLD Rice &

5   Beans in Hot Sauce pouches are packed with heat and ready to eat! Oh, and did we mention

6   they're soy-free, wild caught and dolphin safe? #StarKistTunaCreations #SoyFree

7   #WildCaught #StarKistGoesBold #GoBoldorGoHome #TearEatGo."  *Id.* ¶ 10 and Ex. F.[6]

8   While StarKist has made tens of thousands of Facebook and Twitter posts, it can only

9   identify one other such post making any mention of dolphins that is not already identified in

10  the SAC—a January 10, 2018 Twitter post that is substantively identical to the January 10,

11  2018 Facebook post.  *Id.* ¶ 12 and Ex. H.  Similarly, StarKist has not engaged in any non-

12  social media advertising, or otherwise targeted consumers with communications focused on

13  dolphins in the past decade.  *Id.* ¶ 13.

14      Consistent with this extreme paucity of non-label representations regarding dolphin

15  safety, the Plaintiffs do not allege they were exposed to ***any*** such non-label representations.

16  SAC ¶¶ 81-101.  Although this action was brought by twenty-one different named Plaintiffs

17  from eight different states, the only exposure to a StarKist representation about dolphin-

18  safety that each named Plaintiff alleges is "viewing the dolphin-safe mark" directly on

19  StarKist's tuna products.  *Id.*

20      **C.    Plaintiffs' Claims**

21      Based on the above alleged misrepresentations regarding dolphin safety, Plaintiffs

22  assert claims against StarKist for unjust enrichment and for violation of California, Florida,

23  New York, New Jersey, Minnesota, Arizona, and Michigan consumer protection statutes.

24  SAC ¶ 3.  They seek to represent the following nationwide class in connection with their

25  unjust enrichment claim: "All persons who, within the applicable statute of limitations

26

27  _____

[6]     The older social media posts identified by Plaintiffs similarly contain minimal content

28  regarding dolphin safety.  *Id.* ¶¶ 7-9 and Exs. D-E.

1   period until the date notice is disseminated, purchased the tuna products in the United

2   States." *Id*. ¶¶ 141, 250-55.  In addition, in connection with each of the seven states for

3   which they bring a statutory claim, Plaintiffs seek to represent the following state-specific

4   subclass: "All [state] citizens who within the applicable statute of limitations period until

5   the date notice is disseminated, purchased the tuna products in [state]." *Id*. ¶¶ 142-47, 149,

6   159-249.[7]  Plaintiffs seek certification under Rule 23(b) sections (2) and (3).  *Id*. ¶ 141.

7   Plaintiff commenced this action on May 13, 2019.  The longest statute of limitations period

8   applicable to any of Plaintiffs' claims is six years.[8]

9   **IV.    ARGUMENT**

10      **A.    Legal Standard**

11          **1.    Motion to Deny Class Certification**

12          As previously recognized by this Court, "the Ninth Circuit [has] made clear that a

13   defendant may bring a preemptive motion to deny class certification."  *Johnson v. Q.E.D.*

14   *Envtl. Sys. Inc.*, No. 16-CV-01454-WHO, 2017 WL 1685099, at *6 (N.D. Cal. May 3,

15   2017) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 937 (9th Cir. 2009))

16   (granting such a motion where plaintiffs clearly could not satisfy requirements of Rule 23

17   despite schedule affording plaintiffs additional time to affirmatively seek certification); *see*

18   _____

19   [7]    Plaintiffs also identify a Massachusetts subclass, *id*. ¶ 148; but do no assert any claims
    on behalf of this subclass, *id*. ¶¶ 159-255.

20   [8]    *See* Cal. Bus. & Prof. Code § 17208 (four-year period for California's Unfair
21   Competition Law); Cal. Civ. Code § 1783 (three-year period for California's Consumers
     Legal Remedies Act); Fla. Stat. Ann. § 95.11(3)(f) (4-year period for Florida's Deceptive
22   and Unfair Trade Practices Act); N.Y. CPLR § 214 (3-year period for New York's General
23   Business Law); N.J. Stat. Ann. § 2A:14-1 (6-year period for New Jersey's Consumer Fraud
     Act); Minn. Stat. Ann. § 541.05, subdiv. 1(2) (6-year period for Minnesota's Prevention of
24   Consumer Fraud Act and Uniform Deceptive Trade Practices Act); Ariz. Rev. Stat. Ann.
     § 12-541 (1-year period for Arizona's Consumer Fraud Act); Mich. Comp. Laws Ann.
25   § 445.911(7) (6-year period for Michigan's Consumer Protection Act); *Fed. Deposit Ins.*
     *Corp. v. Dintino*, 167 Cal. App. 4th 333, 347 (2008) (citing Cal. Code Civ. P. § 338) (3-
26   year period for California unjust enrichment claims); *Sloan v. Gen. Motors LLC*, No. 16-
     CV-07244-EMC, 2020 WL 1955643, at *20 (N.D. Cal. Apr. 23, 2020) (three-year period
27   for unjust enrichment under California law (citing *Fed. Deposit Ins. Corp. v. Dintino*, 167
28   Cal. App. 4th 333, 348 (2008))).

1    *also Vinole*, 571 F.3d at 942 ("Rule 23(c)(1)(A) addresses the timing of a district court's

2    class certification determination, and . . . [t]he only requirement is that the certification

3    question be resolved '[a]t an early practicable time.'").

4           Moreover, as further explained by the Ninth Circuit in *Vinole*, "[d]istrict courts have

5    broad discretion to control the class certification process" with regard to discovery. *Id*.

6    The question of "'[w]hether or not discovery will be permitted . . . lies within the sound

7    discretion of the trial court'" and "a party seeking class certification is not always entitled

8    to discovery on the class certification issue." *Id*. (quoting *Kamm v. Cal. City Dev. Co.*, 509

9    F.2d 205, 209 (9th Cir. 1975)) (alterations in original).  In particular, "class certification [i]s

10   properly denied without discovery where plaintiffs [cannot] make a *prima facie* showing of

11   Rule 23's prerequisites or that discovery measures [a]re 'likely to produce persuasive

12   information substantiating the class action allegations.'" *Id*. (quoting *Doninger v. Pac. Nw.*

13   *Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)); *see also Mantolete v. Bolger*, 767 F.2d

14   1416, 1424 (9th Cir. 1985), *as amended* (Aug. 27, 1985) (same); *cf. Amey v. Cinemark USA*

15   *Inc.*, No. 13-CV05669-WHO, 2014 WL 4417717, at *3 (N.D. Cal. Sept. 5, 2014)

16   (recognizing "expensive proposition" of classwide discovery but denying motion to deny

17   certification without prejudice as plaintiffs could "persuasively argue" that "a reasonable

18   amount of classwide discovery" was "necessary for them to defeat defendants' motion").

19
          **2.**     **Plaintiffs' Burden of Proof Under Federal Rule of Civil**
20                    **Procedure 23**

21          Even in the context of a motion to deny certification, the "burden is on the party

22   seeking certification to show, by a preponderance of the evidence, that the prerequisites

23   have been met." *Johnson*, 2017 WL 1685099, at *2 (citing *Wal-Mart Stores, Inc. v. Dukes*,

24   564 U.S. 338, 350-51 (2011) and *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d

25   1170, 1175 (9th Cir. 2011)).  In assessing this burden, "'the trial court must conduct a

26   rigorous analysis to determine whether the party seeking certification has met the

27   prerequisites of Rule 23.'" *Johnson*, 2017 WL 1685099, at *2 (quoting *Mazza v. Am.*

28

1    *Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012)).  This includes determining

2    whether "one of the three grounds for certification under Rule 23(b) applies."  *Id*. at *2-3.

3         Here, Plaintiffs purport that a class is certifiable under sections (2) and (3) of Rule

4    23(b).  SAC ¶ 141.  "Under Rule 23(b)(3), a plaintiff must . . . show 'that the questions of

5    law or fact common to class members predominate over any questions affecting only

6    individual members.'"  *Mazza*, 666 F.3d at 589 (quoting Fed. R. Civ. Pro. 23(b)(3)).  While

7    Rule 23(b)(2) does not include a similar predominance requirement, it does not provide for

8    class certification where a proposed class "primarily seeks monetary relief."  *Cover v.*

9    *Windsor Surry Co.*, No. 14-CV-05262-WHO, 2017 WL 9837932, at *10 (N.D. Cal. July 24,

10   2017).

11   **B.      The Court Should Deny Certification Of The Purported Class And**
             **Subclasses Under Rule 23(b)(3) Because Individualized Determinations**
12           **Regarding Exposure to StarKist's Representations Would Predominate**

13        The predominance inquiry under Rule 23(b)(3) "tests whether proposed classes are

14   sufficiently cohesive to warrant adjudication by representation."  *Amchem Prod., Inc. v.*

15   *Windsor*, 521 U.S. 591, 623 (1997).  In the context of a purported class action alleging

16   misrepresentations to consumers, the Ninth Circuit has made clear that a district court

17   abuses its discretion in "finding that common issues of fact predominate" despite the need

18   for "individualized determination as to whether class members were exposed to misleading

19   advertisements" due to "the small scale of the advertising campaign."  *Mazza*, 666 F.3d at

20   594.  Notwithstanding the foregoing, "in numerous cases involving claims of false-

21   advertising, class-wide exposure has been inferred because the alleged misrepresentation is

22   on the packaging of the item being sold."  *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884,

23   895 (N.D. Cal. 2015).

24        **1.      Plaintiffs' Theory of the Case Depends Upon Exposure to**
                  **StarKist's Non-Label Representations**
25

26        Here, Plaintiffs attempt to disguise a case alleging a small-scale advertising

27   campaign about StarKist's superior dolphin-safety practices as one alleging relevant

28   misrepresentations on the actual packages of the products purchased.  While Plaintiffs

1    repeatedly harp on StarKist's use of an "alternative" and "special" dolphin-safe logo, *see,*

2    *e.g.*, SAC ¶¶ 17-18, 20, 29, 70-71; they have also repeatedly explained that their theory of

3    this case is that StarKist has "promise[d] consumers something more than what the DPCIA

4    requires" through a "widespread and long-term advertising and marketing campaign."  SAC

5    ¶ 71; *see also* Second MTD Opp. at 13 (StarKist's "long-term marketing campaign . . .

6    makes promises that go above and beyond mere compliance with the DPCIA").  Plaintiffs

7    acknowledge that the DPCIA allows use of either the official logo or, subject to some

8    additional regulations, use of an alternative logo.  *See* SAC ¶¶ 28-29.  Any argument that

9    consumers understand the StarKist logo—in and of itself—to promise a greater level of

10   dolphin safety than the DPCIA logo is belied by the simple fact that both logos include the

11   exact same phrase "dolphin safe" next to the picture of a dolphin.

12           Plaintiffs concede they are alleging that those consumers ***that have also been***

13   ***exposed to StarKist's non-label representations*** believe that the phrase "dolphin safe"

14   means something different on the StarKist logo than on the DPCIA logo.  This is precisely

15   what Plaintiffs told the Court when defending their FAC:

16           I imagine you're going to want to know where [in] the complaint that we allege that
             StarKist dolphin safe label is something different than what the DPCIA requires. . . .
17           [W]hen StarKist went on its media blitzkrieg in April of 1990 to announce its
             dolphin-safe program, it told consumers at that point in time that it was committed
18           to dolphin safety, there would be a special logo on every can of StarKist tuna to
             reflect that, and the logo would mean no harm to dolphins; nothing short of dolphin
19           safe tuna will be acceptable. That's StarKist's own words. That is a completely
             different promise than what the DCPIA [sic] requires because you know now that
20           having read all the briefs that the DCPIA [sic] tolerates a certain level of dolphin
             mortality if certain other requirements are met. That is not StarKist's promise.
21           StarKist's promise goes above that. It's reiterated that very same promise and
             commitment to consumers throughout the last 30 years. For example, in the
22           complaint at paragraph 38, we reference or we cite from the [2012] press release
             that StarKist issued, along with its competitors, Chicken of the Sea and Bumble
23           Bee, reminding consumers in the midst of this World Trade Organization dispute
             about what "dolphin safe" means in the United States. . . . [W]e list several social
24           media posts by StarKist where they're again reiterating their dolphin-safe
             pledge. . . . These are promises and pledges that, as you have recognized, go well
25           above the DCPIA [sic] requirements, takes them into a whole other league.

26   Hr'g Tr. at 11:2-13:15.  Under Plaintiffs' formulation, a consumer could have only been

27   deceived by StarKist's logo if that consumer had previously been exposed to a non-label

28   representation made by StarKist.  The relevant non-label advertising campaign here consists

                                                    11

1   entirely of StarKist's announcement of its dolphin-safe policy three decades ago, a joint

2   statement about WTO litigation from nearly a decade ago, two subpages on StarKist's

3   website, a handful of social media posts out of tens of thousands, and statements to news

4   outlets made in response to the filing of this action.  SAC ¶¶ 71-72; Mecs Decl. ¶¶ 12-13.

5           In *In re Clorox Consumer Litig.*, 301 F.R.D. 436 (N.D. Cal. 2014), the court

6   forcefully rejected a nearly identical attempt to conflate label and non-label representations.

7   In that case, plaintiffs alleged that Clorox's marketing campaign conveyed that its Fresh

8   Step cat litter product was more efficient in eliminating odors than other cat litters because

9   it used carbon rather than baking soda, but that this claim was false and misleading because

10  it was contradicted by scientific studies.  *Id*. at 439.  Relying on label claims that "Fresh

11  Step contains carbon" and that "carbon eliminates odor," Plaintiffs asserted "that the

12  misleading statements also appear on Fresh Step packaging."  *Id*. at 444.  The court tersely

13  rejected this argument, explaining that these label claims in and of themselves did not

14  reflect the allegedly misleading "superiority message"—*i.e.*, "claims that Fresh Step

15  eliminates odors *better* than other brands because it contains carbon."  *Id*. (emphasis in

16  original).

17          So too here, the allegedly misleading message to consumers is a superiority message

18  that "StarKist's promises of 100% dolphin safety and sustainable sourcing ***exceed*** DPCIA

19  requirements."  SAC ¶ 12; *see also id*. ¶¶ 18-20 (alleging StarKist's website and 1990

20  dolphin-safe policy announcement reflect that the "meaning StarKist attributes to 'Dolphin

21  Safe' ***exceeds*** the requirements of the DPCIA"); *id*. ¶ 38 (alleging that 2012 WTO joint

22  press release reflects StarKist "reassuring consumers that" it is "***exceeding*** the safety

23  requirements of the DPCIA"); *id*. ¶ 71 (alleging StarKist's "widespread and long-term

24  advertising and marketing campaign . . . promises consumers ***something more*** than what

25  the DPCIA requires"); *see also* Hr'g Tr. at 13:13-14 (argument by Plaintiffs' counsel that

26  StarKist's "promises and pledges . . . ***go well above*** the D[PC]IA"); Second MTD Order at

27  8 ("plaintiffs allege that StarKist misled consumers by promising a dolphin-safety level

28

STARKIST'S MOTION TO DENY CLASS CERTIFICATION
Case No. 3:19-cv-02561-WHO

1    *higher than* the DPCIA requirements").[9]  That superiority message is not reflected in

2    StarKist's dolphin-safe logo, or directly on StarKist's packaging in any other manner.

3              **2.      Plaintiffs Cannot Demonstrate that Most Purported Class**
                         **Members Were Exposed to StarKist's Non-Label**
4                        **Representations**

5              Without packaging representations to rely on, "Plaintiffs simply cannot demonstrate

6    that the proposed classes were uniformly exposed to the allegedly misleading messages."

7    *In re Clorox*, 301 F.R.D. 436 at 445.  Rather, Plaintiffs' reliance on non-label

8    representations requires an "individualized determination as to whether class members were

9    exposed to misleading advertisements."  *Mazza*, 666 F.3d at 594.[10]

10             *Mazza* is particularly instructive in that it also dealt with a case where it was "likely

11   that many class members were never exposed to the allegedly misleading advertisements."

12   *Id*. at 595.  The Ninth Circuit specifically contrasted the advertising at issue in *Mazza*,

13   "Honda's product brochures and TV commercials," with a "'decades-long' tobacco

14   advertising campaign where there was little doubt that almost every class member had been

15   exposed to defendants' misleading statements."  *Id*. at 595-96 (citing *In re Tobacco II*

16   *Cases*, 46 Cal. 4th 298, 324-27 (2009)).  The Court further explained that "this difference is

17   meaningful" because such "limited scope" advertising "makes it unreasonable to assume

18   that all class members viewed it."  *Id*. at 596.  Thus, the district court erred in certifying a

19   class that included "all persons who purchased or leased" the vehicle at issue "because

20   common questions of fact do not predominate where an individualized case must be made

21   for each member."  *Id*.  More broadly, the Ninth Circuit also held that "[i]n the absence of

22   the kind of massive advertising campaign at issue in *Tobacco II*, the relevant class must be

23

24

25
_____

26   [9]    All emphasis added unless otherwise indicated.

27   [10]   Indeed, the SAC does not even bother to make this burdensome individualized
      determination with regard to the named Plaintiffs themselves; it contains no information as
28   to which non-label representations—if any—they were exposed.  *See* SAC ¶¶ 81-101.

1    defined in such a way as to include only members who were exposed to advertising that is

2    alleged to be materially misleading." *Id*.[11]

3        Here, the purported class and subclasses are all defined broadly to include all

4    consumers that purchased StarKist's tuna products, regardless of whether these consumers

5    were exposed to any of StarKist's non-label representations. *See* SAC ¶¶ 141-49.  Given

6    Plaintiffs' theory as to how consumers were deceived—*i.e.*, by exposure to non-label

7    representations that altered the meaning of the product label—these classes cannot satisfy

8    the predominance requirement of Rule 23(b)(3) because "an individualized case must be

9    made for each member." *Mazza*, 666 F.3d at 596.

10       *See also Cabral v. Supple LLC*, 608 F. App'x 482, 483 (9th Cir. 2015) (vacating

11   class certification order because, in a case "based upon alleged misrepresentations in

12   advertising and the like, it is critical that the misrepresentation in question be made to all of

13   the class members" (listing cases)); *Colman v. Theranos, Inc.*, 325 F.R.D. 629, 645-46

14   (N.D. Cal. 2018) (perpetuation of allegedly fraudulent Theranos story through press

15   releases, media coverage, and email communications insufficient to warrant presumption of

16   exposure among purported class of investors); *Opperman v. Kong Techs.*, Inc., No. 13-CV-

17   00453-JST, 2017 WL 3149295, at *8 (N.D. Cal. July 25, 2017) (Apple's privacy

18   representations not "sufficiently extensive to support an inference of class-wide exposure"

19   because its "global" reach of "print advertising, television advertising, website advertising,

20

---

21   [11]   This Court properly relied on *Tobacco II* in the First MTD Order for the proposition
     that "allegations of a long-term, pervasive advertising campaign suffice ***at this stage***" for
22   purposes of establishing the named Plaintiffs' individual reliance. Dkt. 71 at 12.  But
     "[b]ecause *Tobacco II* deals with the standing requirements for class representatives, courts
23   have repeatedly concluded *Tobacco II* is irrelevant to a class certification motion because
     the issue of standing simply is not the same thing as the issue of commonality." *Downey v.*
24   *Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1120 (2020) (internal quotation marks omitted)
     (listing cases), *review denied* (May 27, 2020); *see also id.* ("[E]ven if we ignore *Tobacco*
25   *II*'s context and focus on the language plaintiffs cite, that language does not do away with
     the requirement that class members be exposed to an allegedly deceptive advertisement and
26   that the advertisement be deceptive."); *Mazza*, 666 F.3d at 596 ("*Tobacco II* does not allow
     a consumer who was never exposed to an alleged false or misleading advertising . . .
27   campaign to recover damages" (internal quotation marks omitted) (alteration in original)).

28

1    buzz media, email advertising, and retail advertising" only "touched on the question of

2    iDevice privacy"); *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016

3    WL 7734558, at *2, *22 (N.D. Cal. Sept. 14, 2016) (alleged misrepresentations about

4    quality of vehicle touchscreen system made via "website, through advertisements

5    (including print and television), and through dealerships" did not provide "sufficient basis

6    to presume even classwide exposure"); *Ono v. Head Racquet Sports USA, Inc.*, No.

7    CV134222FMOAGRX, 2016 WL 6647949, at *11 (C.D. Cal. Mar. 8, 2016) (where

8    defendant advertised in "tennis magazines, subscription-only tennis channels, and press

9    releases . . . it is unreasonable to assume that an individual who may have walked into a

10   store, tried out a few racquets, and purchased a Tour–Line Racquet (a class member under

11   plaintiff's definition) would have been exposed to the alleged misrepresentations"); *Ehret*,

12   148 F. Supp. 3d at 895-96, 901 (no inference of "class-wide exposure" among Uber users

13   where alleged misrepresentations "were primarily on its website, blog, and e-mail

14   messages"); *In re Clorox*, 301 F.R.D. at 445 ("most members of the proposed classes

15   probably never saw the allegedly misleading statements" where "television commercials

16   ran for only a small part of the class period, and the superiority claims appeared in small

17   print on the back of a minority of Fresh Step packages").[12]

18

19

20   ───────────────────────
     [12]   While these cases primarily focus on California law, the other state statutes under which

21   Plaintiffs assert claims similarly require exposure to the alleged misrepresentations.  *See,
     e.g.*, *In re MyFord Touch*, 2016 WL 7734558, at *22-23 ("Because they fail to demonstrate

22   classwide exposure and reliance, the Court will not certify Plaintiffs' claims for: . . .
     violations of Arizona's Consumer Fraud Act; . . . violation of the New Jersey Consumer

23   Fraud Act; . . . [and] violation of New York General Business Law § 349 . . . ."); *In re

24   Clorox*, 301 F.R.D. at 444 (for "consumer protection laws in California, . . . New York,
     New Jersey, and Florida . . . two concepts are crucial: exposure and causation"); *In re

25   Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC,
     2020 WL 2214152, at *13 (S.D. Cal. May 7, 2020) (dismissing Michigan CPA claim in

26   putative class action where plaintiff failed to allege exposure); *Moua v. Jani-King of Minn.,
     Inc.*, No. CIV08-4942ADMJSM, 2010 WL 935758, at *5 (D. Minn. Mar. 12, 2010)

27   (denying class certification of Minnesota consumer protection claims where plaintiffs failed
     to show all class members were exposed to alleged misrepresentations and omissions).

28

                                                15

1          **3.      A Narrowed Class Would Not Change this Result**

2          There are no plausible alternative class or subclass definitions available here.  On

3     this point, the opinion from this district in *Ehret* is instructive.  There, plaintiff alleged that

4     an automatic 20% charge when taxi rides were arranged through the Uber app was

5     misrepresented as a "gratuity" because Uber kept a substantial portion of the charge, and

6     attempted to certify a class of consumers that were subject to the charge.  *Ehret*, 148 F.

7     Supp. 3d at 887.  In an extensive discussion of the predominance requirement under *Mazza*

8     and its progeny, the court found that, unlike the limited advertising at issue in *Mazza*, Uber

9     had made "a uniform and consistent misrepresentation throughout the class period."  *Id.* at

10    894-99.  Nevertheless, the *Ehret* court still denied class certification because plaintiff could

11    not "show that Uber advertised the 20% gratuity in a manner such that there is 'little doubt

12    that almost every class member had been exposed' to the misrepresentation, or that it was

13    'highly likely' that each class member was so exposed."  *Id.* at 900 (citation omitted)

14    (quoting *Mazza*, 666 F.3d at 595-96 and then *Makaeff v. Trump Univ.*, LLC, No. 3:10-CV-

15    0940-GPC-WVG, 2014 WL 688164, at *13 (S.D. Cal. Feb. 21, 2014)).

16          *Ehret* also specifically rejected the types of representations that Plaintiffs rely on

17    here as sufficient to support classwide exposure.  The court explained that plaintiff's

18    "evidence that Uber allegedly misrepresented the 20% charge as gratuity on its website and

19    blog posts . . . falls short of the 'decades-long' advertising campaign in *Tobacco II*," and

20    instead was "comparable to that in *Mazza* which included television commercials, print ads,

21    website information, and intranet commercials that were to be shown to directly to [sic]

22    potential customers."  *Ehret*, 148 F. Supp. 3d at 900.  The alleged website and blog post

23    misrepresentations also failed to support a narrower class "comprised of individuals who

24    actually visited Uber's website."  *Id.* at 900-01.  With regard to information on the main

25    page of Uber's website, "[j]ust because the information was available on the website does

26    not necessarily imply that visitors would likely have seen it, especially when there was a

27    good deal of other information on the website," it "was not highlighted or especially set

28    off," and "individuals had various reasons for visiting Uber's website."  *Id.*  "Similarly, the

STARKIST'S MOTION TO DENY CLASS CERTIFICATION
Case No. 3:19-cv-02561-WHO

1   blog post found on secondary pages of the website was only one of many blog posts,

2   covering a whole range of topics" the rest of which had nothing to do with the alleged

3   misrepresentation.  *Id.* at 901.  The only class that did succeed in *Ehret* was limited to

4   recipients of an email that prominently referenced the "20% gratuity" such that the

5   "customers who received the email were highly likely to have seen and been exposed to the

6   alleged misrepresentation about the 20% tip."  *Ehret*, 148 F. Supp. 3d at 901.

7        Thus, an attempt to limit the class to consumers that visited StarKist's website, or

8   followed its social media posts, would plainly fail.  There is various information on

9   StarKist's website that draws consumers, and far from being highlighted on the main page,

10  information about StarKist's dolphin-safety policy is relegated to crowded secondary pages.

11  Mecs Decl. ¶¶ 3-5 and Exs. A-B.  Further, Plaintiffs rely on only a handful of social media

12  posts out of tens of thousands.  Mecs Decl. ¶ 12.  And StarKist has not engaged in any

13  email communications with consumers comparable to those that yielded the only certifiable

14  class in *Ehret*.  *See* Mecs Decl. ¶ 13.  Simply put, the representations that Plaintiffs rely on

15  are "insufficient to establish the requisite consumer exposure" to any hypothetical class.

16  *Ehret*, 148 F. Supp. 3d at 901.

17        **4.      Class Discovery Would Not Change this Result**

18        District courts in the Ninth Circuit "have broad discretion to control the class

19  certification process," including with regard to the question of "'[w]hether or not discovery

20  will be permitted.'"  *Vinole*, 571 F.3d at 942 (quoting *Kamm*, 509 F.2d at 209).  A court

21  properly denies discovery where the party seeking certification cannot either (i) "make a

22  *prima facie* showing of Rule 23's prerequisites," or (ii) show that discovery is "'likely to

23  produce persuasive information substantiating the class action allegations.'"  *Id.* (quoting

24  *Doninger*, 564 F.2d at 1313).  Here, for the reasons set forth above, Plaintiffs cannot make

25  the requisite *prima facie* showing.  Nor can Plaintiffs show that discovery is likely to

26  substantiate their class action allegations.

27        Discovery is generally appropriate in the class certification context "where it will

28  resolve factual issues necessary for the determination of whether the action may be

17

1    maintained as a class action, . . . especially when the information is within the sole

2    possession of the defendant."  *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 622

3    (N.D. Cal. 2013).  "But class action discovery can be an expensive and burdensome process

4    and so consideration of the boundaries of [plaintiff]'s claim is necessary to evaluate the

5    appropriateness of her requests."  *Id.* at 624.  Plaintiffs claim that StarKist has promised

6    consumers a level of dolphin safety that exceeds DPCIA requirements.  They can establish

7    predominance under Rule 23(b)(3) by showing either that classwide exposure to this

8    promise can be "inferred because the alleged misrepresentation is on the packaging of the

9    item being sold," or that StarKist has advertised this promise "in a manner such that there is

10   'little doubt that almost every class member had been exposed' to the misrepresentation."

11   *Ehret*, 148 F. Supp. 3d at 895, 900 (quoting *Mazza*, 666 F.3d at 595-96).

12        Both of these showings involve public messaging to consumers and thus plainly do

13   not depend upon information in StarKist's possession.  Further, Plaintiffs are represented by

14   four different experienced law firms that have been litigating this case for well over a year

15   and are well aware of StarKist's public statements about dolphin safety.  They have

16   identified just three such non-label statements in the six-year period leading up to this

17   suit—two crowded secondary pages of StarKist's website and a single social media post

18   making passing reference to dolphin safety after emphasizing the great taste, portability,

19   and health of a StarKist tuna product.  *See* SAC ¶ 71; Mecs Decl. ¶ 10 and Ex. F.

20        In this context, discovery is clearly not likely to produce any further StarKist

21   statements about dolphin safety that would persuasively substantiate Plaintiffs

22   predominance allegations.  Indeed, if StarKist had made a superiority statement about

23   dolphin safety that appeared either directly on StarKist's packaging or as part of a massive

24   advertising campaign that would have resulted in classwide exposure, that statement would

25   have been alleged throughout the complaint.  Notwithstanding its general affinity for actual

26   fishing expeditions, StarKist should not have to endure the burden and expense of class

27   discovery in light of the blatant implausibility of any such statement.  Indeed, 94 of

28   Plaintiffs' 98 discovery requests served to date do not even relate to consumer exposure to

1   non-label statements regarding dolphin safety.  *See* Brand Decl. ¶¶ 3-6 and Exs. 2-5; *see*

2   *also id*. Ex. 4 at RFPs 14-15 (seeking social media communications and other advertising),

3   RFPs 42-43 (seeking web content and other consumer communications).

4   **C.     The Court Should Deny Certification Of The Purported Nationwide**
            **Unjust Enrichment Class Under Rule 23(b)(3) Because Laws From All**
5           **50 States Would Apply, Precluding Predominance**

6        Plaintiffs' purported nationwide unjust enrichment class cannot be certified for the

7   additional reason that California's choice of law rules preclude the nationwide application

8   of California unjust enrichment law in these circumstances.  First, Plaintiffs do not and

9   cannot show that California has significant contacts with the claims of each class member,

10  as required to satisfy the demands of constitutional due process.  Second, even if Plaintiffs

11  could make this showing, such a class would still require application of the laws of all 50

12  states under California's three-step governmental interest test.  Where "the laws from all 50

13  states would have to apply . . . plaintiffs cannot meet their burden to show that common

14  questions of fact or law predominate over individualized questions as required by Rule

15  23(b)(3)."  *Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641, 657 (N.D. Cal. 2019); *see also id*.

16  ("No court in this Circuit has certified a nationwide unjust enrichment class since *Mazza*."

17  (quoting *Stitt v. Citibank*, No. 12-CV-03892-YGR, 2015 WL 9177662, at *4 n.4 (N.D. Cal.

18  Dec. 17, 2015))); *Farar v. Bayer AG*, No. 14-CV-04601-WHO, 2017 WL 5952876, at *15-

19  16 (N.D. Cal. Nov. 15, 2017) (citing *Mazza*, 666 F.3d at 589-91).[13]

20               **1.     Plaintiffs Cannot Satisfy Constitutional Due Process for**
                          **Nationwide Application of California Unjust Enrichment Law**
21

22       In both *Allen* and *Farar*, plaintiffs similarly purported to bring unjust enrichment

23  claims on behalf of a nationwide class in the context of false advertising allegations.  *Allen*,

24  331 F.R.D. at 657; *Farar*, 2017 WL 5952876, at *2.  This Court, sitting in diversity in

25  California, was similarly required to apply California's choice of law rules, under which "it

26  _____

27  [13]  As this Court routinely conducts such choice of law analyses at the pleading stage,
        Plaintiffs cannot plausibly argue it is premature at this juncture.  *See, e.g.*, *Zeiger v. WellPet*
28  *LLC*, 304 F. Supp. 3d 837, 847 (N.D. Cal. 2018).

1    is plaintiffs who 'bear[ ] the initial burden to show that California has "significant contact

2    or significant aggregation of contacts" to the claims of each class member.'"  *Allen*, 331

3    F.R.D. at 657 (alteration in original) (quoting *Mazza*, 666 F.3d at 589); *Farar*, 2017 WL

4    5952876, at *15 (same).  The *Allen* plaintiffs did "not make the threshold showing" because

5    they did "not contend that [defendant] ConAgra is headquartered in California, that

6    Conagra is incorporated under California's laws, or that the challenged statements

7    originated in California."  331 F.R.D. at 657.  The *Farar* plaintiffs alleged "that California

8    has significant contacts to the claims of each class member" because defendant had "places

9    of business here and much of the misconduct occurs in California."  *Farar*, 2017 WL

10   5952876, at *15.  However, they did not meet "the demands of due process" because they

11   too failed to allege that defendant was headquartered or incorporated in California or that

12   the alleged misconduct centered in California.  *Id.*

13        Here, plaintiffs acknowledge that "StarKist tuna has been marketed, sold, and

14   distributed throughout the United States," SAC ¶ 1; and that StarKist is neither

15   headquartered nor incorporated in California, *id.* ¶ 102.  Plaintiffs nevertheless claim that

16   "StarKist's suit-related conduct is substantially related to California" because (i)

17   "processing and canning of StarKist tuna" in American Samoa "is performed by StarKist's

18   wholly owned subsidiary, Star-Kist Samoa Inc.," which "is incorporated in California," and

19   (ii) cans are then shipped to a StarKist labeling facility in Eastvale, California, where "cans

20   are cleaned and labels bearing the allegedly false Dolphin Safe logo are applied."  *Id.* ¶¶

21   103-04.  At face value, these allegations come up even shorter than the insufficient

22   significant contacts argument in *Farar*; looking past face value, Plaintiffs' arguments are

23   wholly meritless.

24        The claims in this suit have nothing to do with how StarKist's tuna is processed and

25   canned in American Samoa or the physical application of labels to tuna cans.  Rather, the

26   misconduct alleged here was in the decision of what to say on those labels—and in other

27   non-label statements—and Plaintiffs do not allege that these "challenged statements

28   originated in California."  *Allen*, 331 F.R.D. at 657.  Plaintiffs also do not "quantify how

1   much of the alleged misconduct occurs in California sufficient for [the Court] to evaluate

2   whether class members' claims have the necessary 'significant contacts' to California."

3   *Farar*, 2017 WL 5952876, at *15.  Further, as reflected in records freely and publicly

4   available on the California Secretary of State's website, Star-Kist Samoa, Inc. ceased to

5   exist over a decade ago when it was merged into a Delaware corporation.  Brand Decl. ¶ 7

6   and Ex. 6.  Finally, StarKist has ceased operating any facility in Eastvale, California.  Mecs

7   Decl. ¶ 14.

8         Thus, as in *Allen* and *Farar*, Plaintiffs fail to meet their constitutional burden to

9   apply California law nationwide and the Court must reject their purported nationwide class.

10
11
          **2.**     **The Governmental Interest Test Also Precludes Nationwide
Application of California Unjust Enrichment Law**

12         Even if Plaintiffs had made a showing of significant contacts with California

13   sufficient to meet their constitutional burden—which they do not and cannot—this would

14   not end the inquiry.  Rather, it remains the case that "California law may only apply to

15   nationwide class claims where 'the interests of other states are not found to outweigh

16   California's interest in having its law applied.'"  *Farar*, 2017 WL 5952876, at *15 (internal

17   quotation marks omitted) (quoting *Mazza*, 666 F.3d at 590).  This analysis is conducted

18   through "a three-step governmental interest test" under which: (1) the Court "must

19   determine 'whether the relevant law of each of the potentially affected jurisdictions with

20   regard to the particular issue in question is the same or different;'" (2) "if there is a

21   difference," it "must 'examine[ ] each jurisdiction's interest in the application of its own

22   law under the circumstances of the particular case to determine whether a true conflict

23   exists;'" and (3) "if there is a true conflict," it "must 'carefully evaluate[ ] and compare[ ]

24   the nature and strength of the interest of each jurisdiction in the application of its own law

25   to determine which state's interest would be more impaired if its policy were subordinated

26   to the policy of the other state, and then ultimately appl[y] the law of the state whose

27   interest would be more impaired if its law were not applied.'"  *Allen*, 331 F.R.D. at 657

28   (alterations in original) (quoting *Mazza*, 666 F.3d at 590); *Farar*, 2017 WL 5952876, at *15

1   (same).  Here, *Mazza* and its progeny establish a true conflict requiring the application of

2   foreign law in the context of an unjust enrichment claim based on allegations of false

3   advertising.

4           With regard to step one, "the Ninth Circuit unequivocally held that the 'elements

5   necessary to establish a claim for unjust enrichment . . . vary materially from state to

6   state.'"  *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 540 (N.D. Cal. 2015) (alterations in

7   original) (quoting *Mazza*, 666 F.3d at 591); *see also id.* ("It is hard to imagine a clearer

8   directive from our Circuit on this issue."); *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-

9   04984-JST, 2016 WL 344479, at *6 (N.D. Cal. Jan. 28, 2016) (also finding step one

10  satisfied for an unjust enrichment claim based on *Mazza*); *Stitt v. Citibank*, No. 12-CV-

11  03892- YGR, 2015 WL 9177662, at *4 (N.D. Cal. Dec. 17, 2015) (same).  Thus, here too,

12  there are material differences among the relevant laws of the affected jurisdictions.

13          Under step two, the Ninth Circuit found in *Mazza* that because the "sales at issue . . .

14  took place within 44 different jurisdictions," each of those jurisdictions had "a strong

15  interest in applying its own consumer protection laws to those transactions."  666 F.3d at

16  592; *see also id.* at 592-93 (finding that "[e]ach of our states has an interest in balancing the

17  range of products and prices offered to consumers with the legal protections afforded to

18  them," and that "[t]hese interests are squarely implicated" in a false advertising class

19  action).  Thus, there is only one conclusion here "[u]nder step two of the test" that is "[i]n

20  line with *Mazza*"—*i.e.*, "that the foreign states have significant interests in applying their

21  own laws to Plaintiffs' claims."  *Todd*, 2016 WL 344479, at *7; *see also id.* ("The issues

22  presented in this case are similar to those in *Mazza*.  Both cases involved misleading

23  advertising and unjust enrichment, and in both cases a party attempted to apply a single

24  state's law to a nationwide class.").

25          As for step three, *Mazza* held that "foreign states have a strong interest in the

26  application of their laws to transactions between their citizens and corporations doing

27  business within their state," that "California's interest in applying its law to residents of

28  foreign states is attenuated," and thus that "class member's consumer protection claim

1  should be governed by the consumer protection laws of the jurisdiction in which the

2  transaction took place." 666 F.3d at 594.  More specifically, "'the place of the wrong has

3  the predominant interest'" under California law, "'California considers the "place of the

4  wrong" to be the state where the last event necessary to make the actor liable occurred,'"

5  and "[f]or a claim of unjust enrichment, the last event necessary for liability appears to be

6  acceptance of a benefit that is inequitable to retain." *Todd*, 2016 WL 344479, at \*7.  As in

7  *Todd*, "the final act is the alleged acceptance of money for the purchase of a [relevant]

8  product, and so each class member's unjust enrichment claim should be governed by the

9  unjust enrichment laws of the jurisdiction in which the money was accepted." *Id*. (granting

10  motion to dismiss nationwide unjust enrichment without leave to amend).

11       Thus, even if Plaintiffs could meet their constitutional burden to apply California

12  law nationwide, California's governmental interest test would still preclude such

13  application.  *See In re Seagate Tech. LLC*, 326 F.R.D. 223, 241 (N.D. Cal. 2018) (denying

14  motion to certify nationwide class applying California law because "Plaintiffs have not

15  identified any meaningful difference between the facts of this case and *Mazza*").[14]

16

17

18

19

20  [14]  Plaintiffs' nationwide unjust enrichment claim also cannot be certified because it fails to

21  meaningfully allege a lack of adequate remedy at law on behalf of the nationwide class.  As the Ninth Circuit recently explained, "the traditional principles governing equitable

22  remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution" from a federal court sitting in diversity.  *Sonner v. Premier*

23  *Nutrition Corp.*, No. 18-15890, 2020 WL 4882896, at \*7 (9th Cir. August 20, 2020).  Here,

24  Plaintiffs have made the conclusory allegation in connection with their unjust enrichment claim that they "do not have an adequate remedy at law against Defendants," SAC ¶ 254,

25  but plainly seek either a "a full refund" for tuna purchases or "the premium attributable to the dolphin-safe representations," *id*. ¶¶ 74-75, as "damages and/or restitution," *id*.

26  ¶ 151(h).  As in *Sonner*, Plaintiffs fail to establish that they lack an adequate remedy at law because they fail "to explain how the same amount of money for the exact same harm is

27  inadequate or incomplete, and nothing in the record supports that conclusion."  *Id*. at \*8

28  (affirming dismissal of claims for equitable restitution).

1        **D.**     **The Court Should Deny Certification Of Any Class Under Rule 23(b)(2)**
                **Because Plaintiffs Primarily Seek Monetary Relief**

2

3        A court may certify a class under Rule 23(b)(2) if "the party opposing the class has

4 acted or refused to act on grounds that apply generally to the class, so that final injunctive

5 relief or corresponding declaratory relief is appropriate respecting the class as a whole."

6 Fed. R. Civ. P. 23(b)(2).  Thus, "[c]lass certification under Rule 23(b)(2) is appropriate only

7 where the primary relief sought is declaratory or injunctive."  *Ellis v. Costco Wholesale*

8 *Corp.*, 657 F.3d 970, 986 (9th Cir. 2011).  Rule 23(b)(2) "does not authorize class

9 certification when each class member would be entitled to an individualized award of

10 monetary damages" and where "the monetary relief is not incidental to the injunctive or

11 declaratory relief."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011).  Here,

12 Plaintiffs seek monetary relief in the form of money damages, restitution, and/or

13 disgorgement in connection with each and every count in the SAC.  *Id.* ¶¶ 172, 178, 180,

14 188, 197, 203, 212, 219-20, 230, 240, 249, 255.[15]  Thus, they uniformly seek individualized

15 monetary awards that are not incidental to injunctive or declaratory relief.

16        The monetary relief that Plaintiffs seek is individualized because it "will necessarily

17 depend on the unique circumstances of the particular class member"—*e.g.*, the type,

18 quantity, and price of the tuna products that each purported class member purchased.

19 *Russell v. Kohl's Dep't Stores, Inc*, No. EDCV1501143RGKSPX, 2015 WL 12748629, at

20 *6 (C.D. Cal. Dec. 4, 2015).  Thus, it "varies according to each class member" and cannot

21 "be uniformly applied without the need for individualized determinations," rendering

22 "certification under Rule 23(b)(2) . . . improper."  *Id.*; *see also id.* ("The restitution inquiry

23 is highly individualized and, for the reasons articulated above, cannot be certified

24 under Rule 23(b)(2)." (collecting cases)).

25        The monetary relief that Plaintiffs seek is not incidental to the injunctive or

26 declaratory relief that they seek, but rather "predominates," because the crux of Plaintiffs'

27 _____

28 [15]  Plaintiffs' unjust enrichment claim ***only*** seeks monetary relief.  *Id.* ¶ 255.

1   claims is that they paid more for the products at issue because of deceptive advertising.

2   *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 542 (N.D. Cal. 2012).  Indeed,

3   Plaintiffs claim they would have paid less, or not purchased the tuna products at all, but for

4   StarKist's alleged misrepresentations regarding dolphin safety.  *See, e.g.*, SAC ¶¶ 81-101,

5   218, 235.  Further, in contrast to their express demands for "a full refund" or "the premium

6   attributable to the dolphin-safe representations," *id.* ¶¶ 74-75, Plaintiffs only vaguely seek

7   "an order declaring that Defendants have engaged in unlawful, unfair, and deceptive acts

8   and practices," and "[e]njoining Defendants' conduct and ordering Defendants to engage in

9   a corrective advertising campaign," *id.* at 81 ¶¶ B-C.  Finally, notwithstanding the fact that

10  the claims for monetary relief "may be small per class member, in the aggregate they can

11  hardly be said to be incidental to the injunctive relief sought." *Ries*, 287 F.R.D. at 541; *see*

12  *also* SAC ¶ 77 (alleging "aggregate amount in controversy exceeds $5,000,000").

13        The Court should deny certification under Rule 23(b)(2) because Plaintiffs primarily

14  seek monetary relief.

15  **V.      CONCLUSION**

16        StarKist respectfully requests that the Court grant its motion and deny certification

17  of the nationwide class and state-specific subclasses that Plaintiffs purport to represent.

18        Dated:  September 11, 2020

19                                PILLSBURY WINTHROP SHAW PITTMAN LLP
                                  ROXANE A. POLIDORA
20                                LEE BRAND
                                  Four Embarcadero Center, 22nd Floor
21                                San Francisco, CA  94111

22                                By:  _____*/s/ Roxane A. Polidora*_____
23                                          Roxane A. Polidora

24                                Attorneys for Defendant
25                                STARKIST CO.

26

27

28