1   BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
2   PATRICIA N. SYVERSON (CA SBN 203111)
    600 W. Broadway, Suite 900
3   San Diego, California 92101
    psyverson@bffb.com
4   Telephone: (619) 798-4593

5   BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
    Elaine A. Ryan (*Pro Hac Vice*)
6   Carrie A. Laliberte (*Pro Hac Vice*)
    2325 E. Camelback Rd., Suite 300
7   Phoenix, AZ 85016
    eryan@bffb.com
8   claliberte@bffb.com
    Telephone:  (602) 274-1100

9
    *Attorneys for Plaintiffs*
10  *Additional Attorneys on Signature Page*

11              **UNITED STATES DISTRICT COURT**
12            **NORTHERN DISTRICT OF CALIFORNIA**

13  WARREN GARDNER, et al., on Behalf of     Case No.:   19-cv-02561-WHO
    Themselves and All Others Similarly Situated,
14                                           **PLAINTIFFS' MEMORANDUM OF**
                                             **POINTS AND AUTHORITIES IN**
15                                           **OPPOSITION TO DEFENDANT'S**
                    Plaintiffs,              **MOTION TO DENY CLASS**
16                                           **CERTIFICATION**
         v.
17
                                             Date: October 21, 2020
18  STARKIST CO., a Delaware Corporation,    Time: 2:00 p.m.
19                                           Place: Courtroom 2, 17th Floor
                                             Judge: Hon. William H. Orrick
20                  Defendant.
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 2

       A.     StarKist's Motion is Premature.............................................................. 2

       B.     Even if StarKist's Motion Was Not Premature, Its Arguments Fail...................... 5

              1.     Plaintiff can (and will) demonstrate that common issues predominate ...... 5

              2.     The Court may properly certify an unjust enrichment class .................... 13

                     a.     California law can apply to a nationwide class............................ 14

                            i.     Due process is satisfied ................................... 14

                            ii.    StarKist fails to carry its burden under the governmental
                                   interest test ....................................................... 16

                     b.     The Court may certify a multi-state class ..................................... 18

              3.     Plaintiffs seek necessary and appropriate injunctive relief, in addition
                     to incidental monetary relief that will be determined by a uniform and
                     formulaic calculation applicable to all Class members.................................. 19

III.   CONCLUSION.................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. Conagra Foods, Inc.*

    331 F.R.D. 641 (N.D. Cal. 2019) ................................................................. 16

*Amey v. Cinemark USA Inc.*

    2014 WL 4417717 (N.D. Cal. Sept. 5, 2014) ..................................................... 3

*Ang v. Bimbo Bakeries USA, Inc.*

    2018 WL 4181896 (N.D. Cal. Aug. 31, 2018 ................................................... 21

*Barber v. Johnson & Johnson Co.*

    2017 WL 2903255 (C.D. Cal. Apr. 4, 2017) ....................................................... 6

*Beck–Ellman v. Kaz USA, Inc.*

    283 F.R.D. 558 (S.D. Cal.2012) ........................................................................ 9

*Brazil v. Dole Foods Co., Inc.*

    2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ........................................... 16, 18

*Brickman v. Fitbit, Inc.*

    No. 3:15-cv-02077-JD, 2017 WL 5569827 (N.D. Cal. Nov. 20, 2017) .......................... 12

*Cabral v. Supple LLC*

    608 F. App'x 482 (9th Cir. 2015) ..................................................................... 13

*Colman v. Theranos, Inc.*

    325 F.R.D. 629 (N.D. Cal. 2018) ...................................................................... 12

*Dei Rossi v. Whirlpool Corp*

    2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) ................................................... 8, 9

*Delarosa v. Boiron, Inc.*

    275 F.R.D 582 (C.D. Cal. 2011) ....................................................................... 22

*Doe v. Successfulmatch.com*

    2014 WL 1494347 (N.D. Cal. Apr. 16, 2014) ................................................... 16

ii

*Doninger v. Pac. Nw. Bell, Inc.*

    564 F.2d 1304 (9th Cir. 1977) ......................................................................... 5

*Ehret v. Uber Techs., Inc.*

    148 F. Supp. 3d 884 (N.D. Cal. 2015) ....................................................... 8, 13

*Ellsworth v. U.S. Bank, N.A.*

    2014 WL 2734953 (N.D. Cal. June 13, 2014) ................................................ 19

*Farar v. Bayer AG*

    2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) ....................................... 8, 9, 15, 16, 17, 22

*Forcellati v. Hyland's, Inc.*

    876 F. Supp. 2d 1155 (C.D. Cal. 2012) ........................................................ 19

*Gardner v. Starkist Co.*

    418 F. Supp. 3d 443 (N.D. Cal. 2019) ...................................................... 6, 11

*Hurtado v. Superior Court*

    522 P.2d 666 (Cal. 1974) .............................................................................. 17

*In re Checking Account Overdraft Litig.*

    307 F.R.D. 630 (S.D. Fla. 2015) ................................................................... 19

*In re Clorox Consumer Litig.*

    301 F.R.D. 436 (N.D. Cal. 2014) .................................................................. 10

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*

    2011 WL 6372412 (N.D. Cal. 2011) ............................................................. 20

*In re Hyundai & Kia Fuel Econ. Litig.*

    926 F.3d 539 (9th Cir. 2019) .............................................................. 14, 16, 17

*In re MyFord Touch Consumer Litig.*

    2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) .............................................. 13

*In re NJOY, Inc. Consumer Class Action Litig.*

    120 F.Supp.3d 1050 (C.D. Cal. 2015) ........................................................... 12

iii

*In re Qualcomm Antitrust Litig.*

     292 F. Supp. 3d 948 (N.D. Cal. 2017) ............................................................ 18

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*

     505 F. Supp. 2d 609 (N.D. Cal. 2007) ............................................................ 20

*Jimenez v. Allstate Ins. Co.*

     765 F.3d 1161 (9th Cir. 2014) ........................................................................ 19

*Johnson v. Q.E.D. Envtl.Sys. Inc.*

     2017 WL 1685099 (N.D. Cal. May 3, 2017) .................................................... 3

*Kamm v. Cal. City Dev. Co.*

     509 F.2d 205 (9th Cir. 1975) ............................................................................ 4

*Krommenhock v. Post Foods, LLC*

     255 F. Supp. 3d 938 (N.D. Cal. 2017) .............................................................. 6

*Kurtz v. Costco Wholesale Corp.*

     768 F. App'x 39 (2d Cir. 2019) ........................................................................ 8

*Kurtz v. Costco Wholesale Corp.*

     818 F. App'x 57 (2d Cir. 2020) ........................................................................ 8

*Kurtz v. Kimberly-Clark Corp.*

     321 F.R.D. 482 (E.D.N.Y. 2017) ................................................................. 8, 10

*Lum v. SEIU Local 521*

     2016 U.S. Dist. LEXIS 23982 (N.D. Cal. 2016) ............................................ 22

*Martinelli v. Johnson & Johnson*

     2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ................................................ 19

*Mazza v. Am. Honda Motor Co., Inc.*

     666 F.3d 581 (9th Cir. 2012) ................................................ 2, 11, 12, 16, 17, 19

*McCrary v. Elations Co., LLC*

     No. 13-cv-00242 JGB (OPx), 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ................... 12

*Mullins v. Premier Nutrition Corp.*

iv

2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ............................................................ 8, 10

*Musgrave v. ICC/Marie Callender's Gourmet Prod. Div.*

    2015 WL 510919 (N.D. Cal. Feb. 5, 2015) ......................................................... 6

*Ono v. Head Racquet Sports USA, Inc.*

    2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) ................................................... 13

*Opperman v. Kong Techs., Inc.*

    2017 WL 3149295 (N.D. Cal. July 25, 2017) ................................................. 12

*Paulsen v. CNF, Inc.*

    559 F.3d 1061 (9th Cir. 2009) ......................................................................... 16

*Risto v. Screen Actors Guild-American Fed'n of TV & Radio Artists*

    2020 U.S. Dis. LEXIS 16872 (C.D. Cal. Sept. 14, 2020) ............................... 22

*Russell v. Kohl's Dep't Stores, Inc*

    2015 WL 12748629 (C.D. Cal. 2015) .............................................................22

*Schuman v. Microchip Tech, Inc.*

    2020 WL 887944 (N.D. Cal. Feb. 24, 2020) ................................................... 22

*Smith v. Specialized Loan Servicing, LLC*

    2017 WL 4181395 (S.D. Cal. Sept. 21, 2017) ................................................ 20

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*

    308 F.R.D. 630 (N.D. Cal. 2015) .................................................................... 18

*Todd v. Tempur-Sealy Int'l, Inc.*

    2016 WL 5746364 (N.D. Cal. Sept. 30, 2016) ............................................... 12

*Valentino v. Carter-Wallace, Inc.*

    97 F.3d 1227 (9th Cir. 1996) ........................................................................... 19

*Vinole v. Countrywide Home Loans, Inc.*

    571 F.3d 935 (9th Cir. 2009) ............................................................................. 3

*Wal-Mart Stores, Inc. v. Dukes*

    564 U.S. 338 (2011) .......................................................................................... 6

v

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

*Wash. Mut. Bank, FA v. Superior Court*
    24 Cal. 4th 906, 103 Cal. Rptr.2d 320, 15 P.3d 1071 (2001) .......................................... 16

*Werdebaugh v. Blue Diamond Growers*
    2013 WL 5487236 (N.D. Cal. Oct. 2, 2013)...................................................................... 16

*Williams v. Gerber Prods. Co.*
    552 F.3d 934 (9th Cir. 2008) ............................................................................................ 6

*Zapata Fonseca v. Goya Foods Inc.*
    No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)........................... 18

*Zeiger v. WellPet LLC*
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ............................................................................ 16

*Zinser v. Accufix Research Inst., Inc.*
    253 F.3d 1180 (9th Cir. 2001) ........................................................................................ 18

**<u>RULES</u>**

Fed. R. Civ. P. 23(b) ................................................................................................................ 1

Fed. R. Civ. P. 23(b)(2)............................................................................................ 1, 2, 20, 22

Fed. R. Civ. P. 23(b)(3)............................................................................................. 8, 18, 19, 20

Fed. R. Civ. P. 23(c)(1)(A) ................................................................................................. 2, 3

Fed. R. Civ. P. 23(c)(4)..................................................................................................... 14, 19, 20

Fed. R. Civ. P. 23(c)(5)......................................................................................................... 19

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

## I.     INTRODUCTION

StarKist filed its Motion to Deny Class Certification (D.E. 107 ("Motion")) before responding to any of Plaintiffs' discovery requests, and when it did respond, it objected to every single request such that no discovery has been produced to date.  It is simply not yet practicable for the Court to perform the required "rigorous analysis" at class certification without *any* discovery.  Moreover, StarKist asserts Plaintiffs still bear the burden of proof to demonstrate that the requirements of Rule 23 have been met, while at the same time depriving them of the discovery necessary to carry that burden.  To make matters worse, StarKist tries to force the class certification question before the Court *nine* months before expert disclosures are due pursuant to the Parties' agreed upon discovery and class certification schedule.  *See* D.E. 100, ¶ 17; D.E. 105.  StarKist's Motion should be denied for that reason, alone.

Even if the Court were to consider the Motion, it should still be denied because Plaintiffs can and will demonstrate that common issues predominate under Rule 23(b) and that the Court can certify a nationwide unjust enrichment class and a Rule 23(b)(2) injunctive relief class.

First, StarKist's entire predominance argument is based on its misconstruction of Plaintiffs' claims by arguing those claims depend upon Class members' exposure to various "non-label" representations, which might involve individual issues that could overwhelm common issues.  But this case is about the false and misleading "dolphin-safe" promise ***on each and every StarKist tuna label***, which Plaintiffs will show is interpreted by a reasonable consumer to mean that StarKist does not harm or kill dolphins—precisely the interpretation of the label that StarKist has always intended.  Plaintiffs will also show this promise is false and misleading because StarKist uses fishing methods known to kill or harm dolphins.  The resolution of these common issues will drive the resolution of this case, satisfying the predominance requirement.

Second, Plaintiffs' allegations establish that California has significant contacts with Class members' false labeling claims, including *a labeling facility*, such that California law can be applied to a Nationwide Class, and StarKist has not met its burden to show how the particular facts and

1

1  circumstances of this case result in any differences among the states' unjust enrichment laws that

2  would create a true conflict.  Even if StarKist met its burden, the Court may exercise its discretion to

3  modify or limit the class or create state-specific subclasses at the appropriate time.

4      Finally, although Plaintiffs have not had a reasonable opportunity to complete expert analysis

5  on the economic harm and remedies at issue and decide which classes they will seek to certify,

6  Plaintiffs are entitled to seek a Rule 23(b)(2) class because removal and/or modification of StarKist's

7  "dolphin-safe" label as well as a corrective advertising campaign will benefit all Class members.  Any

8  monetary damages Plaintiffs decide to seek will be incidental to the injunctive relief, computed using

9  a uniform and formulaic calculation applicable to all Class members alike.

10     For all of these reasons, as more fully discussed below, StarKist's Motion should be denied.

11  **II.    ARGUMENT**

12      **A.  StarKist's Motion is Premature.**

13     A motion for class certification requires the Court to conduct a "rigorous analysis" and it is

14  typically the plaintiff that must bear the burden of presenting evidence to support its motion.  *See*

15  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).  The Federal Rules also

16  suggest the determination on class certification should be made as early as "*practicable*."  Fed. R.

17  Civ. Pro. 23(c)(1)(A) (emphasis added).  Yet, StarKist filed its Motion to Deny Class Certification

18  before responding to a single document request, interrogatory, or request for admission.  As such,

19  there is almost no factual record for the Court to perform a "rigorous analysis" to determine whether

20  class certification is appropriate.  Plaintiffs have not had a chance to discover any of StarKist's

21  internal communications about their 30-year-old dolphin-safe policy, nor do they yet have the

22  information necessary to complete their own consumer research surveys and pricing studies.  Further,

23  StarKist asserts that Plaintiffs bear the burden of proof on *its* premature Motion while at the same

24  time trying to deprive Plaintiffs of the discovery needed to carry that burden.  And while StarKist has

25  cited a few cases in which courts have entertained a motion to deny class certification, they have not

26  (and presumably cannot) provide a single case in the last thirty years in which such a motion was

27  granted before *any* discovery had ensued.  To be sure, granting StarKist's Motion would set a

28

1   dangerous precedent.

2          Consider the cases StarKist cites in support of its Motion.  Without exception, in those cases

3   defendant did not move to deny certification until at least *some* significant discovery had taken place.

4   For example, in *Johnson v. Q.E.D. Envtl. Sys. Inc.*, 2017 WL 1685099, at *6 (N.D. Cal. May 3, 2017)

5   (Motion at 8-10), fact discovery had closed and the evidence was "clear" that plaintiffs could not meet

6   Rule 23's numerosity requirement.  In *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942-

7   43 (9th Cir. 2009) (Motion at 8-9, 17), only three weeks remained before the fact discovery cutoff,

8   plaintiffs had almost ten months to prepare for defendant's motion, and plaintiffs' counsel admitted

9   that they were not going to conduct any more discovery from defendant on the certification issue.

10  Perhaps most informative, in *Amey v. Cinemark USA Inc.*, 2014 WL 4417717, at *2 (N.D. Cal. Sept.

11  5, 2014) (Motion at 2, 9), although defendants had produced certain documents relevant to plaintiffs'

12  claims, this Court found the motion to be premature because defendants had refused to provide

13  classwide discovery.  *Id.* at *3.

14          Here, Plaintiffs served written discovery on StarKist.  D.E. 107-12 ("Rogs"); D.E. 107-13

15  ("RFA"); D.E. 107-14 ("RFP").  But, in lieu of responding to the discovery requests, StarKist filed

16  its Motion and objected to *every* discovery request based, in part, on its pending Motion.  *Compare*

17  Motion (dated September 11, 2020), *with* Exs. A-C (StarKist's discovery responses and objections,

18  dated September 14, 2020).[1]  StarKist did not answer a single interrogatory or request for admission,

19  or agree to produce a single document.  Exs. A-C.  It did not even indicate whether any responsive

20  documents exist.  *Id.* at Ex. C.[2]  While Rule 23(c)(1)(A) requires the Court to consider certification

21

22  _____

23  [1] All "Ex." cites are to the Exhibits attached to the Declaration of Patricia N. Syverson, filed
    concurrently herewith.

24  [2] *After* filing its Motion and improperly objecting uniformly to every single discovery demand on the
    basis of the Motion, StarKist engaged in a meet and confer process with Plaintiffs and indicated a

25  willingness to provide some substantive discovery responses.  Syverson Decl., ¶ 3.  However, no
    additional discovery responses have been provided to date.  *Id.* at ¶ 4.  Moreover, StarKist's proposed

26  process—to object to everything and then put the onus on Plaintiffs to identify what they need in
    order to respond to StarKist's Motion (*id.* at ¶ 2)—completely flips the discovery process on its head

27  and, more importantly, defies the Court's scheduling Order (D.E. 105).

28                                                    3

at an early *practicable* time, there is nothing practicable, only prejudicial, in considering class certification before *any* discovery has been produced, especially because this is one of those cases where "the propriety of a class action cannot be determined … without discovery," *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).  StarKist disagrees and declares: "discovery is clearly not likely to produce any further statements about dolphin safety that would persuasively substantiate Plaintiffs [sic] predominance allegations."  Motion at 18.  The informal discovery and investigation Plaintiffs have conducted suggest the opposite.  For example, a 2016 "Dolphin Safe National Survey" conducted by Public Opinion Strategies (Ex. D) of 1,000 adults demonstrates that a majority of consumers do, in fact, interpret StarKist's dolphin-safe promise exactly as Plaintiffs allege, finding:

1.   "[a] majority of adults believe that the 'dolphin safe' label means no dolphins were injured or killed" (*id.* at 6);

2.   "[a]lmost two-thirds of adults think the definition of 'dolphin safe' *should be* that no dolphins were injured/killed" (*id.* at 9 (emphasis original));

3.   "[t]wo-thirds of adults say that if dolphins are accidentally killed, then the tuna is not 'dolphin safe' (*id.* at 12); and

4.   "[a]lmost three-quarters of adults say they would feel deceived if they discovered that a dolphin had been injured while capturing tuna" (*id.* at 14).

*See also* Plaintiffs' Request for Judicial Notice ("RJN"), filed concurrently herewith.

Publicly available documents from one of StarKist's competitors, Chicken of the Sea, also demonstrates that dolphin-safe representations are material to customers.  Materiality assessments conducted on Chicken of the Sea's customers revealed that "dolphin-safe eco-labelling" and "environmental responsibilities" are key issues for consumers.  Ex. E, Thai Union Group, Sustainability          Report          2016,          at          40,          *available          at*

4

https://www.thaiunion.com/en/sustainability/report?category=report&page=2.[3]  *See also* RJN.

As to the two determinative factors regarding whether a classwide presumption of reliance is reasonable – materiality and uniform consumer interpretation of the dolphin-safe logo on every can of StarKist tuna sold during the Class Period – this evidence shows that formal discovery is likely to yield additional evidence supporting class certification.   As to the reliance issue in particular, Plaintiffs have requested StarKist provide the following:

1.   Justification for its belief that reasonable consumers do not believe that "dolphin-safe" means no dolphins were harmed or killed (Rogs at No. 9);

2.   Documents related to consumers' understanding of "dolphin-safe" as used by StarKist (*id.*);

3.   All surveys, studies, focus group reports, questionnaires, and other documents regarding dolphin safety and its importance to consumers (*id.* at No. 17; RFP at No. 20);

4.   Documents related to communications with consumers regarding dolphin safety (RFP at No. 43); and

5.   Documents related to the reasons the dolphin-safe logo on StarKist's products was selected (*id.* at No. 37).

Because discovery is "likely to produce persuasive information substantiating the class action allegations," rather than grant StarKist's Motion, "the better and more advisable practice" is to afford Plaintiffs "an opportunity to present evidence as to whether a class action [is] maintainable." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (holding, however, that class certification was properly denied on the plaintiffs motion for class certification without further discovery where, unlike here, plaintiffs could not make a prima facie showing of Rule 23 prerequisites).

---

[3]  *See also* Ex. F, Thai Union Group, 2018 Sustainability Report, at 6, *available at* https://www.thaiunion.com/en/sustainability/report (consumers are "increasingly conscious of where and how their food is sourced").

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

1    Based on the above, StarKist's Motion should be denied as premature.

2                **B. Even if StarKist's Motion Was Not Premature, Its Arguments Fail.**

3            **1.  Plaintiff can (and will) demonstrate that common issues predominate.**

4        StarKist's predominance argument illustrates why its Motion is premature— because it spends

5    more than eight pages mis-framing the predominance analysis.  This case does not depend upon Class

6    members' exposure to various "non-label" representations, as StarKist suggests.  Motion at 10-15.

7    Rather, as this Court acknowledged, *see Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 452 (N.D. Cal.

8    2019) (explaining that Plaintiffs allege that "defendants' tuna is not actually dolphin-safe as they

9    represent it to be"), this case is and has always been about whether StarKist's "dolphin-safe" promise

10   on its *labels* is false or misleading.  While StarKist's website statements, social media posts, and press

11   releases help inform what message *StarKist* intends to convey through those labels, Plaintiffs need

12   not rely on those sources for their false advertising claims.[4]

13       This is a straight forward product-labeling case.  Plaintiffs will show that a "reasonable

14   consumer" understands the "dolphin-safe" claim on StarKist's packaging to mean that StarKist does

15   not kill or harm dolphins.  *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

16   Plaintiffs will also show that statement is deceptive and misleading because StarKist utilizes fishing

17   methods known to kill or harm dolphins each year.  The resolution of those common issues will drive

18   the resolution of this case.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What

19   matters to class certification ... is not the raising of common 'questions'—even in droves—but rather,

20   the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of

21   the litigation") (emphasis original).  This case is well-suited to class certification on that simple

22   platform.

23

24

_____

25   [4] *See, e.g.*, *Barber v. Johnson & Johnson Co.*, 2017 WL 2903255, at *9 (C.D. Cal. Apr. 4, 2017)

26   (finding that advertisements not personally relied upon are still relevant for class certification or
     punitive damages); *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 949 n. 12, 969 n. 37

27   (N.D. Cal. 2017) (same); *Musgrave v. ICC/Marie Callender's Gourmet Prod. Div.*, 2015 WL 510919,
     at *11 (N.D. Cal. Feb. 5, 2015) (same).

28                                                    6

1    Nevertheless, StarKist argues throughout its Motion that Plaintiffs must first establish a long-

2    term dolphin- safe marketing campaign, *but* according to StarKist that campaign *does not include its*

3    *thirty years of product labeling.*  It bears reiterating that StarKist has placed a dolphin-safe logo on

4    *every one* of their tuna products since 1990.  SAC ¶¶ 16-17.  This dolphin-safe advertising campaign

5    was launched in the midst of a high-profile conservation movement that sought to reduce or eliminate

6    the needless slaughter of dolphins by the tuna fishing industry.  *Id.* at ¶¶ 9-12, 16, 19-21.  When

7    StarKist first announced its dolphin-safe campaign, it told consumers that its dolphin-safe logo (the

8    very logo at the heart of this case) means "[n]o harm to dolphins," and that "[t]he StarKist policy will

9    save dolphin lives. Nothing short of dolphin-safe tuna will be acceptable . . . ."  *Id.* at ¶¶ 19-20.  In

10   the same press release, StarKist announced that it "plans an advertising campaign to promote the

11   company's action."  D.E. 107-11.  Lest there be any doubt about what motivated this action, "David

12   Burney, executive director of the U.S. Tuna Foundation, said StarKist's decision was motivated

13   by consumer outrage over dolphin deaths. 'They had tremendous pressure placed on them both

14   in the marketplace ... and as a target of boycott efforts and that pressure extended up to the

15   shareholders of the company,' Burney said."  *Id.*

16   StarKist has never publicly waivered from this commitment to dolphin safety.  Over the years,

17   whenever it felt this message was being challenged, it reiterated its promises to consumers.  For

18   example, when StarKist thought the WTO's rulings were "likely to create consumer confusion about

19   whether or not their products continue to be dolphin-safe" StarKist issued a press release "…to

20   reassure consumers they have no reason to be concerned that their companies are wavering in their

21   commitment to providing dolphin-safe tuna as a result of this ruling" and emphasized that

22   "[p]roviding consumers with sustainable and dolphin safe tuna remains a top priority."  SAC ¶ 38.

23   StarKist again promised consumers that it "do[es] not and will not utilize tuna caught in a manner

24   that harms dolphins."  *Id.*

25   Most recently, in response to this lawsuit, StarKist issued a Facebook post specifically

26   referencing its long-standing dolphin-safe policy and reiterating "StarKist is proud of our dolphin-

27   safe policy that was adopted in April 1990. We will not purchase any tuna caught in association with

28

7

dolphins, and we condemn fishing methods that are known to be dangerous to them." *Id.* at ¶ 72. StarKist also specifically referenced its long-term marketing campaign to the press, stating "the company is 'committed' to protecting dolphins and adopted a dolphin-safe policy in April 1990." *Id.*

This dolphin-safe policy, created in response to consumer concerns about dolphin safety, reiterated throughout the last thirty years, and referenced on presumably millions of packages of StarKist tuna consistently since 1990, is the very definition of a long-term marketing campaign. Plaintiffs need not set forth every advertisement, commercial, press release, point-of-sale display, or other advertising over the last thirty years that were part of that campaign to support class certification. Moreover, a consumer need not have seen all, or even some, of those specific materials to have been influenced by it, in part because that promise is reiterated on *every* package of StarKist tuna they purchased. *See, e.g.*, *Farar v. Bayer AG*, 2017 WL 5952876, at \*11–13 (N.D. Cal. Nov. 15, 2017) (Orrick, J.) (certifying class based on common misrepresentation on product packaging); *Kurtz v. Kimberly-Clark Corp.* 321 F.R.D. 482, 530–32 (E.D.N.Y. 2017) (same);[5] *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at \*5–6 (N.D. Cal. Apr. 15, 2016) (same); *Dei Rossi v. Whirlpool Corp*, 2015 WL 1932484, at \*6-7 (E.D. Cal. Apr. 28, 2015) (same).

As StarKist concedes, "in numerous cases involving claims of false advertising, class-wide exposure has been inferred because the alleged misrepresentation *is on the packaging of the item being sold*." Motion at 10 (citing *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015) (emphasis added)). That is precisely the situation here, where StarKist promises consumers that all of its tuna products are "dolphin-safe." Thus, the question is not whether any particular consumer saw all or some of the *additional* advertising about this promise, but rather what that label

---

[5] Judge Weinstein's class-certification decision in *Kurtz* was originally remanded by the Second Circuit to "offer the parties the opportunity to submit additional evidence and [the district court] should then assess whether the Plaintiffs have 'affirmatively demonstrated [their] compliance' with Rule 23(b)(3)'s predominance requirement." *Kurtz v. Costco Wholesale Corp.*, 768 F. App'x 39, 41 (2d Cir. 2019). On remand, Judge Weinstein re-certified the class. *Kurtz v. Kimberly-Clark Corp.*, 414 F. Supp. 3d 317, 336 (E.D.N.Y. 2019), *aff'd in part, rev'd in part and remanded sub nom. Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57 (2d Cir. 2020). The Second Circuit affirmed certification of a damages class under Rule 23(b)(3), but reversed certification of an injunctive-relief class. *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57 (2d Cir. 2020).

8

claim means to a reasonable consumer and whether those claims were material.  Those questions are all susceptible to common proof.

Perhaps recognizing that StarKist's "dolphin-safe" label makes this case particularly well-suited for class certification, StarKist defaults, once again, to remaking Plaintiffs' case in their own image.  StarKist took this same approach in their motions to dismiss, to no avail.  As the Court noted in its Order denying StarKist's first motion to dismiss, "[b]efore determining whether plaintiffs have met the pleading standard for their fraud-based claims, I will explain what I understand this case is about because StarKist mischaracterizes it throughout its papers."  D.E. 71, at 9.  The Court then explained,

> Plaintiffs' complaint is not directed to whether StarKist has complied with federal labeling standards under the DPCIA. Rather, it "is about what consumers in the United States reasonably believe StarKist's own 'dolphin safe' and sustainability promises mean and whether StarKist breached those promises."

*Id.* at 10.  What consumers believe StarKist's "dolphin-safe" label means will be answered through discovery about what StarKist intends that message to mean, and through consumer surveys that show what it means to a reasonable consumer.  Plaintiffs' evidence will show that "dolphin-safe" means to consumers exactly what StarKist has always intended – that it does not kill or harm dolphins.  This is the same type of evidence commonly relied upon to demonstrate predominance in false labeling cases.

For example, in *Dei Rossi v. Whirlpool Corp.*, the plaintiff sought to certify a class of consumers that purchased allegedly non-energy efficient washing machines with Energy Star logos on them.  2015 WL 1932484, at *6-7 (E.D. Cal. Apr. 28, 2015).   Certifying the class, the court explained:

> The fact that some consumers purchased the [product] for other reasons does not defeat a finding **that the product was marketed with a material misrepresentation, which per se establishes an injury.**  Plaintiffs have alleged that evidence of the materiality of the Energy Star logo, which Defendant prominently displayed in advertising materials and on the Refrigerators themselves, can be shown by common documents and data, including Defendant's own consumer studies and corporate representative statements. For purposes of class certification, it is sufficient that the alleged material misrepresentation "was part of a common advertising scheme to which the entire class was exposed." *Beck–Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D. Cal.2012). **Here, Defendant engaged in a nationwide marketing campaign, displaying the Energy Star logo uniformly in advertising and at the point of purchase on**

1

**every Refrigerator. Accordingly, a presumption of reliance as to class members is appropriate in this case**.

2

3

*Id.* (emphasis added).

4

Likewise, in *Farar*, the defendant argued plaintiffs could not establish predominance because

5

they could not show (1) that the label claims were material to consumers and (2) that those claims

6

were susceptible to a common interpretation among the Class. 2017 WL 5952876, at *11–13.

7

Analyzing those issues, this Court considered internal marketing surveys and analyses conducted by

8

the defendant, as well as a marketing survey the defendant commissioned for that litigation. The

9

plaintiffs did not commission their own marketing survey.  Even though the surveys and internal

10

marketing analysis had somewhat conflicting information on consumer attitudes, this Court had no

11

trouble concluding that materiality had been established classwide. *Id.* This Court also found that the

12

label claims were susceptible to a uniform classwide interpretation, explaining that "[b]ecause

13

plaintiffs have already established materiality of the claims as to all class members, this is sufficient

14

to show that the issue of reliance does not vary from consumer to consumer."  *Id.* at *13.  *See also*

15

*Kurtz*, 321 F.R.D. at 530–32 (certifying class of consumers that purchased disposable wipes labelled

16

"flushable" and finding predominance met in part based on hedonic regressions and consumer

17

surveys); *Mullins*, 2016 WL 1535057, at *5–6 (certifying class of consumers of "Joint Juice" based

18

on allegedly false product labels explaining that materiality and reliance are subject to an objective

19

standard and relying on defendants' own marketing research and surveys in lieu of any market

20

research study conducted by plaintiffs to find predominance satisfied).  This is the same type of

21

evidence Plaintiffs will rely upon to demonstrate that StarKist's dolphin-safe logos are material to

22

Class members and that a reasonable consumer understands them to mean that StarKist does not kill

23

or harm dolphins.

24

The cases upon which StarKist relies are inapposite because none of them deal with consistent

25

label claims.  For instance, StarKist leans heavily on *In re Clorox Consumer Litig.*, 301 F.R.D. 436

26

(N.D. Cal. 2014), describing it as "nearly identical" to the instant case.  Motion at 14-15.  But in

27

*Clorox*, the allegedly misleading advertisements were primarily made in television commercials and

28

10

1    it was not clear that all class members had been exposed to those commercials. 301 F.R.D. at 444.

2    Moreover, based on the evidence presented, similar misleading statements were only included on *2*

3    *of the 12* versions of the product's packaging.  *Id.*  In the end, the Court found that "[w]ithout any

4    evidence that Clorox included its superiority message *on a significant portion of Fresh Step products*,

5    or that consumers actually saw it, Plaintiffs have no basis for their claim that Clorox presented a

6    uniform message to its customers."  *Id.* at 445–46 (emphasis added).  That is a far cry from the facts

7    of this case, where it is undisputed that *all* packages of StarKist tuna include the dolphin-safe promise.

8         To better match the cases it cites, StarKist argues that Plaintiffs must prove not what a

9    reasonable consumer believes "dolphin-safe" means, as black-letter law holds for all of Plaintiffs'

10   consumer-protection claims, but rather a "superiority message" – that its dolphin-safe policies

11   explicitly go above the DPCIA's requirements.  Motion at 10-12.  This is an artificial construct,

12   though, because if Plaintiffs show that a reasonable consumer believes StarKist's dolphin-safe

13   promise means that StarKist does not kill or harm dolphins in its supply chain, *then they have*

14   *demonstrated that StarKist's pledge goes above and beyond the requirements of the DPCIA.*  As the

15   Court will recall, on the motions to dismiss, one question the parties battled over was whether

16   StarKist's promise of dolphin safety exceeded the requirements of the DPCIA.  The reason that was

17   important was because the parties and the Court recognized that one could technically comply with

18   the DPCIA while still killing thousands of dolphins a year.  *See Gardner*, 418 F. Supp. 3d at 455.

19   Thus, if consumers believe that StarKist's promise means that it does not use fishing methods that are

20   known to kill or harm dolphins, then technical compliance with the DPCIA does *not* provide StarKist

21   a safe-harbor from Plaintiffs' false advertising claims.  *Id.*  Whether consumers believe that StarKist

22   does not kill or harm dolphins, does not depend upon showing a reasonable consumer understands

23   that StarKist's promise explicitly *exceeds* the requirements of the DPCIA, it only requires Plaintiffs

24

25

26

27

28

11

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

1    to show that consumers believe the logo means exactly what StarKist has repeatedly said it means –

2    StarKist does not kill or harm dolphins.[6]

3         StarKist also relies heavily upon *Mazza*, which it argues is "particularly instructive."  Motion

4    at 13.  There, the plaintiffs alleged that Honda omitted material information from advertisements of

5    an automatic braking system available on certain Acura models.   But those advertisements were

6    limited in scope and included only a few television commercials and some product brochures.  666

7    F.3d at 586-87, 596.  Under those facts, it is not remarkable that the Ninth Circuit refused to apply a

8    presumption of reliance because "it is likely that many class members were never exposed to the

9    allegedly misleading advertisements, insofar as advertising of the challenged system was very

10   limited."  *Id.* at 595.

11        The facts of this case simply do not align with those in *Mazza*, because all Class members

12   here were exposed to StarKist's dolphin-safe label claims.  Several of the cases cited by StarKist

13   actually make this very point.  For example, in *Colman v. Theranos, Inc.*, the court explained

14          …courts in product-packaging cases frequently distinguish from *Mazza*, inferring
            that any statement or omission appearing on a product's packaging is highly likely
15          to reach consumers' eyes. *See, e.g., In re NJOY, Inc. Consumer Class Action
            Litig.*, 120 F.Supp.3d 1050, 1105–06 (C.D. Cal. 2015) (presuming exposure to an
16          omission where e-cigarette packaging consistently failed to include certain
            ingredients); *McCrary v. Elations Co., LLC*, No. 13-cv-00242 JGB (OPx), 2014
17          WL 1779243, *13 (C.D. Cal. Jan. 13, 2014) ("Defendant does not argue, nor could
            it, that its clinical proof claims were of limited scope, since it placed them on the
18          packaging of every unit of Elations sold over an 18–month period. The factual
            dissimilarity of *Mazza* renders it inapplicable"); *Brickman v. Fitbit, Inc.*, No. 3:15-
19          cv-02077-JD, 2017 WL 5569827, at *5 (N.D. Cal. Nov. 20, 2017) ("Fitbit made
            the same representations about sleep-tracking functionality on every package for
20          every device at issue, and has not demonstrated a significant exposure gap among
            consumers").
21

22

─────────────────────

23   [6] StarKist also avers that "[a]ny argument that consumers understand the StarKist logo—in and of
     itself—to promise a greater level of dolphin safety than the DPCIA logo is belied by the simple fact
24   that both logos include the exact same phrase "dolphin-safe" next to the picture of a dolphin."  Motion
     at 11.  This is another red-herring.  StarKist does not offer, and Plaintiffs are not aware of, another
25   brand of tuna that uses the Department of Commerce's dolphin-safe logo.  In other words, consumers
     are not aware of that logo or what it would mean, and they do not compare that logo to StarKist's at
26   the point of sale.  Again, the issue is not whether consumers would also be misled by another dolphin-
     safe logo, but whether they were misled by StarKist's logo.   That issue will be resolved through
27   StarKist's own internal documents, its public statements about what it intends the logo to mean, and
     consumer surveys showing how a reasonable consumer interprets that logo.

28                                                  12

325 F.R.D. 629, 643 (N.D. Cal. 2018).  *See also Opperman v. Kong Techs., Inc.*, 2017 WL 3149295, at *7 (N.D. Cal. July 25, 2017) (noting the contrast between the advertising campaign at issue "with advertising directly present on a product's packaging, 'such that one could infer anyone who bought that product also viewed the package.'"); *Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5746364, at *12 (N.D. Cal. Sept. 30, 2016) (same).

The same is true for every other case upon which StarKist relies (Motion at 14-15).  Each turned on whether the purported class members had all been exposed to the allegedly false or misleading advertisements *and none of them were product labeling cases*.  *Cf. Colman*, 325 F.R.D. at 645-46 (denying certification where alleged misrepresentations were made "via press releases, media coverage, and private conversations" and specifically distinguishing the facts at bar from cases alleging false and misleading statements on product packaging); *Opperman v. Kong Techs.*, Inc., 2017 WL 3149295, at *8 (N.D. Cal. July 25, 2017) (denying class certification where alleged misrepresentations were made in print, television, and online media and contrasting the "advertising campaign at issue with advertising directly present on a product's packaging, "such that one could infer anyone who bought that product also viewed the package"); *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *2, *22 (N.D. Cal. Sept. 14, 2016) (denying certification where the advertising campaign at issue was limited to statements on defendant's website and in product brochures); *Ono v. Head Racquet Sports USA, Inc.*, 2016 WL 6647949, at *12 (C.D. Cal. Mar. 8, 2016) (considering the "relatively limited marketing" at issue and denying certification where advertising campaign was limited to tennis magazines, subscription-only tennis channels, and press releases); and *Ehret*, 148 F. Supp. 3d at 895-96, 901 (denying certification of a class based primarily on internet advertisements, but certifying a class based on consumers that received email with the allegedly misleading statements); *Cabral v. Supple LLC*, 608 F. App'x 482, 483 (9th Cir. 2015) (vacating class certification where the alleged misleading statements were not made on product packaging, but rather through some, but not all, of defendant's advertisements).

Here, StarKist has engaged in a long-term marketing campaign based on its dolphin-safe policy *and* that campaign includes a "dolphin-safe" promise on *every package* of tuna at issue in this

13

case.  That means Plaintiffs can establish materiality and a presumption of classwide reliance based upon *Tobacco II* and its progeny, *and* the myriad product labeling cases that have certified similar claims.  StarKist's predominance arguments should be rejected.[7]

## 2.   The Court may properly certify an unjust enrichment class.[8]

StarKist argues that a nationwide unjust enrichment class cannot be certified because "California's choice of law rules preclude the nationwide application of California unjust enrichment law" (Motion at 19).  Although Plaintiffs believe that California law may properly apply to a nationwide class for unjust enrichment, this Court may also elect to certify a multi-state class joining together the states from which Plaintiffs reside or a nationwide issue class under Rule 23(c)(4).

### a.   California law can apply to a nationwide class.

"Subject to constitutional limitations and the forum state's choice-of-law rules, a court adjudicating a multi-state class action is free to apply the substantive law of a single state to the entire class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019).  Neither due process nor California's choice-of-law rules constrain this Court's ability to apply California unjust enrichment law to a nationwide class.

#### i.   Due process is satisfied.

StarKist asserts that Plaintiffs' nationwide unjust enrichment class cannot be certified under California law because Plaintiffs cannot show (without any discovery) that California has significant

---

[7]  StarKist also argues that a narrower class definition or class discovery cannot cure its alleged defects.  Motion at 16-18.  However, as explained herein, those "defects" are illusory.

[8]  StarKist argues in a non-sequitur footnote that the Court should dismiss Plaintiffs' unjust enrichment claim for failure to plead an inadequate remedy at law.  Motion at 23 n.14.  It cites to a Ninth Circuit decision issued after this Court's order on StarKist's motion to dismiss, seemingly as purported justification for belatedly raising an oft-argued defense to the pleading of such claims.  The proper avenue for StarKist to seek to overturn this Court's prior Rule 12(b)(6) order is through a motion for reconsideration or interlocutory appeal.  But given that StarKist never moved to dismiss Plaintiffs' unjust enrichment claim (through two rounds of motion to dismiss briefing) and has answered the complaint, there is nothing to reconsider or appeal.

contacts with the claims of each Class member.  Motion at 19-21.  But Plaintiffs' allegations *do* establish that California has significant contacts with Class members' claims.  Plaintiffs allege that StarKist marketed and sold its tuna products ***in California*** and the rest of the United States.  *Compare* SAC, ¶ 78, *with* Motion at 20 (StarKist states "plaintiffs acknowledge that 'StarKist tuna has been marketed, sold, and distributed throughout the United States,'" sans mention of California).  But even more germane to the point, Plaintiffs allege that StarKist's tuna is "shipped to StarKist's labeling facility at 12450 Philadelphia Street in Eastvale, California" where it is "packaged and labeled . . . and then disseminated to Plaintiffs and the Class members throughout the United States."  SAC, ¶¶ 79, 103-104.  StarKist mischaracterizes these allegations as incidental to Plaintiffs' claim, which it contends is based solely on false advertising (Motion at 20-21), but the cornerstone of Plaintiffs' and all Class members' unjust-enrichment claim is StarKist was profited through "[its] unlawful, unfair, false, misleading, and deceptive practices ***and*** advertising at the expense of Plaintiffs and Class members, ***under circumstances in which it would be unjust*** for [it] to be permitted to retain the benefit."  SAC, ¶ 255 (emphasis added).  It logically follows that if StarKist receives the processed tuna in California, then it is in California where StarKist must verify the supply chain prior to labeling and shipping.  But for the California-related conduct of receiving tuna from a dubious supply chain, packaging, labeling, and then distributing "dolphin-safe" tuna products that StarKist knew or should have known contained tuna caught using methods known to harm dolphins, no Class member would have been harmed.

Even so, StarKist asserts that Plaintiffs have not and cannot meet their burden because StarKist is not at home in California – *i.e.*, not incorporated or headquartered in the state.  Motion at 20.  But StarKist cites no authority to support the conclusion that the significant contacts requirement of due process is synonymous with general jurisdiction in the state.  Rather, as this Court's ruling in *Farar* makes clear, the significant contacts required for due process is a fact-intensive inquiry.  In *Farar*, this Court considered the totality of facts that plaintiffs claimed supported California contacts with their claims.  Plaintiffs further failed to "quantify how much of the alleged misconduct occurs in California."  *Id.* at *15.  This failure was in addition to the fact that California was not the state of

incorporation or headquarters.  *Id.*  The lack of sufficient facts were insufficient for the Court to evaluate class members' significant contacts with California.  *Id.*  If the lack of incorporation were enough – or a requisite factor, the facts would have been sufficient on their face to evaluate and definitively rule that California did not have significant contacts.  Instead, the Court left open the possibility that plaintiffs may meet their burden in the future.  *Id.* at *16.

StarKist also claims that Plaintiffs do not meet their burden because they "do not allege that the[] 'challenged statements originated in California.'"  Motion at 21 (citing *Allen*, 331 F.R.D. at 657).  First, Plaintiffs' unjust-enrichment claim centers not only on the label misrepresentations but on StarKist's concomitant failures in tracing and verification.  Second, Plaintiffs do allege challenged statements originated in California, via the labels.  Third, Plaintiffs have sought meaningful discovery into StarKist's marketing, market research, and decision-making process.  StarKist has refused to provide it.  *See* Section II.A., *supra* (listing categories of discovery that StarKist has refused to answer or provide).  Without that discovery, neither Plaintiffs nor the Court have any way of knowing how or where StarKist made decisions regarding the design and content of the labels, or the social media posts and website representations that support the labels' claim.

Notably, in *Farar* and *Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641, 657 (N.D. Cal. 2019), the Court issued decisions after plaintiffs had the opportunity to discover and present evidence in support of their claim that significant contacts existed.  In *Farar*, plaintiffs moved for class certification after the benefit of expert discovery and a full year after the close of fact discovery.  2017 WL 5952876 at *2, *17.  And **then** they failed to present evidence regarding the quality or quantity of misconduct that occurred in California sufficient to allow the Court to evaluate the sufficiency of contacts.  *Id.* at *16.  In *Allen,* the case had been pending approximately **six years** when the Court issued its class certification order.  331 F.R.D. at 651.  In fact, plaintiffs had moved for class certification four years prior to the July 22, 2019 order, with expert discovery.  *Id.*

Plaintiffs' have alleged enough to establish that California has sufficient contacts with Class members' claims to apply California law, but if the Court decides that more facts are needed, Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

1   are entitled to discovery into this important fact question, prior to ruling on certification.[9]

2              ii.    StarKist fails to carry its burden under the governmental interest test.

3          "By default, California courts apply California law '**unless** a party litigant timely invokes the

4   law of a foreign state,' in which case it is 'the foreign law proponent' who must 'shoulder the burden

5   of demonstrating that foreign law, rather than California law, should apply to class claims.'  *In re*

6   *Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 561 (citing *Wash. Mut. Bank, FA v. Superior Court*, 24

7   Cal. 4th 906, 103 Cal. Rptr.2d 320, 15 P.3d 1071, 1080–81 (2001)) (emphasis added).  *See also*

8   *Paulsen v. CNF, Inc.*, 559 F.3d 1061 (9th Cir. 2009) (California "will apply its own rule of decision

9   unless a party invokes the law of a foreign state that 'will further the interest of the foreign state and

10  therefore that it is an appropriate one for the forum to apply to the case before it'") (citing *Hurtado v.*

11  *Super. Ct.*, 522 P.2d 666, 670 (Cal. 1974)).  StarKist fails to carry its burden.  *See also Farar*, 2017

12  WL 5952876 at *16 (observing defendant's failure to satisfy the governmental interest test, even

13  where plaintiffs did not first meet their burden of showing significant contacts with California, in the

14  event plaintiffs later made such a showing).

15         California's three-step governmental interest test requires StarKist to prove:

16     (1)    other states' unjust enrichment laws "'materially differ[] from the law of California'
17            . . . meaning that the law differs 'with regard to the particular issue in question;'"

18     (2)    "a 'true conflict exists,' meaning that each state has an interest in the application of its
19            own law to 'the circumstances of the particular case;'" and

20     (3)    other states' interests would be "more impaired" than California's interest if California
            law were applied.

21

22

23  [9] And StarKist's claim (Motion at 19 n.13) that Plaintiffs cannot plausibly argue that it is premature
    to consider choice-of-law questions (absent access to facts), is belied by numerous decisions in this
24  District declining to apply *Mazza* at the pleading stage to strike class allegations.  *See Doe v.*
    *Successfulmatch.com*, 2014 WL 1494347, *7 (N.D. Cal. Apr. 16, 2014); *Werdebaugh v. Blue*
25  *Diamond Growers*, 2013 WL 5487236, *15–*16 (N.D. Cal. Oct. 2, 2013); *Brazil v. Dole Foods Co.,*
    *Inc.*, 2013 WL 5312418, at *11 (N.D. Cal. Sept. 23, 2013).  This Court's ruling in *Zeiger v. WellPet*
26  *LLC*, 304 F. Supp. 3d 837, 847 (N.D. Cal. 2018), does not dictate a different result.  There, plaintiffs
    were only from California, and the issue centered on their *standing* to represent non-California
27  plaintiffs.  *Id.*  Here, StarKist has not contested standing, and Plaintiffs hail from eight different states.

28                                              17

1 *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 561–62 (internal citations omitted).  If StarKist

2 fails to meet its burden "at any step in the analysis," then this Court "'may properly find California

3 law applicable without proceeding' to the rest of the analysis." *Id.*

4       While the Ninth Circuit has held that elements of unjust enrichment claims "vary materially

5 from state to state," *Mazza*, 666 F.3d at 591, it did not hold that these differences always defeat the

6 application of California law.  StarKist most notably fails to show how the ***particular facts and***

7 ***circumstances*** of this case result in any differences in states' unjust enrichment law that would create

8 a ***true conflict***.  It instead relies on *Mazza* to essentially argue that whenever a product is sold in more

9 than one state, prong two is satisfied.  Full stop.  Motion at 22.  This Court found defendants' similar

10 wholesale reliance on *Mazza* lacking in *Farar*, 2017 WL 5952876, at *16.  There, defendants relied

11 on *Mazza* "to argue only that . . . 'state consumer protection laws diverge on key questions . . ..'"

12 The Court found that, while defendants' argument might satisfy the first prong, it did not "address

13 the next two steps of the inquiry." *Id.*

14       If StarKist's position were enough – that a conflict exists whenever products are sold across

15 state borders, then *Mazza* would have been the death knell of multi-state consumer fraud class actions

16 years ago.  It was not, and many post-*Mazza* cases note that the "true conflicts" inquiry is fact-specific

17 and often determinative.  *See, e.g.*, *Brazil*, 2013 WL 5312418, at *11 (in food labeling case, "[a]bsent

18 the sort of detailed choice-of-law analysis that guided the Ninth Circuit in *Mazza*," the court was

19 "unable to determine whether California's choice-of-law rules apply to bar all, some, or none of [the]

20 class claims"); *In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948, 977, 979 (N.D. Cal. 2017)

21 (observing that a choice-of-law question may "hinge[] on . . . disputed factual questions" and finding

22 that defendant failed to satisfy governmental interest test where it did not show that other states had

23 an interest under the particular facts of the case); *Colma*, 325 F.R.D. at 649 ("[W]hile defendants have

24 pointed in broad strokes to material differences between states' . . . laws, they have not met their

25 burden of showing that other jurisdictions have an interest in the application of their laws to Plaintiffs'

26 claims that outweighs California's interest . . . ").

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

1   As the court explained in *Brazil v. Dole Foods Co., Inc.*, "the Ninth Circuit's opinion in *Mazza*

2   . . . depended heavily on a detailed choice-of-law analysis that compared how various states'

3   consumer protection laws applied to the facts of the plaintiffs' claims." 2013 WL 5312418, at *11.

4   StarKist has not even attempted to argue the facts of this case, nor to offer said facts into the record

5   via responses to Plaintiffs' discovery requests. Thus, there is "**no evidence in the record** that the

6   conflict between California's law and foreign law 'is so severe as to preclude applying California law

7   to [Plaintiffs' nationwide] class claim[].'" *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942,

8   at *4 (N.D. Cal. Sept. 8, 2016).

9   StarKist's failure to satisfy the second and third prongs of the governmental interest test is

10  fatal to its claim that foreign states' laws should apply to the unjust enrichment claim.

11   b.   The Court may certify a multi-state class.

12   To the extent there are material differences in state law governing unjust enrichment claims

13  that prevent application of California law to a nationwide class, they are a subspecies of trial

14  manageability concerns. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir.

15  2001). They do not spell the death knell of a Rule 23(b)(3) certification. *Tasion Commc'ns, Inc. v.*

16  *Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 643, n.10 (N.D. Cal. 2015) (denying nationwide class but

17  noting, "Plaintiffs do not seek to certify a class confined to any particular state such as where a named

18  Plaintiff resides. Instead, they seek only a nationwide class, and do so predicated on the uniform

19  approach of California law. The Court does not suggest that classes and subclasses may never be

20  certified where multiple state laws are involved").

21   Rule 23 offers the Court broad discretion to modify or limit the class or create subclasses to

22  address these differences. Rule 23(c)(5). There is ample authority for certifying multi-state classes

23  and/or for using subclasses where a "choice-of-law analysis appear[s] to pose problems" for

24  nationwide class certification. *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal.

25  2012). *See also, e.g.*, *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *10 (E.D. Cal. Mar.

26  29, 2019) (certifying multi-state common law class); *In re Checking Account Overdraft Litig.*, 307

27  F.R.D. 630, 683 (S.D. Fla. 2015) (certifying multi-state unjust enrichment classes); *Ellsworth v. U.S.*

28

19

*Bank, N.A.*, 2014 WL 2734953, at \*21 (N.D. Cal. June 13, 2014) (granting class certification where the relevant "laws of the various states [were] capable of being organized into groups with similar legal regimes"). And *Mazza* does not prohibit such certification. 666 F.3d at 594 ("express[ing] no view whether on remand it would be correct to certify a smaller class containing only those who purchased or leased Acura RLs in California, or to certify a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law").

The Court may certify a multi-state class here on behalf of purchasers from Arizona, California, Florida, Massachusetts, Michigan, Minnesota, New Jersey, and New York with subclasses, if necessary, to account for any material differences in state law.[10]

### 3. Plaintiffs seek necessary and appropriate injunctive relief, in addition to incidental monetary relief that will be determined by a uniform and formulaic calculation applicable to all Class members.

As discussed above, StarKist's Motion is premature. So, too, is any determination as to whether the purported Classes should be certified under Fed. R. Civ. P. 23(b)(2), 23(b)(3), 23(c)(4), or all three, because "the shape and form of a class action evolves only through the process of discovery." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (citations omitted); *see also Smith v. Specialized Loan Servicing, LLC*, 2017 WL 4181395, at \*2 (S.D. Cal. Sept. 21, 2017) ("the granting of a motion to dismiss or strike class allegations before discovery has commenced should be done rarely" (citing *id.*)). For example, Plaintiffs have not had a reasonable opportunity to complete their own expert analysis regarding the economic harm and remedies at issue, which will have a direct bearing on the form of the Class in this case. Plaintiffs

---

[10] Should the Court determine that the application of different states' laws is necessary for Rule 23(b)(3) certification, and that differences in those laws overwhelm common questions such that a nationwide or multi-state unjust enrichment class lacks the requisite predominance, the Court may certify key issues underlying the unjust enrichment claim pursuant to Rule 23(c)(4). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014).

20

have not yet even decided which classes they will seek to certify.  In accordance with the Court's existing discovery schedule and the Federal Rules of Civil Procedure, Plaintiffs are not yet required or in a position to disclose their experts, whose findings will have a direct bearing on the appropriate type of class certification and the factual issues raised by StarKist in its premature Motion.

Still, Plaintiffs have a clear basis for seeking a Rule 23(b)(2) class, because StarKist "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole", and  "a single injunction… would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.  The "key" to certifying a 23(b)(2) class "is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined…only as to all of the class members or as to none of them." *Id.* (citation and internal quotation marks omitted).  Where Plaintiffs appropriately seek injunctive or declaratory relief under Rule 23(b)(2), monetary relief may be also be sought where it is "incidental" to the injunctive relief and can "be calculated formulaically." *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.,* 2011 WL 6372412 at *7 (N.D. Cal. 2011).  That is the case here.

First, the primary relief Plaintiffs seek is removal and/or modification of StarKist's "dolphin-safe" label as well as a corrective advertising campaign to inform the public about the fishing practices used to procure StarKist tuna and the true meaning of their "dolphin-safe" label.  To this end, Plaintiffs seek an injunction: (1) to have StarKist's unlawful, unfair, and deceptive acts and practices be declared unlawful; (2) to enjoin StarKist from continuing to mislabel its tuna products; and (3) to require StarKist to engage in a corrective advertising campaign (SAC ¶ 81).  This requested injunctive relief will benefit all Class members by precluding StarKist from continuing to make false representations regarding its fishing practices.  Further, injunctive relief is necessary to provide consumers with clarity about whether StarKist tuna is in fact 100% dolphin-safe when buying StarKist

21

tuna in the future.  *Ang v. Bimbo Bakeries USA, Inc.* 2018 WL 4181896 (N.D. Cal. Aug. 31, 2018), is directly on point.  In *Ang*, plaintiffs alleged they purchased food products containing numerous misrepresentations on the labels.  *Id.* at *1.  The court certified a (b)(2) class, even though plaintiffs also sought a (b)(3) class, because enjoining a food manufacturer from engaging in misleading and unlawful labeling practices provides relief to each member of the class.  *Id.* at *11-12.  Here, too, the removal or modification of the "dolphin-safe" label and a marketing campaign to inform the public of StarKist's practices would protect all consumers from false representations and provide relief to every Class member.

Second, Plaintiffs' request for monetary damages is incidental to the injunctive relief.  Any potential damages will be based on StarKist's use of the "dolphin-safe" label, incidental to injunctive relief, and will be computed using a uniform and formulaic calculation for all Class members.  Though Plaintiffs have not been afforded the opportunity to conduct expert analysis and calculate damages, any calculation will likely be based on a formula consisting of the price premium Class members paid for StarKist's products and the amount sold.  Because of the mechanical and formulaic nature of the damages calculation, an individual damages analysis for each Class member will not be required.  Thus, certification under Fed. R. Civ. P. 23(b)(2) is permissible.  *See Lum v. SEIU Local 521*, 2016 U.S. Dist. LEXIS 23982, *4 (N.D. Cal. 2016).[11]

Indeed, courts in the Ninth Circuit (including this Court) have routinely certified (b)(2) injunctive relief classes alongside certification of monetary damages classes under (b)(1) or (b)(3).  *See Schuman v. Microchip Tech, Inc.*, 2020 WL 887944, at *12 (N.D. Cal. Feb. 24, 2020); *Risto v. Screen Actors Guild-American Fed'n of TV & Radio Artists*, 2020 U.S. Dis. LEXIS 16872 (C.D. Cal.

---

[11] That the SAC references monetary damages is in no way determinative of whether they are only "incidental" to Plaintiffs' request for injunctive relief.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

Sept. 14, 2020); and *Farar*, 2017 WL 5952876.   StarKist's speculation concerning Plaintiffs' objectives is insufficient to overcome Plaintiffs' repeated request for injunctive relief related to StarKist's false and misleading labeling.

Further, the financial damages sought in this matter are based on common proof rather than on individualized damages calculations.   In support of its Motion, StarKist relies on *Russell v. Kohl's Dep't Stores, Inc*, 2015 WL 12748629 (C.D. Cal. 2015), where the court found Rule 23(b)(2) inapplicable because plaintiffs purchased thousands of separate items at different price points.   Here, the only products at issue are canned and pouched StarKist-branded tuna and the difference in price among the products is *de minimis*.   The disparity between damages calculations here and those required in *Russell* and discussed in *Dukes, supra*, is both drastic and obvious.   Those cases required highly individualized and complex damages calculations, whereas here, with the caveat that Plaintiffs await normal and expert discovery, the calculation of damages will be consistent among Class members given substantial similarity among the products at issue.   As a result, *Delarosa v. Boiron, Inc.*, 275 F.R.D 582 (C.D. Cal. 2011), is a more apt comparison, where the court acknowledged there were some differences in the exact damages for each plaintiff based on limited variables such as the amount of produced purchased, but nevertheless certified a (b)(2) class because there was sufficient uniformity regarding price per class product.

## III.   CONCLUSION

Based on the foregoing, Plaintiffs' respectfully request the Court deny StarKist's premature Motion.

Dated:  September 25, 2020                BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

                                                 /s/*Patricia N. Syverson*
                                                 Patricia N. Syverson (203111)
                                                 600 W. Broadway, Suite 900
                                                 San Diego, California 92101
                                                 psyverson@bffb.com
                                                 Telephone:  (619) 798-4593

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Elaine A. Ryan (*Pro Hac Vice*)
Carrie A. Laliberte (*Pro Hac Vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone:  (602) 274-1100

GOLDMAN SCARLATO & PENNY P.C.
Brian D. Penny (*Pro Hac Vice*)
penny@lawgsp.com
8 Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, Pennsylvania 19428
Telephone:  (484) 342-0700

ZAREMBA BROWN PLLC
Brian M. Brown (*Pro Hac Vice*)
bbrown@zarembabrown.com
40 Wall Street, 52nd Floor
New York, NY 10005
Telephone: (212) 380-6700

ROBBINS GELLER RUDMAN & DOWD LLP
Stuart A. Davidson (*Pro Hac Vice*)
Christopher C. Gold (*Pro Hac Vice*)
Bradley M. Beall (*Pro Hac Vice*)
Dorothy P. Antullis (*Pro Hac Vice*)
sdavidson@rgrdlaw.com
cgold@rgrdlaw.com
bbeall@rgrdlaw.com
dantullis@rgrdlaw.com
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  (561) 750-3000

Attorneys for Plaintiffs

24

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the 25th day of September 2020.

*/s/ Patricia N. Syverson*
Patricia N. Syverson

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION