1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    ROXANE A. POLIDORA (CA Bar No. 135972)
2   roxane.polidora@pillsburylaw.com
    LEE BRAND (CA Bar No. 287110)
3   lee.brand@pillsburylaw.com
    Four Embarcadero Center, 22nd Floor
4   San Francisco, CA  94111
    Telephone: (415) 983-1000
5   Facsimile: (415) 983-1200

6
    Attorneys for Defendant
7   STARKIST CO.

8

9                  **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11

12   WARREN GARDNER, et al., on behalf of          Case No. 3:19-cv-02561-WHO
     Themselves and all others similarly situated,
13                                                  **REPLY IN SUPPORT OF STARKIST**
                      Plaintiffs,                   **CO.'S MOTION TO DENY CLASS**
14                                                  **CERTIFICATION**
             v.
15                                                  Date:    October 21, 2020
     STARKIST CO., a Delaware Corporation,          Time:    2:00 p.m.
16                                                  Place:   Courtroom 2, 17th Floor
                      Defendant.                    Judge:   Hon. William H. Orrick
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT .............................................................................................................. 2

   A. The Court Should Deny Certification Of Any Class Under Rule 23(b)(3) On
      Predominance Grounds ............................................................................................ 2

     1. Plaintiffs Should Be Judicially Estopped from Attempting to Now Bring a
        Pure Labeling Case ....................................................................................... 3

        a. Plaintiffs' New Pure Labeling Case Is Clearly Inconsistent with Plaintiffs'
           Position at the Pleading Stage ............................................................. 4

        b. Plaintiffs Previously Succeeded in Persuading the Court That They Had Not
           Brought a Pure Labeling Case .............................................................. 6

        c. Plaintiffs' New Position Cannot Be Fairly Asserted Now Because It Would
           Not Have Survived a Motion to Dismiss ............................................... 7

     2. StarKist's Motion Is Not Premature ............................................................. 9

   B. The Court Should Deny Certification Of A Nationwide Unjust Enrichment Class
      Under Rule 23(b)(3) On The Additional Grounds That Laws Of All 50 States
      Would Apply And Preclude Predominance .............................................................. 11

     1. Plaintiffs Cannot Satisfy Constitutional Due Process ...................................... 11

     2. StarKist Satisfies the Governmental Interest Test .............................................. 13

     3. Plaintiffs Cannot Certify Any Other Unjust Enrichment Class ........................... 14

   C. The Court Should Deny Certification Of Any Rule 23(b)(2) Class That Seeks
      Monetary Relief ..................................................................................................... 14

III. CONCLUSION ............................................................................................................ 15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

<u>Cases</u>

4

*Allen v. Conagra Foods, Inc.*,

5

331 F.R.D. 641 (N.D. Cal. 2019) ................................................................................. 11

6

*Ang v. Bimbo Bakeries USA, Inc.*
No. 13-CV-01196-HSG, 2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) ...................... 14

7

*Baughman v. Walt Disney World Co.*,

8

685 F.3d 1131 (9th Cir. 2012) ....................................................................................... 3

9

*Brazil v. Dole Food Co., Inc.*,
No. 12-CV-01831-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ..................... 13

10

11

*Colman v. Theranos, Inc.*,
325 F.R.D. 629 (N.D. Cal. 2018) ................................................................................. 13

12

*Cont'l Cas. Co. v. Chatz*,

13

591 B.R. 396 (N.D. Cal. 2018) ....................................................................................... 3

14

*Cover v. Windsor Surry Co.*,
No. 14-cv-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ......................... 13

15

16

*Delarosa v. Boiron, Inc.*,
275 F.R.D. 582 (C.D. Cal. 2011) ................................................................................... 15

17

*Hamilton v. State Farm Fire & Cas. Co.*,

18

270 F.3d 778 (9th Cir. 2001) ........................................................................................... 3

19

*Herskowitz v. Apple, Inc.*,
301 F.R.D. 460 (N.D. Cal. 2014) ................................................................................... 15

20

21

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
No. C 10-02124 SI, 2011 WL 6372412 (N.D. Cal. Dec. 20, 2011) .............................. 15

22

*In re Qualcomm Antitrust Litig.*,

23

292 F. Supp. 3d 948 (N.D. Cal. 2017) ........................................................................... 13

24

*In re Seagate Tech. LLC*
326 F.R.D. 223 (N.D. Cal. 2018) ................................................................................... 13

25

26

*Krommenhock v. Post Foods, LLC*,
No. 16-cv-04958-WHO (N.D. Cal. Sept. 29, 2020), Dkt. 264 ...................................... 14

27

28

*Lum v. SEIU Local 521*,
    No. 14-CV-05230-LHK, 2016 U.S. Dist. LEXIS 23982 (N.D. Cal. Feb.
    25, 2016) ........................................................................................................... 15

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................... 2, 11, 12, 13

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
    692 F.3d 983 (9th Cir. 2012) ................................................................................. 3

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ............................................................................................... 3

*Ogden v. Bumble Bee Foods, LLC*,
    292 F.R.D. 620 (N.D. Cal. 2013) ........................................................................... 9

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ......................................................................... 15

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ........................................................................... 2, 14

*Stokes v. CitiMortgage, Inc.*,
    No. CV 14-00278 BRO SHX, 2015 WL 709201 (C.D. Cal. Jan. 16,
    2015) ................................................................................................................ 9, 10

*Todd v. Tempur-Sealy Int'l, Inc.*,
    No. 13-CV-04984-JST, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016) ..................... 13

*Torrent v. Yakult U.S.A., Inc.*,
    No. SACV1500124CJCJCGX, 2016 WL 4844106 (C.D. Cal. Jan. 5,
    2016) ................................................................................................................... 15

*United States v. Locke*,
    529 U.S. 89 (2000) ................................................................................................. 9

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ................................................................................. 9

*Wagner v. Prof'l Eng'rs in Cal. Gov't*,
    354 F.3d 1036 (9th Cir. 2004) ............................................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................. 14

*Zapata Fonseca v. Goya Foods Inc.*,
    No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ...................... 13

*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ................................................................. 12

1

<u>Rules</u>

2

Federal Rules of Civil Procedure
    Rule 9(b) ............................................................................ 1, 4, 7
    Rule 12(c) ........................................................................... 12, 14
    Rule 23(a) ................................................................................. 14
    Rule 23(b)(2) .................................................................... 2, 14, 15
    Rule 23(b)(3) ..................................................................... passim
    Rule 23(c)(4) ..................................................................... 11, 14
    Rule 9(b) ............................................................................ 1, 4, 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **I.      INTRODUCTION**

2        At the pleading stage, Plaintiffs repeatedly represented to this Court that they were

3  not merely challenging StarKist's "dolphin safe" labels, but rather challenging a pervasive

4  advertising campaign since 1990 comprised of broader non-label promises that led

5  consumers to believe StarKist's tuna was "100% dolphin safe."  Plaintiffs represented that

6  these promises by StarKist go beyond the DPCIA dolphin safe requirements and take

7  StarKist "into a whole other league."  Expressly relying on those representations, the Court

8  found that Plaintiffs had stated a claim for false advertising under various state laws.  Now,

9  faced with StarKist's Motion to Deny Class Certification, and recognizing they cannot

10  possibly demonstrate classwide exposure to such non-label promises, Plaintiffs shamelessly

11  reverse themselves and take the entirely inconsistent position that they are relying

12  exclusively on StarKist's "dolphin safe" product labels.

13        This sort of attempt at "playing fast and loose with the courts" is exactly why the

14  doctrine of judicial estoppel precludes "a party from prevailing in one phase of a case on an

15  argument and then relying on a contradictory argument to prevail in another phase."

16  Indeed, the Court relied on StarKist's alleged non-label advertising campaign and

17  representations in ruling at the pleading stage that Plaintiffs' state law claims were

18  adequately pleaded under Rule 9(b) and not preempted by the DPCIA.  To avoid unfair

19  advantage to Plaintiffs and detriment to StarKist, Plaintiffs should be judicially estopped

20  from taking the new and contradictory position that they do not rely on non-label promises.

21  Because Plaintiffs' improper attempt to reframe this as a pure labeling case is their only

22  substantive response to the classwide exposure arguments in StarKist's opening brief, the

23  Court should deny certification of any Rule 23(b)(3) class on predominance grounds.

24        Less substantively, Plaintiffs also argue in their Opposition that StarKist's Motion

25  should be denied because they were forced to respond to it without the opportunity to take

26  discovery.  In fact, StarKist repeatedly asked Plaintiffs to discuss both what discovery they

27  believed was necessary to respond to the Motion and a briefing schedule that would

28  accommodate such discovery.  Apparently more interested in preserving their prematurity

1   argument than in identifying and taking any such discovery, Plaintiffs refused to engage.

2   Moreover, despite Plaintiffs' suggestion to the contrary, federal Courts in the Ninth Circuit

3   and across the country address class certification issues prior to discovery where, as here,

4   discovery is not necessary to resolve whether a class action may be maintained.

5          Separately, as set forth in StarKist's opening brief, Plaintiffs' purported nationwide

6   unjust enrichment class is also doomed because "[n]o court in this Circuit has certified a

7   nationwide unjust enrichment class since *Mazza*," and courts have expressly rejected such

8   classes in factually similar cases, including *Mazza* itself.  Tellingly, Plaintiffs make only a

9   halfhearted attempt to save their nationwide class, immediately moving to the fallback

10  position—which also fails under the Ninth Circuit's recent *Sonner* decision—that they can

11  still potentially certify a narrower unjust enrichment class.

12         Finally, StarKist's opening brief explains that Plaintiffs cannot pursue monetary

13  relief under Rule 23(b)(2) because such relief is not incidental to injunctive relief and

14  would require individualized awards.  Plaintiffs respond that the monetary relief they seek

15  is incidental and formulaic, but base their argument on fatally flawed mischaracterizations

16  of both StarKist's products and applicable law.

17  **II.      ARGUMENT**

18  **A.      The Court Should Deny Certification Of Any Class Under Rule 23(b)(3)**
19  **On Predominance Grounds**

20         As set forth in the opening brief, Plaintiffs cannot demonstrate that most purported

21  class members were exposed to StarKist's non-label representations regarding dolphin

22  safety, and thus no class alleging false advertising claims based on such representations can

23  be certified under Rule 23(b)(3).  Mot. at 10-19.  Plaintiffs' Opposition tacitly concedes this

24  point, never once arguing that Plaintiffs have any hope of demonstrating such exposure

25  through discovery, or that such a class can be certified absent exposure.  Instead, Plaintiffs

26  now take the brazen position that "this case is and has always been about whether

27  StarKist's 'dolphin-safe' promise on its *labels* is false or misleading," and that despite their

28  repeated and extensive reliance on "StarKist's website statements, social media posts, and

1  press releases" throughout the pleadings phase, "Plaintiffs need not rely on those [non-

2  label] sources for their false advertising claims."  Opp. at 6 (emphasis in original).

3          Plaintiffs should be judicially estopped from arguing that their false advertising

4  claims do not rely on StarKist's non-label representations because that position directly

5  contradicts the position that they took in order to survive StarKist's motion to dismiss.

6  Further, because Plaintiffs effectively concede that no purported class was exposed to

7  StarKist's non-label representations, the Court need not wait for discovery on exposure to

8  deny certification of any Rule 23(b)(3) class on predominance grounds.

9                  **1.      Plaintiffs Should Be Judicially Estopped from Attempting to
10                          Now Bring a Pure Labeling Case**

11         The doctrine of judicial estoppel "serves to 'prohibit a party from prevailing in one

12  phase of a case on an argument and then relying on a contradictory argument to prevail in

13  another phase.'"  *Cont'l Cas. Co. v. Chatz*, 591 B.R. 396, 411 (N.D. Cal. 2018) (quoting

14  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  In the Ninth Circuit in particular,

15  courts employ "judicial estoppel not only to prevent a party from gaining an advantage by

16  taking inconsistent positions, but also because of general considerations of the orderly

17  administration of justice and regard for the dignity of judicial proceedings, and to protect

18  against a litigant"—like Plaintiffs here— "playing fast and loose with the courts."

19  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

20         There "are three factors that courts 'should consider in determining whether the

21  doctrine is applicable in any given case.'"  *Cont'l*, 591 B.R. at 411-12 (quoting *Milton H.

22  Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993-94 (9th Cir. 2012)).

23  "These are: (i) whether the party's later position is clearly inconsistent with its earlier

24  position; (ii) whether the party succeeded in persuading a court to accept its earlier position,

25  creating a perception that the first or second court was misled; and (iii) whether the party

26  seeking to assert an inconsistent position derives an unfair advantage or imposes an unfair

27  detriment on the opposing party."  *Id*. at 412 (citing *Baughman v. Walt Disney World Co.*,

28  685 F.3d 1131, 1134 (9th Cir. 2012)).  Here, all three factors dictate in favor of judicially

1    estopping Plaintiffs from adopting the new and contradictory position that "[t]his is a

2    straight forward product-labeling case."  Opp. at 6; *see also Wagner v. Prof'l Eng'rs in Cal.*

3    *Gov't,* 354 F.3d 1036, 1049 (9th Cir. 2004) (district court abused its discretion in allowing

4    plaintiffs to enjoy the advantages of incompatible positions at different case phases).

5
6              **a.      Plaintiffs' New Pure Labeling Case Is Clearly Inconsistent
                         with Plaintiffs' Position at the Pleading Stage**

7          StarKist's opening brief quotes extensively from Plaintiffs' statements to this Court

8    to explain why Plaintiffs' theory of this case—as it was previously articulated—necessarily

9    depends upon exposure to non-label representations.  Mot. at 10-13.  Rather than attempting

10   to explain ***their own*** prior statements, Plaintiffs accuse StarKist of "remaking Plaintiffs'

11   case in their own image."  Opp. at 9.  Yet even in this section of their brief, Plaintiffs spend

12   pages reiterating the non-label representations on which they now claim to no longer rely.

13   *Id.* at 7-8.[1]  Moreover, Plaintiffs are on record throughout the pleadings phase relying

14   expressly on those non-label allegations to assure the Court that they had stated false

15   advertising claims under Rule 9(b) that were not preempted by the DPCIA.

16         On the very first page of their opposition to StarKist's motion to dismiss the FAC,

17   Plaintiffs summarized this case as follows: "StarKist promises consumers that its tuna

18   products are ***100%*** 'dolphin-safe' and sustainably sourced.  Plaintiffs have specifically and

19   plausibly alleged that StarKist's promises are false and misleading. . . . The Complaint

20   explains . . . where [StarKist's deception] occurred (on every StarKist tuna product ***and via a***

21   ***wide-ranging, long-running media campaign***) . . . ."  First MTD Opp. at 1.[2]  Plaintiffs went

22   on to repeatedly reference various aspects of this alleged non-label media campaign

23   throughout the remainder of their brief, and specifically used that same "***100%*** dolphin

24   safe" phrase seven more times to describe StarKist's challenged representation to

25

26   [1]    Plaintiffs then spend pages on arguments that StarKist has not even made—*i.e.*, about
27   materiality, common interpretation, reliance, and exposure in cases where the relevant
     alleged false advertising actually appears on the label.  *Id.* at 8-14.

28   [2]    All emphasis added unless otherwise indicated.

1    consumers.  *Id.* at 1, 3, 13-15, 19, 30; *see also id.* at 22 ("StarKist's dolphin-safe

2    representations pre-date the DPCIA and are ***broader in scope***" because "*[o]ne hundred*

3    ***percent guaranteed dolphin-safety*** has been StarKist's marketing message to consumers

4    for nearly 30 years").  They also used the "***100%*** dolphin safe" phrase another seven times

5    in their opposition to DWI's motion to dismiss the FAC.  Dkt. 55 at 1, 5, 12-13, 20.  As

6    Plaintiffs are well aware, however, the words that appear on labels of StarKist tuna products

7    are "dolphin safe," ***not*** "***100***% dolphin safe."  *See, e.g.*, FAC ¶ 23; SAC ¶ 20.  Thus,

8    Plaintiffs were clearly challenging representations that StarKist had allegedly made to

9    consumers in various media that were different from, and over and above, the "dolphin

10    safe" product label.[3]

11         Plaintiffs doubled down on this approach at the motion to dismiss hearing,

12    responding to StarKist's motion exclusively by providing the Court with a laundry list of

13    StarKist's various "promises and pledges that, as you have recognized, go well above the

14    D[PC]IA requirements, takes them into a whole other league."  Hr'g Tr. at 13:13-15.  At no

15    point in this argument did Plaintiffs' counsel even suggest that the "dolphin safe" label, in

16    and of itself and divorced from any awareness of StarKist's non-label representations,

17    constituted the challenged ***wide-ranging, long-running media campaign*** that constituted a

18    ***100%*** dolphin safe pledge that went above and beyond the DPCIA.  *See id.* at 10:25-13:15.

19    Tellingly, references to "***100%***" have all but disappeared from Plaintiffs' current

20    Opposition, in which Plaintiffs attempt to rewrite history by claiming that "this case is and

21    has always been about whether StarKist's 'dolphin-safe' promise on its *labels* is false or

22    misleading."  Opp. at 6 (emphasis in original).[4]

23

24

---

25   [3]   Notwithstanding Plaintiffs' tortured logic as to why the representation at issue is not a
"superiority message," *see* Opp. at 11-12; the challenged representation "***100%*** dolphin

26   safe" is superior to the representation "dolphin safe" that actually appears on both the
StarKist and official DPCIA labels.

27

28   [4]   Plaintiffs include a single reference to "100% dolphin-safe," presumably by accident, in
the final section of their brief.  Opp. at 21.

1   **b.   Plaintiffs Previously Succeeded in Persuading the Court That They Had Not Brought a Pure Labeling Case**

2

3   In its First MTD Order, the Court took Plaintiffs at face value that this case was

4   about alleged "***100%*** dolphin safe" representations that went beyond the mere "dolphin

5   safe" StarKist label and thus beyond the DPCIA.  Indeed, in the very first paragraph of that

6   order, the Court left no room for doubt that Plaintiffs had succeeded in persuading it that

7   their complaint alleged a case based on higher dolphin safe representations than the

8   "dolphin safe" label authorized by the DPCIA:

9   Plaintiffs are purchasers of StarKist Co. ("StarKist") tuna from various states who
    bring a class-action lawsuit alleging that StarKist promises consumers that its tuna
10  products are 100% 'dolphin-safe' and sustainably sourced and that those promises
    are false and misleading.  They have met the pleading standard for their state law
11  fraud claims because they sufficiently allege that: (i) StarKist entered into a
    pervasive advertising campaign since 1990 that led consumers to believe it sets
12  itself to a higher dolphin-safe standard than required under the Dolphin Protection
    Consumer Information Act ("DPCIA") 16 U.S.C. § 1385; (ii) StarKist tuna cannot
13  be 100% dolphin-safe given that the fishing techniques it uses are known to harm or
    kill at least some dolphins; and (iii) consumers would not have bought StarKist tuna
14  but-for its dolphin-safe promises.

15  First MTD Order at 1.

16  Subsequent language in the First MTD Order reinforces that it is based on false

17  advertising claims that go far beyond the "dolphin safe" label on StarKist's tuna products.

18  Indeed, the Court helpfully provided a "Clarification of the Case" section in its order that

19  explained in relevant part that Plaintiffs contend (1) "that while the DPCIA set the floor for

20  what a 'dolphin-safe' promise must mean, the federal regulations 'do not prevent

21  manufacturers of tuna products from making their own, albeit more stringent, dolphin-safe

22  promises to consumers;'" (2) "that StarKist has set itself to a higher standard because it

23  promises consumers that its tuna products are 100% dolphin-safe and sustainably sourced;"

24  (3) that while StarKist's fishing methods "might suffice for the DPCIA labeling standard,

25  plaintiffs allege that it cannot meet the higher standard that StarKist has advertised for

26  itself," and (4) "that therefore StarKist's promise to consumers is false and misleading."  *Id*.

27  at 9-10 (quoting and citing First MTD Opp. at 1, 5-6); *see also id*. at 11 ("plaintiffs assert

28

1   that the federal standards set the minimum requirements but that StarKist set itself to a

2   higher standard.").[5]

3        Further, the Court's ruling on the second round of motion to dismiss briefing again

4   adopts Plaintiffs' characterization of their claims as based on StarKist representations

5   beyond its "dolphin safe" label.  Explaining its ruling on Plaintiffs' state law claims once

6   again, the Court wrote: "As I previously found in the FAC, plaintiffs' fraud allegation in the

7   SAC is also based on StarKist's reassurance to consumers that '[its] tuna is 100% dolphin-

8   safe . . . using fishing methods that do not harm dolphins, exceeding the safety requirements

9   of the [Dolphin Protection Consumer Information Act ('DPCIA'), 16 U.S.C. § 1385].'"

10  Second MTD Order at 5 (alterations in original) (quoting SAC ¶ 38); *see also id*. at 6 ("The

11  100% dolphin-safe allegation is not a new theory alleged in the SAC, but rather one that

12  was recognized in the FAC and simply clarified in the SAC.").  Far from understanding

13  Plaintiffs' claims to be predicated upon an ***assurance*** on StarKist's labels, the Court was

14  persuaded that the allegations in their complaints were based upon StarKist's ***reassurance***

15  in various non-label communications.

16                          **c.    Plaintiffs' New Position Cannot Be Fairly Asserted Now
                                    Because It Would Not Have Survived a Motion to Dismiss**

17

18       Critically, the Court did not merely find Plaintiffs' claims to be predicated upon

19  StarKist's alleged non-label representations of ***100%*** dolphin safety, but it expressly and

20  repeatedly relied on those representations in finding that Plaintiffs had stated a claim.

21       First, in the section of the Court's order finding that Plaintiffs had adequately

22  pleaded factual allegations under Rule 9(b), the first subsection is titled "Plaintiffs Believed

23  That StarKist Promised 100% Dolphin-Safe Tuna."  First MTD Order at 11.  Within that

24  _____

25  [5]   StarKist disputes Plaintiffs repeated mischaracterization of the DPCIA's impact.  In
     fact, as reported on the NOAA website, annual dolphin mortality from tuna purse seine

26  fishing in the Eastern Tropical Pacific has fallen drastically from 1986, when it was around
     132,000, to 2018, when it was around 800—or 0.01% of the population.  *See*

27  https://www.fisheries.noaa.gov/marine-mammal-protection/frequent-questions-dolphin-
     safe.  StarKist vehemently denies that its own tuna procurement contributes in any way to

28  the dolphin mortality that remains.

1  subsection, the Court states what allegations it relied on to find that "Plaintiffs sufficiently

2  allege that they believed, as consumers, that StarKist set itself to a high dolphin-safe

3  standard." *Id*.  While the fact that "StarKist's products include a dolphin-safe logo" is **one**

4  of the allegations that the Court relied on, the Court also expressly relied on non-label

5  representations identified by Plaintiffs—*i.e.*, when "StarKist announced its dolphin-safe

6  policy" in 1990, what StarKist's "website states," "StarKist's statement after the World

7  Trade Organization ('WTO') ruling in 2012," and "multiple social media posts."  *Id*. at 11-

8  12.  It was "[t]hese allegations"—collectively—that were "sufficient at the pleading stage

9  to allege that StarKist set itself to a higher dolphin-safe standard that led consumers to

10  believe no dolphins were harmed in the making of their tuna products."  *Id*. at 12.

11       Plaintiffs now attempt to disavow precisely what the Court relied on in finding that

12  they had stated a claim, arguing that "[w]hile StarKist's website statements, social media

13  posts, and press releases help inform what message StarKist intends to convey through

14  those labels, Plaintiffs need not rely on those sources for their false advertising claims."

15  Opp. at 6.  Had Plaintiffs so limited their false advertising claims at the pleading stage, the

16  Court would have had no basis to find that Plaintiffs had sufficiently alleged "that StarKist

17  set itself to a higher dolphin-safe standard."  First MTD Order at 12.

18       Second, the Court expressly relied on the non-label representations identified by

19  Plaintiffs in ruling that their state law claims were not preempted by the DPCIA.

20  Specifically, the Court explained that Plaintiffs "contend that while the DPCIA set the floor

21  for what a 'dolphin-safe' promise must mean, the federal regulations 'do not prevent

22  manufacturers of tuna products from making their own, albeit more stringent, dolphin-safe

23  promises to consumers.'"  First MTD Order at 10 (quoting First MTD Opp. at 5).  Based on

24  this formulation, the Court determined that "[t]he relevant issue is not whether the DPCIA

25  preempts plaintiffs' state law claims but whether the FTCA does."  *Id*. at 16.

26       Had Plaintiffs argued at the pleading stage that use of the label phrase "dolphin

27  safe"—in and of itself—constituted false advertising, they would have created a direct

28  conflict between the DPCIA and their state law claims.  Yet now Plaintiffs contend just

1    that.  Plaintiffs' new theory is that a party that has a "dolphin safe" label in compliance with

2    the DPCIA, and makes no other claims about dolphin safety whatsoever, would still be in

3    violation of state false advertising laws unless its tuna met a heightened *100%* dolphin safe

4    standard.  Put another way, Plaintiffs now contend that state false advertising laws, rather

5    than the DPCIA, set the floor for what a "dolphin-safe" promise means.  Had Plaintiffs so

6    represented their false advertising claims at the pleading stage, the Court would have had

7    no choice but to find their state law claims directly inconsistent with, and thus preempted

8    by, the comprehensive federal labeling scheme addressing when tuna may be labeled

9    "dolphin safe"—the Dolphin Protection *Consumer Information* Act.  *See, e.g.*, *United*

10   *States v. Locke*, 529 U.S. 89, 115 (2000) ("The appropriate [field preemption] inquiry still

11   remains whether the purposes and objectives of the federal statutes, including the intent to

12   establish a workable, uniform system, are consistent with concurrent state regulation.").

13                    **2.      StarKist's Motion Is Not Premature**

14          StarKist's opening brief explains that "courts in the Ninth Circuit 'have broad

15   discretion to control the class certification process,' including with regard to the question of

16   '[w]hether or not discovery will be permitted.'"  Mot. at 17 (quoting *Vinole v. Countrywide*

17   *Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)).  Plaintiffs do not dispute the Court's

18   discretion to deny discovery, nor the proposition that discovery "is generally appropriate in

19   the class certification context 'where it will resolve factual issues necessary for the

20   determination of whether the action may be maintained as a class action.'"  *Id*. at 17-18

21   (quoting *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 622 (N.D. Cal. 2013)).

22   Instead, Plaintiffs suggest that StarKist has "not (and presumably cannot) provide a single

23   case in the last thirty years in which such a motion [to deny class certification] was granted

24   before *any* discovery had ensued."  Opp. at 2 (emphasis in original).  Plaintiffs are correct

25   that motions to deny class certification prior to any discovery are rare, but that is simply

26   because pre-discovery challenges to hopeless class allegations more commonly come in the

27   form of a motion to strike.  *See, e.g., Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO

28   SHX, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015) ("It is thus appropriate to strike

                                            9

1    class allegations prior to discovery where the allegations make it obvious that classwide

2    relief is not available.") (listing cases).[6]  Here, as in *Stokes*, it is obvious that classwide

3    relief is not available if Plaintiffs are judicially estopped from changing their theory of the

4    case and must establish classwide exposure to non-label representations.

5         Plaintiffs also complain at length that they were forced to respond to StarKist's

6    Motion without the opportunity to take discovery.  Opp. at 2-4.  Yet, its ongoing belief that

7    discovery is unnecessary in connection with the Motion notwithstanding, StarKist

8    repeatedly sought to discuss what discovery Plaintiffs believed was necessary to respond

9    and a briefing schedule that would allow for such discovery prior to the Opposition.  *See*

10   Brand Reply Decl. ¶ 2 and Ex. 7; *see also* Syverson Decl. ¶¶ 2-3.  Apparently seeking to

11   protect their argument that StarKist's Motion is premature, Plaintiffs repeatedly ignored and

12   then flatly rejected these overtures.  *Id*.  Nevertheless, in their Opposition, Plaintiffs finally

13   elected to identify the discovery that they believe is relevant to this Motion.  Tellingly, such

14   discovery is limited to issues of materiality and uniform consumer interpretation about the

15   phrase "dolphin safe," *see* Opp. at 4-5; issues that StarKist does not raise in its Motion and

16   that are wholly disconnected from the exposure issue on which its Motion actually turns.[7]

17        In short, Plaintiffs do not claim to need discovery regarding classwide exposure to

18   StarKist's non-label representations because they know such exposure does not exist.

19   Further, Plaintiffs' false advertising claims only survived the pleading phase because both

20   Plaintiffs and the Court expressly relied on these alleged non-label representations.  Now,

21   their best effort to ditch their own theory of this case notwithstanding, Plaintiffs must dance

22   with the one that brought them.

23

24

25   ――――――――――――――――

26   [6]   When current counsel joined the case, such a motion had already been precluded.

     [7]   Notably, Plaintiffs misrepresent the "Dolphin Safe National Survey" from which they
27   quote extensively as relating to "***StarKist's*** dolphin-safe promise." *Id*. at 4.  In fact, it
     relates to ***any*** label that includes the words "dolphin safe"—including the official DPCIA
28   logo.  *See generally* Syverson Decl. Ex. D.

1       **B.      The Court Should Deny Certification Of A Nationwide Unjust**
                  **Enrichment Class Under Rule 23(b)(3) On The Additional Grounds**
2                 **That Laws Of All 50 States Would Apply And Preclude Predominance**

3           In its opening brief, StarKist explains in detail why "'[n]o court in this Circuit has

4    certified a nationwide unjust enrichment class since *Mazza*.'" Mot. at 19 (quoting *Allen v.*

5    *Conagra Foods, Inc.*, 331 F.R.D. 641, 657 (N.D. Cal. 2019)). The Opposition meekly

6    responds that "Plaintiffs believe that California law ***may*** properly apply to a nationwide

7    class for unjust enrichment," and then immediately pivots to a backup plan—"a multi-state

8    class joining together the states from which Plaintiffs reside or a nationwide issue class

9    under Rule 23(c)(4)." Opp. at 14. For the reasons set forth in the opening brief and not

10   meaningfully refuted by Plaintiffs, both constitutional due process and California's

11   governmental interest test preclude a nationwide unjust enrichment class here. Plaintiffs'

12   backup plan fails for the separate reason, also set forth in the Motion, that Plaintiffs have

13   failed to even state a claim for unjust enrichment under recent Ninth Circuit precedent.

14              **1.      Plaintiffs Cannot Satisfy Constitutional Due Process**

15          Plaintiffs' Opposition identifies two bases by which they purport to have met their

16   burden of establishing that California has sufficient contacts with the claims of each

17   putative class member to satisfy constitutional due process. First, they point to the

18   allegation "that StarKist marketed and sold its tuna products ***in California*** and ***the rest of***

19   ***the United States***." Opp. at 15 (first emphasis in original) (citing SAC ¶ 78). Second,

20   Plaintiffs point to a former StarKist labeling facility in California. *Id.* (citing SAC ¶¶ 79,

21   104). Plaintiffs do not, however, point to a single case finding sufficient contacts based on

22   similar facts. Indeed, neither comes close to satisfying due process.[8]

23          Plaintiffs themselves do not appear to take their first basis seriously, mentioning it

24   briefly and without analysis. Nor should they, as they are well aware that StarKist tuna is

25   "distributed throughout the United States" and "is the No. 1 selling prepackaged tuna brand

26

---

27   [8]   Plaintiffs also attack the notion "that the significant contacts requirement of due process
     is synonymous with general jurisdiction," Opp. at 15-16, an obvious straw man argument
28   that StarKist never makes.

1   in the United States." SAC ¶ 1. If California's status as one of the 50 states in which a

2   product is sold could satisfy significant contacts, that standard would lose all meaning.

3       Instead, Plaintiffs focus on StarKist's former California labeling facility, arguing

4   both that the "challenged statements originated in California, via the labels," and that it

5   "logically follows that if StarKist receives the processed tuna in California, then it is in

6   California where StarKist must verify the supply chain prior to labeling and shipping."

7   Opp. at 15-16. As set forth in the opening brief and unaddressed in the Opposition, Courts

8   hold that alleged false advertising originates where it is conceived, not where it is

9   physically applied. *See* Mot. at 20; *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 590 (9th

10  Cir. 2012) (finding sufficient contacts based in part on location of advertising agency). As

11  for the contention that StarKist *must*—or is even likely to—verify its supply chain from the

12  factory where it previously stamped labels onto cans, it fails the straight face test.

13      Finally, Plaintiffs appeal to the Court for more time to potentially meet their

14  constitutional burden through discovery. However, as set forth in the opening brief, this

15  Court routinely conducts a choice of law analysis at the pleading stage in cases like this

16  one. Mot. at 19 n.13 (citing *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 847 (N.D. Cal.

17  2018)). Plaintiffs unpersuasively attempt to distinguish *Zeiger* by noting that it was focused

18  on standing. Opp. at 17 n.9. But whether the choice of law analysis is conducted in service

19  of assessing standing or predominance, the ultimate question remains the same, whether

20  Plaintiffs may "maintain nationwide class allegations at this time." *Zeiger*, 304 F. Supp. 3d

21  at 847. StarKist's decision to raise this question on a predominance motion under Rule

22  23(b)(3)—rather than the equally available option of a standing motion under Rule 12(c)—

23  does not change the fact that the choice of law analysis should be conducted now to avoid

24  "the significant burden of nationwide discovery." *Id*.[9]

25  _____

26  [9]  Plaintiffs' position is not salvaged by citation to cases that declined to apply *Mazza* at
    the pleading stage in its immediate aftermath. *See* Opp. at 17 n.9. As this Court explained

27  years later in *Zeiger*, "I have agreed with my colleagues in this district that '[i]n analogous
    cases, *Mazza* is not only relevant but controlling, even at the pleading stage.'" *Id*. (quoting

28                                                                              (continued…)

1          **2.**      **StarKist Satisfies the Governmental Interest Test**

2       Plaintiffs acknowledge that step one of the governmental interest test is established

3 as a matter of law here because the "elements of unjust enrichment claims 'vary materially

4 from state to state.'" Opp. at 18 (quoting *Mazza*, 666 F.3d at 591). Rather, they claim that

5 StarKist has not satisfied step two's true conflicts requirement or step three's more

6 impaired jurisdiction requirement because the opening brief relies on *Mazza* rather than

7 addressing the "***particular facts and circumstances*** of this case." Opp. at 18 (emphasis in

8 original). Yet the opening brief identifies ***factual*** similarities between this case and *Mazza*

9 and argues that that this Court should reach the same legal conclusion because of those

10 common ***facts***. Mot. at 22-23; *see also id*. (discussing common ***facts*** in *Todd v. Tempur-*

11 *Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2016 WL 344479, at *6-7 (N.D. Cal. Jan. 28,

12 2016), a case which Plaintiffs ignore).

13       As explained in *In re Seagate Tech. LLC*, another case not addressed by Plaintiffs,

14 the fact that "*Mazza* declined to set a strict rule against certifying nationwide consumer

15 classes under California law . . . does not mean *Mazza* is irrelevant." 326 F.R.D. 223, 241

16 (N.D. Cal. 2018). Rather, StarKist "has met its burden to show that foreign law should

17 apply by arguing that other states have a significant interest in regulating transactions

18 within their borders and that the Ninth Circuit has held that interest to predominate on

19 ***similar facts*** in *Mazza*." *Id*. Moreover, "Plaintiffs have not identified any meaningful

20 difference between the ***facts*** of this case and *Mazza*." *Id*.[10]

21

22

---

23 *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal.

24 Feb. 10, 2016)).

25 [10] There are, however, meaningful factual differences in the cases Plaintiffs rely on. *See* Opp. at 18-19 (citing *Colman v. Theranos, Inc.*, 325 F.R.D. 629 (N.D. Cal. 2018); *In re*

26 *Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948 (N.D. Cal. 2017); *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016); *Brazil v.*

27 *Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013)). None of these cases consider choice of law specific to unjust enrichment, and all

28 but one involve California headquartered corporations.

1            **3.**      **Plaintiffs Cannot Certify Any Other Unjust Enrichment Class**

2         Plaintiffs fall back to the position that even if a nationwide unjust enrichment class

3 is not certifiable, they can still bring unjust enrichment claims on behalf of purchasers from

4 those states where Plaintiffs allegedly reside or a vague issue class under Rule 23(c)(4).

5 Opp. at 19-20 & n.10.  As discussed in the opening brief, however, Plaintiffs have never

6 explained how their remedies at law, which seek "'the same amount of money for the exact

7 same harm,'" are "'inadequate or incomplete.'"  Mot. at 23 n.14 (quoting *Sonner v. Premier*

8 *Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).  As such, Plaintiffs have failed to state

9 an unjust enrichment claim under the Ninth Circuit's recent *Sonner* decision.  This issue

10 could be more directly raised in a Rule 12(c) motion, such as the one that the Court granted

11 earlier this week.  *See Krommenhock v. Post Foods, LLC*, No. 16-cv-04958-WHO (N.D.

12 Cal. Sept. 29, 2020), Dkt. 264.[11]  However, Plaintiffs' individual failures to state unjust

13 enrichment claims also preclude certification of an unjust enrichment class because such

14 failures defeat the typicality and adequacy requirements of Rule 23(a).

15        **C.**      **The Court Should Deny Certification Of Any Rule 23(b)(2) Class That**
16                **Seeks Monetary Relief**

17         Plaintiffs cannot pursue monetary claims under Rule 23(b)(2) because that rule only

18 authorizes monetary relief where—unlike here—it is "'incidental to the injunctive or

19 declaratory relief,'" and (2) does not require "'an individualized award.'"  Mot. at 24

20 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011)).  Plaintiffs'

21 Opposition only serves to confirm StarKist's argument.

22         Plaintiffs first assert that the "primary relief" they seek is injunctive and suggest that

23 *Ang v. Bimbo Bakeries USA, Inc.* "is directly on point."  Opp. at 21-22.  In *Ang*, however,

24 plaintiffs "abandon[ed] their claim to anything other than injunctive relief under Rule

25 23(b)(2)."  No. 13-CV-01196-HSG, 2018 WL 4181896, at *11 (N.D. Cal. Aug. 31, 2018).

26

27 ────────────────
[11]   Not in a motion for reconsideration or interlocutory appeal as Plaintiffs oddly suggest.
28 *See* Opp. at 14 n.8.

1    Here, the fact Plaintiffs do not seek a Rule 23(b)(2) class that drops all monetary claims and

2    *only* seeks injunctive relief lays bare that it is monetary relief that they primarily seek.

3         Plaintiffs next assert that any damages calculation in this case will be "mechanical

4    and formulaic" rather than "individualized" because "the only products at issue are canned

5    and pouched StarKist-branded tuna and the difference in price among the products is *de*

6    *minimis*." Opp. at 22-23. In fact, even a cursory review of StarKist's broad tuna offerings

7    reveals extensive product and price variation. *See* Brand Reply Decl. ¶¶ 3-4 and Ex. 8

8    (reflecting 38 different StarKist tuna products—including various flavors, sizes, packing

9    liquids, and more—ranging in price from under $1 to well over $10 that are available on

10   Walmart.com alone). Courts in this District routinely reject monetary relief sought under

11   Rule 23(b)(2) in comparable false advertising cases. *See, e.g.*, *Torrent v. Yakult U.S.A.,*

12   *Inc.*, No. SACV1500124CJCJCGX, 2016 WL 4844106, at *6 (C.D. Cal. Jan. 5, 2016)

13   ("restitution [plaintiff] seeks . . . requires individual calculations of monetary relief related

14   to the amount of Yakult purchased during the class period and the retail price paid by each

15   consumer"); *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) ("claim for

16   injunctive relief is, in essence, a claim for monetary damages"); *Ries v. Arizona Beverages*

17   *USA LLC*, 287 F.R.D. 523, 542 (N.D. Cal. 2012) (granting certification for declaratory and

18   injunctive relief but denying it for monetary relief).[12]

19   **III.    CONCLUSION**

20        StarKist respectfully requests that the Court grant its motion and deny certification

21   of the classes that Plaintiffs purport to represent.

22   _____

23   [12] Plaintiffs' cases are easily distinguishable. *See In re Conseco Life Ins. Co. Life Trend*
     *Ins. Mktg. & Sales Practice Litig.*, No. C 10-02124 SI, 2011 WL 6372412, at *9 (N.D. Cal.
24   Dec. 20, 2011) (allegedly improper deductions from class members' life insurance accounts
     did not require "individualized determinations" because they were "objectively calculable
25   from [defendant's] records"); *Lum v. SEIU Local 521*, No. 14-CV-05230-LHK, 2016 U.S.
     Dist. LEXIS 23982, at *4 (N.D. Cal. Feb. 25, 2016) (certifying 23(b)(2) class for settlement
26   purposes only where calculating relief based on "interest paid on rebates" was a task "for a
     computer program" and such relief had already been distributed); *Delarosa v. Boiron, Inc.*,
27   275 F.R.D. 582, 592 (C.D. Cal. 2011) (class members would receive "same restitution,
     differing *only* due to the number of packages purchased").

28

1    Dated:  October 2, 2020

2                            PILLSBURY WINTHROP SHAW PITTMAN LLP
                            ROXANE A. POLIDORA
3                            LEE BRAND
                            Four Embarcadero Center, 22nd Floor
4                            San Francisco, CA  94111

5
                            By:  _____ /s/ Roxane A. Polidora _____
6                                       Roxane A. Polidora

7                            Attorneys for Defendant
                            STARKIST CO.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28