*Gardner v. StarKist Co.*
No. 3:19-cv-02561-WHO (N.D. Cal.)

## ATTACHMENT A

## DEFINITIONS

1. "Advertisement(s)," or "Advertising" means any promotion, promotional campaign, contest, or any other method used to promote the Products, including the package labeling.

2. "And" and "or" are to be considered conjunctively and disjunctively. The singular form of a noun or pronoun includes the plural form and vice versa. "Or" is understood to include and encompass "and".

3. "Any" is understood to encompass "all". The word "all" also includes "each" and vice versa.

4. "Bycatch" means discarded catch of unintended marine species and unobserved mortality due to a direct encounter with fishing vessels and gear.

5. "Communication" means the transmittal of information expressed by any means.

6. "Document" means all documents, communications, information, or tangible things. The term includes electronically stored information, including all electronic communications (*e.g.*, emails and attachments), files, data and databases, books, pamphlets, periodicals, letters, memoranda, telegrams, reports, records, studies, handwritten notes, maps, drawings, working papers, charts, papers, graphs, indices, tapes, data sheets or data processing cards, telephone records or logs or any other written, recorded, transcribed, punched, taped, filmed, or graphic matters, however produced or reproduced, to which you have or have had access. "Document" also includes the original and any copy that is not identical to any other copies of documents regardless of its origin or location. The phrase "all documents" means every document or group of documents as defined above, that are known to you, or that can be located or discovered by reasonably diligent efforts.

7. "Dolphin(s)" means any of various small marine toothed whales of the family Delphinidae, as well as any other Cetacean.

8. "Dongwon," "you," and "your" mean Dongwon Industries Co. Ltd., its past and present parents, subsidiaries, affiliates, predecessors, successors, employees, independent contractors, officers, agents, vendors, accountants, and all other persons or entities acting on its behalf or under its direct or indirect control.

9. "EII" means the Earth Island Institute.

10. "FADs" means fish aggregating devices, or floating objects that are designed and strategically placed to attract pelagic fish.

11. "ISSF" means the International Seafood Sustainability Foundation.

12. "NFI" means the National Fisheries Institute.

13. "Person(s)" means any natural person, public or private corporation, general or limited partnership, joint venture, association, government or government agency (including any government agency or political subdivision of any government), group, form of business or legal organization or arrangement, or other legal entity, including the representatives of any such person or persons.

14. "Product(s)" means all StarKist cans, pouches, or other packaged shelf-stable tuna distributed for retail sale in the United States.

15. "Relate," "relating to," "concerning," or "regarding" include, but are not limited to, the following meanings: bearing upon, addressing, evidencing, respecting, discussing, mentioning, describing, reflecting, responding to, identifying, constituting, pertaining to, having to do with, or being in any way pertinent to the given subject.

16. "Relevant Time Period" means from May 13, 2015 to the present.

17. "StarKist" means StarKist Co., its past and present parents, subsidiaries, affiliates, predecessors, successors, employees, independent contractors, officers, agents, vendors, accountants, and all other persons or entities acting on its behalf or under its direct or indirect control including, but not limited to, Dongwon.

18. "WWF" means the World Wildlife Foundation.

## INSTRUCTIONS

1. Unless otherwise stated, each Definition and Request herein is limited to the Relevant Time Period.

2. Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients, or other representatives of affiliated third parties.

3. All documents shall be produced that respond to any part or clause of any paragraph of these requests.

4. The documents to be produced pursuant to these requests specifically embrace, in addition to documents within your possession, custody, or control, documents within the possession, custody, or control of any of your agents, accountants, representatives, or attorneys. Such documents also embrace originals, and identical copies (whether different from the original because of notes made thereon or otherwise) of the documents described in these requests.

5. Documents attached to each other in their original form should not be separated.

## DOCUMENTS TO BE PRODUCED

1. All documents and communications relating to or concerning documented instances of dolphins harmed or killed, whether intentionally or unintentionally, in your procurement of tuna. To avoid doubt, this includes any harm to dolphins occurring in fishing for tuna, even if that harm was attributable to a tuna catch that was segregated out as non-dolphin safe or where the tuna caught did not otherwise end up in tuna products.

2. All documents and communications relating to any harm or killing, whether intentional or unintentional, of dolphins by any fishing by Dongwon's fishing fleet, or any boat in which Dongwon has any financial interest.

3. All documents related to or concerning tuna that was separately stored because dolphins were harmed during its procurement.

4. Documents sufficient to show by name, country of origin, ownership, call sign, International Maritime Organization (IMO) number, Maritime Mobile Service Identity (MMSI)

number, and flag all boats that supplied the tuna in StarKist's Products or that was involved in transshipping that tuna.

     5.     All documents relating to or concerning the fishing method(s) used by each boat that supplied the tuna in StarKist's Products, including, but not limited to, the percentage of tuna procured for StarKist by each fishing method.

     6.     For each boat identified in Request No. 4, above, produce documents identifying the name, address, and contact information of all captains and observers, if any, on board and the time period during which they served.

     7.     All documents and communications relating to or concerning captain and observer compensation on each boat identified in response to Request No. 4, above.

     8.     All documents relating to or concerning StarKist's compensation of Dongwon for supplying tuna for its Products.

     9.     All documents constituting or regarding inquiries, complaints, or communications regarding tuna caught by Dongwon's fishing vessels pertaining to dolphins, either domestic or international.

     10.     All documents and communications concerning dolphin safety and FADs.

     11.     All documents and communications concerning dolphin safety and longlines.

     12.     All documents and communications concerning dolphin safety and purse seine nets.

     13.     All documents and communications with either ISSF, EII, WWF, NFI, or any other Non-Governmental Organization regarding dolphin safety, FADs, and bycatch.

     14.     All documents concerning Dongwon's dolphin-safe policies or procedures.

     15.     All documents and communications which refer or relate to the software, program, and other methods you use to track the chain-of-custody of your tuna and verify its dolphin-safe, including, but not limited to, any in-house digital supply chain mapping system.

     16.     All documents and communications between you and StarKist regarding dolphin safety, bycatch, FADs, and fishing methods.