1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   ROXANE A. POLIDORA (CA Bar No. 135972)
2  roxane.polidora@pillsburylaw.com
   LEE BRAND (CA Bar No. 287110)
3  lee.brand@pillsburylaw.com
   Four Embarcadero Center, 22nd Floor
4  San Francisco, CA  94111
   Telephone: (415) 983-1000
5  Facsimile: (415) 983-1200

6  Attorneys for Defendant
   STARKIST CO.
7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11 | WARREN GARDNER, et al., on behalf of themselves and all others similarly situated, | Case No. 3:19-cv-02561-WHO |
12 | | |
   | Plaintiffs, | **STARKIST CO.'S OPPOSITION TO PLAINTIFFS' MOTION FOR ISSUANCE OF LETTER ROGATORY** |
13 | | |
   | v. | |
14 | | |
   | STARKIST CO., a Delaware Corporation, | Date:  January 6, 2021 |
15 | | Time:  2:00 p.m. |
   | Defendant. | Place: Courtroom 2, 17th Floor |
16 | | Judge: Hon. William H. Orrick |

**I.     INTRODUCTION**

Following the Court's dismissal of Dongwon Industries Co. Ltd. ("Dongwon" or "DWI") with prejudice from this litigation, Plaintiffs now move for issuance of a letter rogatory to seek discovery from DWI. Plaintiffs' Motion is based on the false premise that "Dongwon owns or controls the fishing vessels that capture StarKist tuna." Motion at 2. In fact, as already explained to Plaintiffs, StarKist "procures a small minority of its raw fish from DWI"—"approximately 3% of StarKist's overall raw fish supply" so far this year— and does so "via the same arms-length purchasing process that StarKist utilizes with its other raw fish suppliers." StarKist's Discovery Letter at 3. Moreover, StarKist has already agreed to "produce contracts of purchase for tuna incorporated into StarKist branded Products sold in the United States, and relevant documents required by such contracts including NOAA Form 370s, captain's statements, and StarKist 'Dolphin Safe' certificates." StarKist's RFP Responses at 15. Such contracts and associated documents already reflect the tuna that StarKist sources from DWI and the fishing methods that DWI uses to catch that tuna.

Plaintiffs told StarKist their true interest in seeking discovery from DWI: Plaintiffs hope to discover that DWI utilizes fishing practices that they deem unseemly, and then employ a guilt by association strategy. Brand Decl. ¶ 3. As Plaintiffs admit in their Motion, however, this case is about StarKist's representations "that *its* tuna products" are dolphin safe and whether dolphins are harmed "by *its* fishing methods." Motion at 1 (emphasis added).

In sum, StarKist has already agreed to provide information about all "boats that supplied tuna ***for StarKist products***," including boats owned by DWI. StarKist's Discovery Letter at 3. However, "[b]oats fishing for tuna that does not end up in StarKist products are simply not relevant to this litigation, regardless of who owns those boats." *Id*. at 3-4. Accordingly, the discovery sought from DWI is either duplicative or irrelevant and the Court should deny Plaintiffs' Motion.

## II. PROCEDURAL HISTORY

### A. DWI's Dismissal with Prejudice

Plaintiffs initially named DWI as a defendant in their June 17, 2019 First Amended Complaint. *See* Dkt. 37 ("FAC"). On December 2, 2019, the Court dismissed DWI from this action for lack of personal jurisdiction and denied Plaintiffs' request for jurisdictional discovery. *Gardner v. StarKist Co.*, 418 F. Supp. 3d 443, 462, 466 (N.D. Cal. 2019). In holding that the FAC failed to allege that StarKist operated as DWI's alter ego, the Court noted that Plaintiffs offered no "facts regarding the marketing and product relationship between Dongwon and StarKist" but rather only "bluster." *Id*. at 464. In holding that the FAC failed to allege an agency relationship between the companies and finding jurisdictional discovery inappropriate, the Court similarly described Plaintiffs' "conclusory allegation that 'Dongwon controlled all aspects of StarKist's canned tuna business'" as "attenuated and bare." *Id*. at 465-66 (quoting FAC ¶ 107).

On December 23, 2019, in the still-operative Second Amended Complaint, Plaintiffs once again named DWI as a defendant. *See* Dkt. 75 ("SAC"). On March 31, 2020, the Court once again dismissed DWI from this action for lack of personal jurisdiction, this time with prejudice, and once again denied jurisdictional discovery. *Gardner v. StarKist Co.*, No. 19-CV-02561-WHO, 2020 WL 1531346, at *5-7 (N.D. Cal. Mar. 31, 2020). The SAC still failed to allege alter ego liability because it merely realleged "that Dongwon 'directly participated in' StarKist's false advertising campaign," and the Court had "already rejected these allegations as insufficient to establish 'conduct amounting to bad faith.'" *Id*. at *6. As for agency, the Court likewise held that "the SAC includes the same conclusory allegation that I previously found inadequate." *Id*. at *5 n.1.

### B. Plaintiffs' DWI-Related Discovery to StarKist

Notwithstanding DWI's dismissal from the case with prejudice, Plaintiffs nevertheless baldly sought broad discovery about DWI through StarKist. For example, Plaintiffs attempted to define the terms "StarKist," "You," and "Your" in their discovery requests as "including, without limitation, Dongwon." Declaration of Stuart A. Davidson in

Support of Plaintiffs' Motion for Issuance of Letter Rogatory, Ex. B ("StarKist's RFP Responses") at 7. Plaintiffs also more directly sought broad information about DWI from StarKist, including: "All Documents and Communications relating to any harm or killing, whether intentional or unintentional, of dolphins by any fishing by Your fishing fleet, or any boat in which You or **Your owners** have any financial interest." *Id*. at 13 (RFP No. 5) (emphasis added); *see also id*. at 15 (RFP No. 8), 17 (RFP Nos. 10-11), 50-51 (RFP Nos. 49-50).

StarKist and Plaintiffs first met and conferred about Plaintiffs' discovery requests on September 22, 2020. *See* Declaration of Lee Brand filed herewith ("Brand Decl.") ¶ 2. During that conversation, StarKist's counsel specifically pointed out that RFP No. 5 broadly included any and all DWI fishing activities, regardless of whether such fishing had anything to do with the tuna sold by StarKist that is the focus of this litigation. *Id*. Plaintiffs' counsel responded that they indeed wanted to know about any harm to dolphins caused by DWI, and asserted that if StarKist's parent company is harming dolphins in any way, that fact, in and of itself, would render it misleading for StarKist to label its tuna products as dolphin safe. *Id*. ¶ 3. StarKist's counsel stated that this theory was neither reflected in the SAC nor a plausible way in which Plaintiffs could establish their claims against StarKist. *Id*. ¶ 4.

On October 29, 2020, Plaintiffs sent StarKist a letter asserting that StarKist had improperly objected to discovery requests seeking information about DWI. Brand Decl. Ex. 1 ("Plaintiffs' Discovery Letter") at 5. Notably, Plaintiffs wrote:

> [I]t is curious that StarKist would claim that Plaintiffs are not entitled to documents concerning Dongwon's services to and communications with StarKist when StarKist repeatedly claims in its Responses that "it does not own, operate, or hold any financial interest in any fishing vessels." That may well be true, but that just proves the relevance of information regarding Dongwon, which is not only StarKist's parent company, but one of the largest fishing companies in the world that captures much, if not all, of the tuna put in StarKist's products.

*Id*.; *see also id*. at 5-6 (confirming that references to "**Your owners**" were intended to "specifically incorporate boats owned or operated by Dongwon").

On November 19, 2020, StarKist responded with a letter clarifying its objections to Plaintiffs' DWI-related discovery requests. Brand Decl. Ex. 2 ("StarKist's Discovery Letter") at 3-4. First, the letter addressed Plaintiffs' wildly inaccurate assertions about the StarKist-DWI relationship, stating in relevant part:

> Plaintiffs premise the relevance of these [DWI-related] RFPs on the strikingly false assertion that DWI "captures much, if not all, of the tuna put in StarKist's products." In reality, StarKist procures a small minority of its raw fish from DWI. For example, total fish purchases from DWI year to date are approximately 3% of StarKist's overall raw fish supply. And such procurement is conducted via the same arms-length purchasing process that StarKist utilizes with its other raw fish suppliers.

*Id*. at 3; *see also* Brand Decl. ¶ 7. Next, StarKist's Discovery Letter confirmed that it was not objecting to a request for information about DWI's "boats that supplied tuna ***for StarKist products***, but that such a request was already reflected in RFP No. 7." *Id*.; *see also* Brand Decl. ¶ 4; StarKist's RFP Responses at 15 (Response to RFP No. 7) (agreeing to "produce contracts of purchase for tuna incorporated into StarKist branded Products sold in the United States, and relevant documents required by such contracts including NOAA Form 370s, captain's statements, and StarKist 'Dolphin Safe' certificates"). Rather, StarKist's objection was limited to providing information about "[b]oats fishing for tuna that does not end up in StarKist products," because such information is "simply not relevant to this litigation, regardless of who owns those boats." StarKist's Discovery Letter at 3-4.

### C.  Plaintiffs' Letter Rogatory

Plaintiffs now seek the same discovery directly from DWI, asking the Court to approve categories of document requests regarding: "(a) Dongwon's procurement of tuna for StarKist; (b) Dongwon's use of fishing methods such as purse seine nets, FADs, and longlines to capture tuna for StarKist; and (c) dolphin harm or deaths during Dongwon's capture of tuna." Motion for Issuance of Letter Rogatory ("Motion") at 2. More specifically, Plaintiffs seek to serve DWI with sixteen separate document requests, only six of which—Nos. 4 through 8 and 16—are limited in any way to materials relevant to StarKist or its business. *See* [Proposed] Request for International Judicial Assistance (Letter Rogatory) Re: Dongwon Industries Co. Ltd., Attach. A (the "DWI Requests").

1  Further, notwithstanding the fact that the Court's Standing Order for Civil Cases requires a
2  meet and confer and a concise joint statement of five pages or less in the event of a
3  discovery dispute, Plaintiffs filed their full-blown Motion without ever mentioning to
4  StarKist their intention to seek a letter rogatory from this Court.  See Brand Decl. ¶ 8.

**III.    ARGUMENT**

Plaintiffs acknowledge that this Court has no obligation to issue their requested letter rogatory, but rather that the question of "'[w]hether to issue such a letter is a matter of discretion for the court.'"  Motion at 3 (quoting *Pesch v. Indep. Brewers United Corp.*, 2014 WL 5106985, at *2 (N.D. Cal. Oct. 10, 2014) (quoting *Asis Internet Servs. v. Optin Glob., Inc.*, No. C-05-05124 JCS, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007))).  Moreover, Plaintiffs acknowledge that the Court should reject the DWI Requests if they are not "'relevant to any party's claim or defense and proportional to the needs of the case,'" *id*. (quoting Fed. R. Civ. P. 26(d)(1)); and that Plaintiffs themselves "'bear[] the burden of demonstrating that proceeding [through the Hague Convention] is necessary and appropriate,'" *id*. at 4 (quoting *Metso Minerals Inc. v. Powerscreen Int'l Dist. Ltd.*, 2007 WL 1875560, at *2 (E.D.N.Y. June 25, 2007)).

Plaintiffs cannot meet this burden with respect to the six StarKist-Related DWI Requests because they are duplicative of discovery that StarKist has already agreed to produce and thus neither proportional to the needs of the case nor necessary.  *See, e.g., Pesch*, 2014 WL 5106985, at *3 (denying letter rogatory because "the information Defendants seek 'can be obtained from some other source that is more convenient or less burdensome'" (quoting Fed. R. Civ. P. 26(b)(2)(C))).  As set forth above, StarKist has already agreed to produce its contracts of purchase for all the raw fish that goes into the tuna products at issue in this litigation, including its purchases from DWI.  *See* StarKist's RFP Responses at 15 (Response to RFP No. 7); Brand Decl.¶ 4.  Such contracts require, and include as attachments, various other purchase-specific documents including NOAA Form 370s, captain's statements, and StarKist's own required "Dolphin Safe" certificate.  *Id*.  These documents will identify to Plaintiffs the core information sought by DWI

5

1  Request Nos. 4 through 8—*i.e.*, all DWI boats that supplied the tuna in StarKist's Products,
2  the captains of such boats, the fishing methods used to catch such tuna, and the amount paid
3  for the tuna.  *See* Brand Decl. ¶ 9.[1] !

4        Plaintiffs cannot meet their burden with respect to the remaining ten DWI Requests
5  because they are based on speculation regarding DWI's fishing practices, which are
6  irrelevant to Plaintiffs' claims to begin with, and thus similarly neither proportional to the
7  needs of the case nor necessary.  *See, e.g., Pesch*, 2014 WL 5106985, at *2 (denying letter
8  rogatory because "discovery request is a fishing expedition based on speculation"); *Asis*,
9  2007 WL 1880369, at *4 (denying letter rogatory due to lack of "concrete evidence to
10 support" purported relevance).  In various iterations, these document requests broadly seek
11 any and all information that DWI has about dolphin safety.  Plaintiffs acknowledge that
12 DWI "is one of the world's largest fishing companies," "leading Korea's fishing industry"
13 and "sailing across the five oceans," Motion at 4, but do not seek to tether the requests in
14 any way to the small percentage of DWI's fishing activity used to supply a small
15 percentage of the fish for the StarKist products at issue in this litigation.  What is more, all
16 ten requests lack a limitation to fishing related to U.S. commerce, and most lack a limitation
17 to fishing for tuna.  In short, the majority of the DWI Requests seek this Court's assistance
18 in conducting an audit of DWI's worldwide fishing practices in the hopes of finding some
19 evidence of harm to dolphins that Plaintiffs can use to smear StarKist based on the entities'
20 corporate relationship.  Neither discovery in U.S. civil litigation nor the Hague convention
21 is intended to serve such a purpose.

22 **IV.   CONCLUSION**

23       StarKist respectfully requests that the Court deny Plaintiffs' Motion.

---

[1] DWI Request No. 16 seeks communications between StarKist and DWI regarding dolphin safety.  While StarKist disputes that there is any particular significance to communications with DWI on this subject, it has nevertheless broadly agreed to "produce non-privileged documents that relate to the dolphin safety of StarKist branded Products sold in the United States," *see* StarKist's RFP Responses at 43 (Response to RFP No. 40), which would plainly include communications about the dolphin safety of its relevant tuna products with any of its tuna suppliers.

Dated: December 7, 2020

PILLSBURY WINTHROP SHAW PITTMAN LLP
ROXANE A. POLIDORA
LEE BRAND
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111

By:  /s/ Roxane A. Polidora
        Roxane A. Polidora

Attorneys for Defendant
STARKIST CO.