# EXHIBIT 1

Robbins Geller
Rudman & Dowd LLP

Roxane Polidora
Lee Brand
PILLSBURY WINTHROP SHAW PITTMAN LLP
October 29, 2020
Page 5

### F. Document Requests to Which StarKist Refuses to Produce Any Responsive Documents

StarKist objects and refuses to produce any responsive documents to Request for Production Nos. 32 (membership in ISSF), 33 (money paid to ISSF, MSC, NFI, or EII), 36 (relationship and disputes between EII and MSC), 49 (services provided by Dongwon), and 50 (communications between StarKist and Dongwon regarding dolphin safety, bycatch, fishing methods, FADs, pricing, and suppliers). Respectfully, none of StarKist's objections have merit. As you know, "[t]he scope of discovery permitted by the Federal Rules of Civil Procedure is very broad." *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582 (N.D. Cal. 2008). "Relevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citation and internal quotations omitted). These requests seek clearly relevant information regarding StarKist's fishing methods, dolphin-safe policy, dolphin-safe logo, and StarKist's attempts to use various NGOs to lead consumers to believe StarKist actually complies with its own dolphin-safe policy. Moreover, it is curious that StarKist would claim that Plaintiffs are not entitled to documents concerning Dongwon's services to and communications with StarKist when StarKist repeatedly claims in its Responses that "it does not own, operate, or hold any financial interest in any fishing vessels." That may well be true, but that just proves the relevance of information regarding Dongwon, which is not only StarKist's parent company, but one of the largest fishing companies in the world that captures much, if not all, of the tuna put in StarKist's products.

Accordingly, Plaintiffs request that StarKist withdraw its objections to these requests.

### G. Other Specific Document Requests

Request No. 5 seeks all documents and communications relating to the harm or killing of dolphins by "Your fishing fleet, or any boat in which You *or Your owners* have any financial interest." Request No. 8 seeks documents identifying all boats in which "You *or Your owners*, have any ownership or financial interest." Request No. 10 seeks documents identifying all captains and observers for all boats identified in Request No. 8. Request No. 11 seeks all documents or communications regarding captain and observer compensation for all boats identified in response to Request No. 8.

During our September 22, 2020 meet-and-confer, StarKist stated it would narrow these three requests to boats fishing for tuna, but would otherwise search for and produce responsive documents. Now, StarKist objects to each of these requests by lodging several objections, and then responding only that StarKist "does not own, operate, or hold any financial interest in any fishing vessels." Not

**Robbins Geller**
**Rudman & Dowd** LLP

Roxane Polidora
Lee Brand
PILLSBURY WINTHROP SHAW PITTMAN LLP
October 29, 2020
Page 6

only is this an apparent step backwards from our prior discussion, but it does not answer the call of the requests, which specifically incorporate boats owned or operated by Dongwon.

> Where the relationship is such that the subsidiary can secure documents of the parent to meet its own business needs, courts have not permitted the subsidiary to deny control for purposes of discovery by an opposing party. . . . District courts in this circuit have found that a wholly-owned subsidiary has access and control over documents in the possession of its parent corporation when it markets the products of the parent company[.]

*Dri-Steem Corp. v. NEP, Inc.*, No. 1:14-cv-00194, 2014 WL 12776884, at *2 (D. Or. Sept. 5, 2014). We request a further meet-and-confer on StarKist's responses to Request Nos. 5, 8, 10, and 11.

Request No. 14 seeks all Social Media Communications relating to dolphin safety. StarKist responds stating that "all of its social media communications regarding dolphin safety are publicly available on social media platforms that are equally accessible to Plaintiffs." That is only true, however, if StarKist has never deleted, hidden, or otherwise removed any responsive material from those online platforms. Please confirm this is true.

Request No. 42 seeks all website content from the time the products were first introduced to the present concerning dolphin safety, tuna fishing methods, bycatch, etc. After lodging several objections, StarKist responds by stating only "that it does not archive the content on the StarKist Website." Nevertheless, if StarKist is aware of content that was once included on its website that has since been deleted or altered, and has copy of that content (perhaps stored in files or attached to emails) then it must produce that information as requested.

### H. Requests for Admission that StarKist Refuses to Answer

StarKist objects and refuses to answer nine separate Requests for Admission, specifically Nos. 4, 10-15, and 17-18. None of StarKist's objections has merit.

Request for Admission No. 4 asks StarKist to admit that it has "no information disputing that consumers of Your Products believe that your 'Dolphin Safe' logo means that dolphins are not killed or harmed in your supply chain." There is no basis to object to any part of this request. Either StarKist has information or it does not. No amount of expert testimony can answer this question, which calls for StarKist's present information.