# EXHIBIT 2

November 19, 2020
Page 3

What is more, you represented in your Opposition to our Motion to Deny Class Certification that such materials are relevant here because "[w]hat consumers believe StarKist's 'dolphin-safe' label means will be answered through discovery about what StarKist *intends* that message to mean." Dkt. No. 108 at 9 (emphasis added). But such 1990 statements and decisions were not made by Defendant StarKist Co., which did not come into existence until 2008 when it acquired the StarKist brand and related assets from Del Monte Corporation. Nor were they made by Del Monte, which itself purchased the StarKist brand from H. J. Heinz Company in 2002. Indeed, as reflected in paragraph 19 of the Second Amended Complaint, it was the Chairman of Heinz that publicly announced a dolphin-safe policy in 1990, although that paragraph falsely states that Heinz was then the parent company of StarKist. In short, the thirty-year old statements and decisions of a company wholly unrelated to StarKist Co., and two sales removed from ownership of the StarKist brand, cannot possibly demonstrate StarKist's intent or consumer's beliefs during the relevant period.

**RFPs Regarding NGOs**

StarKist has agreed to "produce non-privileged communications with non-governmental organizations that relate to the dolphin safety of tuna sold in the United States." *See* Responses to RFP Nos. 34, 38. RFP Nos. 32, 33, and 36, however, primarily call for information that has no connection whatsoever to dolphin safety. Nevertheless, StarKist remains willing to meet and confer with Plaintiffs regarding why they believe that documents regarding StarKist's broader relationship with certain NGOs—or in the case of RFP No. 36, the relationship between two NGOs irrespective of StarKist's involvement—are proportional to the needs of this case.

**RFPs Regarding DWI**

As Plaintiffs are well aware, Dongwon Industries Co. Ltd. ("DWI") has been dismissed from this litigation with prejudice. Thus, services provided by DWI to StarKist have no bearing on this case, and communications between StarKist and DWI regarding dolphin safety hold no unique significance. Moreover, Plaintiffs premise the relevance of these RFPs on the strikingly false assertion that DWI "captures much, if not all, of the tuna put in StarKist's products." In reality, StarKist procures a small minority of its raw fish from DWI. For example, total fish purchases from DWI year to date are approximately 3% of StarKist's overall raw fish supply. And such procurement is conducted via the same arms-length purchasing process that StarKist utilizes with its other raw fish suppliers.

Further, StarKist did not agree during our prior meet and confer that it would narrow RFP No. 8 to boats fishing for tuna. Rather, we indicated that RFP No. 8 would be reasonable if it were limited to boats that supplied tuna *for StarKist products*, but that such a request was already reflected in RFP No. 7. Boats fishing

November 19, 2020
Page 4

for tuna that does not end up in StarKist products are simply not relevant to this litigation, regardless of who owns those boats.

Finally, your citation to *Dri-Steem Corp. v. NEP, Inc.*, No. 1:14-cv-00194, 2014 WL 12776884, at *2 (D. Or. Sept. 5, 2014), is wholly inapposite as StarKist does not "market[] the products of" DWI or otherwise "secure documents of [DWI] to meet its own business needs."

**RFPs Regarding Social Media and the StarKist Website**

StarKist hereby confirms that it is not aware of any information related to dolphin safety that it has deleted, hidden, or otherwise removed from any social media platform. StarKist further confirms that it is not aware of any content related to dolphin safety that was once included on its website and has since been deleted or altered.

**Specific RFAs**

While Plaintiffs have marginally improved RFA No. 4 from a triple negative to a double negative, it remains extremely vague and ambiguous as currently phrased and StarKist remains genuinely perplexed as to what information Plaintiffs seeks via this request. Respectfully, whatever it is that you are seeking here does not appear to be conducive to an RFA. To the extent this request is attempting to seek information truly significant to Plaintiffs' case, we would suggest that such information may be more appropriately pursued by a different form of discovery.

RFA Nos. 10-11 and 14-15 are plainly objectionable in that they ask StarKist to admit or deny whether certain factors are important to millions of third-party consumers and retailers, for whom StarKist cannot possibly speak either collectively or individually.

RFA Nos. 12-15 are plainly objectionable in that they directly contradict the Court's order holding that discovery requests "relating to sustainability should be narrowed to . . . relate to dolphin harm and/or dolphin mortality." *Duggan* Dkt. No. 74.

RFA Nos. 17-18 are plainly objectionable in light of Plaintiffs' repeated representations and the Court's repeated recognition that the allegations in this Action do not relate to compliance with the DPCIA. Further, the impact of any particular input cost on the price of a finished product is a complex economic question that defies a simple admission or denial.