1

2

3

4                                UNITED STATES DISTRICT COURT

5                              NORTHERN DISTRICT OF CALIFORNIA

6

7    WARREN GARDNER, et al.,                        Case No. 19-cv-02561-WHO

8              Plaintiffs,

9         v.                                        **ORDER GRANTING IN PART**
                                                    **DENYING IN PART MOTION TO**
10   STARKIST CO.,                                  **ISSUE LETTER ROGATORY**

11             Defendant.                           Re: Dkt. No. 113

12

13        Plaintiffs are purchasers of defendant StarKist Co. ("StarKist") tuna from various states

14   who bring this class action lawsuit alleging that StarKist promises consumers that its tuna products

15   are dolphin-safe and sustainably sourced and that those promises are false and misleading.

16   Plaintiffs move for the issuance of a letter rogatory to compel the production of documents from

17   StarKist's parent company, Dongwon Industries Co. Ltd. ("Dongwon"), a company headquartered

18   and incorporated in the Republic of Korea.  Plaintiffs contend that Dongwon possesses

19   information of relevance to this litigation, including documents relating to: (i) Dongwon's

20   procurement of raw tuna for StarKist; (ii) Dongwon's use of fishing methods such as purse seine

21   nets, fish aggravating devices ("FADs"), and longlines to capture tuna for StarKist; and (iii)

22   dolphin harm or deaths during Dongwon's capture of tuna.  For the reasons set forth below,

23   plaintiffs' motion is GRANTED in part and DENIED in part.

24                                        **BACKGROUND**

25        A detailed background regarding this case is laid out in my previous orders on motions to

26   dismiss, which I incorporate by reference here.  *See Gardner v. StarKist Co.*, 418 F. Supp. 3d 443,

27   449–54 (N.D. Cal. 2019) (hereinafter "*Gardner I*"); *Gardner v. StarKist Co.*, No. 19-CV-02561-

28   WHO, 2020 WL 1531346, at *1 (N.D. Cal. Mar. 31, 2020) (hereinafter "*Gardner II*").  I briefly

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   recount the procedural history of this case as relevant to the kinds of documents plaintiffs seek in

2   their motion for issuance of a letter rogatory.

3        In my first December 2, 2019 motion to dismiss order, I found that plaintiffs sufficiently

4   pleaded their state law fraud claims against StarKist because they alleged that: (i) "they purchased

5   StarKist tuna because they believed it was dolphin-safe based on defendants' statements about the

6   product"; (ii) "the statements were not true given that the fishing methods used by defendants are

7   known to harm or kill at least some dolphins"; and (iii) "they would not have purchased the

8   products if they had known the statements were not true." *Gardner I*, 418 F. Supp. 3d at 456

9   (internal quotation marks and citation omitted). In particular to plaintiffs' claim that StarKist's

10   tuna is not actually dolphin-safe, I found:

> Plaintiffs have sufficiently alleged that the *fishing techniques* StarKist
> uses are known to kill or harm at least some dolphins. 'By virtue of
> its sheer size as the biggest tuna manufacturer in the [United States],'
> and its documented fishing techniques, at least some dolphins are
> harmed and killed in the capture of StarKist tuna, thereby not making
> all of its tuna products 100% dolphin-safe. Oppo. StarKist Mot. 9
> (citing FAC ¶¶ 43–51). Plaintiffs allege that the 'very fact that
> StarKist's fishing practices are known to kill and harm dolphins
> makes its own dolphin-safe pledge misleading to consumers.' *Id.* at
> 7. I find these allegations are sufficient to allege that StarKist tuna is
> not 100% dolphin safe as they allegedly depict to their consumers.

17   *Id.* at 457–58 (emphasis added). While the claims against StarKist were plausibly pleaded, I

18   granted Dongwon's motion to dismiss for lack of personal jurisdiction because plaintiffs failed to

19   plead facts sufficient to make out a prima facie case that StarKist and Dongwon are alter egos or

20   agents of each other. *Id.* at 462.

21        On March 31, 2020, I granted Dongwon's second motion to dismiss with prejudice

22   because plaintiff's Second Amended Complaint did not fix the insufficiently pleaded alter ego or

23   agency theories. *Gardner II*, 2020 WL 1531346, at *5. But I denied StarKist's second motion to

24   dismiss, reiterating the conclusion I made in my first ruling. *Id.* at *3–4. I also rejected StarKist's

25   argument that plaintiffs fail to allege how reasonable consumers would interpret StarKist's

26   dolphin-safe label and statements as guaranteeing no harm or injury whatsoever to dolphins:

> Plaintiffs here do not plead that StarKist promised consumers an
> absolute guarantee; they concede that reasonable consumers
> understand that even when employing the best efforts to protect

2

1

2

3

> dolphins, some might be accidentally injured and even killed when fishing for tuna. Rather, plaintiffs allege that StarKist misled consumers by promising a dolphin-safety level higher than the DPCIA requirements while at the same time employing *fishing methods* widely known to kill and harm substantial numbers of dolphins.

4    *Id.* at \*5 (emphasis added).  Therefore, the fraud claims against StarKist were sufficiently stated

5    and continued past the pleading stage.

6          In my most recent October 19, 2020 order denying without prejudice StarKist's motion to

7    deny class certification, I found that StarKist's motion was premature and that plaintiffs should

8    have the opportunity to gather evidence to support their claims.  *Gardner v. StarKist Co.*, No. 19-

9    CV-02561-WHO, 2020 WL 6136091, at \*2 (N.D. Cal. Oct. 19, 2020) ("They intend to show that:

10   (i) a reasonable consumer understands the 'dolphin-safe' claim on StarKist's packaging to mean

11   that StarKist does not kill or harm dolphins; and (ii) that statement is deceptive and misleading

12   because StarKist utilizes *fishing methods* known to kill or harm dolphins each year.") (emphasis

13   added).

14         On November 23, 2020, plaintiffs moved for the issuance of a letter rogatory to compel the

15   production of documents from Dongwon.  Plaintiffs' Notice of Motion and Motion For Issuance

16   Of Letter Rogatory ("Mot.") [Dkt. No. 113].  StarKist opposed on grounds that plaintiffs are

17   attempting to bring dismissed-defendant Dongwon back into this case and that their request for

18   documents are not relevant and proportional.  StarKist Co.'s Opposition to Plaintiffs' Motion for

19   Issuance of Letter Rogatory ("Oppo.") [Dkt. No. 115].  I heard oral argument on January 20, 2021.

20                                    **LEGAL STANDARD**

21         A letter of request or letter rogatory "is the request by a domestic court to a foreign court to

22   take evidence from a certain witness."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241,

23   247 n.1 (2004).  The United States and the Republic of Korea are both signatories to the Hague

24   Evidence Convention, which permits "the transmittal of a letter rogatory or request directly from a

25   tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it

26   is addressed and its return in the same manner."  28 U.S.C. § 1781.[1]

27

28   [1] HCCH, Status Table, 20: Convention of 18 March 1970 on the Taking of Evidence
     Abroad in Civil or Commercial Matters, https://www.hcch.net/en/instruments/conventions/status-

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Judges in this district have held that motions requesting issuance of a letter of request or

2    letter rogatory should generally be granted and that "[t]he opposing party must show good reason

3    for a court to deny an application for a letter rogatory."  *S.E.C. v. Leslie*, C 07-03444 JF (PVT),

4    2009 WL 688836, at *2 (N.D. Cal. Mar. 16, 2009); *see also Radware, Ltd. v. A10 Networks, Inc.*,

5    2014 WL 631537 at *2 (N.D. Cal. Feb. 18, 2014).  Like all discovery, motions for letters of

6    request are subject to the standards of Rule 26(b), which provides that "[p]arties may obtain

7    discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

8    Fed. R. Civ. P. 26(b).  "Relevant information need not be admissible at the trial if the discovery

9    appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*

10   **DISCUSSION**

11   The question presented in this case is whether StarKist violates its own dolphin-safe and

12   sustainability promises to plaintiffs and other consumers when it sources its tuna in ways it knows

13   kill and harm dolphins.  Plaintiffs asked StarKist to produce "Documents and Communications

14   relating to any harm or killing, whether intentional or unintentional, of dolphins by any fishing by

15   Your fishing fleet, or any boat in which You or Your owners have any financial interests."

16   Declaration of Stuart A. Davidson In Support Of Plaintiffs' Motion For Issuance Of Letter

17   Rogatory ("Stuart Decl.") [Dkt. No. 113-1], Ex. B (StarKist Co.'s Responses and Objections to

18   Plaintiffs' Revised First Set of Requests for Production of Documents) at 13.  StarKist objected,

19   asserting that the request "seeks information from Dongwon Industries Co. Ltd., which has been

20   dismissed from this Action with prejudice."  *Id.*  Plaintiffs argue that they are entitled to discovery

21   from Dongwon now that StarKist has put Dongwon and Dongwon's fishing practices directly at

22   issue.  Mot. 2.

23   The categories of documents plaintiffs request from Dongwon include: (a) Dongwon's

24   procurement of tuna for StarKist; (b) Dongwon's use of fishing methods such as purse seine nets,

25   FADs, and longlines to capture tuna for StarKist; and (c) dolphin harm or deaths during

26

27   _____
     table/?cid=82; U.S. Dept. of State - Bureau of Consular Affairs, Republic of Korea,

28   https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-
     Information/KoreaRepublicof.html.

1    Dongwon's capture of tuna.  Mot. 2.  The sixteen documents requests they seek are laid out in

2    Attachment A to the proposed letter of request.  *See* Attachment A to Proposed Request

3    ("Attachment A") [Dkt. No. 113-6] 3–4.

4         StarKist contends that of the sixteen separate document requests plaintiffs seek to serve

5    Dongwon, only six—Nos. 4 through 8 and 16—are limited in any way to materials relevant to

6    StarKist or its business:

7         (4) Documents sufficient to show by name, country of origin, ownership, call sign,

8         International Maritime Organization (IMO) number, Maritime Mobile Service Identity

9         (MMSI)  number, and flag all boats that supplied the tuna in StarKist's Products or that

10        was involved in transshipping that tuna.

11        (5) All documents relating to or concerning the fishing method(s) used by each boat that

12        supplied the tuna in StarKist's Products, including, but not limited to, the percentage of

13        tuna procured for StarKist by each fishing method.

14        (6) For each boat identified in Request No. 4, above, produce documents identifying the

15        name, address, and contact information of all captains and observers, if any, on board and

16        the time period during which they served.

17        (7) All documents and communications relating to or concerning captain and observer

18        compensation on each boat identified in response to Request No. 4, above.

19        (8) All documents relating to or concerning StarKist's compensation of Dongwon for

20        supplying tuna for its Products.

21        (16) All documents and communications between you and StarKist regarding dolphin

22        safety, bycatch, FADs, and fishing methods.

23   Attachment A at 3–4.  StarKist argues that plaintiffs cannot meet their burden of demonstrating

24   that these document requests are necessary and appropriate because they are duplicative of

25   discovery that it has already agreed to produce and thus are neither proportional to the needs of the

26   case nor necessary.  Oppo. 5; *see Pesch v. Indep. Brewers United Corp.*, No. C-13-05317 DMR,

27   2014 WL 5106985, at *3 (N.D. Cal. Oct. 10, 2014) (denying letter rogatory because "the

28   information Defendants seek 'can be obtained from some other source that is more convenient or

United States District Court
Northern District of California

5

1    less burdensome'" (quoting Fed. R. Civ. P. 26(b)(2)(C))).

2           StarKist has agreed to produce its contracts of purchase for all the raw fish that goes into

3    the tuna products at issue in this litigation, including its purchases from Dongwon.  *See*

4    Declaration of Lee Brand in Support of StarKist Co.'s Opposition ("Brand Decl.") [Dkt. No. 115-

5    1] ¶ 4.  Such contracts require, and include as attachments, various other purchase-specific

6    documents including NOAA Form 370s, captain's statements, and StarKist's own required

7    "Dolphin Safe" certificate.  *Id.*  StarKist argues that these documents will identify to plaintiffs the

8    core information sought in Request Nos. 4 through 8—*i.e.*, all Dongwon boats that supplied the

9    tuna in StarKist's products, the captains of such boats, the fishing methods used to catch such

10   tuna, and the amount paid for the tuna.  Brand Decl. ¶ 9.

11          At the hearing on January 20, 2021, StarKist said that it will produce a sampling of these

12   documents, including Form 370s, captain's statements, and StarKist's own required 'Dolphin

13   Safe' certificate, within a week and that it will be able to provide the entire production to plaintiffs

14   within a month.  The records that StarKist has agreed to produc eare a step in the right direction.

15   As described below, evidence from Dongwon about the fishing practices it used in procuring

16   StarKist's tuna may be both relevant and within the scope of discovery allowed under Rule 26 of

17   the Federal Rules of Civil Procedure.

18          StarKist claims that it "procures a small minority of its raw fish from [Dongwon]",

19   "approximately 3% of StarKist's overall raw fish supply' so far this year[.]").  Oppo. 1.  This

20   figure only reflects the amount of tuna Dongwon has supplied to StarKist *this year*.  Plaintiffs

21   contend that even assuming that Dongwon only supplied 3% of StarKist's tuna throughout the

22   entire class period, there is no doubt that Dongwon possesses relevant information regarding both

23   tuna sold to StarKist and whether its own fishing practices harm or kill dolphins.[2]  I find that

24   plaintiffs have shown good cause with respect to Request Nos. 4–8 in their proposed letter of

25

26   [2] Plaintiffs note that discovery regarding fishing methods employed by tuna fishing companies
     used to source StarKist's tuna will not be limited to Dongwon.  Because StarKist has yet to
27   produce documents showing the other tuna fishing companies in StarKist's supply chain, plaintiffs
     claim they have not been able to subpoena those companies regarding their fishing methods, but
28   that they intend to do so.  Plaintiffs' Reply in Support of Motion for Issuance of Letter Rogatory
     ("Reply") [Dkt. No. 116] 2 n.5.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    request.

2          Request No. 16 seeks "[a]ll documents and communications between [Dongwon] and

3    StarKist regarding dolphin safety, bycatch, FADs, and fishing methods."  Attachment A at 4.

4    StarKist disputes any particular significance to communications with Dongwon on this subject, but

5    contends that it has nevertheless agreed to "produce non-privileged documents that relate to the

6    dolphin safety of StarKist branded Products sold in the United States."  Oppo. 6 n.1.

7          The information StarKist has agreed to produce is more limited.  Plaintiffs are entitled to

8    discovery related to Request No. 16, but because it would be less burdensome for StarKist to

9    produce than to issue a letter rogatory for Dongwon to produce, I deny plaintiffs' motion with

10   respect to Request No. 16 and order StarKist to produce it instead.

11         StarKist argues that plaintiffs cannot meet their burden with respect to the remaining ten

12   requests, which request documents and communications regarding dolphin safety, harm, or death

13   in Dongwon's procurement of tuna generally.  The ten remaining requests include:

14         (1) All documents and communications relating to or concerning documented instances of

15         dolphins harmed or killed, whether intentionally or unintentionally, in your procurement of

16         tuna.  To avoid doubt, this includes any harm to dolphins occurring in fishing for tuna,

17         even if that harm was attributable to a tuna catch that was segregated out as non-dolphin

18         safe or where the tuna caught did not otherwise end up in tuna products.

19         (2) All documents and communications relating to any harm or killing, whether intentional

20         or unintentional, of dolphins by any fishing by Dongwon's fishing fleet, or any boat in

21         which Dongwon has any financial interest.

22         (3) All documents related to or concerning tuna that was separately stored because

23         dolphins were harmed during its procurement.

24         (9) All documents constituting or regarding inquiries, complaints, or communications

25         regarding tuna caught by Dongwon's fishing vessels pertaining to dolphins, either

26         domestic or international.

27         (10) All documents and communications concerning dolphin safety and FADs.

28         (11) All documents and communications concerning dolphin safety and longlines.

7

1   (12) All documents and communications concerning dolphin safety and purse seine nets.

2   (13) All documents and communications with either ISSF, EII, WWF, NFI, or any other

3   Non-Governmental Organization regarding dolphin safety, FADs, and bycatch.

4   (14) All documents concerning Dongwon's dolphin-safe policies or procedures.

5   (15) All documents and communications which refer or relate to the software, program,

6   and other methods you use to track the chain-of-custody of your tuna and verify its

7   dolphin-safe, including, but not limited to, any in-house digital supply chain mapping

8   system.

9   Attachment A at 3–4.

10   StarKist points out that these requests are not tethered in any way to the percentage of

11   Dongwon's fishing activity used to supply tuna for the StarKist products at issue in this litigation.

12   Oppo. 6.  It contends that these requests are based on a "guilt by association" theory that if

13   StarKist's parent company is harming dolphins in any way, that fact, in and of itself, would render

14   it misleading for StarKist to label its tuna products as dolphin-safe.

15   Plaintiffs deny seeking to employ a guilt by association strategy.  They clarify that they

16   "are not arguing that, if Dongwon sells tuna to companies other than StarKist that came from sets

17   where dolphins were harmed or killed, then StarKist's tuna must not be "dolphin safe."  Reply 2.

18   Rather, they contend that "if the *same fishing practices* used to catch StarKist tuna – whether

19   employed by Dongwon or another company – result in dolphin harm or death, then StarKist's

20   'Dolphin-Safe' logo and 30-year-long advertising campaign claiming that StarKist's tuna is '100%

21   dolphin safe' is false and misleading to a reasonable consumer."  *Id.* at 2–3.  "[I]t is the fishing

22   practices that matter in this lawsuit, not the percentage of cans containing non-dolphin-safe tuna

23   from any particular tuna supplier."  *Id.* at 3.

24   As I have previously stated, this case is about whether StarKist "falsely represent[s] that its

25   tuna products are completely dolphin-safe because its tuna *fishing practices* are known to kill or

26   harm at least some dolphins each year."  *Gardner I*, 418 F. Supp. 3d at 451 (emphasis added).

27   StarKist's parent company Dongwon supplies tuna to StarKist and possesses relevant information

28   regarding those very fishing practices.  While I understand the relevance fishing practices have on

8

United States District Court
Northern District of California

1   plaintiffs' claims in this case, the question is whether discovery should be limited to Dongwon's

2   fishing practices as it relates to tuna supplied for StarKist's products (as reflected in Request Nos.

3   4– 8 discussed above), or if plaintiffs should be allowed to seek information about Dongwon's

4   fishing practices generally (as reflected in Request Nos. 10–13).[3]

5          Plaintiffs contend that their requests do not need to be tied to the tuna StarKist purchases

6   from Dongwon, nor to the United States commerce market.  Reply 4.  All that is necessary – and

7   all that plaintiffs seek to discover from Dongwon – is whether Dongwon's *fishing practices* (i.e.,

8   using purse seine nets, FADs, and longlines) harm or kill dolphins.  *Id.*  StarKist asserts that every

9   single tuna it purchased from Dongwon came with a captain's statement attesting to "dolphin

10  safety," but the credibility of such statements may be questionable if those captains use fishing

11  practices that harm or kill dolphins.  *Id.*

12         Plaintiffs argue that they need not accept the documents StarKist has agreed to produce "as

13  gospel."  Reply 2.  In the event that "those documents are a sham, or the evidence shows that

14  Dongwon's fishing practices have, in fact, harmed or killed dolphins, or there is a discrepancy

15  between the number of dolphins Dongwon harms or kills and StarKist's captains' statements, or if

16  there is a discrepancy between Dongwon's captains' statements and a statistical model of likely

17  dolphin harm during the same period," then they argue that "such evidence will be highly

18  probative of the central issues in this case."  *Id.*

19         But plaintiffs make this argument without reviewing what StarKist has yet to produce.

20  Before allowing plaintiffs to cast a wider net of information from Dongwon, they should review

21  ────────────────

22  [3] Of the remaining ten requests, I note that only Request Nos. 10 through 13 are about Dongwon's
    fishing practices.  The other requests, Request Nos. 1–3, 9, 14–15, are not tied to Dongwon's
23  fishing practices.

24  Request Nos. 1–2, and 9 seeks information about dolphin harm/death in Dongwon's procurement
    of tuna and any complaints received regarding dolphins and tuna caught by Dongwon.  Request
25  No. 14 seeks information about Dongwon's internal dolphin-safe policies or procedures.  Plaintiffs
    have not explained why information about complaints received by Dongwon or Dongwon's
26  internal practices and policies, unconnected to certain fishing practices, is potentially relevant to
    the claims in this case.  Information about dolphin safety, as relevant to certain fishing practices, is
27  already covered by Request Nos. 10 through 13.  Request Nos. 3 and 15 seeks information about
    how tuna is stored separately and transshipping.  Plaintiffs have not explained why such
28  information is relevant or necessary for the claims brought in this case.  At the hearing, plaintiffs'
    counsel conceded denial with respect to Request Nos. 1–3, 9, 14–15.

United States District Court
Northern District of California

1   the discovery produced by StarKist and discovery produced by Dongwon in response to Request

2   Nos. 4 through 8.  If at that point plaintiffs have a good faith reason to believe such discovery is

3   inadequate, unreliable, or if the veracity of the documents produced is questionable, and StarKist

4   continues to object, I will consider whether it is appropriate to seek further information from

5   Dongwon.

6         In sum, plaintiffs' application to issue a letter rogatory is GRANTED in part and DENIED

7   in part as follows:

8       •   Request Nos. 4–8 is GRANTED.

9       •   Request No. 16 is DENIED to the extent that it would be less burdensome for StarKist

10           to produce such information.  StarKist is HEREBY ORDERED to produce information

11           covered by Request No. 16.

12       •   Request Nos. 10–13 is DENIED, without prejudice, at this juncture.  If, after plaintiffs

13           have reviewed the documents produced by StarKist and Dongwon, they have a good

14           faith reason to believe that such documents are unreliable, insufficient or inadequate, I

15           will consider whether it is appropriate for Dongwon to produce a broader set of

16           documents covered by Request Nos. 10–13.

17       •   Request Nos. 1–3, 9, 14–15 is DENIED because plaintiffs have not explained why

18           such information is relevant or necessary for the claims brought in this case.

19                              **CONCLUSION**

20         For the reasons outlined above, plaintiffs' motion is GRANTED in part and DENIED in

21   part.  Plaintiffs shall submit a revised letter of request in accordance with this Order.

22         **IT IS SO ORDERED.**

23   Dated: January 29, 2021

24

25   

26                     William H. Orrick
                  United States District Judge

27

28