BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
PATRICIA N. SYVERSON (CA SBN 203111)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
Telephone: (619) 798-4593

*Attorneys for Plaintiffs*

PILLSBURY WINTHROP SHAW PITTMAN LLP
ROXANE A. POLIDORA
LEE BRAND
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111-5998
roxane.polidora@pillsburylaw.com
lee.brand@pillsburylaw.com
Telephone:  415/983-1976

*Attorneys for Defendant StarKist Co.*
*Additional Attorneys on Signature Page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN GARDNER, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>STARKIST CO., a Delaware Corporation, and DONGWON INDUSTRIES CO. LTD., a South Korea corporation,<br><br>Defendants. | Case No.:   19-cv-02561-WHO<br><br>**FURTHER JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: February 16, 2021<br>Time: 2:00 p.m.<br>Place: Ctrm. 2, 17th Floor<br>SAC filed: December 23, 2019<br><br>Hon. William H. Orrick |

FURTHER JOINT CASE MANAGEMENT STATEMENT
CASE NO. 19-cv-02561-WHO

Error! Unknown document property name.

**FURTHER JOINT CASE MANAGEMENT STATEMENT**

Pursuant to the Court's May 26, 2020 Order (D.E. 105), Supplemental Standing Order for Civil Case Management Conferences, the Standing Order for All Judges of the Northern District of California, and Civil Local Rule 16-9, Plaintiffs Warren Gardner, Lori Myers, Angela Cosgrove, Autumn Hessong, Robert McQuade, Colleen McQuade, James Borruso, Fidel Jamelo, Jocelyn Jamelo, Anthony Luciano, Lori Luciano, Robert Nugent, Avraham Isac Zelig, Ken Petrovcik, Megan Kiihne, Kathleen Miller, Tara Trojano, Jason Petrin, Amy Taylor, Heather Meyers, and Rachel Pedraza (collectively, "Plaintiffs") and Defendant StarKist Co. ("StarKist" and collectively with Plaintiffs, the "Parties"), jointly submit this Case Management Statement, in advance of the Case Management Conference scheduled in this matter for February 16, 2021 at 2:00 pm.

**1. Jurisdiction and Service**

Plaintiffs allege this Court has original jurisdiction over this putative class action pursuant to 28 U.S.C. §§ 1331 and 1332, and that this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  Plaintiffs filed this action in the Northern District of California on May 13, 2019 and StarKist was served on May 16, 2019.

StarKist denies that Plaintiffs' claims are eligible for class certification or that Plaintiffs are entitled to any relief, including damages, and therefore lack Article III standing.  StarKist denies that Plaintiffs have Article III standing to assert their claims in federal court, but otherwise does not dispute that the Court has subject matter jurisdiction to assess Plaintiffs' claims and has personal jurisdiction over StarKist.  There are no issues with respect to venue.

**2. Facts**

**a. Plaintiffs' Statement**

StarKist is the number one selling prepacked tuna brand sold in the United States.  Since 1990, StarKist has engaged in a pervasive advertising campaign that expressly promises consumers that its tuna is "Dolphin Safe", including through the use of its own dolphin-safe logo on each and every StarKist tuna product it sells.  StarKist has explained that its "Dolphin Safe" promise means

1

**Error! Unknown document property name.**

that its products are 100% "dolphin-safe" and that no dolphins were harmed in the process of catching the tuna in StarKist products.  These Dolphin Safe promises are material to consumers of its tuna products.  But these representations are false, misleading, deceptive, and unlawful under various state consumer protection statutes, because dolphins are, in fact, killed and/or harmed by the indiscriminate fishing methods used to catch StarKist tuna.  Thus, consumers have been damaged and StarKist has been unjustly enriched because it has profited from its unlawful, unfair, false, misleading, and deceptive practices and advertising at the expense of Plaintiffs and Class members.

StarKist asserts its technical compliance with the DPCIA (something Plaintiffs do not concede) as a defense.  But StarKist has never used the Department of Commerce's dolphin-safe logo as provided for in the DPCIA.  It has always used its own mark and made its own dolphin safe promises to consumers.  Lest there be any doubt about what StarKist intends that promise to mean to consumers, responding to this very lawsuit the day it was filed StarKist posted the following on its social media account: "StarKist is proud of our dolphin-safe policy that was adopted in April 1990.  We will not purchase any tuna caught in association with dolphins, and we condemn fishing methods that are known to be dangerous to them."  SAC ¶ 72.  StarKist made those same statements to major news outlets that asked for a response to the lawsuit.  *Id.*  Yet, as Plaintiffs will show, the primary methods used to catch StarKist tuna (purse seine nets and long lines) *are* dangerous to dolphins.  Far from condemning these methods, StarKist actively promotes them by purchasing the vast majority of its tuna from fishermen that use these dolphin-dangerous fishing methods.

**b.      StarKist's Statement**

StarKist is a Pittsburgh, Pennsylvania based food company that is a leading seller of prepackaged tuna in the United States.  In 1990, Congress enacted the Dolphin Protection Consumer Information Act ("DPCIA"), 16 U.S.C. § 1385, which, *inter alia*, set uniform national standards for labeling packaged tuna products as "dolphin safe."  The DPCIA and its implementing regulations allow for use of the Department of Commerce's dolphin-safe logo or an alternate dolphin-safe logo, provided that StarKist—and any other seller of packaged tuna in the United States—meets certain

2

**Error! Unknown document property name.**

requirements before labeling a tuna product "dolphin safe," including, for example, the requirement that "no purse seine net was intentionally deployed on or used to encircle dolphins during the particular voyage on which the tuna were caught and no dolphins were killed or seriously injured in the sets in which the tuna were caught." *See, e.g.*, 16 U.S.C. § 1385(d)(1)(B)(i); 50 C.F.R. § 216.91(a)(1)(ii). StarKist has fully complied with all such DPCIA requirements at all times. StarKist is also regularly subject to, and has consistently passed, the retail market spot checks of the National Oceanic and Atmospheric Administration ("NOAA"), which determine that StarKist tuna has "met U.S. dolphin-safe standards."[1]  Indeed, those spot checks report that all StarKist tuna is caught without targeting dolphins and that no dolphins were killed or seriously injured in catching the sets of tuna purchased by StarKist—*i.e.*, that fishing methods like purse seining and long lining, which the DPCIA recognizes can be used in a dolphin-safe manner, were in fact used in a dolphin-safe manner.

Nevertheless, Plaintiffs argue that StarKist's "dolphin-safe" label is misleading to consumers because its tuna suppliers use fishing practices that can theoretically cause harm to dolphins. Plaintiffs' argument fails for the simple reason that no dolphins have been targeted, killed or seriously injured in catching the tuna that StarKist actually purchases, meaning all of the tuna in StarKist's products is dolphin safe.  Plaintiffs' challenge to a handful of StarKist non-label representations about its fishing practices is flawed for the same reasons: just because a fishing method could kill or cause harm to dolphins does not mean that any dolphins were actually killed or harmed in catching the tuna in StarKist products.  In fact, no dolphins were killed or harmed in catching the tuna in StarKist products.  Moreover, StarKist has never promised a dolphin-safety level higher than that required by the DPCIA, much less engaged in pervasive advertising to that effect.

//

//

---

[1] *See*  https://www.fisheries.noaa.gov/national/marine-mammal-protection/brands-sampled  (last visited January 2021).

FURTHER JOINT CASE MANAGEMENT STATEMENT                    3:19-cv-02561-WHO

**Error! Unknown document property name.**

**3. Legal Issues**

**a.    Plaintiffs' Statement**

Plaintiffs allege that StarKist's false, misleading, deceptive, and unlawful representations that its tuna products are "Dolphin Safe" constitute unjust enrichment and violate California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*; Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*; New York's General Business Law § 349; New Jersey's Consumer Fraud Act, N.J. Stat. § 65:8-2:10; Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.67-68, *et. seq.*, §§ 8.31, *et. seq.*, §§ 325D.43, *et. seq.*; Arizona's Consumer Fraud Act, A.R.S. §§ 44-1521, *et seq.*; and Michigan's Consumer Protection Act, Mich. Comp. Laws §§ 445.901, *et seq.*  This case is likely to raise common questions of law and fact, which predominate over questions affecting individual Class members, including, but not limited to:

i.      Whether StarKist's dolphin-safe representations are false, misleading, or objectively reasonably likely to deceive;

ii.     Whether StarKist engaged in fishing practices that harmed dolphins;

iii.    Whether StarKist's alleged conduct is unlawful and constitutes violations of the laws asserted;

iv.     Whether StarKist engaged in false, misleading, and/or deceptive advertising;

v.      Whether the statements made or facts omitted were material;

vi.     What is the measure and amount of damages suffered by Plaintiffs and Class members, and whether Plaintiffs and the Class are entitled to punitive damages; and

vii.    Whether Plaintiffs and Class members are entitled to equitable remedies, including disgorgement, restitution, corrective advertising, and injunctive relief.

**b.    StarKist's Statement**

StarKist's dolphin-safe label is factually accurate because no dolphins are killed or seriously injured in catching the tuna in StarKist's tuna products.  It is also legal because StarKist has at all

FURTHER JOINT CASE MANAGEMENT STATEMENT                    3:19-cv-02561-WHO

**Error! Unknown document property name.**

times complied with the DPCIA, a comprehensive federal statutory scheme intended to provide uniform meaning to the term "Dolphin Safe" as used on the labels of packaged tuna products.  Further, the handful of non-label statements identified by Plaintiffs do not constitute promises of dolphin safety higher than that required by the DPCIA, and cannot possibly amount to a pervasive advertising campaign reflecting such promises.  Nor can Plaintiffs demonstrate that putative class members were generally exposed to these non-label representations.   Thus, this case is not capable of class certification.

StarKist believes that the currently identifiable legal issues the Court needs to resolve include the following:

i.      Whether Plaintiffs state a claim by alleging that StarKist's "dolphin-safe" label misleads consumers because its tuna suppliers use fishing methods that can *theoretically* cause harm to dolphins when no dolphins have been killed or seriously injured in catching the tuna that StarKist actually purchases from its suppliers and sells to consumers in the United States;

ii.     Whether Plaintiffs' claims are partially or entirely preempted or otherwise precluded by StarKist's compliance with the DPCIA's comprehensive labeling scheme;

iii.    Whether Plaintiffs have been misled or otherwise injured by StarKist, including whether StarKist's non-label representations promised a greater level of dolphin safety than that required by the DPCIA;

iv.     Whether  dolphins were killed or seriously injured in catching the tuna purchased by StarKist and subsequently packaged, labeled as "Dolphin Safe," and sold by StarKist to consumers in the United States;

v.      Whether a class could ever be certified under Fed. R. Civ. P. 23, including because common questions of law or fact do not predominate over individual issues in light of Plaintiffs' reliance on non-label statements;

vi.     Whether damages are capable of being calculated on a class-wide basis under *Comcast*

5

**Error! Unknown document property name.**

*Corp. v. Behrend*, 569 U.S. 27 (2013); and

    vii.    Whether a nationwide unjust enrichment class can be certified consistent with *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).

This lawsuit is still at an early stage, therefore StarKist reserves the right to identify additional legal issues as this case proceeds.

### 4.  Motions

Presently there are no motions pending in this action.

The Court's current scheduling order directs that Plaintiffs' motion for class certification be filed no later than June 4, 2021, with the hearing on that motion to take place November 17, 2021. Given the ongoing pandemic and subsequent disruptions to normal business activity, the Parties have requested this schedule be altered as set forth in Section 17 below.

In addition to the motion for class certification, Plaintiffs also anticipate *Daubert* motions challenging StarKist's class certification and merits experts and will potentially file a summary judgment motion, as well.  StarKist anticipates opposing class certification, one or more *Daubert* motions challenging Plaintiffs' class certification and merits experts, and a motion seeking summary judgment.

### 5.  Amendment of Pleadings

Plaintiffs filed a First Amended Class Action Complaint ("FAC") (D.E. 37) on June 17, 2019, adding a claim for damages pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. based on the same factual allegations as set forth in their initial Complaint (D.E. 1). Plaintiffs filed a Second Amended Complaint ("SAC") (D.E. 75) on December 23, 2019.  The SAC names the same Parties and alleges the same claims as the FAC, with the exceptions of removing the RICO claim and adding a Michigan Plaintiff and a cause of action for violations of Michigan's Consumer Protection Act.  Pursuant to the Court's Order on Defendants' Motions to Dismiss, Defendant Dongwon Industries Co., Ltd. was dismissed from this Action.

StarKist filed an Answer to Plaintiffs' SAC (D.E. 97) on April 28, 2020.  StarKist reserves

FURTHER JOINT CASE MANAGEMENT STATEMENT          3:19-cv-02561-WHO

**Error! Unknown document property name.**

the right to object to any future amendments by Plaintiffs and StarKist reserves the right to seek to amend its own pleading.

**6.    Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have taken steps to preserve relevant documents relating to Plaintiffs' claims and StarKist's defenses, which are reasonably evident in this action.  In addition, Plaintiffs sent evidence preservation letters to third parties with potentially relevant information, including the Earth Island Institute, the National Fisheries Institute, and the International Seafood Sustainability Foundation.

Further, pursuant to Fed. R. Civ. P. 26(f) and ESI Guideline 2.02, the Parties have engaged in extensive meet and confer discussions regarding what reasonable and proportionate steps are to be taken to preserve electronic discovery evidence relevant to the issues reasonably evident in this action and have reached an agreement establishing a suitable ESI protocol that specifically delineates the procedures for electronic discovery in this litigation.  The Parties shall present any disputes to the Court for resolution.

**7.    Disclosures**

The Parties exchanged their initial disclosure information, as required by Fed. R. Civ. P. 26.

**8.    Discovery**

The Parties are actively engaged in discovery.  Plaintiffs have propounded interrogatories, requests for admission, and requests for production on StarKist.  Plaintiffs have also issued numerous third-party subpoenas to various entities for the production of documents.  StarKist has responded to Plaintiffs' written discovery, and is in the process of collecting and reviewing responsive documents and information.  The Parties have negotiated, and the Court has entered, a Stipulated Protective Order regarding the production of confidential information (D.E. 96).  Plaintiffs also intend to take the depositions of StarKist's 30(b)(6) and percipient witness(es).  StarKist is prepared to propound written discovery requests to Plaintiffs and intends to take the depositions of the 21

7

**Error! Unknown document property name.**

named plaintiffs and of any other fact witnesses who may be revealed in the course of discovery. The Parties intend to conduct expert discovery as well.

The Court's Scheduling Order (D.E. 105) instructs the Parties to substantially complete document productions by December 31, 2020, and sets the fact discovery cutoff on March 3, 2021. That Order was entered on May 26, 2020, in the early stages of the pandemic.  Since that Order was issued, additional state, county, and local measures have been imposed (in California and across the country) to slow the spread of COVID-19.  These measures have caused substantial disruptions to all aspects of life and business in the United States.  The Parties and their counsel are complying with all government orders and are continuing to operate under mandatory remote working restrictions in many locations; many schools remain closed, requiring parents to oversee distance learning during the workday; and social distancing guidelines and other restrictions make normal business operations impossible.  As the Parties submit this statement, the United States is experiencing the latest surge in coronavirus cases, which is likely to continue for some time and which has substantially impacted all persons' lives in previously unforeseeable ways.  As a result, the progress of discovery in this case has been slower than the Parties anticipated when they submitted the proposed schedule earlier this year.  Given the continuing difficulties presented by the ongoing global pandemic and the recent spikes in coronavirus infection rates around the country, the Parties have encountered significant challenges in adhering to the current discovery schedule.  As a result, the Parties have agreed to a rolling document production, with a deadline for substantial completion on May 31, 2021. The Parties have discussed and agreed that the current discovery schedule will need to be altered given the difficulties presented by the current national health emergency and have proposed an amended schedule in Section 17, below.

Consistent with its representation at the January 18, 2021 hearing on Plaintiffs' Motion for Issuance of Letter Rogatory, StarKist produced sample procurement documents to Plaintiffs on January 27, 2021 and anticipates making a full production of such documents later this month.

//

8

FURTHER JOINT CASE MANAGEMENT STATEMENT                    3:19-cv-02561-WHO

**Error! Unknown document property name.**

**9.   Class Actions**

All attorneys of record for the Parties have reviewed the Procedural Guidance for Class Action Settlement.  The Parties agree that Plaintiffs' motion for class certification be filed by a date no later than agreed upon in the Parties' proposed briefing schedule discussed below and, as reflected in that schedule, that the Parties' discovery efforts shall focus on class certification issues leading up to Plaintiffs' deadline to move for class certification.

**10.  Related Cases**

This Court has found the instant case related to *Duggan v. Tri-Union Seafoods, LLC*, Case No. 19-cv-02562-WHO ("*Duggan*").

**11.  Relief**

**a.     <u>Plaintiffs' Statement</u>**

Plaintiffs currently seek class certification, declaratory relief, restitution, damages, injunctive relief, punitive damages, and attorneys' fees and costs.  Plaintiffs will calculate the alleged aggregate classwide damages upon receipt of necessary discovery from StarKist.

**b.     <u>StarKist's Statement</u>**

StarKist denies that any class is certifiable in this case and further denies that Plaintiffs are entitled to any relief, including any classwide or individual damages, injunctive relief, declaratory relief, restitution, disgorgement, or any award of attorneys' fees or costs.  StarKist seeks an award of attorneys' fees and costs.

**12.  Settlement and ADR**

The Parties have explored the potential for mediation or settlement discussions but do not believe that such efforts would be productive at the moment.  The Parties are open to exploring private, non-binding mediation or settlement discussions by October 29, 2021, before the Court rules on a motion for class certification.

**13.  Consent to Magistrate Judge for All Purposes**

The Parties do not consent to having a Magistrate Judge conduct all further proceedings.

FURTHER JOINT CASE MANAGEMENT STATEMENT                    3:19-cv-02561-WHO

**Error! Unknown document property name.**

**14. Other References**

The Parties are not aware of any references needed at this time to arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues**

The Parties do not believe there are issues that can be narrowed at this time.

**16. Expedited Trial Procedure**

The Parties do not believe that this is the type of case that could be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

**17. Scheduling**

The Court's May 26 Scheduling Order adopted the Parties' proposed schedule presented at the early stages of the global pandemic.  As noted above, given the ongoing coronavirus crisis and associated disruptions to normal business activity, the Parties hereby request the schedule be altered as set forth below to allow the Parties flexibility in working around the challenges posed by the pandemic.  The Parties propose the following schedule, in which all proposed deadlines marked with an asterisk are consistent with the revised schedule that the Court recently set in the related *Duggan* matter:

|  | **Current Deadline** | **Proposed Deadline** |
|---|---|---|
| Deadline for substantial completion of document production related to non-expert class discovery: | December 31, 2020 | May 17, 2021 |
| Deadline for completion of non-expert factual discovery (including depositions) and third-party discovery: | March 3, 2021 | October 1, 2021 |
| Plaintiffs' Motion for Class Certification and Plaintiffs' Rule 26(a)(2) Expert Disclosures/Reports for Class Certification: | June 4, 2021 | December 1, 2021* |
| Deadline for Depositions of Plaintiffs' Class Certification Experts: | July 23, 2021 | January 25, 2022* |

10

Error! Unknown document property name.

| | | |
|---|---|---|
| StarKist's Opposition to Plaintiffs' Motion for Class Certification and StarKist's Rule 26(a)(2) Expert Disclosures/Reports for Class Certification: | August 20, 2021 | February 22, 2022* |
| Deadline for Depositions of StarKist's Class Certification Experts: | September 17, 2021 | April 12, 2022* |
| Plaintiffs' Class Certification Reply Brief and Plaintiffs' Rule 26(a)(2) Rebuttal Expert Disclosures/Reports for Class Certification: | October 11, 2021 | May 6, 2022* |
| Hearing on Plaintiffs' Motion for Class Certification: | November 17, 2021 | June 15, 2022* |
| Further Case Management Conference: | The Court shall schedule a further Case Management Conference to take place after the Court rules on the motion for class certification. | No change. |

**18. Trial**

Because discovery is in its initial stages, the Parties are unable at this time to anticipate the length of trial with any certainty, but roughly approximate 7-10 trial days.  Both Parties request a jury trial of all issues so triable.

**19. Disclosure of Non-Party Interested Entities or Persons**

    **a.**    <u>**Plaintiffs' Statement**</u>

Other than the named Plaintiffs, there are no financial interests to report.  Pursuant to Local Civil Rule 3-15, as of this date, Plaintiffs are unaware of any person or entity, other than the named Plaintiffs, with a financial or other interest that could be substantially affected by the outcome of this proceeding.

    **b.**    <u>**StarKist's Statement**</u>

StarKist has filed the certification of interested entities or persons.  (D.E. 35.)  The parent

11

company of StarKist is Dongwon Industries Co., Ltd., a South Korean company.  There is no publicly owned corporation that owns ten percent (10%) or more of StarKist's stock.  Pursuant to Local Civil Rule 3-15, as of this date, StarKist is unaware of any person or entity, other than the named parties, with a financial or other interest that could be substantially affected by the outcome of this proceeding.

**20. Professional Conduct**

All attorneys of record for all Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. Other Matters**

i.      The Parties consent to service by electronic means with respect to discovery provided that service is made on all counsel of record.

ii.     The Parties agree that neither privileged documents created after the commencement of this lawsuit nor privileged communications between a party and its counsel (including outside counsel in the case of StarKist) concerning the subject matters of the litigation are required to be disclosed on a privilege log.

Dated:  February 9, 2021                    BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

                                            /s/ *Patricia N. Syverson*
                                            Patricia N. Syverson (203111)
                                            600 W. Broadway, Suite 900
                                            San Diego, California 92101
                                            psyverson@bffb.com
                                            Telephone:  (619) 798-4593

                                            BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
                                            Elaine A. Ryan (*Pro Hac Vice*)
                                            Carrie A. Laliberte (*Pro Hac Vice*)
                                            2325 E. Camelback Rd., Suite 300
                                            Phoenix, AZ 85016
                                            eryan@bffb.com
                                            claliberte@bffb.com
                                            Telephone:  (602) 274-1100

                                            GOLDMAN SCARLATO & PENNY P.C.
                                            Brian D. Penny (*Pro Hac Vice*)
                                            penny@lawgsp.com

12

**Error! Unknown document property name.**

1

2          8 Tower Bridge, Suite 1025
           161 Washington Street
3          Conshohocken, Pennsylvania 19428
           Telephone:  (484) 342-0700

4          ZAREMBA BROWN PLLC
           Brian M. Brown (*Pro Hac Vice*)
5          bbrown@zarembabrown.com
           40 Wall Street, 52nd Floor
6          New York, NY 10005
           Telephone: (212) 380-6700
7
           ROBBINS GELLER RUDMAN & DOWD LLP
8          Stuart A. Davidson (*Pro Hac Vice*)
           Christopher C. Gold (*Pro Hac Vice*)
9          Bradley M. Beall (*Pro Hac Vice*)
           Dorothy P. Antullis (*Pro Hac Vice*)
10         sdavidson@rgrdlaw.com
           cgold@rgrdlaw.com
11         bbeall@rgrdlaw.com
           dantullis@rgrdlaw.com
12         120 East Palmetto Park Road, Suite 500
           Boca Raton, FL  33432
13         Telephone:  (561) 750-3000

14         Attorneys for Plaintiffs

15   Dated:  February 9, 2021        PILLSBURY WINTHROP SHAW PITTMAN LLP

16                                    /s/*Roxane A. Polidora*
                                     Roxane A. Polidora
17                                   Lee Brand
                                     Four Embarcadero Center, 22nd Floor
18                                   San Francisco, CA  94111-5998
                                     Telephone:  415/983-1976
19                                   415/983-1200 (fax)
                                     roxane.polidora@pillsburylaw.com
20                                   lee.brand@pillsburylaw.com

21
                                     *Attorneys for Defendant StarKist Co.*
22

23

24

25

26

27

28
                                       13

Error! Unknown document property name.

1
2

**LOCAL RULE 5-1(i)(3) ATTESTATION**

3        Pursuant to Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf

4    the filing is submitted, concur in the filing of this Joint Case Management Statement, and have

5    authorized the filing of this Joint Case Management Statement.

6

7    Dated:  February 9, 2021                    By: _s/Patricia N. Syverson_
                                                 Patricia N. Syverson

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

14

**Error! Unknown document property name.**

1

2

3

## <u>CERTIFICATE OF SERVICE</u>

4

        I hereby certify that on February 9, 2021, I electronically filed the foregoing with the Clerk of

5

the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses

6

denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing

7

document or paper via the United States Postal Service to the non-CM/ECF participants indicated on

8

the Manual Notice list.

9

        I certify under penalty of perjury under the laws of the United States of America that the

10

foregoing is true and correct.

11

        Executed on February 9, 2021.

12

13

                                        */s/ Patricia N. Syverson*
                                        Patricia N. Syverson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FURTHER JOINT CASE MANAGEMENT STATEMENT                    3:19-cv-02561-WHO

**Error! Unknown document property name.**